IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOSHUA D. POERTNER, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY, and<br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) CASE NO. 6:12-CV-00803-GAP-DAB<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, Joshua D. Poertner ("Plaintiff" or "Poertner"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, and hereby files his Second Amended Complaint against Defendants The Gillette Company and The Procter & Gamble Company, and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred Class members, and minimal diversity exists because Plaintiff and numerous members of the Class are citizens of different states than Defendants.

2. This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with Florida, and/or Defendants have otherwise purposely availed themselves of the markets in Florida through the promotion, marketing, and sale of

their products and services in Florida to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.  Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendants are subject to personal jurisdiction in the Middle District of Florida, and (2) a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District. Defendants engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this District, and Plaintiff is a resident of this District and purchased the products at issue in this District.

## NATURE OF THE ACTION

4.  This is a class action brought on behalf of Florida consumers who purchased Duracell premium-priced Ultra Advanced and Ultra Power batteries based on Defendants' false promise that Ultra Advanced and Ultra Power batteries would last longer and are more powerful than Duracell's competing, lower-cost batteries, i.e., the Duracell CopperTop. The Duracell brand batteries are manufactured by Defendant The Gillette Company ("Gillette"), which is a wholly owned subsidiary of Defendant The Proctor and Gamble Company ("P&G") (collectively "Defendants").

5.  Defendants engaged in a scheme to mislead Florida consumers about the benefits of these premium-priced batteries by falsely advertising to Florida consumers that Defendants' Duracell Ultra Advanced and Ultra Power brand batteries last significantly longer and are more powerful than competing, lower-cost Duracell brand batteries and thereby command a premium price.

6. Defendants concealed and misrepresented material facts concerning the true battery life and power of their Ultra Advanced and Ultra Power batteries, and Plaintiff and all reasonable Florida consumers relied on Duracell's marketing scheme and paid a premium price for batteries with no material difference in battery life or power than Duracell's lower-priced alkaline batteries, i.e, the Duracell CopperTop. Plaintiff and the class he seeks to represent were damaged as a result. As such, this is an action for injunctive relief, damages, attorney's fees, costs and other statutory relief as allowed pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201, *et seq.*, Florida Statutes (2005).

## PARTIES

7. Plaintiff Joshua D. Poertner is a citizen of Florida and resides in Deland, Volusia County, Florida. Plaintiff purchased Duracell Ultra Advanced and Duracell Ultra Power batteries in Florida during the below defined class period.

8. Gillette is the owner of the Duracell battery brand. Gillette, a wholly-owned subsidiary of P&G, is a Delaware corporation with its principle place of business in Boston, Massachusetts. Gillette maintains extensive contacts within the State of Florida. Gillette markets and advertises Duracell brand batteries in the State of Florida. Gillette ships its batteries to distributors in Florida, and its batteries are sold in retail stores throughout Florida.

9. Defendant P&G is an Ohio corporation with its principal place of business in Cincinnati, Ohio. P&G maintains extensive contacts within the State of Florida and ships its products to distributors in Florida. Its products are sold in retail stores throughout Florida,

and it advertises its products in Florida. P&G also exercises control over the activities of its wholly-owned subsidiary Gillette with regard to manufacturing, sales and marketing of Duracell batteries.

## FACTS

10. Gillette describes itself as "the world's leading manufacturer of high-performance alkaline batteries."

11. In 2011, the U.S. market for consumer batteries was approximately $13 billion. Duracell's share of the global market for consumer batteries was approximately 25 percent. Its share of the U.S. battery market has been estimated at 40% to 50%.

12. Defendants sell both primary (disposable) and secondary (rechargeable) batteries for use in consumer products. Current primary battery products include Duracell CopperTop and Duracell Ultra Power (previously branded as Duracell Ultra Advanced). Secondary battery products include Duracell Rechargeable and Duracell Rechargeable StayCharged.

13. On November 5, 2009, Duracell announced its new Ultra Advanced battery, which was available in AA and AAA sizes. In its press release announcing Ultra Advanced, Duracell described the product as follows:

> The Duracell Ultra Advanced battery line is designed to meet the demands of the widest range of devices consumers rely on to protect and enjoy their lives including flashlights, smoke detectors, baby monitors and radios. As the latest product in the Duracell Smart Power portfolio, **Ultra Advanced with POWERCHECK lasts up to 30 percent longer in toys than the previous Ultra Digital, which are the largest category for battery usage and a key torture test for batteries.**

4

(Emphasis added).

14. Throughout the Class Period, the product packaging for Duracell Ultra Advanced batteries included the statement, "Up to 30% Longer in Toys*" with an asterisk that included the disclaimer "V5. Ultra Digital" in small print. This product package is displayed at the top of the following page:



15. In addition, Duracell's web site stated on the product page for Duracell Ultra Advanced: "Ideal for high-drain devices, these batteries give you up to 30% more power in toys than Ultra Digital batteries" and "Use with high drain devices, including battery-powered toys, high-powered flashlights, and video game controllers."

16. In truth, however, Duracell Ultra Advanced batteries fail to last materially longer than Duracell's other lower-priced alkaline batteries, i.e., the Duracell CopperTop. Despite Defendants' representations to the contrary, there is no meaningful difference in battery life or "power" between Duracell Ultra Advanced and Duracell's other alkaline batteries.

17. Beginning in approximately January 2012, Defendants began to phase out their Ultra Advanced batteries and replace them with batteries branded as "Ultra Power." Duracell's website product pages replaced the Ultra Power brand with the Ultra Advanced brand, and the Ultra Power brand also began replacing the Ultra Advanced brand in retail stores.

18. Both the Ultra Advanced and Ultra Power branded batteries use the same model number, MX1500, and there is no discernible difference between the two batteries, absent the change in branding and marketing.

19. On the product packaging for Duracell Ultra Power batteries, Defendants prominently state that the battery is "Our Longest Lasting" on the front of the package. On the back of the package, Defendants also include a chart indicating that Duracell CopperTop batteries are "For Everyday Devices" and Duracell Ultra Power batteries are for "When It Matters Most." The product package for Duracell Ultra Power batteries is displayed below:



20. On Duracell's website for Ultra Power, Defendants describe Ultra Power as "Our Longest Lasting" and state, "Ultra Power is Duracell's most powerful alkaline battery. If you're using a device that requires high battery output, Ultra Power is the way to go." Duracell's website also states that "Duracell Ultra Power batteries offer premium power for many of your devices, including: Battery-powered toys, Video game controllers, High-powered flashlights, Digital cameras, and Radio clocks."

21. In truth, however, Duracell Ultra Power batteries do not last materially longer than Duracell's other alkaline batteries nor are they more powerful. Despite Defendants' representations to the contrary, there is no meaningful difference in battery life or "power" between Duracell Ultra Power and Duracell's other alkaline batteries, i.e., the lower-priced Duracell CopperTop.

22. Defendants conspicuously failed to disclose that Ultra Advanced and Ultra Power branded batteries provide no material difference in battery life or "power" from any of

their other alkaline battery products, i.e., the CopperTop. Compared with their statements on the products' packaging and elsewhere that their batteries were more powerful and would either last "up to 30% longer" or are "our longest lasting," Defendants' glaring omission that there is no material difference between their alkaline batteries would, and did, mislead reasonable Florida consumers.

23. Because Defendants' claims were placed directly on the front of the products' packaging and in other advertising, and there is no corresponding disclosure that Duracell's batteries do not materially differ in battery life or power, a reasonable consumer would likely be misled into believing that Duracell's Ultra Advanced and Ultra Power products would last longer and provide more power than Duracell's regular alkaline batteries, i.e., the CopperTop. This deception often occurs directly at the point of sale when it is most likely to affect a consumer's purchasing decision.

24. As a result of Defendants' deceptive marketing scheme, consumers purchased Duracell's Ultra Advanced and Ultra Power batteries based on the false belief that the batteries would last materially longer and were more powerful than Duracell's regular alkaline batteries. These customers paid significantly higher prices with no meaningful additional benefits.

25. Duracell Ultra Advanced and Ultra Power batteries retail at a substantial premium price over Duracell's standard CopperTop batteries and cost on average $0.30 more per battery (or $2.40 per eight-pack), or approximately 40% more than the approximate average retail price charged for the Duracell CopperTop. Therefore, all Florida consumers

who purchased Ultra Advanced or Ultra Power batteries have been injured by Defendants' deceptive marketing scheme and are owed restitution.

26.     In 2010, Poertner purchased Duracell Ultra Advanced batteries in size AA from a retail store in Florida. Poertner saw the deceptive representations on the product packaging that Duracell Ultra Advanced batteries lasted "up to 30% longer" and believed that the batteries would last longer than Duracell's other batteries. Due to Defendants' misrepresentations and omissions, Poertner did not know that there was no material difference between the battery life or power of Duracell Ultra Advanced batteries and Duracell's other alkaline batteries. Had Poertner known that Duracell Ultra Advanced batteries did not last materially longer than Duracell's other alkaline batteries, Poertner would not have purchased Duracell Ultra Advanced batteries.

27.     Poertner also purchased Duracell Ultra Power batteries in size AA from a retail store in Florida. Poertner saw the deceptive representations on the product packaging that Duracell Ultra Power batteries were Duracell's "longest lasting" batteries and believed that the batteries would last longer than Duracell's other batteries. Due to Defendants' misrepresentations and omissions, Poertner did not know that there was no material difference between the battery life or power of Duracell Ultra Power batteries and Duracell's other alkaline batteries. Had Poertner known that Duracell Ultra Power batteries did not last materially longer than Duracell's other alkaline batteries, Poertner would not have purchased Duracell Ultra Advanced batteries.

28. Poertner, and each class member, has been injured by paying more for Duracell Ultra Advanced and Duracell Ultra Power batteries than they would have absent Defendants' deception.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this class action on behalf of himself and all others similarly situated in Florida as members of a proposed Class defined as follows:

> All persons who purchased Duracell Ultra Advanced or Duracell Ultra Power batteries in the State of Florida during the period beginning four years prior to the date of filing of this complaint through the present (the "Class Period").

30. Excluded from the Class are the following:

(a) All judicial officers in the United States and their families through the third degree of relationship;

(b) Each Defendant and any of its officers, directors, and employees;

(c) Any person or entity who has already settled or otherwise compromised similar claims against a Defendant;

(d) Anyone who files before final judgment any bankruptcy proceeding;

(e) Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

(f) Anyone who has pending against a named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

31. This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

32. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff alleges that the Class includes at least hundreds of thousands of individuals.

33. Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

   a. Whether Defendants' representations regarding their Ultra Advanced and Ultra Power batteries were false and misleading or reasonably likely to deceive;

   b. Whether Defendants had adequate substantiation for their claims prior to making them;

   c. Whether Defendants' failure to disclose that their Ultra Advanced and Ultra Power batteries did not last materially longer and/or were not more powerful than their other alkaline batteries would mislead a reasonable consumer;

d. Whether Duracell Ultra Advanced and Ultra Power batteries last materially longer than Defendants' other alkaline batteries;

e. Whether Duracell Ultra Advanced and Ultra Power batteries are more powerful than Defendants' other alkaline batteries;

f. Whether Defendants charged a price premium for their Ultra Advanced and Ultra Power batteries;

g. Whether Defendants engaged in unfair, unlawful, and/or deceptive business practices regarding their Ultra Advanced and Ultra Power batteries in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201, *et seq.*, Florida Statutes (2005);

h. Whether Defendants conduct alleged herein constitutes false advertising in violation of the FDUTPA;

i. Whether Defendants represented, through their words or conduct, that Duracell Ultra Advanced and Duracell Ultra Power batteries had characteristics, uses, or benefits that they did not actually have in violation of the FDUTPA;

j. Whether Defendants' conduct alleged herein violates public policy;

k. Whether Defendants advertised Duracell Ultra Advanced and Duracell Ultra Power batteries with the intent not to sell them as advertised in violation of the FDUTPA; and

l. Whether Plaintiff and the Class have been damaged by the wrongs complained of herein, and if so, whether Plaintiff and the Class are entitled to

injunctive and/ or other equitable relief, including restitution, and if so, the nature and amount of such relief.

34. Plaintiff's claims are typical of the Class members' claims. Defendants' common course of conduct caused Plaintiff and all Class members the same harm. In particular, Defendants' conduct caused each Class member's economic losses. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims.

35. Plaintiff is an adequate Class representative because he is a member of the class he seeks to represent and his interests do not conflict with other Class members' interests. Plaintiff retained counsel competent and experienced in consumer protection class actions, and Plaintiff and his counsel intend to prosecute this action vigorously for the class's benefit. Plaintiff and his counsel will fairly and adequately protect Class interests.

36. The Class may be properly maintained under Rule 23(b)(2). Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

37. The Class can be properly maintained under Rule 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, the court system could not. It would be unduly burdensome for thousands of individual cases to proceed. Individual litigation also

presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Violation Of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201, *et seq.*, Florida Statutes (2005)**

38. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the factual allegations contained in the preceding paragraphs of this Second Amended Complaint.

39. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* ("the Act"). The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Sat. §501.202(2).

40. Plaintiff is a consumer as defined by Fla. Stat. §501.203 and has standing to pursue this claim because he has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth above.

41. The Duracell batteries in question are goods within the meaning of the Act, and Defendants are engaged in commerce within the meaning of the Act.

42. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

43. Defendants' conduct alleged herein violates the legislatively declared policies in the Act. Defendants misled Florida consumers into believing that their Duracell Ultra Advanced and Duracell Ultra Power batteries would last longer and were more powerful than their other alkaline batteries when, in fact, there was no material difference in battery life or power. Defendants concealed this fact from consumers by failing to include it on their products' packaging or related marketing materials.

44. As a result of Defendants' "unfair" or "deceptive" conduct, Plaintiff and members of the Class have been economically damaged in that they have spent money on premium-priced Ultra Advanced and Ultra Power batteries that they would not otherwise have spent and they did not receive the increased benefits Defendants promised.

45. Defendants have repeatedly violated the Act by intentionally engaging in the unfair and deceptive practices as described herein that offend public policies and are immoral, unconscionable, deceptive, unethical, unscrupulous and substantially injurious to consumers.

46. Plaintiff and the Class have been aggrieved by Defendants' unfair and deceptive practices because they purchased the offending Duracell Ultra batteries described herein.

47. The damages Plaintiff and the Class suffered were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants as more fully described herein.

48. Pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class seek damages, attorney fees and costs of prosecuting this action.

49. Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class, requests the Court to enter the following:

   a. An Order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

   b. A declaration that Defendants have engaged in the illegal conduct described herein;

   c. An Order awarding declaratory and injunctive relief to plaintiff and the class as permitted by law or equity, including permanently enjoining Defendants from continuing their unlawful practices as set forth herein;

d. A judgment awarding in favor of Plaintiff and the Class, and against the defendants, actual damages, punitive damages, disgorgement and restitution in an amount according to proof, and all other relief afforded to plaintiff and the class under the FDUTPA;

e. An Order directing Defendants to engage in a corrective advertising campaign;

f. An Order and judgment awarding plaintiff and his counsel attorney fees and costs incurred in prosecuting this action;

g. An Order and judgment awarding plaintiff and the class pre-judgment and post-judgment interest; and

h. An Order and judgment awarding all other relief that the Court deems necessary, just and proper.

Respectfully Submitted,

/s/ Joshua R. Gale
Joshua R. Gale, Esquire
Florida Bar #63283
Wiggins, Childs, Quinn & Pantazis LLC
101 N. Woodland Blvd. Suite 600
Deland, Florida 32720
Telephone: (386) 675-6946
Fax: (386) 675-6947
JGale@WCQP.com

Counsel for the Plaintiff

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

/s/ Joshua R. Gale
Of counsel

**OF COUNSEL:**
E. Clayton Lowe, Jr.
PRO HAC VICE ADMISSION
Peter A. Grammas
PRO HAC VICE ADMISSION
**LOWE & GRAMMAS, LLP**
1952 Urban Center Parkway
Vestavia Hills, AL 35242
Telephone: (205) 380-2400
Fax: (205) 380-2408
clowe@lowegrammas.com
pgrammas@lowegrammas.com

### CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

*Attorneys for Defendants:*

Jason A. Perkins, Esq.
Johanna W. Clark, Esq.
D. Matthew Allen, Esq.
CARLTON FIELDS, P.A.
CNL Center at City Commons
450 S. Orange Avenue, Suite 500
Orlando, FL 32801-3336
Telephone: (407) 849-0300
Facsimile: (407) 648-9099

Darren K. Cottriel, Esq.
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, Florida 92612
Telephone: (949) 553-7548
Facsimile: (949) 553-7539

Robert A. Mittelstaedt, Esq.
JONES DAY
555 Florida Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

/s/ Joshua R. Gale
Joshua R. Gale