IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSHUA D. POERTNER,                    )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        CASE NO: 6:12-CV-00803-GAP-DAB
                                       )
THE GILLETTE COMPANY and               )        Hearing Date: May 29, 2013
THE PROCTER & GAMBLE                   )        Time: 9:00 a.m.
COMPANY,                               )
                                       )
        Defendants.                    )

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW [REDACTED]

Comes Now the Plaintiff, Joshua D. Poertner, and moves the Court, pursuant to Rule 23, Fed. R. Civ. P. and Local Rule 4.04, to enter an order certifying this case as a class action, appointing Plaintiff as class representative and his counsel as class counsel.  As grounds for this motion, Plaintiff submits the following memorandum, exhibits and evidence.

## I.   INTRODUCTION

Plaintiff filed this putative class action against Defendants The Gillette Company and the Procter & Gamble Company ("P&G") on behalf of himself and Florida consumers who purchased Duracell brand Ultra Advanced and Ultra Power alkaline batteries.  Plaintiff alleges the Defendants misled consumers by falsely advertising that their Ultra batteries are the longest lasting and more powerful than Defendants' lower-priced Duracell CopperTop.  Plaintiff alleges he and the putative class members paid a premium price for the Ultra batteries, when the Ultras, in fact, have no significant or meaningful difference in power or longevity when compared to the lower-priced CopperTop.  (Second Amended Complaint, doc 54).

The issue presented by this motion is not whether the Defendants' marketing claims are in fact false or deceptive, but whether Plaintiff can present his case on a class wide basis. Because the Defendants' messages are uniform and such claims can be readily evaluated as true or not, class treatment is warranted.

Plaintiff moves the Court to certify his claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* (FDUTPA), on behalf of a Class of all persons who purchased Duracell Ultra Advanced or Ultra Power batteries, AA or AAA size, at retail and not for resale, in the State of Florida through the date notice is first provided to the Class.   Excluded from the Class are the following: (1) all judicial officers involved in this matter; (2) each Defendant and any of their officers, directors and employees; (3) any person or entity who has already settled or compromised similar claims against the Defendants; (4) anyone who files before final judgment any bankruptcy proceeding; (5) Plaintiff's counsel; and (5) anyone who has pending against a named Defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.   Plaintiff also moves to be appointed class representative and for his counsel to be appointed class counsel.

## II.  BACKGROUND

### A.  Defendants' Marketing and Claims Regarding Ultra Batteries

Defendants manufacture, market and sell Duracell brand alkaline batteries.   Defendants advertise their Duracell Ultra Advanced and Ultra Power AA and AAA batteries as their ███████ brand of battery.   *See Exhibit 1 hereto at 111578, Defendants' doc Bates no. 111576-82.[1]* ████████████████████████████████████████ ████  *Id.*   They claim that Ultra is more powerful and longer-lasting than Duracell's lower-priced CopperTop batteries, thereby enabling defendants to charge a substantial

---

[1] This document is also Exhibit 69 to the Eric Gruen deposition taken in this case.

premium over the CopperTop brand.[2] ███████████████████████

███████████████████████████████████████████████████████

██████████ *Id.*

    In 2008, Defendants developed a marketing strategy to differentiate what was then the Ultra Advanced alkaline battery from the CopperTop, and to convince CopperTop consumers to "trade-up" and purchase the higher priced Ultra. *Eric Gruen depo. at 54.* Excerpts from the *Gruen depo.* are filed herewith as *Exhibit 3*.[3] "The overall marketing goal was to drive trade-up." *Id. at 29.* This marketing strategy has been periodically tweaked by Defendants with minor changes such as changing the Ultra packaging color to blue "to signal 'premium, technology and innovation,'"[4] changing the product name from Ultra Advanced to Ultra Power,[5] promising 30% more power in toys, and promising Ultra is "our longest lasting." All of these efforts were employed as part of the strategy to convince consumers to compare the Ultras to CopperTop. Defendants' intent was to position the Ultra as a premium battery versus the CopperTop. *Id. at 181.* Throughout the life of the Ultra marketing strategy, which continues to this day, the consumer message from Defendants has been consistent and uniform – the Ultras are Defendants' premium battery, with more power and longevity than the CopperTop.

---

[2] During the relevant class period, the "price for the Ultra Advance[d] AA [was] a 55.4% premium over the price for the CopperTop; similarly, prices for the Ultra Power AA, the Ultra Advanced AAA, and the Ultra Power AAA are premia of 42.9% and 50% over the price for the respective CopperTop product." *See Declaration and Expert Report of Charles D. Cowan, PhD, at p. 5, filed herewith as Exhibit 2.*

[3] Eric Gruen is the former Assistant Brand Manager for Duracell and is presently employed by P&G as Brand Manager, North America Fabric Care. Exhibit 41 to *Gruen depo., filed herewith as Exhibit 4.* He testified he was a "key architect in developing the marketing strategy for the Ultra battery" and "the key developer of the strategy." *Gruen depo. at 33-35, 43.* He was also involved in what claims would be put on the product. *Id. at 43.*

[4] *See Defendants' doc. Bates no. 168780, Exhibit 5 filed herewith.*

[5] ████████████████████████████████████████████████

*See Defendants' doc. Bates no. 476-79, Exhibit 6 hereto.* *(This doc is also Ex. 66 to Gruen depo.)*

Of course, the purpose of this "trade-up" strategy was not only to convince consumers to purchase Ultras, but to provide a ███████████████████████████████ ████████████ *See Exhibits 7 and 8 hereto.*[6]   Apparently, as with most misleading product schemes, the Defendants' motive is enhanced profits.   *See Gruen depo., Ex. 3 at 28.* (The goal of driving business from CopperTop to Ultra was to increase profits.)

Rather than utilizing traditional television and print advertisement for the Ultra claims, Defendants elected to focus their efforts on placing product claims directly on the product packaging and on in-store displays.   Defendants did not use television or print ads for Ultra. *Id. at 76-77.* This advertising method was the result of a concept known at P&G as "FMOT" – "first moment of truth."   FMOT is the three to seven seconds when a consumer notices an item on a store shelf.   This is the first moment of truth for P&G. *Id. at 78-84.*   Because the subject product claims were placed on the product packaging and store displays, every consumer, as intended by Defendants, was exposed to the same consistent and common message – Ultra is a premium battery, more powerful and longer lasting than the CopperTop. That is, the message Defendants were trying to get across to consumers at FMOT was Ultra "is the best performing alkaline battery versus the CopperTop." *Id. at 84.*   As also noted by Mr. Gruen, placing the product claim on the Duracell Ultra products is one of the most important ways for in-store communications to expose a consumer to the product claim. *Id.*[7]   See also, *Gruen memo, Ex. 7,* wherein Mr. Gruen writes, ████████████████ ███████████████████████████████████████████████████████████████████

---

[6] These exhibits are also Exs. 71 and 72, respectively, to the *Gruen depo.*
[7] The Defendants also acted to maintain ████████████████████████████████████ ██████████████████████████████████████   *See Exhibit 9 hereto, Defendants' doc Bates no. 70551-53 (also Ex. 55 to Gruen depo.)* █████████████████████████████████████████ ███████████████████████████████████████).

███████████████   *Id. at p. 183999.*   ████████████████

██████████████████████   *Id. at p. 184001.*   Mr. Gruen

further noted,   ████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████   *Id. at p. 184003.*

Despite developing a common and consistent product message to influence every consumer at FMOT, Defendants did not, and do not, have sufficient battery test results or other data to support their Ultra product claims.   Indeed, Defendants' own internal testing of CopperTop and Ultra reveals only a 4%, at best, advantage to Ultra *on a weighted average performance*, with those "weights" being *selected by Defendants*, i.e., manipulated by Defendants.[8]   Moreover, Defendants' recognize that comparative testing results of 5% difference or less are not "meaningful" and should not be used for product comparisons. Indeed, Mr. Gruen testified that when comparative test results are 5% or less "you don't go there…. We know not to go there" in making product comparison claims.   *Gruen depo. Ex. 3 at 348.*   This recognition by Defendants of a P&G internal standard for product comparison is further illuminated by a P&G email from Tim McKenney, P&G Manger of Global Claims, stating, *inter alia*, "re: NA data CT [CopperTop] vs Ultra – check for Spirit claim support.   "We have disclosed to the NAD through numerous challenges that we consider differences of >5% meaningful. NAD has ruled in the past that differences of 4.6% or less are not meaningful.   Therefore we need to make sure that tests in which Ultra is less than 5% better than CopperTop we can use for support of "Lasts Longer."   *See Exhibit 10 hereto, Defendants' doc Bates no. 45519-21.*[9]

---

[8] *See Defendants' doc Bates no. 47971-75, Exhibit 11 hereto,* which is an internal P&G email dated 3/3/11 to Tim McKenney, P&G Manager Global Claims, stating, in part, ████████████████████████████
████████████████████████████

[9] This document was the subject of the Court's 3/12/13 Order (doc 63) granting Plaintiff's Motion for an

Furthermore, Defendants repeatedly recognize and acknowledge throughout their documents and testimony adduced in this case that there is no more than a 4% difference on a "weighted average" in the performance of Ultra and CopperTop.   For example, Mr. Gruen acknowledged that the Ultra lasted longer than CopperTop by only 4% on a weighted average performance.   *Gruen depo. Ex. 3 at 85, 292, 295.*   He also noted the "weighted average" is "weighted in some way to drive an average performance."   *Id. at 290-91.* Additional documentary evidence produced by Defendants on this point further establishes that the weighted average performance differences between Ultra and CopperTop has often been reported internally at P&G as less than 4% and even "slight."[10]

---

Order Overruling Defendants' Designation of Privileged Documents and For Expedited Ruling.   It is also Ex. 68 to the *Gruen depo.*

[10] See, for example, *Exhibit 12 hereto, Defendants' doc Bates no. 48931-33 at 48932,* a 3/17/09 P&G email "We are using an Ultra label but more so CopperTop chemistry;" *Exhibit 13 hereto, Defendants' doc Bates no. 44157-58,* a 02-26-10 internal email re: Ultra Advanced/Clarification of Claim on Pack "We normally do not compare the performance of our 'Ultra Advanced' to 'CopperTop' or 'Procell' as there is generally only a slight performance improvement (however this will vary depending on the device type);" *Exhibit 14 hereto, Defendants' doc Bates no. 82816-21 at 82819,* 04-13-10 Emails re: Yosemite Questions "Q: Ultra is currently performing 3% better than CT on a WAP basis? A: CopperTop indexes at 97 to Ultra but the actual percentage is closer to ~4% Ultra advantage;" *Exhibit 15 hereto, Defendants' doc Bates no. 82804,* a 04-14-10 Email from Mark Kirkham of P&G to Tim McKenney and others.   With PCheck we can support a reduced WAP delta, but we need to be conscious of how "reduced" it is – "e.g. we have historically been 3-5%, and if we start getting into the <2% range – we need to be careful since that is in the range of our variability;" *Exhibit 16 hereto, Defendants' doc Bates no. 44149-50,* 10-6-10 NA Yosemite Commercial Strategy –



*Exhibit 17 hereto, Defendants doc Bates no. 111651-54 (also Ex. 67 to Gruen depo.),* a 04-21-11 Email and attached Issue Sheet from Eric Gruen re: Ultra Power Issue Sheet Background:

and; *Exhibit 18 hereto, Defendants' doc Bates no. 4776,* Main Messages DBD-K2 [Ultra] overall weighted advantage versus CopperTop "has decreased from 4.3% to 3.3%."



Mr. Gruen, in his memo entitled ███████████████████████ ████████████████ sums up the situation – ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████  *See Exhibit*

*8 at 183965-66.*   Thus, Defendants knew of the minimal, if any, difference in performance between the Ultra and CopperTop yet marketed the Ultra as a "premium" product, all for the sake of increased profits.

## B.   Plaintiff's Purchases and Usage of Duracell Batteries

Plaintiff gave his deposition in this case on October 5, 2012.   Excerpts from his deposition are filed herewith as *Exhibit 19*.   Plaintiff is a resident of DeLand, Florida. *Poertner depo.* Ex. *19 at 14, 17*.   He purchased Duracell Ultra Advanced and Ultra Power batteries.   *Id. at 33*.   He purchased Duracell Ultra Advanced batteries three to four times in 2010.   *Id. at 97*.   He purchased Ultra Power batteries in early 2012, "probably February." *Id. at 66*.   Before he purchased the Ultra Advanced batteries, he had generally purchased Duracell CopperTop batteries for his devices at home.   *Id. at 125-26*.   He had purchased CopperTop "for a long time."   *Id. at 153*.   He purchased the Ultra batteries expecting them to perform longer than the standard CopperTop.   *Id. at 32*.   "That was how they were advertised on the package and I paid a premium for them."   *Id.*   He expected a noticeable difference – expected them to last 30% longer.   *Id. at 34*.   He based his understanding that the Ultra Advanced and Ultra Power batteries would last 30% longer than the CopperTop off of the packaging.   *Id. at 35*.   "[T]he advertisement on the package is what caused me to believe the batteries would last longer than the standard CopperTop…"   *Id. at 39*.   The sole reason he purchased Ultra Advanced and Ultra Power batteries was based on the statements on the packaging.   There was no other reason.   *Id. at 157*.

At the time of purchasing the Ultra Advanced batteries, he had not made up his mind

what to purchase before going to the store.  *Id. at 105*.  He made his decision standing in front of all batteries on the shelf at the store.  *Id.* at *105-06*.  The statement "up to 30% longer in toys" on the package was the only reason he decided to purchase the Ultra Advanced batteries.  *Id. at 106*.  He assumed the 30% longer was in comparison to the CopperTop.  Plus, "they were more expensive batteries."  *Id. at 108*.  He believed the 30% applied to any device.  "If it was a longer-lasting battery, I believed that any device you put it in it would last longer."  *Id. at 109, 200*.  When he purchased the Ultra Advanced batteries, he compared them side by side for price and saw they were more expensive than the CopperTop.  *Id. at 117-18*.

As for the Ultra Power, he recalls reviewing "our longest lasting" on the package at the time of purchasing Ultra Power batteries.  *Id. at 139*.  He made his decision to purchase Ultra Power batteries (as intended by Defendants' FMOT concept) based on the statements on the packaging, that they were longer-lasting.  *Id. at 137*.  "I assumed it was a longer-lasting battery, [that] it was better than the CopperTop."  *Id.*  He understood the statement "our longest lasting" to mean it "was a superior battery" compared to the Copper Top.  *Id. at 139*.  "Superior" in that it would last longer.  *Id. at 140*.  He believes the name "Ultra Power" infers that it is a stronger battery or a longer-lasting battery than the CopperTop.  *Id. at 137-38*.

Plaintiff's usage of the Ultra batteries found them to be no better than his experience with the CopperTop.  "[T]he batteries operate the same with no noticeable difference."  *Id. at 185*.  "I believe there is no measurable difference between them."  *Id. at 47*.  Based upon his everyday usage and general observation (from use in his daughter's toys and household devices) the Ultra Power and Ultra Advanced did not last longer than the CopperTop.  *Id. at 47-48*.  "When I used the products the batteries were in, I generally observed there were no measurable differences between the two types of batteries."  *Id. at 48*.  "I replaced them at the same rate as the CopperTop."  *Id. at 49*.  The same amount of

8

time passed.   *Id. at 51.*   "What I mean is, I couldn't tell any difference in performance," as far as length of time.   *Id. at 60.*   The Ultras did not last any longer than the CopperTop. *Id. at 61.*   "We were just replacing them at the same rate that we replaced the CopperTops." *Id. at 113.*

He believes that defendants deceived him and that he did not receive what he paid for. *Id. at 31.*   He felt cheated after purchasing the Ultra Advanced batteries in 2010 and did not buy them again.   *Id. at 64.*   He did not pursue any action at that time because it was such a small amount of money and "that just seemed like a hassle."   *Id. at 65.*   After purchasing the Ultra Power batteries and believing he had been "cheated twice," he contacted an attorney.   *Id. at 74-75.*

The monetary damage he is claiming is derived from the difference in price that he paid for the Ultra Advanced and the Ultra Power batteries on the particular days that he bought them versus what he would have paid for the same size packs of CopperTop on the same days.   *Id. at 193.*

In sum, Plaintiff succumbed to Defendants' FMOT concept and traded-up to the more expensive Ultra. Furthermore, his usage of Ultras and CopperTops in the same household devices caused him to conclude that, just as Defendants' own internal documents suggest, there is no meaningful difference in performance between Ultra and CopperTop.

In light of the foregoing testimony and documentary evidence, significant proof exists that there is no significant or meaningful difference between the subject batteries to justify Defendants' product claims.   Accordingly, this proof and the uniformity of Defendants' product representations compel certification.

## III. LEGAL STANDARD

### A.  Standard of Review

Consumer protection claims, including the claims at issue here, are ideal for class certification.   *See, e.g., Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (1997); *accord Veal*

*v. Crown Auto Dealerships, Inc.,* 236 F.R.D. 572, 581 (M.D. Fla. 2006) (certifying FDUTPA claim, finding that "[p]laintiff alleges that [d]efendant committed the same or very similar unlawful acts utilizing the same methodology against the entire class").

The plaintiff seeking class certification has the burden of proof. *Rutstein v. Avis Rent-A-Car Sys.,* Inc., 211 F.3d 1228, 1233 (11th Cir. 2000). To obtain certification, the plaintiff must establish the four requirements of Rule 23(a) and at least one of the standards of Rule 23(b) that is appropriate to the relief sought. *Busby v. JRHBW* Realty, *Inc.,* 513 F.3d 1314, 1321 (11th Cir. 2008).

Historically, it was generally not appropriate for an extensive merits based inquiry to be conducted at the class certification stage. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974). Plaintiff acknowledges that there has been a shift away from limited merits analysis toward one where "the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharmaceuticals,* 350 F. 3d 1181, 1188, n.15 (11th Cir. 2003), *Veal,* 236 F.R.D. at 577 ("[B]efore a district court determines the efficacy of a class certification, it may be required to make an informed assessment of the parties' evidence.'") (citation omitted). See also *Comcast v. Behrend,* _ U.S. _, 2013 WL 1222646 *4 (U.S. March 27, 2013) ("Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim'") (citation omitted). In addition, where expert testimony is "critical" to establishing one or more of the elements for class certification, the trial court should evaluate and weigh any conflicting expert testimony on class certification issues. *Sher v. Raytheon Company,* 2011 WL 814379 *3 (11th Cir. March 9, 2011)[11]. Here, however, Plaintiff submits that the Court need not make any substantive, preliminary merits findings based on "battery expert" testimony. Indeed, in light of Plaintiff's testimony regarding his own use

---

[11] *Sher,* as an unpublished opinion of the Eleventh Circuit constitutes persuasive, and not binding, authority. See 11th Cir. R. 36-2 and I.O.P.6.

and comparison of batteries, along with Defendants' internal documents indicating a "weighted" performance difference of no more than 4% between CopperTop and Ultra, and Defendants' recognition that differences of 5% or less are not meaningful for product comparisons, Plaintiff believes he has filed sufficient "merits" evidence to support class certification. In other words, Plaintiff has established "more than a pretty good case," *Valley Drug Co.*, 350 F. 3d at 1187, and thus, expert testimony regarding battery testing is not "critical" to establishing any of the elements of Rule 23. Moreover, the discovery cutoff in this case is October 18, 2013 (doc 39), and Plaintiff is continuing to develop merits evidence regarding Defendants' inability to substantiate their product claims, which may include additional battery testing before trial. Nevertheless, in abundance of caution, Plaintiff is filing in support of this motion the Declaration and Expert Report of Walter A. van Schalkwijk, PhD, filed herewith as *Exhibit 20*.[12]

**B.   The Legal Claim at Issue - FDUTPA.**

Because the Court may assess the merits of Plaintiff's case, Plaintiff begins the legal analysis by addressing the elements of the claim at issue and the supporting evidence.

The FDUTPA provides that the statute should be "construed liberally" to, *inter alia*, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202; *see also Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("[T]he Legislature . . . has mandated that FDUTPA is to be liberally construed."). "[B]y promulgating the FDUTPA the Florida

---

[12] Dr. van Schalkwijk conducted testing of the subject batteries and compared the various performance results to the product claims made by defendants. He determined, *inter alia*, "that the CopperTop, Ultra Advanced and Ultra Power batteries are statistically equivalent in their performance," that the Ultras "are not superior or premium to CopperTop...batteries in terms of performance, power or battery life," and that "Duracell Ultra Power batteries do not last statistically longer than Duracell's other alkaline batteries, nor are they more powerful or a premium product over the standard CopperTop." *Ex. 20 at pp. 3-5*

legislature has clearly intended as a matter of public policy . . . to create a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts." *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. 2nd DCA 1997). "A consumer claim for damages under the FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2nd DCA 2006), *review denied*, 962 So.2d 335 (Fla. 2007).

   1.   **A Deceptive Act or Unfair Practice.**

   Generally, an unfair practice under the FDUTPA is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels*, 782 So. 2d at 499. Likewise, a deceptive act occurs where there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)); *see also Davis v. Powertel, Inc.*, 775 So. 2d 971, 974 (Fla. 1st DCA 2006) (explaining that federal courts have held "a deceptive practice is one that is likely to mislead consumers").

   Here, the deceptive message to consumers appears directly at the point of sale, as intended by Defendants in utilization of their FMOT concept. Indeed, Defendants' marketing research confirms that more than 70% of purchase decisions are made at point of sale. *See Exhibit 21 hereto, Defendants' doc Bates no. 474* ("71% of purchases are made off of displays"). Accordingly, Defendants utilized only in-store ads, on-package claims and representations on the Duracell website to advertise Ultras. There were no television or print ads. *Gruen depo Ex. 3 at 76-77.* Defendants relied primarily on the consistent

message promoted in-store.   Of course, there should be little doubt that each putative class member was exposed, at a minimum, to the deceptive statements common to all Ultra packaging (*e.g.*, the claims that Ultras are premium, more powerful and longest lasting.) That is, if consumers bought a package of Ultras they were exposed to the deceptive claims because the claims appear on the package.   However, even if the subject misrepresentations were not on the product packaging or at the point of sale, Defendants employed additional methods to get their deceptive message out to the consuming public.   For example, Defendants issued press releases, and posted the same misleading statements on their Duracell website.[13]  It is those precise product claims - communicated in one way or another to every purchaser of Ultras in Florida - that Plaintiff alleges is deceptive.  Additional evidence, such as "the circumstances" surrounding a particular representation, omission, or practice—which inevitably includes, for example, other related representations, omissions, or practices of the defendant—is often relevant to determine whether the specific act is likely to mislead an objective reasonable consumer.   *Zlotnick*, 480 F.3d at 1284.

Accordingly, Plaintiff has satisfied the first element for a consumer claim for damages under the FDUTPA, in that he was exposed to Defendants' deceptive message that Ultras are longer lasting, more powerful and premium to CopperTop.   And, Plaintiff or other class members may rely on any evidence concerning that message, including advertisements to which they were not personally exposed.   *Nelson v. Mead Johnson Nutrition Company*, 270 F.R.D. 689, 696 (S.D. Fla. 2010) ("Because Plaintiff can prove a FDUTPA claim without proving that she relied on a particular representation, Defendant's argument that other members of the class viewed different representations than Plaintiff does not render Plaintiff's claim atypical of the class").

---

[13] Defendants admit the subject representations appear on their website, that they issued press releases, and that they "anticipate that persons in Florida may access the website www.duracell.com."   *See Exhibit 22 hereto, Defendants' Responses to First Set of Requests for Admission at nos. 12-17.*

## 2. Causation.

In *Fitzpatrick v. General Mills*, 635 F.3d 1279, 1283 (11th Cir. 2011), a case factually similar to the case at hand,[14] the Eleventh Circuit ruled that the FDUTPA does not require actual reliance by a particular plaintiff, but simply a showing that an objective reasonable consumer would have been deceived under the same circumstances. *See also Adrianne Roggenbuck Trust v. Development Resources Group, LLC*, 2013 WL 335990 *4 (11th Cir. Jan. 30, 2013) (reversing district court's dismissal of FDUTPA claim where district court erroneously held that justifiable reliance is a necessary element of a FDUTPA claim), *Webber v. Esquire Deposition Services, LLC*, 2011 WL 3822001 *1 (11th Cir. Aug. 31, 2011) ("In analyzing whether common questions of fact and law predominate, the district court correctly noted that FDUTPA does not require individualized proof of subjective reliance").

In sum, the Eleventh Circuit has said that the FDUTPA does not require a plaintiff to prove the misrepresentation caused them to do anything; rather, the causation requirement is resolved based on how an objective reasonable person would behave under the circumstances. Thus, to satisfy the FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would deceive an objective reasonable consumer.

Here, Plaintiff testified at deposition that he purchased Ultras based upon the representations stated on the product packages. He also stated, based upon the product representations that he expected a premium battery that would last longer and thus, he paid more. Furthermore, Defendants' entire marketing concept is based upon convincing consumers, through claims on their packaging and "FMOT," to purchase their products. Defendants intend and expect their marketing to influence the objective reasonable consumer.

---

[14] In *Fitzpatrick*, the plaintiff filed suit alleging defendant General Mills violated the FDUTPA by making false and misleading claims that YoPlus yogurt provided digestive health benefits that other yogurt products did not. Plaintiff contended that defendant's claim had allowed it to sell YoPlus for an average of 44% more than Yoplait Original brand yogurt despite the fact that it provided no digestive health benefits that could not be obtained by eating normal yogurt. *Fitzpatrick*, 635 F.3d at 1281.

They expect consumers to purchase batteries because of the purported benefits P&G claimed on the packages.   *Gruen depo. Ex. 3 at 139.*   However, no reasonable consumer would pay more for Ultras if they knew there is no meaningful difference in performance between the Ultras and the lower-priced CopperTop.

### 3. Actual Damages.

Finally, a FDUTPA claim requires the plaintiff to allege actual damages.   Fla. Stat. § 501.211 ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs . . . .").   To succeed, each plaintiff is required to prove that he or she paid more for the product than it was worth.   *Rollins, Inc.,* 951 So.2d at 869 ("the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value . . . .") (citations omitted).

Plaintiff testified he purchased Ultra batteries and paid a premium for them.   *Poertner depo. Ex. 19 at 117-18.*   He claims as damages the differences in price compared to the CopperTop.   *Id. at 193.*   As for the putative class, class-wide damages are calculable and measurable from Defendants' own documents kept in their regular course of business. Defendants regularly receive and maintain revenue, retail pricing and unit sales figures for sales of Ultra batteries in the State of Florida.   *See Exhibit 23 hereto, excerpts from Felix Appia depo. at 41, 45-46, 54-56, 63-65, 85-86, 162-63, 167, 170-71, 174-75, 178,*[15] and *Defendants' Amended/Supplemental Responses to Interrogatory Nos. Two Through Six of the First Set of Interrogatories From Plaintiff, filed herewith as Exhibit 24.*   From such records produced in this case, Plaintiff's economic expert, Charles D. Cowan, PhD, has determined

---

[15] Mr. Appia is employed at P&G as a Business Analyst.   *Appia depo. Ex. 23 at 7-8.*   He testified he can determine the number of units/cells of Duracell batteries sold for any particular year in the State of Florida.   *Id. at 57.*   His method of estimating unit sales and gross retail sales is, in his opinion as an MBA in quantitative analysis, a reasonable and acceptable method.   *Id. at 59.*   He also testified no one knows more about this sales information at Duracell than him.   *Id. at 148.*

the class-wide damages through the date of his Report.   *See Declaration and Expert Report of Charles D. Cowan, PhD, Exhibit 2 hereto.*

## IV.   THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23

### A.   Rule 23(a)'s Requirements Are Satisfied.

All of Rule 23(a)'s prerequisites—numerosity, commonality, typicality, and adequacy of representation—are satisfied in this case.

#### 1.   Plaintiff Has Standing.

"Prior to the certification of a class and before undertaking any analysis under Rule 23, the Court must determine that at least one named representative has Article III standing to raise each claim." *Veal*, 236 F.R.D. at 577.   "Under the principles of standing, 'a plaintiff must allege and show that he personally suffered injury.'   Thus, the Court must determine whether the class representative is 'part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members.'"   *Id.* (citations omitted).

The Plaintiff's deposition testimony regarding his purchases of Ultra batteries establishes his standing.   Plaintiff purchased Ultra batteries within the four year FDUTPA statute of limitations and within the putative class period.   He is part of the class and suffered the same injury as every other class member - he paid more for the Ultras than they were worth. Accordingly, he has standing to proceed as a class representative in this matter.   *See Nelson v. Mead Johnson Nutrition Company*, 270 F.R.D. at 696 ("Because Plaintiff purchased Enfamil within the four year statute of limitations, the Court finds that Plaintiff has standing to assert a FDUTPA or false advertising claim against Defendant.")

#### 2.   The Class is Too Numerous to Join.

Rule 23(a)(1)'s numerosity requirement demands that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   In response to Plaintiff's Requests for Admission, Defendants "concede that more than 100 persons have purchased" Ultra Advanced batteries and "concede more than 100 persons have purchased" Ultra Power

batteries "in the State of Florida since [April 19, 2008]." *See Exhibit 22, Defendants' Responses to First Set of Requests For Admission From Plaintiff*, nos. 1 and 2. Furthermore, in response to plaintiff's discovery requests, Defendants provided evidence that more than ████ units/cells of Duracell Ultra batteries have been sold at retail in Florida. *See Exhibit 24, Defendants' Amended/Supplemental Responses at no. 5.*   In light of Defendants' discovery responses and the number of batteries sold in Florida, it is readily apparent that more than forty Florida consumers purchased Ultras, which is the point at which "joinder of all members is impracticable" and Rule 23(a)(1)'s numerosity requirement is satisfied.   Fed. R. Civ. P. 23(a)(1); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266-67 (11th Cir. 2009) ("Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40.")   "In ascertaining class size, the court 'may rely on common sense assumptions or reasonable inferences based on known facts.'"   *Bush v. Calloway Consolidated Group River City, Inc.*, 2012 WL 1016871 *6 (M.D. Fla. March 26, 2012) (citation omitted).   It is reasonable to assume that more than 40 people purchased the more than ████ Ultra batteries sold at retail in Florida. Accordingly, Plaintiff has provided sufficient factual support for the Court to conclude that Rule 23(a)(1)'s numerosity requirement is met.

### 3.   Common Issues Exist.

Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   It is a "relatively light burden" that "'does not require that all the questions of law and fact raised by the dispute be common' . . .   or   that   the common questions of law or fact 'predominate' over individual issues."   *Vega*, 564 F.3d at 1268.   Rather, it simply requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members."   *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).   Here, the commonality requirement is readily satisfied.   This case involves numerous common legal and factual issues, including:   (1)

whether the Defendants' product claims are true, (2) whether Defendants' conduct would deceive an objective consumer acting reasonably in the circumstances, (3) whether there is any meaningful difference in power and longevity between Ultra and CopperTop, (4) whether Defendants had adequate substantiation for their product claims prior to making them; (5) whether Defendants engaged in false or misleading advertising;  (6) whether Plaintiff  and  class  members  have sustained monetary loss and the proper measure of that loss; and (7) whether Plaintiff and class members are entitled to declaratory and injunctive relief.

Whether Defendants' claims of longevity, power and premium product are "deceptive" is a mixed question of law and fact common to every class member seeking damages under the  FDUTPA.  Rule 23(a) only requires "at least one issue" that will affect "*all or a significant number* of the putative class members." (emphasis added).  Here, every Ultra battery package contained misleading representations about the product, which were specifically included on the packaging with the intent of influencing consumers at the point of sale.  Moreover, the expressed intent of Defendants' marketing scheme was to drive consumers at the point of sale (FMOT, first moment of truth) to "trade-up" from the lower-priced CopperTop to the higher–priced Ultras, in an effort to "sweeten" Defendants' profits.  Accordingly, Defendants cannot evade the unmistakable fact that their objective - and the realization - of their marketing campaign was to present Ultra batteries to Florida consumers as a premium product, with a false promise of enhanced benefits for which the consumer should pay a higher price.  Indeed, the most obvious reason why consumers would pay more for Ultra batteries is that they promise something extra, and that something extra is they are alleged to be more powerful and will last longer than the standard, lower-priced CopperTop.

Moreover, because each plaintiff seeking damages under the FDUTPA is only required to prove that Defendants' conduct would deceive an objective reasonable consumer, and not

that the deceptive act motivated their particular purchase decision, *Fitzpatrick, supra*, the putative class members would rely on the same pool of evidence to prove their claims, which includes, *inter alia*, Defendants' statements concerning Ultras' "premium" benefits of more power and longevity.

Also integral to the determination of whether defendants' statements are deceptive under the FDUTPA is the question of whether Ultras do, in fact, perform as advertised, and the related question of whether Defendants possessed sufficient evidence to confirm their claims about Ultra premium benefits before making them.   The evidence necessary to resolve this question is the same for each plaintiff and therefore common to the class.   The other questions described above as being common to the class revolve around this central, common question, but are also common among all putative class members.

Accordingly, the commonality question is satisfied in this case.

### 4.   Plaintiff Is Typical of the Putative Class.

A class may be certified only if   "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).   The typicality requirement is satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Mohawk Indus., Inc.*, 568 F.3d at 1358 (internal citations omitted).   "The typicality requirement may be satisfied despite substantial factual differences . . .   when there is a strong similarity of legal theories."   *Id.*   Here, Plaintiff's claims are typical of the putative class members' claims because the legal theories and supporting facts relied upon by both Plaintiff and the putative class members are substantially similar, i.e., everyone was sold a higher-priced battery which was actually no better in performance than the lower-priced CopperTop.

Plaintiff seeks recovery under the FDUTPA on the basis that (1) Defendants engaged in a deceptive act by claiming, through various methods, that Ultras are premium batteries with

more power and longevity than the CopperTop, (2) Defendants' deception would deceive an objective reasonable consumer, and (3) he was damaged by paying more for Ultras than they were worth.   Each putative class member hoping to recover under the FDUTPA must prove the same three elements as Plaintiff, with the amount of damages being the only divergent factual characteristic between Plaintiff and the putative class members.   In all other regards, evidence supporting Plaintiff's FDUTPA claim is probative of each putative class member's FDUTPA claim.   Plaintiff testified at deposition that he purchased Ultras because of the product claims and that he paid a premium, i.e., more than the price of the CopperTop. Plaintiff's FDUTPA claim, therefore, is typical of the putative class members' claims because all derive from the same deceptive act - Defendants' deceptive message about Ultra's purported premium benefits—and is based on the same legal theory - violation of the FDUTPA.   See, e.g., *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990) (proving Plaintiff's FDUTPA claim establishes each class member's FUDTPA claim).

### 5.   Plaintiff and His Counsel Are Adequate Representatives.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).

"The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."   *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).   Here, both aspects of the adequacy test are satisfied.   As established through his deposition testimony noted above, Plaintiff does not have any interests antagonistic to the class.   Plaintiff is willing and able to vigorously prosecute this action on behalf of a class, as he has plainly demonstrated thus far.   He testified in deposition as to his knowledge of the purpose of a class action and his obligations to the class.   *Poertner depo. Ex. 19 at 92-94, 230-32.*   He has also reviewed the complaint and its amendments and personally responded to Defendants' discovery requests.   *Id. at 167,*

*170, 172, 196-97.*   Accordingly, Plaintiff has demonstrated sufficient participation in and awareness of the litigation to establish his "adequacy" as class representative.   *See, In re Miva, Inc. Securities Litigation,* 2008 WL 681755 *6 (M.D. Fla. March 12, 2008). Secondly, Plaintiff is represented here by counsel who are well versed in complex commercial and class action litigation.   Plaintiff's counsel are qualified, experienced and generally able to conduct this litigation.   *See Declaration of E. Clayton Lowe, Jr., filed herewith as Exhibit 25,* and *Declaration of Joshua R. Gale , filed herewith as Exhibit 26.*[16]

For the foregoing reasons, the proposed class satisfies each of Rule 23(a)'s requirements and is therefore appropriate for certification under Rule 23(a).

**B.   Rule 23(b)'s Requirements Are Satisfied.**

Plaintiff also satisfies the requirements of Rule 23(b).   A class action may be certified under Rule 23(b)(3) if (1) "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

**1.   Common Issues Predominate.**

Common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole. *Rutstein,* 211 F.3d at 1233; *Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud"). Thus, in deciding whether common questions predominate under Rule 23(b)(3), the focus is generally on whether there are common liability issues that may be resolved on a class-wide basis. *See, e.g., Klay v. Humana,* 382 F.3d 1241, 1269 (11th Cir. 2004). "'[I]t is not necessary that all questions of

---

[16] Rule 23(g)(1) requires the Court to appoint class counsel.   For the reasons stated in the declarations of E. Clayton Lowe, Jr., Ex. 25, and Joshua R. Gale, Ex. 26, Plaintiff requests the Court to appoint Lowe & Grammas, LLP and Wiggins, Childs, Quinn & Pantazis, LLC as Class Counsel.

fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *Busby*, 513 F.3d at 1324.

The predominant issue in this case is whether Ultra batteries provide the stated premium benefits, as advertised.    Whether Ultras do, in fact, provide premium benefits of more power and longevity when compared to CopperTop, as defendants have consistently declared, is critical to every putative class member's theory that defendants violated the FDUTPA.    As discussed above, recovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on Defendants' claims about Ultra's purported benefits, or personally observed every claim relied upon to prove that defendants' conduct was deceptive.    Rather, whether Defendants' representations are "deceptive" under the FDUTPA, and whether that deceptive conduct would deceive an objective reasonable consumer, are common issues for all the putative class members, amenable to class wide proof.    The only individual issue among the putative class members is the amount of damages incurred by each class member. As stated above, the overall damages suffered by the class as a whole is ascertainable from Defendants' retail sales records for the State of Florida.    *See Cowan Declaration and Expert Report*, Ex. 2 hereto and the *Appia depo., Ex. 23 hereto* (demonstrating the existence of a reasonable methodology for generalized proof of class-wide impact and damages). Accordingly, the case is susceptible to awarding damages on a class-wide basis.    *Comcast*, 2013 WL 1222646 at *5.    The heart of this case, however, is not calculating the premium paid for Ultras by particular persons.[17]   To the contrary, the dispute centers on the question of whether Ultras provide the premium benefits, and if Defendants had an adequate basis to disseminate that message to Florida consumers.    It is this issue that would overwhelmingly dominate every plaintiff's case were they forced to litigate independently.

---

[17] In any event, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

In sum, the Rule 23(b)'s predominance requirement is satisfied because individual issues do not predominate.   The FDUTPA claim rises or falls based predominantly on issues for which class wide proof is appropriate; an answer to the paramount question of whether Duracell Ultra batteries perform as advertised will directly and substantially impact every class member's liability case and entitlement to relief under the FDUTPA.   *See* Klay, 382 F.3d at 1255 ("Common issues of fact and law 'predominate' if they have direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.")   *See also Brooks*, 133 F.R.D. at 58 ("Adding additional plaintiffs would not require additional evidence, as it appears that the Plaintiffs would be able to establish their case without any evidence specific to a particular class member based on the nature of the Plaintiff's theory of liability").   After resolution of the class issues, each putative class member "would only need to show that he or she paid a premium for [Ultra batteries] to be entitled to damages under the FDUTPA.   *Fitzpatrick,* 635 F.3d at 128. Individual issues, therefore, will not predominate.

### 2.   A Class Action Is a Superior Method of Adjudication.

Four factors, among others, color whether a class action is a superior method of adjudication: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."   Fed. R. Civ. P. 23(b)(3).   A   class   action   is superior in this case because it is unlikely any plaintiff will litigate this case individually. The amount in controversy for any individual plaintiff (something in the range of less than one dollar per cell/battery purchased) is simply too insignificant to make the claim worth pursuing for any litigant or attorney, particularly given the enormous expense associated with litigating the question whether defendants' claims are supported by testing.   *See Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (claims valued at $100 mean "most of the plaintiffs would have no realistic day in court if a class action were not available"). This predicament also suggests a class action is a superior method of adjudication, particularly given Rule 23(b)(3)(A), because each class member has a negligible financial interest in the litigation, and is better served by having the minimal control offered by a class action than the alternative of no control over a non-existent law suit.

As to Rule 23(b)(3)(B) and (C), the Plaintiff is unaware of other litigation concerning Duracell Ultra batteries and Florida consumers, and asserts that a Florida federal district court is the appropriate forum to adjudicate a case concerning and limited to Florida consumers. As for Rule 23(b)(3)(D) - "the likely difficulties in managing a class action," Plaintiff acknowledges that identifying those consumers who purchased Ultras within the class period and calculating the appropriate compensation for each plaintiff will require some effort. Nevertheless, such difficulties are common in consumer class action litigation and they are not insurmountable, See, e.g., *Declaration of Jeffrey N. Leibell in Support of Plaintiff's Motion for Class Certification, filed herewith as Exhibit 27*.[18] Moreover, this difficulty is not "in itself a sufficient basis to prevent certification of a class." Klay, 382 F.3d at 1272. And, "[w]here a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individualized actions." *Id.* at 1273.

It is extremely unlikely any plaintiff will proceed with this case absent certification. The FDUTPA's stated goal to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," Fla. Stat. § 501.202, will not be advanced without certification. Likewise, as the Supreme Court has

---

[18] Mr. Liebell's Declaration also suggests a means of providing notice in this case as required by Local Rule 4.04(b). Cost of notice will be borne by Plaintiff's counsel. *Lowe Declaration, Ex.* 25 at ¶ 7.

explained, in drafting Rule 23, "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617 (citations omitted). Requiring the putative class members to file thousands of individual lawsuits and/or petition government agencies to investigate or seek refunds would simply circumvent these public policies.

In light of the alternative to class certification, and keeping in mind the purposes for which Rule 23 was promulgated, Plaintiff asserts that the superiority requirement is satisfied, and therefore certification is appropriate under Rule 23(b)(3).

## V.  CONCLUSION

Wherefore, Premises Considered, the Plaintiff requests the Court to enter an order (1) certifying this case as a class action, (2) appointing Plaintiff as class representative, (3) appointing Plaintiff's counsel as class counsel, and (4) granting such further and additional relief the Court may deem appropriate.

Respectfully Submitted,

/s/ E. Clayton Lowe, Jr.
E. Clayton Lowe, Jr.
*PRO HAC VICE ADMISSION*
Peter A. Grammas
*PRO HAC VICE ADMISSION*
**LOWE & GRAMMAS, LLP**
1952 Urban Center Parkway
Vestavia Hills, AL   35242
Telephone: 205-380-2400
Facsimile:   205-380-2408
E-mail:   clowe@lowegrammas.com
          pgrammas@lowegrammas.com

Joshua R. Gale (FL Bar No. 63283)
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**

25

101 N. Woodland Blvd., Ste. 600
DeLand, FL   32720
Telephone: 386-675-6946
Facsimile:   386-675-6947
E-mail:      JGale@WCQP.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 12, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

> Jason A. Perkins, Esq.
> Johanna W. Clark, Esq.
> D. Matthew Allen, Esq.
> CARLTON FIELDS, P.A.
> CNL Center at City Commons
> 450 S. Orange Avenue, Suite 500
> Orlando, FL 32801-3336
> jperkins@carltonfields.com
> jclark@carltonfields.com
> Mallen@carltonfields.com
>
> Darren K. Cottriel, Esq.
> JONES DAY
> 3161 Michelson Drive, Suite 800
> Irvine, California 92612
> dcottriel@jonesday.com
>
> Jason McDonell, Esq.
> JONES DAY
> 555 California Street, 26th Floor
> San Francisco, CA 94104
> jmcdonell@jonesday.com

/s/ Joshua R. Gale
OF COUNSEL