**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOSHUA D. POERTNER,**

**Plaintiff,**

**v.**

**THE GILLETTE COMPANY, ET AL.,**

**Defendants.**

CASE NO. 6:12-CV-00803-GAP-DAB

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DECLARATIONS FILED IN SUPPORT OF DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Jason A. Perkins, Esq. (State Bar No. 610852)
CARLTON FIELDS, P.A.
450 S. Orange Avenue, Suite 500
Orlando, FL 32801
Telephone: 407.849.0300
Facsimile: 407.648.9099
E-mail: jperkins@carltonfields.com

Darren K. Cottriel (*Pro Hac Vice Admission*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: 949.553.7548
Facsimile: 949.553.7539
E-mail: dcottriel@JonesDay.com

Jason McDonell (*Pro Hac Vice Admission*)
Craig E. Stewart (*Pro Hac Vice Admission*)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: 415.626.3939
Facsimile: 415.875.5700
E-mail: jmcdonell@JonesDay.com
E-mail: cestewart@JonesDay.com

*Attorneys for Defendants*
*THE GILLETTE COMPANY and THE PROCTER & GAMBLE COMPANY*

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

A. The Declarations ....................................................................................................2

1. Scott Stewart .................................................................................... 2

2. Rosario Murguia .................................................................................... 2

3. John Wells .................................................................................... 3

4. Michael Zuraw .................................................................................... 4

B. Duracell's Disclosures and Discovery Responses ..............................................4

C. Plaintiff's Depositions ....................................................................................6

ARGUMENT ....................................................................................................7

I. Legal Standard .................................................................................... 7

II. Rule 26(a)(2) is inapplicable because these are fact witnesses that are not providing expert opinions. .................................................................................... 8

A. Scott Stewart ....................................................................................9

B. Rosario Murguia ....................................................................................10

C. John Wells ....................................................................................13

D. Michael Zuraw ....................................................................................15

III. There is no Unfair Prejudice because the Identity of each Witness was Timely Disclosed to Plaintiff .................................................................................... 16

CONCLUSION ....................................................................................18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F3d 1190 (3rd Cir. 1995) ....... 8, 14

*Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) ....... 9, 12, 15

*Beech Aircraft v. Rainey*, 488 US 153 (1988) ....... 8

*FTC v. Washington Data Resources*, No. 8:09-cv-2309-T-23TBM , 2011 WL 2669661 (M.D. Fla. July 7, 2011) ....... *passim*

*Kaw v. Sch. Bd. Of Hillsborough Co.*, Case No. 8:07-cv-2222-T-33TGW, 2009 BL 153542, *1 (M.D. Fla. July 17, 2009) ....... 17

*Patel v. Gayes*, 984 F.2d 214 (7th Cir. 1993) ....... 8

*Phillips v. United States*, 356 F.2d 297 (9th Cir. 1965) ....... 16

*Prieto v. Malgor*, 361 F.3d 1313 (11th Cir. 2004) ....... 7

*Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399 (3d Cir. 1980) ....... 8

*United States v. Soto-Beniquez*, 356 F.3d 1 (1st Cir. 2003) ....... 9

*United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010) ....... 8, 12, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(A)-(C) ....... 7, 8

Fed. R. Civ. P. 26(a)(2)(B) ....... 7, 17

**TABLE OF AUTHORITIES** ***(cont'd.)***

Fed. R. Civ. P. 30(b)(6)........................................................................................................ *passim*

Fed. R. Civ. P. 37(c)(1)........................................................................................................17

Fed. R. Civ. P. Rule 26(e)(A) ..................................................................................................6

Fed. R. Evid. 1006 ..................................................................................................................10

## INTRODUCTION

Plaintiff selectively quotes and mischaracterizes the employee witness testimony the defendants filed in support of their opposition to class certification. Far from offering expert opinion, these employees each convey factual testimony based on the employee's personal knowledge of historical matters that occurred within the regular scope of his or her employment. For example, Scott Stewart merely summarizes records and documents regarding the packaging of Duracell batteries. Rosario Murguia describes Duracell's historical battery handling procedures, battery testing protocols and the testing results obtained in the ordinary course of Duracell's business. John Wells' testimony is limited to facts regarding the setup and operation of Duracell's battery testing laboratory. Finally, Michael Zuraw describes the PowerCheck[1] feature available on certain Duracell products.

None of these witnesses apply any scientific, technical, or other specialized training and/or knowledge to offer expert opinion testimony. Duracell has submitted declarations from retained experts Drs. Quin Horn and Duane Steffey for such purposes, and complied as to each witness with Rule 26's pertinent disclosure and reporting requirements (which is presumably why Plaintiff has not challenged any of Duracell's experts). Because each of the four contested employee witnesses provides factual testimony, as opposed to expert opinions, the disclosure requirements of Rule 26(a)(2) do not apply. Further, because Duracell timely disclosed each contested employee witness pursuant to Rule 26(a)(1) and (e)(A) and provided an expert report that sets forth in even greater detail much of the testimony about

---

[1] PowerCheck is an indication feature that when pressed indicates the remaining amount of power left in the battery. ECF No. 77, ¶ 2.

which Plaintiff complains, the alleged failure to disclose pursuant to Rule 26(a)(2) was harmless and caused no prejudice to support excluding the declarations. Finally, even if the Court finds the inclusion of some opinion testimony that was incidental to a factual recitation of the employees' normal job responsibilities satisfied the strictures of Rule 702, there is no reason to exclude the factual portions of the declarations. Accordingly, Duracell respectfully requests that the Court deny Plaintiff's motion.

## BACKGROUND

### A. The Declarations

#### 1. Scott Stewart

Mr. Stewart is the Section Head of Packaging in the product supply group of the Materials, Process and Delivery Department at Duracell. ECF No. 76, ¶ 1. As of part his job duties, Mr. Stewart is personally familiar with the records and documents regarding packaging of Duracell batteries in the United States. *Id*. Based on that knowledge, Mr. Stewart summarizes historical packaging information regarding Duracell Ultra Advanced and Ultra Power batteries. *See, e.g. id.* at ¶¶ 6-7. Mr. Stewart's summaries include a description of the historical package artwork and advertising claims that were in circulation during the relevant time periods. *See id.* at ¶¶ 17, 28, 34, 43.

#### 2. Rosario Murguia

Ms. Murguia is the Research and Development Section Head for the Duracell Brand. ECF. No. 78, ¶ 2. Her job responsibilities include "the regular testing of Duracell AA- and AAA-size batteries." *Id.* at ¶3. Ms. Murguia provides a factual recitation of Duracell's historical testing procedures and the results of tests Duracell conducted in the routine course

of business. *Id.* at ¶ 12. Ms. Murguia explains that the batteries Duracell tests "have been delivered directly from [its] manufacturing plants and then treated or 'conditioned' for a period of time in special ovens" (*id.* at ¶ 4) and why, in general terms, Duracell conditions its batteries. *Id.* at ¶ 5. Ms. Murguia also identifies the industry standards Duracell applies in performing its product tests. *Id.* ¶¶ 6-8. Finally, her declaration describes and summarizes Duracell's business records as they relate to battery tests that were previously conducted in the regular course of Duracell's business. *Id.* at ¶ 9 and fn. 3, 6, 8. All of this is historical fact testimony based on her firsthand knowledge of matters within the scope of her employment.

**3. <u>John Wells</u>**

Mr. Wells is the Section Head for Quality Assurance at Duracell. ECF No. 79, ¶ 2. He is responsible for overseeing Duracell's testing facilities. *Id.* at ¶ 3. Mr. Wells describes how Duracell tests its batteries "as part of the overall quality assurance function and to support its advertising claims." *Id.* at ¶ 4, *see also id.* at ¶¶5-7. He describes the regular auditing of the Duracell lab to ensure compliance with industry standards, *id.* at ¶ 6, and the steps Duracell routinely takes to comply with industry standards. *See, e.g., id.* at ¶¶ 10-11, 13. Mr. Wells also describes precautions Duracell has taken to increase the accuracy of its product testing. *See id.* at ¶ 12. Finally, Mr. Wells summarizes the industry standards that are applicable to his role in overseeing the various types of battery testing conducted at the Duracell lab. These are historical facts, based on Mr. Wells' firsthand knowledge obtained during the course of his employment regarding Duracell's ordinary course of business and product testing operations.

**4. Michael Zuraw**

Mr. Zuraw is a Senior Scientist at Duracell and was personally involved with the development, design, sourcing and use of PowerCheck. ECF No. 77, ¶¶ 1, 2. Mr. Zuraw describes PowerCheck as a "strip on the battery label that when pressed in two specific spots on the battery indicates the remaining amount of power left in the battery." *Id.* ¶2. He explains the common-sense facts that PowerCheck is helpful in circumstances "such as when the batteries have been in storage or in a device for a long or unknown period of time and the user wants to know how much power remains in the battery" and that PowerCheck is appealing to consumers "who appreciate being able to check and know the amount of power remaining in the battery at any given time." *Id.* at ¶ 2, 4. Here again, this is fact testimony based on firsthand knowledge gained in the course of his job.

**B. Duracell's Disclosures and Discovery Responses**

Plaintiff asserts that Duracell's filing of these declarations "was the first time that Duracell identified these witnesses." Mot. at 2. This is untrue.

Duracell first disclosed Rosario Murguia over one year ago. On August 12, 2012, in response to Plaintiff's Interrogatory No. 7, Duracell identified Ms. Murguia as one of "numerous individuals [] involved in reviewing the testing and/or making decisions for the product claims that were included on the packaging of the Ultra Advanced and Ultra Power batteries." *See* Defs.' Interrogatory Responses, pgs. 13-14, attached as Exhibit A to Declaration of Darren Cottriel (hereafter "Cottriel Decl."). Ms. Murguia was also listed in Duracell's supplemental Rule 26(a)(1) disclosures. *See* Supplemental Disclosures, ¶ 12, attached as Exhibit H to Cottriel Decl. Those disclosures identified Ms. Murguia as "Section

Head of Research and Development for the Duracell brand" and stated she "may have discoverable information regarding the performance testing of the Ultra Advanced and Ultra Power batteries." *Id.* This is precisely the subject of her declaration testimony.

Duracell's supplemental disclosures also identified Scott Stewart and John Wells as individuals who may have discoverable information. Specifically, Duracell disclosed that Mr. Stewart served as "Section Head for Materials, Process, and Delivery for the Duracell brand" and could testify "regarding the artwork and packaging for the Ultra Advanced and Ultra Power batteries. *Id.*, ¶ 14. Similarly, Mr. Wells was identified as a "Section Head in Quality Assurance for the Duracell brand" who "may have discoverable information regarding Duracell's product testing and quality assurance practices, and Duracell's product testing facilities." *Id.*, ¶ 16. These too are the exact subjects of the witnesses' respective declarations.

While Duracell did not disclose the identity of Michael Zuraw in its supplemental initial disclosures, it did identify Jean Methe as having "discoverable information regarding the PowerCheck tester" and that "Ms. Methe also may have discoverable information about other employees who worked within her department or group who may have discoverable information about such matters." *See id.*, ¶12. It was not until shortly before Duracell's opposition to the class certification motion was due that counsel determined that Mr. Zuraw was the appropriate witness to testify regarding PowerCheck. Cottriel Decl. ¶ 13. Had Plaintiff sought to depose Ms. Methe or pursued a Fed. R. Civ. P. 30(b)(6) deposition on this subject, the identity of Mr. Zuraw would likely have been uncovered and he could have been deposed on this subject. *Id.* at ¶¶ 5, 13. Plaintiff's failure to seek the deposition of Ms.

Methe establishes that he had no interest in, or need for, a deposition on this subject matter. Indeed, Plaintiff has had Mr. Zuraw's declaration for over three months and has still expressed no interest in taking his deposition. *Id.* at ¶ 13. Because Mr. Zuraw was thus disclosed "in writing," there was no separate requirement for Duracell to supplement its initial disclosures. *See* Fed. R. Civ. P. Rule 26(e)(A) (duty to supplement only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

In addition to the above fact witnesses who provided testimony based on personal knowledge, Duracell also disclosed, and served expert reports from, Dr. Quinn C. Horn and Dr. Duane L. Steffey. Plaintiff has not argued that Duracell failed to comply with the expert disclosure requirements of Rule 26(a)(2) with regards to these witnesses.

**C. Plaintiff's Depositions**

Of the 18 witnesses Duracell originally disclosed, Plaintiff noticed only three depositions. *See* Exhibits C-E to Cottriel Decl. Plaintiff sought to depose current or former Duracell employees, Felix Appiah, Eric Gruen and Tim McKenney. However, after deposing Messrs. Appiah and Gruen, Plaintiff cancelled the deposition of Mr. McKenney. *See id.* ¶ 9 and Ex. F. Additionally, Plaintiff circulated a draft Fed. R. Civ. P. 30(b)(6) deposition notice listing 24 separate topics of inquiry. *Id.*, Ex. B. Several of these topics included the subject matters covered in the declarations at issue here (thus undercutting Plaintiff's contention that these are matters of expert testimony).[2] *Id*. However, Plaintiff

---

[2] For example, Plaintiff sought to depose Duracell regarding "the creation and implementation of marketing and promotional plans intended to increase sales of Duracell Ultra Advanced and Ultra Power alkaline batteries;"
(continued)

chose not to go forward in taking the deposition on these subject areas. Plaintiff never served a final Rule 30(b)(6) deposition notice requiring Duracell to make a witness available to address these subject areas. *Id.* at ¶ 5. Finally, despite being served with two expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B), Plaintiff declined to depose either of Duracell's experts. *Id.*, Ex. G.

**ARGUMENT**

## I. LEGAL STANDARD

Rule 26 sets forth the disclosure requirements regarding witnesses providing expert opinion testimony. *See* Fed. R. Civ. P. 26(a)(2)(A)-(C); *Prieto v. Malgor*, 361 F.3d 1313, 1317 (11th Cir. 2004) (quoting Fed. R. Civ. P. 26(a)(2)(B)). These disclosure requirements do not apply to non-expert opinion testimony, such as lay opinion testimony pursuant to Rule 701 or to testimony regarding factual matters. *FTC v. Washington Data Resources*, No. 8:09-cv-2309-T-23TBM , 2011 WL 2669661, *3 (M.D. Fla. July 7, 2011) ("…if the witness is not an expert but a lay witness under Rule 701, neither a report nor a disclosure (as contemplated in Rule 26(a)(2)(C)) is required."); *Compare* Fed. R. Civ. P. 26(a)(1) *with* 26(a)(2).

---

"product enhancement and performance goals for the products;" "the testing and results thereof which defendants contend support the performance claims for the products;" "testing standards and guidelines applicable to the products;" "the date sales of Ultra Advanced batteries began in the State of Florida;" and "the dates within which batteries were offered for sale in Florida with the claims that certain batteries are 'our most powerful,' 'last 30% longer in Toys (vs. prior Digital).'" *See* Ex. C, pgs. 2 & 4.

## II. RULE 26(A)(2) IS INAPPLICABLE BECAUSE THESE ARE FACT WITNESSES THAT ARE NOT PROVIDING EXPERT OPINIONS.

In determining whether a witness is providing factual—as opposed to expert—testimony, courts focus "not on the status of the witness but rather on the substance of the testimony." *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993). Expert testimony is testimony based on scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence. Fed. R. Civ. P. 702.[3] It does not include factual testimony from a company employee based on his or her personal knowledge of matters within the scope of his or her employment.[4] *Washington Data Resources*, 2011 WL 2669661, *3. Accordingly, the disclosure requirements of Rule 26(a)(2)(A) and (C) do not apply. *Id.*; *see also* 2010 Advisory Committee Notes ("The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.").

That an employee's job responsibilities may include specialized matters as to which an expert might also testify does not render the employee's testimony "expert testimony" requiring disclosure. To the contrary, a witness testifying regarding complex job duties that are regularly performed is "properly characterized as a fact or lay opinion witness" despite the specialized nature of the job functions. *United States v. Valencia*, 600 F.3d 389, 416 (5th

---

[3] For a discussion of the differences between expert and lay *opinion* testimony, *see Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 404 (3d Cir. 1980) ("The essential difference" between lay and expert opinion testimony "is that a qualified expert may answer hypothetical questions. *See* Fed. R. Evid. 703 and accompanying Notes of Advisory Committee. Thus, an expert witness may not only testify from 'facts or data . . . perceived by' him, but also from what is 'made known to him at or before the hearing.' Fed. R. Evid. 703.").

[4] Generally speaking, facts are those things the witness has "seen, heard, felt, smelled, tasted, or done." *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F3d 1190, 1194 (3rd Cir. 1995). The distinction between fact and opinion testimony "is, at best, one of degree." *Beech Aircraft v. Rainey*, 488 US 153, 168 (1988). These witnesses are testifying about things they have seen, heard, and/or done.

Cir. 2010) (allowing lay witness to testify as to complex issues relating to commodity trading, financial forecasting, and risk modeling because the "testimony related to his former job duties as risk officer"); *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (witness testifying based on specialized knowledge does not require qualification as expert where testimony based on "particularized knowledge that the witness has by virtue of his [] position in the business.") (internal quotations omitted); *see also United States v. Soto-Beniquez*, 356 F.3d 1, 37 (1st Cir. 2003) ("Witnesses who testify only about their perceptions of an event, or about lay opinions arising out of those perceptions, are not experts under Rule 702 regardless of any specialized training or experience they may possess.") (internal citations omitted).

Applying this standard, each of the challenged witnesses here are lay witnesses providing fact testimony. Rather than providing expert opinion testimony to assist the finder of fact in understanding the evidence, these witnesses provide the underlying historical fact evidence itself.

**A. Scott Stewart**

Mr. Stewart's declaration describes what was on the packages of Duracell Ultra batteries during the class period. Plaintiff argues that this is expert testimony because, in summarizing "what percentage of products that Duracell manufactures contained the various claims that [P]laintiff challenges here," Mr. Stewart "rel[ied] on his expertise, knowledge and skill to sift through reams of highly technical data and then summarize this data in a way that would assist the trier of fact to understand it." Mot. at 5. Plaintiff never attempts to identify what specialized knowledge or skill Mr. Stewart employed in "sifting through reams" of

packaging and shipping data. *See Id*. The information provided by Mr. Stewart merely summarizes factual information regarding the amount of Ultra battery packaging shipped by Duracell in North America and the different advertising claims that appeared on the packaging. ECF No. 76, ¶¶ 17, 28, 34, 43. Mr. Stewart's declaration specifically stated that he was basing his factual testimony on his personal knowledge based on his job duties. *Id.* at ¶ 1. As a result, he does not fit within Rule 26(a)(2)'s disclosure requirements. *Washington Data Resources*, 2011 WL 2669661, *3.

Furthermore, the rules of evidence permit a party to present the contents of "voluminous writings, recordings, or photographs which cannot conveniently be examined" in the form of a "chart, summary, or calculation." Fed. R. Evid. 1006. "A witness who presents this type of summary testimony typically qualifies as a lay witness under Rule 701." *Washington Data Resources*, 2011 WL 2669661, *3 (citing *United States v. Hamaker*, 455 F.3d 1316, 1331–32 (11th Cir.2006); *East Coast Brokers & Packers, Inc. v. Seminis Vegetable Seeds, Inc.*, 2008 WL 5093602 (M.D. Fla. 2008) (Lazzara, J.)). Plaintiff has presented no justification for applying the expert disclosure requirements of Rule 26(a)(2).

**B. Rosario Murguia**

Plaintiff argues that Ms. Murguia is providing expert opinions on issues such as battery handling and battery testing. *See* Mot. at 3. Ms. Murguia's testimony is not expert opinion, but a factual recitation based on personal knowledge.

Ms. Murguia testifies to those facts of which she has firsthand and personal knowledge based on her employment duties. ECF No. 78, ¶ 3.[5] Her declaration testimony does nothing more than describe—as a matter of fact—Duracell's historical testing procedures and the results of previous tests Duracell conducted. *See* ECF No. 78, ¶ 12. She did not conduct any tests specifically for purposes of the litigation to support Duracell's defenses. Instead, she describes and summarizes Duracell's business records as they relate to battery tests that were previously conducted in the regular course of Duracell's business. *See id.* at ¶ 9 and fn. 3, 6, 8. The test result data summarized in Ms. Murguia's testimony is therefore factual, because she is only summarizing historical testing, not conducting any scientific inquiry of her own or drawing any conclusions from the testing data. *See Washington Data Resources*, 2011 WL 2669661, *3 (summary testimony not expert opinion requiring Rule 26(a)(2)(C) disclosure because witnesses were only providing "a summary of, and calculations based on, business records" but "were not proffering an opinion on the meaning of the calculations").

While Ms. Murguia identifies the industry standards that Duracell's testing complies with, that too is simply a factual assertion concerning the test standards that Duracell followed. Duracell's disclosed battery expert (Dr. Horn) provided testimony and a report that explained in great detail battery testing considerations and the applicable standards, including the purposes behind them. Thus, Ms. Murguia provides facts concerning her actual historical work for Duracell and Dr. Horn provides his input as a retained expert. *Compare,*

---

[5] Where Ms. Murguia testifies on information and belief, she so states. *See, e.g.*, ECF No. 78, ¶ 5 (concerning the affect of a battery's age, storage conditions and handling on performance).

*e.g.,* ECF No. 78, ¶¶ 4-5 (Muguia testimony regarding age, storage conditions and handling of batteries) *with* ECF No. 80, Ex. A (Expert Report of Dr. Horn) § VIII, pgs. 15, 21-23 (Dr. Horn's testimony re same) and *Compare* ECF No. 78, ¶¶ 6-8 (Murguia's testimony regarding test standards) *with* ECF No. 80, Ex. A, § IV, pgs. 5-7 (Dr. Horn's testimony re same).

By comparison to the testimony at issue in *Valencia*, it is clear that there was no expert disclosure requirement for Ms. Murguia's testimony. In *Valencia*, the witness engaged in a technical and specialized commodity trading and financial forecasting analysis for purposes of trial. Nonetheless, his testimony was found to be lay, not expert. *See Valencia*, 600 F.3d at 416. By contrast, Ms. Murguia only describes her actual job duties and her historical work activities at Duracell. To the extent that any of the Murguia testimony were to be construed as opinion testimony, it is similar to that of a "corporate officer or business owner on matters that relate to their business affairs, such as industry practices." *See Id.* (citing Fed. R. Evid. 701). In accordance with this reasoning, the Second Circuit has explained that witnesses who have specialized knowledge, or carry out job duties because of such specialized knowledge are not considered experts so long as the testimony is based on their specialized job duties. *See Bank of China*, 359 F.3d at 181. The Second Circuit explained that such testimony is not admitted because of any general "experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his [] position in the business." *Id.* (internal quotations omitted). That is the situation here.

**C. <u>John Wells</u>**

Plaintiff asserts that Mr. Wells is providing an expert opinion regarding Duracell's testing facilities and protocols. *See* Mot. at 3-4. Plaintiff is mistaken. Mr. Wells' testimony is factual in nature and provides a description—based on his firsthand knowledge of matters within the regular scope of his employment—of Duracell's testing facilities and how Duracell has designed the tests it conducts in the regular course of its business.

Mr. Wells' declaration testimony is limited to describing the facilities, processes and procedures whereby Duracell tests its batteries "as part of the overall quality assurance function and to support its advertising claims." ECF No. 79, ¶ 4. While Mr. Wells testifies to such things as the fact that Duracell's testing equipment is "contained within an environmentally controlled lab and operated within industry standard specifications," these are factual matters that are part of his job to know. *See id.* at ¶ 5. Similarly, that the lab is regularly audited to ensure compliance with standard specifications is simply factual recitation of the historical auditing that has occurred. *See id.* at ¶ 6, Ex. A. As such, Mr. Wells is stating *facts*; specifically, the fact that auditors have determined the lab and testing equipment to comply with industry standards. *Id.*

Further, Mr. Wells' testimony as to the relevant ANSI standards that Duracell uses simply describe the standards and then states the *facts* that establish Duracell's compliance. For example, in paragraph 10 of his declaration, Mr. Wells states the temperature requirements of the ANSI standard and then describes Duracell's continuous monitoring of temperature and relative humidity "on a 24/7 basis at all times while battery testing is being conducted to ensure compliance with these specifications." *See id.* ¶ 10; *see also id.* ¶ 11.

Duracell's regular monitoring of temperature is a fact based on Mr. Wells' personal knowledge. *Asplundh Mfg.*, 57 F3d at 1194 (facts are those things "seen, heard, felt, smelled, tasted, or done.").

Mr. Well's testimony about the additional measures Duracell employs to ensure the accuracy of its testing is also factual. Mr. Wells states that the "Duracell Life Test System uses 'four-point' measurements," because two-point measurements are "problematic and can introduce error." *Id*. at 12. Mr. Wells does not testify about any testing done for purposes of litigation that compare the merits of the two measurement techniques. Instead, Mr. Wells is only describing how the Duracell tests are formulated and explaining the reasons why Duracell has made the decisions it has made. This testimony falls short of the modeling and forecasting other courts have admitted as non-expert lay testimony, because Mr. Wells only describes his job duties and personal experience at Duracell, but does not engage in any specific testing for purposes of this case. *See Valencia*, 600 F.3d at 416.

By contrast, Dr. Horn's expert report analyzes in detail the issues associated with laboratories that do not meet ANSI standards and the use of a "two-point" vs. "four-point" measurement. *See* ECF No. 80, Ex. 5, §§ V.3-V.5. Comparing Mr. Wells' factual recitations against Dr. Horn's technical application of standards to specific laboratories and testing protocols illustrates how Mr. Well's declaration falls short of the type of Rule 702 analysis that requires expert testimony. *Compare* ECF No. 79, ¶¶ 10-12 *with* ECF No. 80, Ex. 5, §§ V.3-V.5.

Again, to the extent the Court were to construe any of Mr. Wells' declaration testimony as opinion testimony, the *Valencia* analysis should apply. Mr. Wells only

describes his actual job duties and responsibilities as they apply to battery testing and standard industry practices. Accordingly, this testimony is more akin to the Rule 701 testimony of a "corporate officer or business owner on matters that relate to their business affairs, such as industry practices." *See Valencia*, 600 F.3d at 416*; see also Bank of China*, 359 F.3d at 181 (testimony based on specialized role in a business does not render testimony expert opinion).

**D. Michael Zuraw**

Plaintiff has isolated a single clause from a single sentence in paragraph 4 of the Zuraw declaration and argues that it provides an expert opinion. The sentence states simply that it is "generally known in the Duracell Research and Development Group and Consumer Market Knowledge Group that the PowerCheck feature is appealing to consumers who appreciate being able to check and know the amount of power remaining in the battery at any given time." ECF No. 77, ¶ 4. Such a general statement is far removed from the type of specialized opinion or conclusion testimony courts receive from experts. The sentence provides no scientific or specialized information, nor does it apply any scientific or technical methodology to any set of facts. Plaintiff does not even explain how Mr. Zuraw's specialized knowledge as a scientist would provide him with insight as to consumer preferences.

The reason is clear, Mr. Zuraw is testifying as to his personal understanding and perception regarding what is common knowledge in two different business groups within Duracell. Both the scientists in the Research & Development Department, as well as the advertising professionals in the Consumer Market Knowledge Group "generally know[]. . .

that the PowerCheck feature is appealing to consumers." Mr. Zuraw's testimony, therefore, relates "only as to an issue of fact, namely [his] state of mind." *Phillips v. United States*, 356 F.2d 297, 307-08 (9th Cir. 1965). This testimony calls for no more specialized expertise then a statement from a pizza maker that both the cooks in the kitchen and cashiers tending the registers "generally know that pepperoni is appealing to consumers who order pepperoni pizzas."

Again, Duracell has not called upon Mr. Zuraw to give an expert opinion and Mr. Zuraw has not relied on any scientific training or knowledge to draw a conclusion to assist the trier of fact. His factual testimony is based on his perceptions as an employee in the ordinary course of his employment. Rule 26(a)(2) is therefore inapplicable. *Washington Data Resources*, 2011 WL 2669661, *3.

## III. **<u>THERE IS NO UNFAIR PREJUDICE BECAUSE THE IDENTITY OF EACH WITNESS WAS TIMELY DISCLOSED TO PLAINTIFF.</u>**

Despite the significant disclosures Duracell made during discovery, and despite serving a draft Fed. R. Civ. P 30(b)(6) deposition notice, Plaintiff chose to conduct minimal depositions. Indeed, Plaintiff does not assert that, had Duracell made the disclosures Plaintiff now seeks, a deposition for any of the four individuals would have been scheduled.

Nor would any such assertion be credible. Plaintiff's course of conduct throughout discovery belies any contention that Plaintiff would have deposed these witnesses. Plaintiff failed to depose even the experts that were disclosed pursuant to the rules Plaintiff now urges the Court to apply to employee witnesses. *See* Cottriel Decl., ¶¶ 10, 11, Ex. G. After deposing lay witnesses Appiah and Gruen, Plaintiff was content to move forward with class

certification and cancelled the remaining or otherwise outstanding lay and expert witness depositions. *See id.* ¶¶ 9-11, Exs. F, G. Further, Plaintiff abandoned his Rule 30(b)(6) deposition. *See id.*, ¶5. Had Plaintiff moved forward with the Rule 30(b)(6) deposition, he would have been entitled to have Duracell make each of the contested declarants available for deposition. *See* Fed. R. Civ. P. 30(b)(6). Any harm caused by Plaintiff's choice not to depose Duracell's employees is of Plaintiff's own making. There is no unfair prejudice to Plaintiff on these facts. *See Kaw v. Sch. Bd. Of Hillsborough Co.*, Case No. 8:07-cv-2222-T-33TGW, 2009 BL 153542, *1 n.1 (M.D. Fla. July 17, 2009) (Though formal disclosure not timely served, Defendant had knowledge of witnesses' role and "defendant's failure to depose these witnesses, a tactical decision, does not constitute 'unfair prejudice.'").

Additionally, the failure to disclose these witnesses, even if required under Rule 26(a)(2), is harmless, necessitating the denial of Plaintiff's motion. *See* Fed. R. Civ. P. 37(c)(1). Each of the allegedly scientific or technical "opinions" addressed in the Murguia and Wells declarations (*e.g.* battery handling, ANSI standards, testing procedures, design and results, environmental controls, issues related to facilities and testing equipment, *etc*.) were addressed in detail in Dr. Horn's expert report and declaration. That report was served pursuant to Rule 26(a)(2)(B). As such, Plaintiff had a full and fair opportunity to engage in discovery related to these topics. Thus, excusing, for the sake of argument, Plaintiff's failure to depose the witnesses despite the Rule 26(a)(1) fact witness designations, it is clear that a Rule 26(a)(2) designation would not have changed the result given Plaintiff's tactical decision not to depose Dr. Horn. The failure to designate is therefore harmless.

Finally, even if the Court finds that Duracell erred by disclosing the identity of these witnesses pursuant to Rule 26(a)(1) and not Rule 26(a)(2)(C), such failure does not support excluding the declarations in their entirety. Rule 26(a)(2)(C) does not apply to *factual* testimony. 2010 Advisory Committee Notes ("The (a)(2)(C) disclosure obligation *does not include facts* unrelated to the expert opinions the witness will present.") (emphasis added). As has been shown above, the overwhelming majority of this testimony is factual. Indeed, Plaintiff has failed to validly object to the declarations by identifying the specific portions of the declarations he seeks excluded from the record as expert opinion.[6] Accordingly, only those portions that the Court finds to constitute expert testimony, if any, should be excluded.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to exclude the declaration testimony of Rosario Murguia, John Wells, Michael Zuraw and Scott Stewart should be denied. To the extent the Court finds that portions of the declarations contain expert opinion that should have been disclosed pursuant to Rule 26(a)(2)(C), Duracell requests that only those limited portions be excluded and the remaining factual recitations remain in the record.

Dated: August 27, 2013

Respectfully submitted,

/s/ Darren K. Cottriel

Darren K. Cottriel
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: 949.553.7548
Facsimile: 949.553.7539
E-mail: dcottriel@JonesDay.com

SFI-835872v2

[6] Plaintiff's motion should be denied for this reason alone.