## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **JOSHUA D. POERTNER, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE GILLETTE COMPANY, and THE PROCTER & GAMBLE COMPANY,**<br><br>**Defendants.** | **Case No. 6:12-CV-00803-GAP-DAB** |

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This Class Action Settlement Agreement ("Agreement") is made and entered into as of September 13, 2013, among and between Plaintiff Joshua Poertner, in his individual and representative capacity on behalf of the putative Settlement Class, and named Plaintiff Helen Heindel in the California Action identified below (together with Plaintiff Poertner, "Plaintiffs") and Defendants The Gillette Company and The Procter & Gamble Company (collectively referred to as "P&G" or "Defendants") (Defendants and collectively with Plaintiffs, the "Settling Parties"). Each of the Settling Parties acting by and through their respective counsel of record, agree that, subject to Court approval by the United States District Court for the Middle District of Florida pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Action and all matters raised in it and the related California Action are hereby settled, compromised and dismissed, on the merits and with prejudice, on the terms and conditions set forth herein.

## RECITALS

### I.    PROCEDURAL BACKGROUND

1.    WHEREAS, P&G and/or certain of its affiliated companies or brands manufactured, marketed, distributed, advertised and/or sold size AA and AAA Duracell Ultra Advanced and/or Ultra Power batteries beginning in June 2009 ("Ultra Batteries").

2.    WHEREAS, in the United States, Ultra Batteries are and/or were sold by P&G and/or certain of its affiliated companies to retailers or sellers who in turn sold to consumers or end users.

3.    WHEREAS, on April 20, 2012, Joshua Poertner initiated a putative class action lawsuit against P&G in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, Civil Division, entitled *Joshua Poertner v. Duracell, Inc. and Procter & Gamble Company*,  Case No. 2012 11304 CIDL, alleging that P&G engaged in misleading and deceptive advertising and marketing of Ultra Batteries and bringing claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201, et seq., Florida Statutes (2005) (the "Action").

4.    WHEREAS, on May 21, 2012, plaintiff Joshua Poertner filed an amended complaint wherein Duracell, Inc. was removed from the caption and allegations of the complaint and The Gillette Company was substituted in its place.

5.    WHEREAS, on May 25, 2012, P&G removed the Action from the Circuit Court of the Seventh  Judicial Circuit in and for Volusia County, Florida, to the United States District Court for the Middle District of Florida, upon which removal this Action was assigned the federal court case number 6:12 CV-00803-GAP-DAB.

6.    WHEREAS, on April 10, 2012, a similar action was filed in the United States District Court for the Northern District of California in which allegations and claims virtually

identical to the allegations and claims in this Action were made by the Plaintiff James Collins, which case was entitled *James Collins v. Duracell, Inc. and The Procter & Gamble Company*, Case No. CV 12-01778 EDL ("California Action").  The claims in the California Action were brought under California Business & Professions Code §§ 17200, *et seq.* and  §§ 17500, *et seq,* and under the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*

7.     WHEREAS, on May 31, 2012, the plaintiff in the California Action filed a first amended complaint wherein Duracell, Inc. was removed from the caption and allegations of the complaint and The Gillette Company was substituted in its place.

8.     WHEREAS, on June 15, 2012, P&G answered the first amended complaints in this Action and in the California Action, wherein P&G expressly denied the allegations and claims alleged in the first amended complaints in both actions.

9.     WHEREAS, on June 18, 2012, P&G filed a motion to transfer this Action to the United States District Court for the Northern District of California under 28 U.S.C. § 1404, or alternatively to stay this Action pending the resolution of the California Action.

10.     WHEREAS, on July 9, 2012, the Court in this Action denied P&G's motion to transfer or stay this Action.

11.     WHEREAS, on September 24, 2012, Plaintiff Joshua Poertner filed a second amended complaint in this Action making minor revisions and alleging the same claims and causes of action as set forth in the first amended complaint in this Action.

12.     WHEREAS, on October 8, 2012, P&G answered the second amended complaint in this Action, wherein P&G again expressly denied the allegations and claims alleged in the second amended complaint.

13.     WHEREAS, since July 2012, the parties to this Action and the California Action have proceeded with pretrial procedures, fact discovery and expert discovery in accord with the

pretrial scheduling orders entered in both actions. This has included voluminous written discovery and responses, voluminous document productions by P&G comprised of 9,860 documents amounting to more than 240,000 pages, depositions of named plaintiffs in both actions, depositions of P&G employees, and depositions of plaintiffs' and P&G's respective experts.

14.     WHEREAS, on April 13, 2013, Plaintiff Joshua Poertner filed a motion for class certification in this Action, seeking to certify a class comprised of Florida consumers who purchased Ultra Batteries, wherein plaintiff argued that the requirements of Rule 23 are satisfied to allow for class certification in this Action.

15.     WHEREAS, on May 13, 2013, P&G filed its opposition to plaintiff's motion for class certification in this Action, wherein P&G denied and disputed that Plaintiff can satisfy the requirements for class certification under Rule 23 in this Action.

16.     WHEREAS, on May 13, 2013, the plaintiff in the California Action filed a motion for class certification in the California Action, seeking to certify a class of California consumers who purchased size AA Ultra Batteries, wherein plaintiff argued that the requirements of Rule 23 are satisfied to allow for class certification in that action.

17.     WHEREAS, in May 2013, counsel for plaintiffs in this Action and the California Action and counsel for P&G agreed to explore possible ways to resolve the litigation through formal mediation, and agreed to extend the remaining class certification briefing dates and hearing schedules to allow the parties time to complete mediation and settlement negotiations.

18.     WHEREAS, P&G expressly disclaims any liability or any wrongdoing of any kind whatsoever, and stands by its products and advertising.

19.     WHEREAS, from May 2013 through September 10, 2013, the Parties' counsel engaged in lengthy negotiations about the terms of settlement, including participating in two

face-to-face mediations before the court-appointed mediator, Rodney Max, Esq., on August 1

and 12, 2013, numerous telephonic mediation calls, and numerous direct emails and calls

between counsel before and after the mediation sessions and continuing through September 13,

2013, when a settlement in principle was achieved.  The mediations and negotiations resulted in

this Agreement, which Plaintiffs and Class Counsel believe provides significant benefits to the

Settlement Class, is fair, reasonable and adequate, and is in the best interests of Plaintiffs and

Settlement Class Members.

20.     WHEREAS, on September 4, 2013, prior to the Parties' reaching agreement on

the principal terms of settlement, the Court heard oral argument on plaintiff Joshua Poertner's

motion for class certification in this Action, and thereafter took the motion under submission.

21.     WHEREAS, P&G has denied the allegations in this Action and the California

Action, including the allegation that this Action, the California Action or any similar related

action could satisfy the requirements for class certification under Rule 23 or state versions

thereof, and continues to deny any wrongdoing or liability in this Action, the California Action

or any related actions.

22.     WHEREAS, on September 20, 2013, plaintiff James Collins made a motion to

withdraw as named plaintiff in the California Action and for a new named plaintiff, Helen

Heindel, to be substituted in his place.

23.     WHEREAS, on October 7, 2013, the court in the California Action granted the

motion to withdraw and substitute a new named plaintiff, thereby removing plaintiff James

Collins as a named plaintiff and putative class representative in the California Action and adding

plaintiff Helen Heindel as a named plaintiff and putative class representative in the California

Action.

24.    WHEREAS, Plaintiff in the Action and plaintiff in the California Action, by and through their respective counsel, have conducted an extensive investigation, which included discovery of, and an examination of the facts and law relating to P&G's advertising and marketing of Ultra Batteries, and the claims against and the defenses of P&G in both actions.

25.    WHEREAS, this Agreement was reached as a result of extensive arm's length negotiations between counsel for Plaintiffs in this Action and the California Action and counsel for P&G.

26.    WHEREAS, based upon the discovery and investigation to date and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs have agreed to settle the claims asserted in the Action and the California Action pursuant to the provisions of this Agreement.  In so doing, Plaintiffs' counsel have considered numerous risks of continued litigation and other factors, including but not limited to the following:

A.    the expense and length of time necessary to prosecute this Action, the California Action and any other similar, related action through trial;

B.    the uncertainty of outcome at trial and the possibility of an appeal by either side following the trial;

C.    the possibility that a contested class might not be certified, and if certified, the possibility that such certification would be reversed on appeal;

D.    the fact that P&G could file a motion for summary judgment that, if granted, would dispose of all or many of the claims in this Action; and

E.    the benefits provided to Plaintiffs and the Settlement Class Members under the terms of this Agreement.

27.    WHEREAS, weighing the above factors, as well as all other risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, Plaintiffs

and Plaintiffs' Counsel are satisfied that the terms and conditions of this settlement are fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Settlement Class Members.

**NOW, THEREFORE,** without any admission or concession whatsoever on the part of Plaintiffs of the lack of merit of this Action, the California Action or any similar, related actions, or any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by P&G, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs, the Settlement Class, and P&G that the Action, the California Action, and any similar, related action, and all Claims of the Settlement Class be settled, compromised, and dismissed on the merits and with prejudice, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## TERMS AND CONDITIONS OF SETTLEMENT

### DEFINITIONS

28.  As used in this Settlement Agreement and the Exhibits hereto, in addition to any definitions set forth elsewhere in this Agreement, the following terms shall have the meanings set forth below:

A.  **"Action"**

"Action" means the civil action by Plaintiff Joshua Poertner the United States District Court for the Middle District of Florida, entitled *Joshua Poertner v. The Gillette Company and The Procter & Gamble Company*, Civil Action No. 6:12 CV-00803-GAP-DAB.

B.  **"Agreement"**

"Agreement" means this Settlement Agreement, including the Exhibits hereto.

### C.    "California Action"

"California Action" means the civil action filed in the United States District Court for the Northern District of California, entitled *Helen Heindel v. The Gillette Company and The Procter & Gamble Company*, Case No. CV 12-01778 EDL, which action asserts claims and alleges facts substantially similar to those asserted and alleged in the Action.

### D.    "Claim Form"

"Claim Form" means the claim form, in the form of Exhibit 1 hereto that Settlement Class Members must submit to the Claims Administrator in order to obtain the relief provided in this Agreement.

### E.    "Claimant"

"Claimant" means a Settlement Class Member who timely submits a valid Claim Form.

### F.    "Claims Administrator"

"Claims Administrator" means Kurtzman Carson Consultants LLC ("KCC"), approved by the Court to administer and oversee, among other things, the processing, handling, reviewing, and approving of claims made by Claimants; and communicating with Claimants.

### G.    "Claims Period"

"Claims Period" shall be the 120 calendar days (not including the day of the event) following the publication of the Class Notice deadline to be set by the Court.

### H.    "Class Counsel"

"Class Counsel" means the following Interim Class Counsel appointed by the Court in the Action:

> E. Clayton Lowe, Jr.
> THE LOWE LAW FIRM, LLC
> 301 19th Street North
> Suite 525
> Birmingham, Alabama 35203

Dennis Pantazis
Joshua R. Gale
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
101 N. Woodland Blvd.
Suite 600
Deland, Florida 32720

Robert C. Schubert
Miranda P. Kolbe
Noah M. Schubert
SCHUBERT JONKHEER & KOLBE LLP
Three Embarcadero Ctr.
Suite 1650
San Francisco, CA 94111-4018

Peter A. Grammas
The Law Office of Peter A. Grammas
301 19th Street North
Birmingham, Alabama 35203

## I.      "Class Notice"

"Class Notice" means the Court-approved notice of this Agreement that is directed to the

Settlement Class Members.

## J.      "Court"

"Court" means the United States District Court for the Middle District of Florida.

## K.      "Defense Counsel"

"Defense Counsel" means the law firm of Jones Day, with contact information as

follows:

Richard Grabowski
Darren K. Cottriel
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612

L.      **"Effective Date"**

"Effective Date" means thirty-five (35) days after the Court enters an Order and Final Judgment, if no appeal is taken.  If an appeal is taken, the Effective Date shall mean the first date all appellate rights (including proceedings in the United States Supreme Court) with respect to said Order and Final Judgment have expired or been exhausted in such a manner as to affirm the Order and Final Judgment.

M.      **"Fairness Hearing"**

"Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of (a) determining whether the Settlement should be approved as fair, reasonable, adequate and in the best interests of the Class Members; (b) entering the Final Order and Judgment and dismissing the Action with prejudice; and (c) ruling upon an application by Class Counsel for an award of attorneys' fees and expenses.

N.      **"Fee Award"**

"Fee Award" means an award of reasonable fees and expenses sought by application to and approved by the Court that is payable to Class Counsel.

O.      **"Final Approval"**

"Final Approval" means the Court's entry of an Order and Final Judgment following the Fairness Hearing.

P.      **"Notice"**

"Notice" means the Forms of Notice of Pendency and Settlement of Class Action substantially in the form attached hereto as Exhibits 2, 3 and 4.

**Q.     "Notice Date"**

"Notice Date" means the date that the Summary Notice is published in accordance with the plan of notice set forth below.

**R.     "Notice of Missing Information"**

"Notice of Missing Information" means the notice sent by the Claims Administrator to a Settlement Class Member who has submitted a Claim Form with inaccurate, disqualifying, incomplete or missing information that is required for the Settlement Class Member to be considered eligible for the relief provided by this Settlement.

**S.     "Objection"**

"Objection" is the written communication that a Settlement Class Member may file with the Court in order to object to this Agreement as provided for in paragraphs 45-48 below.

**T.     "Objection/Exclusion Deadline"**

"Objection/Exclusion Deadline" means the date to be set by the Court as the deadline for Settlement Class Members to submit Objections and Requests for Exclusion.

**U.     "Order and Final Judgment"**

"Order and Final Judgment" means the final order to be issued by the Court approving the settlement pursuant to the terms and conditions of this Agreement, confirming the certification of the Settlement Class for purposes of this Agreement only, dismissing the Action with prejudice, and releasing all claims of Plaintiffs and the Settlement Class Members.

**V.     "P&G"**

"P&G" means The Procter & Gamble Company and all of its current and former parents, predecessors, successors, assigns, direct and indirect subsidiaries, divisions, companies, brands, departments, and affiliates including, without limitation, The Gillette Company, the Duracell brand and The Procter & Gamble Distributing, LLC, and any and all of their past, present and/or

future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, representatives, advisors, consultants, resellers, brokers, distributors, wholesalers, retailers, subrogees and assigns of any of the foregoing, and representatives of any and all of the foregoing.

### W.    "Person"

"Person" means any individual, corporation, trust, partnership, limited liability company, or other legal entity and their respective successors or assigns.

### X.    "Plaintiffs"

"Plaintiffs" means Plaintiff in this Action, Joshua Poertner, together with the Named Plaintiff in the California Action, Helen Heindel.

### Y.    "Plaintiffs' Counsel"

"Plaintiffs' Counsel" means and includes Class Counsel, together with any other counsel for Plaintiffs in connection with this Action, the California Action or any related similar action.

### Z.    "Preliminary Approval"

"Preliminary Approval" means the Court's entry of an order, substantially in the form attached hereto as Exhibit 5, approving the timing, content and manner of Class Notice, conditionally certifying the Settlement Class for purposes of this Agreement only, and preliminarily approving this Agreement.

### AA.    "Proof of Purchase"

"Proof of Purchase" means either the register receipt issued by the retailer or seller to the purchaser for the purchase of Ultra Batteries, or other Proof of Purchase documentation showing the purchase and purchase price paid for the Ultra Batteries.

**BB.    "Released Claim"**

"Released Claim" means any claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorney's fee or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be brought or asserted by the Releasing Party either in the Action, in the California Action or in any other similar action in any state or federal court in the United States against any of the Released Parties arising out of or relating to the allegations in the complaints filed in the Action, the California Action or any similar state or federal court action or P&G's marketing, advertising, packaging, promotion, sale or distribution of Ultra Batteries in the United States prior to the Effective Date, including but not limited to all claims that were brought or could have been brought in the Action, the California Action or any similar action in any state or federal court in the United States.  The "Released Claim" shall not include any claims or causes of action by the Releasing Party solely for personal injury or physical damage to property.

**CC.    "Released Parties"**

"Released Parties" means P&G as defined above.

**DD.    "Releasing Party"**

"Releasing Party" means the Plaintiffs, each Settlement Class Member, and any Person claiming by or through him/her/it as his/her/its spouse, parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

**EE.    "Retail"**

"Retail" means any physical or on-line retail store or outlet of any kind whatsoever, any physical or on-line club membership wholesaler or warehouse club store (including without limitation Costco, Sam's Club, BJ's or FedMart), any direct purchase arrangement utilizing a third party seller, or any other purchase arrangement or purchase transaction whatsoever whereby batteries are sold to an end user of batteries.

**FF.    "Request for Exclusion"**

"Request for Exclusion" is the written communication that a Settlement Class Member must submit to the Claims Administrator by the Objection/Exclusion Deadline in order to be excluded from the Settlement as provided for in paragraph 51 below.

**GG.    "Settlement"**

"Settlement" means the settlement embodied in this Agreement.

**HH.    "Settlement Class" or "Settlement Class Members"**

"Settlement Class" and/or "Settlement Class Members" means the class as defined in paragraph 31 below.

**II.    "Settlement Website"**

"Settlement Website" means the website to be established by the Claims Administrator for purposes of providing notice, Claim Forms and other information regarding this Agreement to Settlement Class Members and others.

**JJ.    "Ultra Batteries"**

"Ultra Batteries" means size AA and AAA Duracell brand Ultra Advanced and Ultra Power batteries.

## II.   PRELIMINARY APPROVAL

**Motion for Preliminary Approval**

29.     As soon as reasonably practicable after the signing of this Agreement, Plaintiffs'

Counsel shall prepare and file with the Court a Motion for Preliminary Approval of Class

Settlement that seeks entry of the Preliminary Approval order (substantially in the form attached

hereto as Exhibit 6), which, for settlement purposes only would:

A.     Certify a tentative Settlement Class under Federal Rule of Civil Procedure

23(b)(3) composed of the Settlement Class Members;

B.     Preliminarily approve this Agreement;

C.     Approve the proposed Notice Plan and form of Notice substantially similar to that

attached hereto as Exhibits 7, 2, 3 and 4;

D.     Approve the Claims Administrator; and

E.     Appoint Class Counsel.

**Amended Complaint**

30.     For purposes of settlement only, P&G stipulates to allow Plaintiff to file an

amended, consolidated complaint to include the putative nationwide class and alleged claims for

the nationwide class to be released in the Settlement, subject to Court approval of the filing of

the amended complaint in connection with Preliminary Approval and Final Approval of the

Settlement and this Agreement.

**Certification of Settlement Class**

31.     For purposes of settlement only, and upon the express terms and conditions set

forth in this Agreement, Plaintiffs and P&G agree to seek certification of a nationwide

Settlement Class in the Action pursuant to Federal Rule of Civil Procedure 23(b)(3) as follows:

All Persons in the United States (including all U.S. territories and Puerto Rico) who purchased size AA or AAA Duracell brand Ultra Advanced and/or Ultra Power batteries at Retail from or after June 2009, excluding those who purchased the batteries for resale or distribution to others.

Excluded from the Settlement Class are the following: (i) All federal judges to whom this Action, the California Action or my similar related action are assigned and members of their families within the first degree of consanguinity, (ii) all officers and directors of P&G, (iii) all Persons who validly and timely exclude themselves from the Settlement Class using the procedures set forth in paragraph 51, and (iv) all Persons who have settled with, released, or otherwise had claims adjudicated on the merits against P&G that are substantially similar to those alleged in this Action.

**Class Certified for Settlement Purposes Only**

32.     For purposes of settlement only, the Parties and their counsel agree that the Court should make preliminary findings and enter the Preliminary Approval Order (substantially in the form attached at Exhibit 5) granting provisional certification of the Settlement Class subject to final findings and ratification in the Final Order and Judgment, and appointing the Plaintiff in the Action as the representative of the Settlement Class and Class Counsel as counsel for the Settlement Class.  Nothing in this Settlement Agreement shall be construed as an admission by P&G that this Action, the California Action or any similar case is amenable to class certification for trial purposes.  Furthermore, nothing in this Settlement Agreement shall prevent P&G or Plaintiffs from opposing or supporting class certification or seeking de-certification of the conditionally-certified Settlement Class if this Agreement is terminated or if final approval of this Settlement Agreement is not obtained or not upheld on final appeal for any reason.

**Stay of this Action and the California Action**

33.     Following Preliminary Approval, all activity in the Action shall be stayed except to the extent necessary to effectuate this Agreement unless and until this Agreement is terminated pursuant to its terms and conditions.  Further, prior to or upon Preliminary Approval, the Settling Parties shall cooperate to seek a stay of further proceedings or continued prosecution

of the California Action or any other pending similar action until the Effective Date, at which point the stayed action(s) shall be dismissed with prejudice, except that the stay of proceedings shall not prevent the filing of any motions, declarations, and other matters necessary to the approval of this Agreement or as necessary to effectuate the dismissal of said actions.

**Cooperation**

34.     The parties and their counsel agree to cooperate fully with one another and to use their best efforts to effectuate the Settlement, including without limitation, in seeking preliminary and final Court approval of the Agreement and the Settlement embodied herein, carrying out the terms of this Settlement, and promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.  The Settling Parties shall cooperate in good faith and undertake all reasonable actions and steps in order to accomplish the events described in this Agreement.

### III.     NOTICE

**Selection of Claims Administrator**

The parties agree to the selection of the Claims Administrator to administer Notice to the Settlement Class and the claims process.

**Cost of Notice**

35.     The cost, fees and expenses of administration and of disseminating Notice in accord with the Notice Plan, and administration of the claims process, shall be paid by P&G.

**Notice to State and Federal Officials**

36.     In compliance with the attorney general notification provision of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715, within ten (10) days after the motion for Preliminary Approval is filed, P&G, by and through the Claims Administrator, shall provide notice of this proposed Settlement to the Attorney General of the United States, and the attorneys

general of each state or territory in which a Settlement Class Member resides.  The Claims Administrator shall file with the Court a certification stating the date(s) on which the CAFA notices were sent.  The Claims Administrator will provide Defense Counsel and Class Counsel with any substantive responses received in response to any CAFA notice served by it.

**Notice to the Settlement Class Members**

37.     Upon Preliminary Approval of this Agreement, P&G or its designee shall cause the Class Notice to be disseminated as follows:

A.     Publication Notice via Publications.  The Claims Administrator will cause the Summary Notice, substantially in the form attached hereto as Exhibit 2, and as approved by the Court, to be published to the Settlement Class Members on or before the date specified in the Preliminary Approval Order via a half page ad in the following publications:  Better Homes and Gardens (1 placement), Ebony (1 placement), National Geographic (1 placement), People (2 placements), and TV Guide (1 placement).  The Claims Administrator will place one Spanish language ad in People en Espanõl, a publication focused toward the Spanish speaking population.   In addition, the Summary Notice will be placed in four (4) *one eighth* page notices (4.792" x. 4.75") once a week for four (4) consecutive weeks in the *San Francisco Chronicle* (to satisfy the notice requirements of the California Consumer Legal Remedies Act) and once in the *Orlando Sentinel*, and a single *one eight* page notice (4.792" x. 4.75") in *USA Today*.

B.     Publication Notice via Internet Banners:  The Claims Administrator will place (30) days of internet banner notifications, in an amount recommended by the Administrator to further extend the reach of Notice to the Settlement Class.  Each banner notification will contain a link to the Settlement Website.

C.     Website Notice.  The Claims Administrator will establish a Settlement Website for the purposes of disseminating the Class Notice, this Agreement, information relating to filing

a claim, opting out of the Settlement, objecting to the Settlement, deadlines relating to the

Settlement, and pleadings from the Action and California Action, to Settlement Class Members.

The Claims Administrator shall establish the Settlement Website within 45 days of Preliminary

Approval in this Action.

      D.      Link to Settlement Website:  P&G shall place a visible link to the Settlement

Website on the Duracell website (www.duracell.com) for thirty (30) days.

      E.      Verification by the Claims Administrator:  In connection with Court approval of

the Settlement, the Claims Administrator will provide a sworn written verification that the notice

plan was calculated to reach and reached at least 70% of the Settlement Class Members.

**Contents of Notice**

      38.      Notice to the Settlement Class Members:  The Class Notice shall advise

Settlement Class Members of their rights, including the right to opt-out from or object to this

Agreement and the applicable procedures for doing so, shall direct them to the Settlement

Website where an electronic Claim Form shall be located, shall provide instructions for

contacting Class Counsel and the Claims Administrator in order to obtain a paper Claim Form or

other information, and shall contain other information as is agreed by the Settling Parties.  The

Class Notice shall advise Settlement Class Members that objections to the Agreement, and

papers submitted in support of said objections, shall only be considered at the Fairness Hearing if

they are submitted pursuant to the procedures set forth in paragraphs 45-48 below.  The Class

Notice shall advise Settlement Class Members that the time and place of the Fairness Hearing

may change and shall be posted on the Settlement Website.  Subject to the Court's approval, a

copy of the Class Notice, which will be disseminated via the Settlement Website, is attached

hereto as Exhibit 3 (the Long Form Notice).

## IV.  ELIGIBILITY FOR RELIEF

39.     To be eligible to receive relief under this Agreement, Settlement Class Members must submit a claim to the Claims Administrator by *either:* (a) completing, certifying and mailing the Claim Form to the Claims Administrator; or (b) electronically completing, certifying and submitting the Claim Form on the Settlement Website.

40.     The Claim Form must be postmarked or electronically submitted no later than the last day of the Claims Period.  Claim Forms postmarked or electronically submitted after the end of the Claims Period shall be denied by the Claims Administrator and P&G will not be obligated to make any payment on such claims.

41.     The Claim Form shall be sworn under penalty of perjury by the Settlement Class Member, and shall be completed so as to provide all of the required information requested in the Claim Form.  If the Settlement Class Member has Proof of Purchase, the Settlement Class Member shall submit a copy of the Proof of Purchase with the Claim Form.

**Review of Claims**

42.     Validity of submitted claims:  No Claim Form will be deemed valid unless it is signed in hard copy form or electronically by the Settlement Class Member under penalty of perjury, and is postmarked or received electronically on or before the last day of the Claims Period.

43.     The Claims Administrator shall review all submitted Claim Forms within a reasonable time to determine each Settlement Class Member's eligibility for relief, and the amount of such relief, if any.  Copies of submitted Claim Forms shall be provided to Defendants and to Class Counsel upon request.  Settlement Class Members submitting valid Claim Forms shall be entitled to relief as set forth in paragraph 59.

**Incomplete Claim Forms**

44.     Claim Forms that are submitted by mail and that omit information or contain inaccurate or disqualifying information shall be returned via first class mail by the Claims Administrator to the Settlement Class Member's address indicated on the Claim Form as part of a Notice of Missing Information.  Claim Forms that are submitted electronically and that omit information or contain inaccurate or disqualifying information shall be returned via email by the Claims Administrator to the Settlement Class Member's email address indicated on the Claim Form as part of a Notice of Missing Information.  Settlement Class Members whose Claim Forms are returned shall have until the end of the Claims Period, or 15 calendar days from when the Notice of Missing Information was mailed (either by postal mail or email), whichever is later, to reply to the Notice of Missing Information and provide a revised Claim Form that includes all required information.  If a Settlement Class Member fails to respond by the end of the Claims Period or within 15 calendar days from when the Notice of Missing Information was mailed (either by postal mail or email), whichever is later, or the Claims Administrator is unable to return the Claim Form as result of the omitted information, the Claims Administrator will reject such Settlement Class Member's claim, and P&G will not be obligated to make any payment on such claim.

## V.     OBJECTIONS AND OPT-OUTS

**Objections**

45.     Settlement Class Members shall have the right to appear and present objections as to any reason why the terms of this Agreement should not be given Final Approval.  Any Objection must be in writing, filed with the Court, with a copy delivered to Class Counsel and Defense Counsel at the addresses set forth in the Class Notice, no later than the Objection/Exclusion Deadline.  Any Objection filed with the Court after the Objection/Exclusion

Deadline shall be untimely, invalid, and not considered by the Court regardless of the date of postmark or mailing of the objection.

46.     Any Objection regarding or related to the Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Poertner v. The Gillette Company, et al.*" and also shall contain the following information: (a) his or her full name, current address, and telephone number; (b) a statement that the objector has reviewed the Settlement class definition and that he or she is a Settlement Class Member, and has not opted out of the Settlement Class; (c) a clear and concise statement of the Settlement Class Member's objection to the Settlement and this Agreement, including all factual and/or legal bases for the objection, and (d) documents and information sufficient to establish the basis for their standing as a Settlement Class member, (*i.e.*, verification under oath as to the date and location of their purchase of Ultra Batteries or Proof of Purchase reflecting such purchase).

47.     Objections must be filed with the Court, and served upon the Claims Administrator, Class Counsel, and Defense Counsel at the addresses set forth in this Agreement, so that such objection papers are actually received by said counsel by or before the Objections/Exclusions Deadline.

48.     If an objector chooses to appear at the Fairness Hearing, the objector must so state in their Objection, and a notice of intention to appear at the Fairness Hearing must be filed with the Court no later than the Objection/Exclusion Deadline.  If an objector intends to have their own counsel appear for them at the Fairness Hearing, their Notice of Intention to Appear at the Fairness Hearing must also include the name, address and telephone number of the attorney who will appear at the hearing on their behalf.  No Settlement Class Member shall be entitled to be heard at the Fairness Hearing (whether individually or through counsel) or to object to the Settlement, and no written objections or briefs submitted by any Settlement Class Member shall

be received or considered by the Court at the Fairness hearing, unless written Notice of the

Settlement Class Member's intention to appear at the Fairness Hearing and copies of any written

Objection or briefs have been filed with the Court and served on counsel for the Settling Parties

at the addresses set forth in this Agreement on or before the Objections/Exclusions Deadline.

Settlement Class Members who fail to file and serve timely written Objections in the manner

specified above shall be deemed to have waived any objections and shall be foreclosed from

making any objection (whether by objection, appeal or otherwise) to the Settlement and this

Agreement.

### Right to Respond to Objections

49.     Class Counsel and P&G shall have the right to respond to any objection prior to

the Fairness Hearing.  Class Counsel and P&G shall file responses to objections with the Court

concurrently with the filing of reply briefs in support of the Final Approval of the Settlement.

### Opt Outs

50.     The Settling Parties intend to bind and include in the Settlement Class all Persons

in the United States who purchased size AA or AAA Duracell brand Ultra Advanced and/or

Ultra Power batteries at Retail from or after June 2009, other than those who validly opt out and

exclude themselves as Settlement Class Members from this Agreement and other Persons

expressly excluded under this Agreement.

51.     Settlement Class Members who do not wish to participate in this Settlement may

elect to exclude themselves from this Agreement, relinquishing their rights to benefits under this

Agreement.  In all such cases, the Settlement Class Member electing to be excluded from

participating in the Settlement must submit a written Request for Exclusion to the Claims

Administrator stating an intention to be "excluded" from this Settlement.  The Request for

Exclusion must include the following information:  (a) the Settlement Class Member's name,

current address and telephone number; and (b) a statement that the Settlement Class Member has elected to be excluded from the Settlement Class. The written Request for Exclusion must be sent via first class United States mail to the Claims Administrator at the address set forth in the Class Notice and postmarked no later than the Objection/Exclusion Deadline. The Request for Exclusion must be personally signed by the Settlement Class Member. Any Request for Exclusion postmarked after the Objection/Exclusion Deadline shall not be valid.

52.    Exclusion or "opt out" rights may not be exercised by counsel representing or purporting to represent any Person who would otherwise be a Settlement Class Member possessing claims covered by the release provided in this Agreement, or by any Person representing or purporting to represent such Settlement Class Member(s). So-called "mass" "collective" "group" "representative" or "class" opt-outs, or any Request for Exclusion which purports to request exclusion of other or multiple Settlement Class Members, shall not be allowed.

53.    Settlement Class Members who validly exclude themselves from the Settlement shall not be bound by the Agreement and shall not release their claims as provided in this Agreement.

54.    Any Settlement Class Member who has not timely requested exclusion from the Settlement will be bound by the terms of the Agreement upon Final Approval of the Settlement.

55.    Any Settlement Class Member who submits a timely valid Request for Exclusion may not file an Objection to the Settlement and shall be deemed to have waived any rights or benefits under this Agreement.

56.    The Settling Parties agree that they will not solicit, facilitate, or assist in any way, Requests for Exclusions or Objections by putative or actual Settlement Class Members. The Settling Parties recognize that they have an obligation to support the Settlement and seek the

Court's approval of its terms. Class Counsel will abide by all applicable and governing ethical rules, opinions, and obligations precluding their representation of opt outs.

57.     Not later than ten (10) days prior to the Fairness Hearing date, or such other date as may be designated by the Court, the Claims Administrator shall provide to Class Counsel and Defense Counsel a complete exclusion list together with copies of the Requests for Exclusion and related notices.

## VI.     SETTLEMENT RELIEF AND SETTLEMENT CONSIDERATION

### Prospective Remedial / Injunctive Relief

58.     Defendants agree to cease packaging the size AA and AAA Duracell Ultra brand batteries marketed in the United States (i.e., the Ultra Advanced or Ultra Power batteries) in their current chemical formulation with the statement "Our Longest Lasting", "Duracell's Longest Lasting", "Up To 30% Longer In Toys* *vs. Ultra Digital", or words to the effect that the Ultra Batteries in their current chemical formulation last longer than Duracell CopperTop batteries in their current chemical formulation on the packaging or displays for said Ultra Batteries in the United States, and on the Duracell website for North America (www.duracell.com) beginning not later than sixty (60) days after the Effective Date (the "Start Date"). The Settling Parties agree that the pending litigation was a material factor in the aforementioned discontinuance of the use of the statement "Our Longest Lasting" from the packages and store displays of the Ultra Batteries in the United States. The relief provided for in this paragraph does not apply to (a) Ultra Batteries packaged prior to the Start Date and (b) any present or future batteries which have different chemical formulations than the Ultra Batteries that are the subject of this Action.

### Payment to Settlement Class Members Who Submit Valid Claim Forms

59.     Subject to the limitations in this Agreement, for valid claims submitted to the Claims Administrator during the Claims Period by Settlement Class Members (hereafter,

"Claimant(s)"), P&G agrees to compensate the qualifying Claimant as follows:  To each qualifying Claimant who purchased Ultra Batteries (in size AA and/or AAA), P&G will refund three dollars ($3.00) per pack, subject to the limitations described herein.  If the qualifying Claimant provides valid Proof of Purchase, the Claimant shall be entitled to receive a maximum of up to four (4) refunds for the Claimant's household or address (i.e., for a total maximum refund of twelve dollars ($12.00) per household or address).  If the qualifying Claimant does not submit valid Proof of Purchase, the qualifying Claimant shall be entitled to receive a maximum of up to two (2) refunds for the Claimant's household or address (i.e., for a total maximum refund of six dollars ($6.00) per household or address).  For purposes of this paragraph, a household or address shall include the qualifying Claimant, any family member of the qualifying Claimant, or any Person who resides in the same household or is located at or uses the same address as such qualifying Claimant.  All refunds to qualifying Claimants will be made by sending the qualifying Claimant a check in the amount of the refund.  Such refund payment shall be made by P&G or its designee and mailed to the Claimants following, but no later than 20 days after, the Effective Date.

60.     Plaintiffs and Settlement Class Members shall look solely to P&G's payment as set forth above as satisfaction of all claims that are released hereunder.  Plaintiffs and Settlement Class Members acknowledge that as of the Effective Date, the releases given herein shall become effective immediately by operation of the Order and Final Judgment and shall be permanent, absolute and unconditional.

**Additional In-Kind Payment**

61.     P&G will make an in-kind payment of six million dollars ($6,000,000.00), calculated at retail value, of Duracell products over a five (5) year period.  The products will be provided to charitable organizations, including but not limited to first responder charitable

organizations, the Toys for Tots charity, The American Red Cross or 501(c)(3) organizations that regularly use consumer batteries or related products.  The in-kind payment  is separate and distinct from, and shall not include, any donation of products which P&G has already donated or P&G is presently committed to donate as of September 13, 2013 (i.e., the date of this Settlement Agreement, as stated in the first paragraph of page one, above).

## VII.   ADMINISTRATION OF SETTLEMENT

62.     The Claims Administrator agrees to be subject to the direction and authority of the Court with respect to the administration of the Settlement and the payment of refunds for Accepted Claims pursuant to the terms of this Agreement.  Defendants shall have no responsibility or liability for the administration of the Settlement and shall have no liability, beyond the payment of refunds for Accepted Claims, to the Settlement Class Members in connection with, as a result of, or arising out of such administration.  In no event shall Plaintiffs, P&G, Class Counsel, Defense Counsel or the Released Parties have any liability for claims of wrongful or negligent conduct on the part of the Claims Administrator or its agents.

## VIII.  ATTORNEYS' FEES

63.     Class Counsel shall be entitled to a single, reasonable fee and expense award, subject to Court approval, up to a maximum of five million six hundred eighty thousand dollars ($5,680,000.00).  P&G will not oppose Class Counsels' request for attorneys' fees, costs and all other expenses up to said amount, nor will P&G contest the reasonableness of the amount. Class Counsel will not seek in excess of $5,680,000.00 for attorneys' fees, costs and all other expenses, and P&G shall not be obligated to pay any sum in excess of $5,680,000.00.  Class Counsel shall make a single, joint application for award of attorneys' fees, costs and all other expenses.  The application for award of attorneys' fees, costs and all other expenses shall be filed with the Court concurrently with the Final Approval motion papers.  Allocation and sharing of the single fee,

cost and expense award as between Class Counsel in this Action and the California Action shall

be the responsibility and obligation of Class Counsel; P&G shall have no obligation or

involvement in deciding or making the allocation and sharing of the single fee, cost and expense

award as between Class Counsel. The Parties agree that the amount awarded by the Court, and

not to exceed $5,680,000.00, represents P&G's all-inclusive full payment for any and all

attorneys' fees, costs and other expenses in relation to the claims covered by the Settlement,

Settlement Agreement and release provided for herein. Any fees, costs and expenses incurred by

Class Counsel in responding to objections to the Settlement or any appeal from any Final

Approval and Judgment of, including any fees, costs or expenses incurred to settle any claims by

objectors, shall be the sole responsibility of Class Counsel. Plaintiffs and Class Counsel shall

not seek to recover any such fees, costs or expenses from P&G.

64.     Class Counsel's fees, costs and expenses, as provided hereinabove, shall be paid

by P&G within fifteen (15) business days after the Effective Date provided that Class Counsel

has provided P&G with W9 forms from Class Counsel by that time. Failure of Class Counsel to

submit W9 forms within fifteen (15) business days after the Effective Date will result in delay of

payment until a reasonable time after such forms are received. Class Counsel shall provide wire

instructions to P&G or its counsel for the payment of the fees, costs and expenses to Class

Counsel not later than ten (10) days after filing the motion for final approval. Otherwise, if Class

Counsel fails to provide wire instructions, P&G is authorized to issue a check jointly payable to

Class Counsel, and each of them, which check shall be held by Defense Counsel pending receipt

of joint instructions from Class Counsel as to where to send the check, or a order of the Court

directing Defense Counsel as to where to send the check.

65.     The Court's award of any fees, costs and expenses to Class Counsel shall be

separate from its determination of whether to approve the Settlement and this Agreement. If the

Court declines to approve the Settlement and this Agreement, no award of fees, costs and

expenses shall be paid. The Parties have negotiated and reached agreement on the Class

Counsel's fees, costs and expenses only after reaching agreement on all other material terms of

Settlement and this Agreement set forth herein.

## IX.   CLASS REPRESENTATIVE PAYMENT

66.   Class Counsel shall petition the Court for, and P&G shall not oppose, a payment

in the fixed amount of one thousand five hundred dollars ($1,500.00) to Plaintiff Joshua Poertner

("Named Plaintiff Payment"). The Court's award of any Named Plaintiff Payment shall be

separate from its determination of whether to approve the settlement as set forth in this

Agreement. In the event the Court approves the Settlement, but declines to award a Named

Plaintiff Payment in the amount requested by Class Counsel, the Settlement will nevertheless be

binding on the Settling Parties. If the Court declines to approve the Settlement, no Named

Plaintiff Payment shall be paid. Any Named Plaintiff Payment approved by the Court shall be

paid by P&G via written check delivered to Plaintiff Joshua Poertner's counsel within fifteen

(15) business days after the Effective Date, provided that Class Counsel has provided P&G with

a W9 form for Plaintiff Joshua Poertner before that time. Failure of Class Counsel to submit the

W9 form within fifteen (15) business days after the Effective Date will result in delay of

payment until a reasonable time after such form is received. Payment by P&G of the Named

Plaintiff Payment is separate from, and in addition to, the other relief afforded to the Settlement

Class Members in this Agreement.

## X.   FINAL APPROVAL

### Motion for Final Approval

67.   On or before thirty (30) days prior to the Fairness Hearing, or such other date as

may be designated by the Court, Class Counsel shall petition the Court for a final order that: (1)

confirms the certification of the Settlement Class as defined above; (2) dismisses this Action, with prejudice, upon the Effective Date; (3) decrees that neither the Final Approval nor this Agreement constitutes an admission of liability, fault or wrongdoing on the part of P&G; (4) releases the Released Parties from the Released Claims of the Releasing Parties; (5) finds that this Agreement is entered into in good faith, is reasonable, fair and adequate, and is in the best interest of the Settlement Class Members; and (6) making such orders as are necessary and appropriate to effectuate the terms and conditions of this Agreement.

**Fairness Hearing**

68.     The Court shall schedule and conduct a Fairness Hearing so that the Court may review any Objections to this Agreement, consider the fairness, reasonableness and adequacy of this Agreement and consider the Settling Parties' petition for Final Approval and Class Counsel's Application for a Fee Award.  The date of the Fairness Hearing shall be posted on the Settlement Website in advance of the hearing.  If the date of the Fairness Hearing is subsequently modified by the Court, no further notice is required to be published to Settlement Class Members, except that, the Parties will notify any Settlement Class Member who has filed a timely Objection in writing of any change to the date of the Fairness Hearing.

**Dismissal of This Action**

69.     The Final Approval shall provide that this Action shall be dismissed, with prejudice, immediately upon entry of the Final Approval Order.

**Dismissal of the California Action and Related Similar Actions**

70.     Following Final Approval and no later than five (5) business days after the Effective Date, the California Action shall be dismissed with prejudice.  Plaintiffs' Counsel shall cooperate with and assist P&G in seeking the dismissal, with prejudice, of the California action and any similar related actions in state or federal court.

## XI.   PUBLIC STATEMENTS

71.      Plaintiffs, Defendants, Plaintiffs' Counsel, and/or Defendants' counsel shall not hold any press conference or issue any press release or comment regarding the settlement reflected in this Settlement Agreement except through the Notice process approved by the Court. The Settling Parties may make such disclosures as may be required to the Court, on websites as specified herein, and the Settling Parties may make such disclosures as may be required by law or to submit to a government agency, or as may be necessary for financial purposes (including without limitation, tax and audit purposes), or to respond to inquiries by Settlement Class Members relating to the Settlement reflected in this Agreement.  To the extent any Party or their counsel desire to make any other statement regarding the Settlement reflected in this Agreement, such statement must be mutually agreed upon in writing by the parties and their counsel prior to any such statement being made.

## XII.   TERMINATION

**Right to Terminate**

72.      This Agreement is contingent on the final certification of the Settlement Class and the Final Approval and Judgment as defined above.  Any Party may terminate this Agreement in its entirety at any time and without further obligation if:  (1) any court rejects or denies approval of any term or condition of this Agreement; (2) any court makes any order purporting to alter, amend or modify any term or condition of this Agreement, including without limitation any alteration, amendment or modification of any term or condition of this Agreement that potentially increases in any way P&G's financial responsibility or financial obligation in connection with the Settlement; (3) any court fails to certify the Settlement Class as defined

above for purposes of settlement only; or (5) more than 1000 Settlement Class Members submit timely and valid Requests for Exclusion.

**Notice of Termination**

73.     In the event any Party exercises its right to terminate this Agreement, it shall promptly notify the Court and all counsel of record in writing and cause the Claims Administrator to notify the Settlement Class Members by posting information on the Settlement Website.

**Effect of Termination**

74.     In the event any Party exercises its right to terminate this Agreement, this Agreement shall be considered null and void and have no force or effect, no Person or entity shall be bound by any of its terms or conditions, and the rights of all Persons or entities with respect to the claims and defenses asserted in this Action shall be restored to the positions existing immediately prior to execution of this Agreement.

75.     Except as otherwise provided herein, in the event the Agreement is terminated in accordance herewith, vacated, or fails to become effective for any reason, then the Settling Parties to this Agreement shall be deemed to have reverted to their respective status in the Action as of the date of this Agreement and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

**Binding Effect**

76.     Upon Final Approval, each Settlement Class Member who has not validly and timely submitted a Request for Exclusion and each of the Plaintiffs shall be deemed to release and forever discharge any and all Released Parties of and from liability of any kind or type whatsoever for any and all Released Claims, and shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim(s) against any Released Party in any

court or forum.  This Agreement shall be the sole and exclusive remedy available to the

Releasing Parties for any and all Released Claims against the Released Parties.  No Released

Party shall be subject to liability or expense of any kind to any Releasing Party with respect to

any Released Claim.

77.     The Settling Parties agree that they may hereafter discover facts in addition to or

different from those they believe to be true with respect to the subject matter of this Agreement.

The Settling Parties agree that, notwithstanding the discovery of any such additional or different

facts that, if known, would materially affect its decision to enter into this Agreement, the releases

herein given shall be and remain in effect as a full, final and complete general release of the

Released Claims and the Settling Parties shall not be entitled to modify or set aside this

Agreement, either in whole or in part, by reason thereof.  The Settling Parties hereby expressly

waive and relinquish, to the fullest extent permitted by law, the rights and benefits of any statute

which might otherwise limit or render unenforceable a release contained in this Agreement,

including but not limited to Section 1542 of the California Civil Code, which provides as

follows:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

or any other like provision or principal of law of any jurisdiction in connection with the Released

Claims.

## XIII.   SETTLEMENT PURPOSES ONLY

**No Admission of Liability**

78.     The Settling Parties acknowledge that P&G contests the claims asserted in this

Action, in the California Action, and in any similar related actions, and denies the material

allegations made by Plaintiffs.  By agreeing to settle this Action and the California Action, P&G does not acknowledge, admit or concede the validity of any Released Claim or any wrongdoing, fault, violation of law or any liability of any kind whatsoever.  This Agreement, whether or not consummated, and any communications exchanged or actions taken pursuant to or during the negotiation of this Agreement are for settlement purposes only.  Neither the fact of nor the contents of this Agreement or its exhibits, nor any communications exchanged nor actions taken pursuant to or during the negotiation of this Agreement, shall constitute, be construed as, or be admissible in evidence as an admission of the validity of any claim asserted or fact alleged in this Action, the California Action or any similar related actions or of any wrongdoing, fault, violation of law or liability of any kind on the part of P&G.

**Non-Admissibility**

79.     This Agreement and all negotiations, correspondence and communications leading up to its execution shall be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles.  Neither this Agreement, nor any terms, conditions, contents or provisions hereof or exhibits hereto, nor any negotiations, correspondence or communications leading up to the execution of this Agreement, shall constitute a precedent or be admissible for any purpose in any proceeding; provided, however, that this Agreement shall be admissible in any proceeding related to the approval of this Agreement, to enforce any of its terms and conditions, to support or defend this Agreement in an appeal from an order granting or denying Final Approval, or to enforce or assert a claim or defense of *res judicata, collateral estoppel*, claim preclusion, issue preclusion, settlement, release, merger and bar, or any similar claim or defense against the Plaintiffs, any Settlement Class Member, or any third party.

**Reservation of Rights**

80.    This Agreement is made without prejudice to the rights of P&G to oppose class certification in this Action, in the California Action or in any related similar actions should the Effective Date not occur.

## XIV.   WARRANTIES AND REPRESENTATIONS

**Authority to Execute Settlement Agreement**

81.    The Settling Parties and their counsel warrant and represent that the Persons executing this Agreement have the full authority and are duly authorized to execute this Agreement on behalf of the Party on whose behalf he/she so signs, and that he/she has obtained all consents and approvals necessary or any authority that would be required as a condition for validity of this Agreement.  Class Counsel represent and warrant that they have full authority to execute this Agreement on behalf of Plaintiffs Joshua Poertner and Helen Heindel, and on behalf of the entire Settlement Class.  Each signatory separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and shall survive execution of this Agreement.

**Authority of Class Counsel**

82.    Class Counsel, on behalf of the Settlement class, represent and warrant that they are expressly authorized to take all appropriate action required or permitted to be taken by the Plaintiffs or Settlement Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into this Agreement, as well as any modifications or amendments to this Agreement on behalf of the Settlement Class that Class counsel deem appropriate.

**Assignment of Claims**

83.     The Settling Parties warrant and represent that no claim or any portion of any claim referenced or released in this Agreement has been sold, assigned, conveyed, or otherwise transferred to any other entity or Person.

**Reading and Understanding**

84.     The Settling Parties warrant and represent that they have carefully read this Agreement, have consulted their attorneys regarding this Agreement and the advisability of entering into this Agreement, and fully understand and voluntarily accept the terms and conditions of this Agreement.

**Reliance on Own Judgment**

85.     The Settling Parties warrant and represent that they have relied upon their own judgment and that of their legal counsel regarding the sufficient and agreed upon consideration for this Agreement and that no statement or representation by any of the other Settling Parties or their agents, employees, officers, directors or legal representatives influenced or induced them to execute this Agreement.

## XV.     INTERPRETATION AND ENFORCEMENT

**Retained Jurisdiction**

86.     The Court shall retain jurisdiction with respect to (a) the administration and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement; (b) the administration and enforcement of the Final Approval, Order and Judgment; (c) the enforcement of all releases executed in connection with the Settlement; (d) any disputes or controversies arising with respect to the interpretation, enforcement or

implementation of this Agreement; and (e) any and all other matters related to the Settlement and this Agreement.

**Governing Law**

87.     This Agreement shall be construed under and governed by the laws of the State of Florida, applied without giving effect to any laws or principles of choice of law or conflict of law.

**Entire Agreement**

88.     This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Settling Parties with regard to the subject of this Agreement and shall supersede any previous agreements, representations, communications and understandings among the Settling Parties with respect to the subject matter of this Agreement.

**Joint Preparation**

89.     This Agreement shall be construed as if the Settling Parties jointly prepared it and any uncertainty or ambiguity shall not be interpreted against any of the Settling Parties.

**Recitals**

90.     The Recitals are a material part of this Agreement and are incorporated herein in their entirety.

**Captions**

91.     The captions used in this Agreement are for convenience and identification purposes only and are not part of this Agreement.

**Modification**

92.     This Agreement may not be changed, modified, or amended except in writing signed by all Settling Parties and approved by the Court.  Notwithstanding the foregoing, however, the claims process set forth above may be modified by mutual agreement of the

Settling Parties without Court approval and the Settling Parties may agree to reasonable extensions of time in which to accomplish the tasks required by the terms and conditions of this Agreement, which shall not be unreasonably withheld.

**Waiver**

93.    The waiver of any term or condition or breach of this Agreement shall not be deemed to be a waiver of any other term or condition or breach of this Agreement and shall not be deemed to be a continuing waiver.

**Binding Effect**

94.    This Agreement shall be binding upon and inure to the benefit of the Settling Parties and each of their respective heirs, successors, assigns, executors and legal representatives.

## XVI.   MISCELLANEOUS TERMS AND CONDITIONS

**Best Efforts**

95.    The Settling Parties and their counsel agree to cooperate fully with one another and to use their best efforts to effectuate the settlement, including without limitation in seeking Preliminary Approval and Final Approval of the Agreement and Settlement embodied herein, carrying out the terms of this Agreement and Settlement, and promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain Final Approval by the Court of the Settlement and to carry out the terms of the Settlement.

**Litigation Brought in Good Faith**

96.    The Settling Parties to this Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Settlement Class Members against the Released Parties with respect to the Settled Claims.  Accordingly, Class Counsel and Defendants agree not to assert in any forum that the litigation was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.  The Settling

Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure or of 28 U.S.C. § 1927 relating to the prosecution, defense, or settlement of the Action.

97.     The Settling Parties agree that the amount paid, the prospective injunctive relief, in kind payment, and the other terms of the Agreement were negotiated at arm's-length in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with experienced legal counsel.

**No Liability**

98.     The Settling Parties agree that P&G is in no way liable or responsible for any taxes Class Counsel, the Plaintiffs, Settlement Class Members or others may be required or obligated to pay as a result of the receipt of settlement benefits or payments relating to the Settlement or under this Agreement.

99.     No Settling Class Member or other Person shall have any claim against the Plaintiffs, Class Counsel, P&G, the Released Parties, the Claims Administrator, or any designated agent thereof, based on any eligibility determinations, distributions or payments made in accordance with the Settlement, or based on the payments made or other relief provided and made substantially in accordance with this Agreement or with further orders of the Court or any appellate court.

**Notices**

100.     Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement, or any document to be given by any Settling Party to any other Settling Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, to Class Counsel at the following addresses:

THE LOWE LAW FIRM, LLC
c/o E. Clayton Lowe
301 19th Street North, Suite 525
Birmingham, Alabama 35203

WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
Dennis Pantazis
Joshua R. Gale
101 N. Woodland Blvd., Suite 600
Deland, Florida 32720

SCHUBERT JONKHEER & KOLBE LLP
Robert C. Schubert
Miranda P. Kolbe
Noah M. Schubert
Three Embarcadero Ctr., Suite 1650
San Francisco, CA 94111-4018

THE LAW OFFICE OF PETER A. GRAMMAS
Peter A. Grammas
301 19th Street North
Birmingham, Alabama 35203

and to P&G's counsel at the following address:

JONES DAY
c/o Darren K. Cottriel
3161 Michelson Drive, Suite 800
Irvine, CA 92612

**Execution**

101.   This Agreement may be executed by facsimile or email signatures in multiple counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same valid and binding agreement.

**IN WITNESS WHEREOF**, each of the Settling Parties hereto has caused this

Agreement to be executed on its behalf by its duly authorized counsel of record or representative.

**For Plaintiffs and the Settlement Class:**

By: _E. Clayton Lowe, Jr._
   E. Clayton Lowe, Jr.
   THE LOWE LAW FIRM, LLC
   301 19th Street North, Suite 525
   Birmingham, Alabama 35203

   *Attorneys for Plaintiffs and the Settlement Class*

By: _____
   Dennis Pantazis
   Joshua R. Gale
   WIGGINS, CHILDS, QUINN &
   PANTAZIS, LLC
   101 N. Woodland Blvd. Suite 600
   Deland, Florida 32720

   *Attorneys for Plaintiffs and the Settlement Class*

By: _____
   Robert C. Schubert
   Miranda P. Kolbe
   Noah M. Schubert
   SCHUBERT JONKHEER &
   KOLBE LLP
   Three Embarcadero Ctr., Suite 1650
   San Francisco, CA 94111-4018

   *Attorneys for Plaintiffs and the Settlement Class*

By: _____
   Peter A. Grammas
   THE LAW OFFICE OF PETER A.
   GRAMMAS
   301 19th Street North
   Birmingham, Alabama 35203

   *Attorneys for Plaintiffs and  the Settlement Class*

**For The Procter & Gamble Company:**

By: _____
   Sharon E. Abrams
   Vice President & General Counsel
   North America & Global Corporate Services
   The Procter & Gamble Company
   One Procter & Gamble Plaza
   Cincinnati, Ohio 45202

**For The Gillette Company:**

By: _____
   Volker Kuhn
   General Manager, Duracell North America
   Vice President
   The Gillette Company
   14 Research Drive
   Bethel, CT 06801

**IN WITNESS WHEREOF**, each of the Settling Parties hereto has caused this

Agreement to be executed on its behalf by its duly authorized counsel of record or representative.

**For Plaintiffs and the Settlement Class:**

By: _____
    E. Clayton Lowe, Jr.
    THE LOWE LAW FIRM, LLC
    301 19th Street North, Suite 525
    Birmingham, Alabama 35203

    *Attorneys for Plaintiffs and the Settlement
    Class*

By: _____
    Dennis Pantazis
    Joshua R. Gale
    WIGGINS, CHILDS, QUINN &
    PANTAZIS, LLC
    101 N. Woodland Blvd. Suite 600
    Deland, Florida 32720

    *Attorneys for Plaintiffs and the Settlement
    Class*

By: _____
    Robert C. Schubert
    Miranda P. Kolbe
    Noah M. Schubert
    SCHUBERT JONKHEER &
    KOLBE LLP
    Three Embarcadero Ctr., Suite 1650
    San Francisco, CA 94111-4018

    *Attorneys for Plaintiffs and the Settlement
    Class*

By: _____
    Peter A. Grammas
    THE LAW OFFICE OF PETER A.
    GRAMMAS
    301 19th Street North
    Birmingham, Alabama 35203

    *Attorneys for Plaintiffs and  the Settlement
    Class*

**For The Procter & Gamble Company:**

By: _____
    Sharon E. Abrams
    Vice President & General Counsel
    North America & Global Corporate Services
    The Procter & Gamble Company
    One Procter & Gamble Plaza
    Cincinnati, Ohio 45202

**For The Gillette Company:**

By: _____
    Volker Kuhn
    General Manager, Duracell North America
    Vice President
    The Gillette Company
    14 Research Drive
    Bethel, CT 06801

41

IN WITNESS WHEREOF, each of the Settling Parties hereto has caused this

Agreement to be executed on its behalf by its duly authorized counsel of record or representative.

**For Plaintiffs and the Settlement Class:**

By:_____
    E. Clayton Lowe, Jr.
    THE LOWE LAW FIRM, LLC
    301 19th Street North, Suite 525
    Birmingham, Alabama 35203

       *Attorneys for Plaintiffs and the Settlement*
       *Class*

By:_____
    Dennis Pantazis
    Joshua R. Gale
    WIGGINS, CHILDS, QUINN &
    PANTAZIS, LLC
    101 N. Woodland Blvd. Suite 600
    Deland, Florida 32720

       *Attorneys for Plaintiffs and the Settlement*
       *Class*

By: _____
    Robert C. Schubert
    Miranda P. Kolbe
    Noah M. Schubert
    SCHUBERT JONKHEER &
    KOLBE LLP
    Three Embarcadero Ctr., Suite 1650
    San Francisco, CA 94111-4018

       *Attorneys for Plaintiffs and the Settlement*
       *Class*

By: _____
    Peter A. Grammas
    THE LAW OFFICE OF PETER A.
    GRAMMAS
    301 19th Street North
    Birmingham, Alabama 35203

       *Attorneys for Plaintiffs and  the Settlement*
       *Class*

**For The Procter & Gamble Company:**

By:_____
    Sharon E. Abrams
    Vice President & General Counsel
    North America & Global Corporate Services
    The Procter & Gamble Company
    One Procter & Gamble Plaza
    Cincinnati, Ohio 45202

**For The Gillette Company:**

By:_____
    Volker Kuhn
    General Manager, Duracell North America
    Vice President
    The Gillette Company
    14 Research Drive
    Bethel, CT 06801

41