## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| JOSHUA D. POERTNER, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br><br>THE GILLETTE COMPANY and THE PROCTER & GAMBLE COMPANY,<br><br>　　　　　　Defendants. | Case No. 6:12-cv-00803-GAP-DAB |

---

### Objection to Class Settlement in *Poertner v. The Gillette Company, et al.* of Theodore H. Frank

---

Adam E. Schulman (*pro hac vice* admision pending)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW #236
Washington, DC 20036
Telephone: (610) 457-0856
Email: shuyande24@gmail.com

Benjamin C. Haynes
Florida Bar No. 91139
HAYNES & ASSOCIATES
790 Oakland Hills Circle
Lake Mary, Florida 32746
Telephone: (509) 432-1751
Email:  haynesbenjaminc@aol.com

*Attorneys for Objector Theodore H. Frank*

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................I

TABLE OF AUTHORITIES ........................................................................................................ II

INTRODUCTION ..........................................................................................................................1

I.    Objector Theodore H. Frank is a class member and is represented by the Center for Class
      Action Fairness. ....................................................................................................................2

II.   The court has a fiduciary duty to the absent members of the class. ............................................4

III.  The settlement is unfair: the class is not the foremost beneficiary of the settlement ...............7

      A.    The settlement improperly favors class counsel over absent class members through
            its fee provisions. ...................................................................................................9

            1.    A recipe for disproportionate fees ............................................................10

            2.    The clear-sailing agreement ......................................................................16

            3.    The "kicker" / segregated fee fund ...........................................................18

      B.    The settlement improperly favors the named representative over absent class
            members through its "Class Representative Payment." ..................................20

      C.    The settlement improperly favors to-be-determined third party charities over absent
            class members through its *cy pres* provision ....................................................22

IV.   The identity of the *cy pres* recipients and the substance of their mission is material to the
      fairness of the settlement; failure to designate specific recipients deprives class members of
      their rights of notice, exclusion and objection. ......................................................................27

V.    In the alternative to denying settlement approval, the Court should limit counsel's fees to a
      reasonable percentage of the amounts actually claimed. ..........................................................30

VI.   Procedurally, the fee request must be denied for violating Fed. R. Civ. P. 23(h) in two further
      particulars. ...........................................................................................................................36

      A.    The filing of the fee motion two weeks after the objection deadline deprives class
            members of their 23(h)(1) notice and objection rights. ..................................36

      B.    Rule 23(h) does not permit lead counsel to privately divide a lump-sum fee award ..37

VII.  The parties have artificially burdened the right of objection and opt-out; no positive
      inference should be drawn from few dissenters. ......................................................................40

CONCLUSION ...........................................................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373 (D. Kan. 1971) .....41

*Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984)..................................................................6

*Better v. YRC Worldwide Inc.*, No. 11-cv-2072-KHV, 2013 U.S. Dist. LEXIS 163569 (D. Kan. Nov. 18, 2013). ..................................................................................................................................24

*Boeing v. Van Gemert,* 444 U.S. 572 (1980) ............................................................................34-35

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) ...........................................7

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) .......................................................34

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998)................................22, 26

*Camden I Condominium Ass'n v. Dunkle.*, 946 F.2d 768 (11th Cir. 1991) ....................14, 30, 31

*Carroll v. Blinken*, 957 F.2d 991 (2d Cir. 1992)..........................................................................29

*Childs v. United Life Ins. Co.*, No. 10-cv-23-PJC, 2012 U.S. Dist. LEXIS 70113 (N.D. Okla. May, 21, 2012) .............................................................................................................................17

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000) ..............................................15

*Day v. Persels & Assocs., LLC.*, 729 F.3d 1309 (11th Cir. 2013) ..........................................6, 28

*DeLeon v. Bank of Am.*, No. 6-09-cv-1251, 2012 WL 2568142, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) ..................................................................................... 12, 27, 37, 43

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ...........................................................*passim*

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..............................................................14

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375 (D. Mass. 1997).........................34

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) .........................................15

*Ferrington v. McAfee, Inc.,* No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) .............................................................................................................................12

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) .......................................4

*Galloway v. Kan. City Landsmen, LLC.,* No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) .................................................................................... 11, 42

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001).......................................40

*Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 WL 1627973, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011).........................................................................................11

*Hellum v. Prosper Marketplace, Inc.*, No.: CGC-08-482329 (Cal. Sup. Ct.)....................................................42

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983)..........................................................4, 5-6, 9, 20

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 179 (2d Cir. 1987)............................................................27

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987)............................................................39

*In re Airline Ticket Commission Antitrust Litig.*, 268 F.3d 619 (8th Cir. 2001)...............................................28

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ..............................................................*passim*

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011)................................5, 6, 9, 10-20, 33

*In re Carbon Dioxide Antitrust Litig.*, 1996 U.S. Dist. LEXIS 13418, 1996 WL 523534 (M.D. Fla. Jul. 15, 1996) ....................................................................................................................................20

*In re Checking Account Overdraft Litig.*, No. 1:09-md-20360-JLK, (S.D. Fla. Apr. 15, 2013) ...................24

*In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ....................................................................................................................................3

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277 (3d Cir. 2005) ....................................................................................................................................16

*In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992)...............................................28

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .................................................................*passim*

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ....................................................................................6, 8, 11, 18, 25, 32, 41

*In re Groupon Inc.*, No. 11-md-2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750 (S.D. Cal. Sept. 28, 2012). ....................................................................................................................................29

*In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). ..............................................15

*In re High Sulfur Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008).........................................38-39

*In re HP Inkjet Printer Litig.*, 716 F.3d. 1173 (9th Cir. 2013) ...............................................................11, 33

*In re Hydroxycut Mktg & Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013)............................................................................................24

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010)..............................................................6

*In re Livingsocial Mktg. & Sales Practies Litig.*, MDL No. 2254, __F.R.D__, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059 ................................................................................................................11

*In re Lurpon Mkt'g and Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012).................................................24

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..........................................36-37, 38

*In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-md-1840-KHV-JPO, 2012 U.S. Dist. LEXIS

57981 (D. Kan. Apr. 24, 2012) ...................................................................................... 42-43

*In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488 (D. Kan. 2012) .................................... 28

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ............................................... 26

*In re Thornburg Mortg., Inc. Secs. Litig.*,  885 F. Supp. 2d 1097 (D.N.M. 2012) ...................... 26

*Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) ............................................... 35

*Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ...................................................................... 8

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ........................... 30

*Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 179377, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. Jun. 19, 2007) .............................................................................................. 18

*Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404 (N.D. Ill. 2012) .................... 12

*Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 U.S. Dist. LEXIS 148937 (M.D. Fla. Oct. 15, 2013) ............................................................................................ 23-24

*Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011). ...................... 22, 23, 24, 26

*Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ...................................................................................................................... 13

*Lane v. Facebook, Inc.*, 709 F.3d 791 (9th Cir. 2013). ........................................................ 23

*Leverso v. Southtrust Bank*, 18 F.3d 1527 (11th Cir. 1994) ............................................... 6-7

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003). ....................................... 22

*Marek v. Lane*, 134 S. Ct. 8 (2013). .............................................................................. 22-23

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ........... 41

*Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). ............................. 24

*McClintic v. Lithia Motors*,  No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) ...................................................................................................................... 43

*Michel v. Wm Healthcare Solutions*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606 (S.D. Ohio. Feb. 7, 2014) ....................................................................................................... 19, 34

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) ...................................... 4, 23

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .......................................... 13, 20

*Nachshin v. AOL, LLC.*, 663 F.3d 1034 (9th Cir. 2011). .................................................... 23, 24

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429 (11th Cir. 2012) ...................... 26

*Newman v. Americredit Fin. Servs.*, No. 11-cv-3041 DMS (BLM), 2014 U.S. Dist. LEXIS 15728 (S.D.

Cal. Feb. 3, 2014) ................................................................................................41-42

*Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014).......13, 15, 34

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ...........................................7

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985). .........................4, 5, 7, 16, 18, 22, 30

*Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.*, 818 F.2d 216 (11th Cir. 1993) ............... 27, 37

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ...........................20-22

*Richardson v. L'Oreal USA, Inc.* , ____F. Supp. 2d___,   2013 WL 5941486

(D.D.C. Nov. 6, 2013) ...............................................................2-3, 6, 16, 20, 41

*Shroeder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir. 1984)........................................22

*Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal.

Nov. 15, 2012) ....................................................................................................42

*Sobel v. Hertz*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984 (D.

Nev. Jun. 27, 2011) ...............................................................................17-18, 32-33

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23,

2013) ..................................................................................................................13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................. 16, 22

*Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167 (W.D. La. 1997) ......................................12

*Strong v. Bellsouth Telecoms. Inc.*, 137 F.3d 844 (5th Cir. 1998)..............................18, 31-32, 35

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) *(en banc)* ......................................13

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005)..............................................20

*Synfuel Techs., Inc. v. DHL Express (USA), ,Inc.*, 463 F.3d 646 (7th Cir. 2006) ........................10

*Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3.

2009) ..................................................................................................................34

*Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072 (D. R.I. May 3, 2012)

.............................................................................................................................12

*True v. Am Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................15

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998)..........................................27

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ...........................................6

*Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) .............................11-12, 17, 40, 41

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ..................................31

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999)..........................17, 34-35

*Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ....................................................................................................................15

*Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518 (1st Cir. 1991) .................................17

*Wise v. Popoff*, 835 F. Supp. 977 (E.D. Mich. 1993) ........................................................................34

*Wooley v. Maynard.*, 430 U.S. 705 (1977). .......................................................................................29

**Rules and Statutes**

28 U.S.C. §1711 *et seq.*...........................................................................................................34-35

28 U.S.C. §1712(a) .............................................................................................................................33

Fed. R. Civ. P. 23 ........................................................................................................................*passim*

Fed. R. Civ. P. 23(a)(4) ..............................................................................................................20-22

Fed. R. Civ. P. 23(e) ..........................................................................................................................31

Fed. R. Civ. P. 23(e)(2) ......................................................................................................... 1, 9, 22

Fed. R. Civ. P. 23(e)(3) ......................................................................................................................40

Fed. R. Civ. P. 23(h) ...................................................................................................................*passim*

Fed. R. Civ. P. 23(h)(1) .............................................................................................................. 36, 38

Fla. R. Prof. Conduct 1.5(f)(4)(D) ..................................................................................................38

Fla. R. Prof. Conduct 1.5(g) ............................................................................................................38

**Other Authorities**

Advisory Committee Notes on 2003 Amendments to Rule 23 ......................................11, 31, 33, 36-37

Am. Law Institute, *Principles of the Law of Aggreggate Litig.* § 3.05 (2010) ..................................10

Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010)..................................5

Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.07(a) (2010)...............................24

Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.07(c) (2010)...............................29

Baker, Lynn A., Michael Perino, & Charles Silver, *Setting Attorneys′ Fees in Securities Class Actions: An Empirical Assessment*, 66 VAND. L. REV. 1677 (2013) ............................................................40

Brickman, Lester, LAWYER BARONS (2011) ....................................................................................19

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403 (2003) ......................................................................................................................3

Coben, James Richard, *Creating a 21ˢᵗ Century Oligarchy: Judicial Abdication to Class Action Mediators*, 5 PENN ST. Y.B. ARB. & MEDIATION 162 (2013) .........................................................18

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004) ............................................................. 41

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ................. 13-14

Federal Judicial Center, *Manual for Complex Litigation* § 21.612 (4th ed. 2004) ........................................ 6

Federal Judicial Center, *Manual for Complex Litigation* § 21.7 (4th ed. 2004) ............................................ 32

Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2004) ......................................... 35

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ............................... 4

Henderson, William D., *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813 (2003) .............................................................................................................. 17

Hilsee, Todd B., Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEO. J. LEGAL ETHICS 1359, 1380 (2005) ............................................................. 43

Isaacharoff, Samuel, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165 (2013) ........................................................................................................................................................ 34

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) ......................................................... 3

Klonoff, Robert H., *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727 (2008) ........................................................................................................................................ 43

Lahav, Alexandra, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65 (2003) ........... 27

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71 (2007) .................................................................................................. 40-41, 43

Liptak, Adam, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES (Aug. 13. 2013), at A12 ....... 3

Redish, Martin H., Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010) ....................................... 23, 26

Silver, Charles, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) .................................................................................................................................... 19, 31

Tidmarsh, Jay, *Cy Pres and the Optimal Class Action*, 82 GEO. WASH. L. REV. 1 (2013) .......................... 24

Yospe, Sam, Note, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUM. BUS. L. REV. 1014 (2009) .......................................................................................................................................................... 28

Zabcik, Brian, *Conscientious Objector*, AM. LAWYER (May 1, 2013), *available at*
http://www.americanlawyer-
digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11.............................3

## INTRODUCTION

Settlement fairness does not just require that the size of the settlement be adequate, but also requires that the *allocation* of the settlement be fair. *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*"). This settlement fails the latter test on multiple grounds.

The substantive problems begin with the misuse of *cy pres*, continue through the class representative allowance, and climax with the fee provisions themselves. These ill-conceived provisions, along with the customarily broad release of claims, coalesce to form a settlement that serves the interests of class counsel, the named representative, the defendants and even certain non-class member third parties. *See infra* § III.

But the class itself has been lost in the shuffle. Although it can hardly be contested that class members should be the "foremost beneficiaries" of any settlement, class counsel here "has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178, 179 (3d Cir. 2013) ("*Baby Products*"). Rather, as designed, the settlement relegates the class to a non-medal position—behind class counsel, the named representative, the defendants, and even the yet-undetermined *cy pres* recipients. The low payments to class members, the lack of individualized notice, and the claims process all ensure that payout to the class will be low—and the parties surely knew this when they agreed to these terms. Defendants and class counsel are entitled to agree to a settlement that limits P&G's overall liability to a reasonable amount. But Rule 23(e) does not permit them to negotiate a settlement where class counsel and third-party charities get the overwhelming lion's share of that amount.

Moreover, the fairness hearing process is procedurally flawed. Those class members who take the time to assess the terms of settlement are denied access to facts material to their evaluation of the fairness of the settlement and the fee award. *See infra* §§ IV, VI. And if they want to dissent, by objection or opt-out, they are not permitted to use the same mode as the settlement administrator did to disseminate notice, or as class members who do not wish to dissent. *See infra* §VII. Almost inevitably, 99% of the class will do nothing: not file a claim, not register an objection,

not exclude themselves: nothing. But this Court has the responsibility to do something: reject the motion for final approval.

## I.     Objector Theodore H. Frank is a class member and is represented by the Center for Class Action Fairness.

As documented in the accompanying Declaration of Theodore H. Frank ("Frank Decl."), Mr. Frank is a member of the class. Frank's current business mailing address is 1718 M Street NW, No. 236, Washington, DC 20036. Frank Decl. ¶2. His telephone number is (703) 203-3848. *Id.* His email address is tedfrank@gmail.com. *Id.* On January 3, 2014, he purchased a pack of size AA Duracell Brand Ultra Power batteries from Amazon.com. *Id* at ¶4. Having bought the batteries "at Retail from or after June 2009," he is therefore a member of the class as defined in the preliminary approval order and settlement agreement. Preliminary Approval Order (Dkt. 118) ("PAO") ¶8; Settlement Agreement (Dkt. 113-1) ¶31. A receipt for that purchase is attached as Exhibit 1 to this filing; photographs of the Duracell package he received are attached as Exhibits 2 and 3. On February 19, Frank filed a claim form at the settlement website with confirmation number 639781601. Frank Decl. ¶6 and Exhibit 4.

Frank's attorney, Adam Schulman of the non-profit Center for Class Action Fairness ("CCAF"), is representing him *pro bono*, has a motion for *pro hac vice* admission pending, and will appear at the March 21 Fairness Hearing, as explained in Frank's soon-to-be filed Notice of Appearance and Intent to Appear at the Fairness Hearing.

CCAF, founded by Frank in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pampers*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive.") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (Bates, J.) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement.")

(rejecting settlement approval and certification); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling Mr. Frank "[t]he leading critic of abusive class-action settlements").

CCAF has won millions of dollars for class members. *See, e.g.,* Brian Zabcik*, Conscientious Objector*, AM. LAWYER, May 1, 2013, at 11, *available at* http://www.americanlawyer-digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11; *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel … at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are termed "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. Some courts presume that such objectors' legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Frank is willing to stipulate to an injunction prohibiting

himself from accepting compensation in exchange for the settlement of this objection. Frank Decl. ¶13. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Frank brings this objection through CCAF in good faith to protect the interests of the class.

## II.   The court has a fiduciary duty to the absent members of the class.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *Baby Prods.*, 708 F.3d 163, 175 (3d Cir. 2013) (same).

In short, "[c]areful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.'" *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quoting *U.S. v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), *modified on other grounds*, 664 F.2d 435 (5th Cir. 1981) (*en banc*)). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006))

The Court's oversight role does not end at making sure that the settling parties engaged in properly adversarial arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense…. And that means the courts must carefully scrutinize whether [class counsel's and the named representatives'] fiduciary obligations have been met." *Pampers*, 724 F.3d at 717-18 (internal quotations omitted).

While it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("*Bluetooth*") (internal quotation omitted). Due to the defendants' indifference as to the allocation of funds between the class, the named representatives, and class counsel, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *Piambino II*, 757 F.2d at 1143 (noting that defendants are "uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), *aff'd* 577 F.2d 335 (5th Cir. 1978)).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010) ("*ALI Principles*"). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities); *accord Holmes*, 706 F.2d at

1147. An actual showing is required, beyond a court's "complete confidence in the ability and integrity of counsel." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1315 (11th Cir. 2013).

In this case, that burden is yet heightened because this settlement has been proposed before class certification. Delaying certification until settlement poses various problems, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-800 (3d Cir. 1995) ("*GM Trucks*"), and calls for heightened judicial scrutiny of the certification and the accompanying settlement. *Id.* at 807; *Pampers,* 724 F.3d at 721; *Bluetooth*, 654 F.3d at 946-47 (9th Cir. 2011) (citing cases from Second, Third, Seventh and Ninth Circuits); *Richardson*, 2013 WL 5941486, at *2, *13; Federal Judicial Center, *Manual for Complex Litigation* § 21.612 (4th ed. 2004). Thus, the Court should always keep foremost in mind that "the class settlement process is 'more susceptible than adversarial adjudications to certain types of abuse.'" *Holmes*, 706 F.2d at 1147 (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978)).

Be alert! In their approval papers, the settling parties will doubtlessly focus on the six factors for settlement fairness discussed in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). *See* Preliminary Approval Motion (Dkt. 114) at 14-18 (expounding upon *Bennett* factors). It cannot be overemphasized that—like the multi-factor tests of other circuits[1]—the *Bennett* six-factor test is not exhaustive. *Bennett*'s test simply does not provide an exclusive list of reasons to reject a settlement. *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530-31 (11th Cir. 1994) (concluding that the district court abused its discretion despite "thoroughly address[ing]" all six factors and concluding that each

---

[1] *Pampers*, 724 F.3d at 718 (looking beyond Sixth Circuit's seven-factor test to find settlement unfair when it constitutes "preferential treatment" for class counsel); *Baby Prods.*, 708 F.3d at 174 (adding to Third Circuit's nine-factor fairness test, a new consideration: "the degree of direct benefit provided to the class"); *Bluetooth*, 654 F.3d at 946 (consideration of eight-factor test "alone is not enough to survive appellate review); *Vassalle v. Midland Funding LLC,* 708 F.3d 746 (6th Cir. 2013) (finding abuse of discretion even though all factors favored final approval); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (*Reed* factors are not the sole reasons a settlement should be rejected as unfair, unreasonable or inadequate under Rule 23(e)).

weighed in favor of approval). This Circuit[2] has long commanded district courts to also "always consider the possibility that that an agreement reached by the class attorney is not in the best interest of the class," and beware of settlements which enrich class counsel to a greater degree than they do the absent class. *Pettway*, 576 F.2d at 1215-16; *Piambino II*, 757 F.2d at 1140 ("The district court should have rejected the settlement as unfair because it was accomplished at the expense of the minority members of the plaintiff-class, primarily to provide Lead Counsel an attorney's fee.").

Preferential treatment to class counsel is the gist of Frank's objection here. Frank does not argue that this case must settle for an actual $10 million, $20 million or $30 million. His cardinal objection is that the settlement is unfair because class counsel is appropriating an excessive amount of the settlement value for itself, and the settling parties seek to gain approval of that arrangement without even apprising the Court and class of the final allocation.[3] As such, the inevitable discussion of *Bennett*'s factors should be seen for what it is: a red herring.

### III.   The settlement is unfair: the class is not the foremost beneficiary of the settlement

Structurally, this settlement is a study in compartmentalization.

- In one compartment is the sole benefit to class members: the right to submit a claims form and obtain minimal monetary compensation. Settlement ¶59. Class

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] The manner in which the parties attempt to hide the ball is by scheduling the claims period well after the fairness hearing. *Compare* Proposed Order Granting Preliminary Approval (Dkt. 113-6) 10-11 (seeking administrative schedule with a claims deadline of 30 days after fairness hearing); *with* PAO ¶31 (setting final fairness hearing for March 21, 2014 and claims submission deadline of April 10, 2014). Frank hopes that the Court will not succumb to the reversible error of approving the settlement without a final accounting of how much the class is actually receiving. *See discussion infra* at 10 n.4 and accompanying text (delineating the issue); *see also Baby Prods.*, 708 F.3d 163, 174, 175, 179 (3d Cir. 2013) (reversing for precisely this reason); *cf. also Dennis v. Kellogg Co.*, 697 F.3d 858, 869 (9th Cir. 2012) (rejecting a similar "Just trust us. Uphold the settlement now, and we'll tell you what it is later" argument).

members with proof of purchase may obtain up to $12 ($3/pack * 4 packs). *Id.* Class members without proof of purchase may obtain up to $6 ($3/pack * 2 packs). *Id.* The value of this benefit is presently unknown, but is unlikely to exceed $1 million given typical claims rates and the miniscule amounts available per claim. *See discussion infra* §III.A.1.

- A second component is a benefit to non-class members: an in-kind *cy pres* distribution of $6 million worth (calculated at retail value) of Duracell products to "first responder charitable organizations, the Toys for Tots charity, or 501(c)(3) organization that regularly use consumer batteries." Settlement ¶61.

- A third component is another benefit to non-class members (if a benefit at all): prospective injunctive alterations to the labeling of the Duracell Ultra batteries. Settlement ¶58.

- A fourth component is a benefit to the named representative: the right to seek an unopposed payment in the amount of $1,500. Settlement ¶66.

- Lastly, there is a benefit to class counsel: the right to seek an unopposed fee and expense award of $5.68 million. Settlement ¶63.

Unlike with an all-inclusive pure common fund, each of the benefits here is formally segregated and compartmentalized. This segregation forms what is known as a "constructive common fund." *See, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a similar "constructive common fund" settlement); *In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) ("*GM Trucks*") (A severable fee structure "is, for practical purposes, a constructive common fund."); *GM Trucks*, 55 F.3d at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal.").

A constructive common fund structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and or named representative payments. *See Bluetooth*, 654 F.3d at 949. Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," it is no surprise that the most common settlement defects are ones of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original); *see also Holmes*, 706 F.2d at 1147 (noting the importance of review of the fairness of allocation and not just the adequacy of settlement sum). Thus, a constructive common fund structure prevents the Court from exercising its discretion, in furtherance of its fiduciary duty, to cure the most endemic settlement ailment.

It is commonplace for objectors to complain that a settlement is insufficiently large in the aggregate. But the focus of Frank's objection is quite different. His concern is that the settling parties have designed the five-part settlement described above to benefit class counsel, the named representative, future customers of Procter & Gamble, undetermined charities, and the defendants, all at the expense of benefitting the class. It is this very concern that animated the Third Circuit to vacate the settlement in *Baby Products*, the Sixth Circuit to vacate the settlement in *Pampers*, and the Ninth Circuit to vacate the settlement in *Bluetooth*. In any class action settlement, it's a foundational principle that class members should be "the foremost beneficiaries" of the accord. *Baby Prods.*, 708 F.3d at 179. The parties ask the Court to invert this bedrock axiom, and approve a settlement that consigns absent class members to an afterthought.

## A.      The settlement improperly favors class counsel over absent class members through its fee provisions.

Last year, the Sixth Circuit explained that one focus of the Fed. R. Civ. P. 23(e)(2) fairness inquiry is whether the settlement gives "preferential treatment" to class counsel or the named representatives. *Pampers*, 724 F.3d at 718 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013)). "Such inequities in treatment make a settlement unfair" for neither class counsel

nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Id.*

One might reasonably ask how to give determinative content to an abstract concept of "preferential treatment." And at least a partial answer has been outlined by the Ninth Circuit in *Bluetooth*. There, the court identified three warning signs of a class action settlement that is inequitable between class counsel and the class. *Bluetooth*, 654 F.3d at 947 (listing the indications of **(1)** A disproportionate distribution of fees to counsel; **(2)** A clear sailing agreement; and **(3)** A "kicker" (*i.e.* a reversion of excess fees to the defendant).

### 1.      A recipe for disproportionate fees

The first signal is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.*; *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ("*ALI Principles*") ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). Here, the class will only recover a minimal amount from the enfeebled claims process, while the settlement permits class counsel to seek, unopposed, an award of fees and costs of $5.68 million.

The amount the class actually receives under the settlement is the critical baseline in performing the *Bluetooth* disproportionality analysis.[4] *Bluetooth*, 654 F.3d at 943 (reversing and

---

[4] Again, *see supra* at 7 n.3, evaluative difficulties are exacerbated by an administrative schedule designed to insulate the fee request from a comparison with the actual amounts claimed by class members. If, for some reason, the Court does not reject the settlement out of hand for its shortcomings, Frank formally requests that the Court abstain from ruling on fees or settlement approval until it can make findings on how much the class has actually received. Approval on the current record would constitute reversible error. *Baby Prods.*, 708 F.3d at 174, 175, 179; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (reversing approval where "the court did not attempt to quantify the value of plaintiffs' case or even the overall value of the settlement offer to class members"). *Cf. also Dennis*, 697 F.3d at 868 (instructing that settlement valuation "must be examined with great care to eliminate the possibility that it serves only the 'self interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund

remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *Baby Prods.*, 708 F.3d at 174 (reversing where district court failed to "withhold final approval until the actual distribution of funds [could] be estimated with reasonable accuracy"); *GM Trucks*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees.").

With increasing frequency, especially after *Bluetooth*, courts around the country now make the proper comparison. *E.g., Vought v. Bank of Am.*, N.A., 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be that is fictitious"); *Pampers*, 724 F.3d at 721 ("Cases are better decided on reality than on fiction.") (internal quotation omitted).

To approve the settlement and fee award before that data came in would improperly shift the burden of proof from proponents of the settlement to opponents. *See Holmes*, 706 F.2d at 1147. Instead, the necessary practice is for the Court to defer judgment until payouts to class members are known.

This goes for judgment on fees. *See, e.g.*, Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."); *id.* ("One fundamental focus is the result actually achieved for class members."); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1187 n.19 (9th Cir. 2013) ("[A] fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery.") (citing cases).

It also goes for judgment on settlement fairness. *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2013 U.S. Dist. LEXIS 92650, at *18-*20 (W.D. Mo. Jul. 2, 2013) (finding the record devoid of accounting of class benefit and thus refusing to ratify settlement); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, 2011 U.S. Dist. LEXIS 48878, at *48 (N.D. Cal. Apr. 29, 2011) (a court "cannot judge the settlement value until claims are filed"); *In re LivingSocial Mktg. & Sales Practice Litig.*, MDL 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *33 (D.D.C. Mar. 22, 2013) (implying that the claims period should close before final approval is given). This allows the court to conduct the necessary disproportionality analysis vis-à-vis the actual amounts claimed rather than often overinflated estimates of the settling parties. *See Baby Prods.*, 708 F.3d at 171 (district court estimated aggregate claims of more than $8 million when the process ultimately resulted in only $3 million worth of claims).

paid out, ultimately denying approval of settlement); *Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (finding a vast disparity between attorneys' fees and class claims' values to be "troubling and ultimately unacceptable."); *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8 (D. R.I. May 3, 2012) (finding an attorney award that consumed 66% of the settlement to be "excessive" and grounds for denying final approval); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-37 (N.D. Cal. Apr. 6, 2012) (finding an attorney award that constituted 83% of the settlement amount was disproportionate and grounds for denying final approval); *Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167, 172 (W.D. La. 1997), *aff'd* 137 F.3d 844 (5th Cir. 1998) ("A request for $6 million in attorneys' fees where counsel has provided no more than $2 million in benefits to the class is astonishing. It is a sad day when lawyers transmogrify from counselors into grifters.")

An exemplar decision from this Court is Magistrate Judge Spaulding's opinion in *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 WL 2568142, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) (finding that a low-value claims-made settlement would "surely result in a low claims rate" and recommending that the settlement be rejected for failing the fairness inquiry). *DeLeon* involved a claims made settlement structure that purported to be worth $10 million, but would likely revert more than half of that fund to the defendant.  Judge Spaulding found that given potential claim rates, class counsel's fee allotment of $2.5 million would be excessive, and concluded that the settlement was unfairly fee-driven. 2012 U.S. Dist. LEXIS 91124, at *46 ("negotiated to maximize the amount of fees that could be awarded"). Even though class members there were eligible to claim $28—more than double the maximum $12 here—the Court found that the settlement would "likely attract few takers" and was not fair, reasonable and adequate. *Id.* at *60. The report and recommendation was adopted in full by Judge Antoon. *De Leon v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 91126 (M.D. Fla. July 2, 2012).

To the extent that the Court wants to predict what the actual recovery will be, even under extremely generous suppositions, that benefit will not exceed even $1 million. Frank confidently

asserts this because empirical data is clear—even in consumer settlements with the most efficacious claims mechanisms, claims rates are extremely low. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns.").

In this case, where there was no direct notice campaign and where the maximum amount available without proof of purchase is $6, the rate will assuredly be well below 7%, and will most likely be well below 1%. *See Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (0.27% claims rate for $15 max claim); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice."); *In re Livingsocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *52 (0.25% claims rate); *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *22 (N.D. Ill. Jan. 3, 2014) (0.25% claims rate overall where maximum claim was $12 without proof of purchase and $50 with proof of purchase). These rates accord with intuition. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Given the tiny sum per person, who would bother to mail a claim.").

If we generously assume a 1% claims rate (likely four times more than the actual rate will be) of all 7.26 million[5] purchasers of Duracell Ultra batteries in the past five years, then there will be 72,600 claimants. Then, if each of those claimants purchased two packs of batteries and claim the maximum $6 without proof of purchase,[6] the total class benefit equates to $435,600. Even if a

---

[5] *See* Declaration of E. Clayton Lowe Jr. (Dkt. 114-1) ("Lowe Decl.") ¶12.a.

[6] It would do too much damage to reality to presume that the class members will submit their claims with proof of purchase for up to $12. *See Pampers*, 724 F.3d at 718 (expressing mystification at the possibility of maintaining diaper receipts for years); *Baby Prods.*, 708 F.3d at 176 (decrying restrictive proof of purchase requirements and correlative claims caps that served to divert money from class members to cy pres beneficiaries); Federal Judicial Center, *Judges' Class Action*

mind-boggling 7% of the class submitted claims for $6,  the benefit would barely exceed $3,000,000. Juxtapose this with the attorney allotment of $5.68 million. In the most likely scenario, class counsel will receive over **ninety percent** of the monetary benefit the defendants made available in this settlement.

A proportionate "commensurate"[7] attorney award adheres to the Eleventh Circuit's 25% of the fund benchmark.[8] Less than two years ago, the Ninth Circuit determined that an attorney award of 38.9% would be "clearly excessive." *Dennis*, 697 F.3d at 868. A potential award here of more than double 38.9%, is truly beyond the pale and would reify the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (quotation omitted).[9]

The parties may rejoin, "but you are not considering the value of the injunctive labeling changes in determining whether our fee award is proportionate."[10] The reason why the prospective

---

*Notice and Claims Process Checklist and Plain Language Guide* ("*FJC Guide*"), at 6 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.      (cautioning judges to "[w]atch for situations where class members are required to produce documents or proof that they are unlikely to have access to or have retained. A low claims rate resulting from such unreasonable requirements may mean your eventual fairness decision will overstate the value of the settlement to the class and give plaintiff attorneys credit for a greater class benefit than actually achieved.").

[7] *Pampers*, 724 F.3d at 720.

[8] This circuit established the "20 to 30% range" "benchmark" approach in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) (holding that it was an abuse of discretion to use lodestar rather than percentage-of-recovery method of awarding fees, but that lodestar is still permissible in fee-shifting statute cases).

[9] Class counsel's assertion (Lowe Decl. ¶15) that the fee request only amounts to 11.5% of the monetary benefit is premised on an delusive 100% claims rate. *Dennis*, 697 F.3d at 868 (eschewing "fictitious" valuations); *Baby Prods.*, 708 F.3d at 174 (instructing that "inquiry needs to be, as much as possible, practical and not abstract.")

[10] They may also say the same about the in-kind *cy pres* donation. To the extent that the Court finds the *cy pres* provision to be acceptable (*contra* §§III.C, V, *infra*), it should recognize that class members are "not indifferent" between direct payments and *cy pres* relief. *Baby Prods.*, 708 F.3d

---

injunctive relief should not enter the calculus is because "[t]he fairness of the settlement must be evaluated primarily on how it *compensates class members*—not on whether it provides relief to other people, much less on whether interferes with defendant's marketing plans." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) and adding emphasis). Even where "the *cy pres* fund and injunctive relief are substantial benefits secured under the settlement agreement, they benefit the public and future consumers of [the defendants' product]—not Class members for past injuries—and cannot be a key consideration in determining the fairness of the settlement." *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *15 (N.D. Ill. Jan. 3, 2014). Simply, "[n]o changes to future advertising by [defendants] will benefit those who already were misled." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010); *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (injunctive agreement not to use the abusive debt collection letter that was at issue in the case was a "gain" of "nothing" for class members).

These cases are all proper recognitions that a class composed of people who have done discrete business with defendants *in the past* is not served by prospective injunctive relief that can only benefit those who do business with defendants *in the future. See also Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction). Although this settlement may well impose significant costs on P&G and Gillette, that is not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *TD Ameritrade*

---

at 178. Consequently, a dollar to *cy pres* should not count the same as a dollar to class members for purposes of awarding fees. *Id.* ("Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award."); *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (discounting *cy pres* by 50% for purposes of awarding fees); *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *103-*104 (C.D. Cal. Nov. 23, 2011) (same).

*Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)). It may be true that "every square centimeter" of a package of batteries is "extremely valuable" to the defendants, but it is "egocentrism" to presume that that the same space is equally valuable to class members. *Pampers*, 724 F.3d at 720.

To anticipate another likely counter-argument of the plaintiffs, allocational issues between the class and class counsel cannot be waived away by structuring the settlement as a constructive common fund rather than as a traditional common fund. *See Pampers*, 724 F.3d at 717; *Bluetooth*, 654 F.3d at 943; *Piambino II*, 757 F.2d at 1122. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). For either way, "the economic reality is that a settling defendant is concerned only with its total liability." *Pampers*, 724 F.3d at 717 (quoting *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 849 (5th Cir.1998)); *Piambino II*, 757 F.2d at 1143.

Nor are issues of apportionment resolved by delaying agreement on fees until after the terms of the settlement were negotiated. *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *13 (D.D.C. Nov. 6, 2013). The only apparent way to actually divorce class relief from fees is to reach an accord on class relief while simultaneously agreeing to litigate the issue of fees. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). In other words, as long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

Naturally low claims rates are the "[t]he reality" here, and mean that "this settlement benefits class counsel vastly more than it does the consumers who comprise the class." *Pampers*, 724 F.3d at 721. This Court should deny final approval until class counsel are no longer "the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d at 179.

## 2.    The clear-sailing agreement

In addition to a discrepancy between fees and class benefit, the settlement contains *Bluetooth's*

second warning sign of an unfair deal: a "clear sailing" agreement. 654 F.3d at 947. A clear sailing clause stipulates that attorney awards will not be contested by the defendant. *See* Settlement ¶63. ("P&G will not oppose …"). "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.,* No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger,* 925 F.2d at 524; *accord Bluetooth,* 654 F.3d at 948; *see also Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1293 n.4 (11th Cir. 1999) (taking note of the controversy but refusing to opine on the propriety of clear-sailing agreements where settlement approval itself was not challenged on appeal).

"Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Vought,* 901 F. Supp. 2d at 1100 (quoting *Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of the petition for a writ of certiorari)); *accord* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements,* 77 Tul. L. Rev. 813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing provisions."). "[W]hile the present case does not utilize a classic reversionary fund in which attorneys' fees are paid from a common pool that directly reduces the class's recovery, it undoubtedly did not escape either party's attention that every dollar not claimed from the fund was one dollar that [defendant] could use to pay class counsel's fees." *Vought,* 901 F. Supp. 2d at 1101. Clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms. *Sobel v. Hertz Corp.,* No. 3:06-cv-00545-LRH-RAM, 2011 WL

2559565, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011).

*Bluetooth*'s second indication of an unfair fee-driven settlement is present.

**3.      The "kicker" / segregated fee fund**

Not only does the settlement contain a "clear sailing" provision forbidding defendant from challenging the fee amount, but there is a "kicker" providing that any reduction in the fee award reverts to the defendant, rather than the class. The settlement agreement effectuates this by stipulating that fees will be considered separate and apart from class relief. Settlement ¶65.[11] This is the third red flag pinpointed by *Bluetooth*: when the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947. This "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. "The clear sailing

---

[11] This is no cherry on top of the class's sundae. Despite purportedly not "reducing the level of recovery for Class Members" (*See* Lowe. Decl. ¶14), in "economic reality" the defendant will cut every check and is concerned only with its total liability. *Pampers*, 724 F.3d at 717; *GM Trucks*, 55 F.3d at 820; *Strong*, 137 F.3d at 849, *Piambino II*, 757 F.2d at 1143.  The interrelation between fees and class relief cannot be undone with the fiat of a single sentence.

Nor can it be undone by following the recommendation of a professional mediator. *See Pampers*, No. 10-cv-301 (S.D. Ohio), Dkt. 10-1, ¶¶17-19 (not only were fee negotiations separate, the mediator proposed the fee arrangement on a take it or leave it basis); *Bluetooth*, 654 F.3d at 948-49 (neither presence of neutral mediator nor separation of fee negotiations from other settlement negotiations demonstrates that a settlement is fair). "There is no substitute for the requirement of district courts vetting the proposed settlement under Rule 23(e). It is also no answer to say that a private mediator helped frame the proposal. Such a mediator is paid to help the immediate parties reach a deal. Mediators do not adjudicate the merits. They are masters in the art of what is negotiable. It matters little to the mediator whether a deal is collusive as long as a deal is reached. Such a mediator has no fiduciary duty to anyone, much less those not at the table. Plaintiffs' counsel has the fiduciary duty. It cannot be delegated to a private mediator." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 179377, 2007 U.S. Dist. LEXIS 47515, at *31 (N.D. Cal. Jun. 19, 2007); *see also* James Richard Coben, *Creating a 21st Century Oligarchy: Judicial Abdication to Class Action Mediators*, 5 PENN ST. Y.B. ARB. & MEDIATION 162, 163 (2013) (deference to mediators "is an abdication of judicial fiduciary duty to ensure that proposed class action settlements are fair to absent class members").

---

provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel— and when it does so, the class will benefit from the surplus. *E.g.*, *Michel v. Wm Healthcare Solutions*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606, at *52 (S.D. Ohio Feb. 7, 2014) (lowering the fee to 15% "will accomplish…important goals.…[B]y reducing the amount of the fund paid to Class Counsel, the Court augments the benefit to each Class Member.").

Under the proposed settlement, however, if the Court awards less than the $5,680,000 fee that defendant has already agreed to pay to class counsel, the defendant will be the only beneficiary. Because of the "economic reality that a settling defendant is concerned only with its total liability," this settlement is therefore worse for the class than a traditional common fund. *Pampers*, 724 F.3d at 717 (internal quotation omitted). In effect, the parties have prevented the Court from returning the fees and class relief to natural equilibrium.

A "kicker" has the additional self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award because the kicker combined with the clear sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, Lawyer Barons 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical). At a minimum, clear-sailing in conjunction with fee segregation is a red flag of a self-serving settlement that merits justification: why was this negotiated in such a manner as to make the class worse off? *Bluetooth*, *supra*.

The $5.68 million attorney allowance is a "concrete and indisputable" part of the settlement, and the fact that it is shielded from the class is inherently unfair. *Pampers*, 724 F.3d at 721. No settlement should be approved until the parties agree to modify the settlement so that any reduction

in the proposed fee award reverts to the class. Eight years ago, in a case in federal court in the District of Maine, Chief Judge Singal hit the nail on the head in a way that is directly applicable here: "Stripped to its essence, the Court believes that three factors combined to create this untenable distribution scenario: (1) a claims made settlement premised on a 100 percent response rate, (2) a reverter clause, and (3) a clear sailing provision." *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005).

This settlement must be rejected as unduly preferencing class counsel over class members.

**B.    The settlement improperly favors the named representative over absent class members through its "Class Representative Payment."**

Class counsel are not the only ones benefiting handsomely from the terms of the settlement. Named representative Joshua Poertner gains the right to seek an individual payment of $1500 in addition to the amount due him as a regular class member. Settlement ¶66. This provision both undermines the representatives' Rule 23(a)(4) adequacy and renders the settlement unfair. *Pampers*, 724 F.3d at 722 (incentive award makes representatives inadequate); *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013) (holding that the "incentive awards significantly exceeded in amount what absent class members could expect upon settlement approval" and thus "created a patent divergence of interests between the named representatives and the class"); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ($3000 to named plaintiff and minimal cash to absent class members is "untenable."), *Richardson*, 2013 WL 5941486, at *14 ("Set against the recovery obtained on behalf of the absent class members, incentive awards of $1,000 are unfair.")

The Eleventh Circuit agrees: "where representative obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class." *Holmes*, 706 F.2d at 1148; *In re Carbon Dioxide Antitrust Litig.*, 1996 U.S. Dist. LEXIS 13418, 1996 WL 523534 (M.D. Fla. Jul 15, 1996) (following *Holmes* and denying incentive awards). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the

class." *Pampers*, 724 F.3d at 721.

In *Pampers*, approximately 50 class representatives had signed off on a settlement that granted them "incentive awards" of $1000 each per child affected with diaper rash, awards amounting to $41,000 in the aggregate. Absent class members were entitled to only prospective injunctive relief and the right to participate in a money-back guarantee program (receipt required). The Sixth Circuit found that under the terms of the agreement, adequacy of representation was lost because in essence, "there [was] no overlap between" the deal obtained by the class representatives and that obtained by the class itself. *Id.* at 722. Upon attaining the defendant's consent to supercompensatory individual recovery, the class representatives had no remaining "interest in vigorously prosecuting the interests of unnamed class members." *Id.* In essence, they are no longer in the same boat as class members.

The court found no comfort in the fact that bargaining for incentive awards was common practice. *Id.* It announced a general rule that courts "should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Id.*

Earlier last year, in a case cited by *Pampers*, the Ninth Circuit also disavowed disproportionate incentive awards. *Radcliffe*, 715 F.3d 1157. *Radcliffe* held that incentive awards conditioned upon endorsement of the settlement proposed were impermissible. But, more than that, "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* at 1165. "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id.* As the disparity here is starker—$1,500 for the representative, $6 or $12 maximum per class member—the question becomes proportionally more serious. In such situations there is a well-founded fear that named representatives will be "more concerned with

maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large." *Id.* (quoting *Staton*, 327 F.3d at 977).[12]

These cases are important because they hew to the principle that "[t]he premise of a class action is litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). Class representatives are inadequate when incentives indicate that they may be acting as agents of counsel (or themselves) and not of the unnamed class. *See, e.g., London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (friend and business associate of class counsel not adequate representative); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1376 (11th Cir. 1984) (employee of class counsel's law firm not adequate representative). Promised motions for unopposed incentive awards are just another instantiation of this principle. They ensure fidelity to class counsel's desired settlement and undercut any incentive to actually scrutinize the benefits that non-privileged class members obtain.

The Named Plaintiff Payment offends Rule 23(a)(4) and Rule 23(e)(2).

## C.     The settlement improperly favors to-be-determined third party charities over absent class members through its *cy pres* provision

"The plaintiff-class, as an entity, [is] not Lead Counsel's client in this case. Rather, Lead Counsel continue[s] 'to have responsibilities to each individual member of the class even when negotiating.'" *Piambino II*, 757 F.2d at 1144 (quoting *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 834-35 (9th Cir. 1976)).

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible") has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). Imported to the class action context, it has become a increasingly popular method of distributing settlement funds to non-class third parties. *Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts,

---

[12] *Staton* had also repudiated disproportionate incentive awards.

C.J., *respecting the denial of certiorari*) ("*Cy pres* remedies…are a growing feature of class action settlements" that raise "fundamental concerns"); *Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) (Smith, J., *dissenting from denial of rehearing en banc*).

*Cy pres* distributions are non-compensatory, disfavored among both courts and commentators alike, and remain an inferior avenue of last resort. *See e.g., Klier*, 658 F.3d at 475 ("[The *cy pres*] option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly."); *Dennis*, 697 F.3d at 868 (*cy pres* settlement can easily become "a paper tiger"); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("[A] growing number of scholars and courts have observed, the cy pres doctrine…poses many nascent dangers to the fairness of the distribution process") (citing authorities); *Baby Prods.,* 708 F.3d 163, 173 (3d Cir. 2013) ("*Cy pres* distributions imperfectly serve that purpose by substituting for that direct compensation an indirect benefit that is at best attenuated and at worse illusory"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010).

One variety of class action *cy pres* is *ex ante cy pres*. It can be defined as an award "that was designated as part of a settlement agreement or judgment where: (1) an amount *and* at least one charity was named as a recipient of part of the fund from the outset and the charity's receipt of the award was not contingent on there being remaining/unclaimed funds in the settlement fund, or (2) the entire award was given to at least one charity with no attempt to compensate the absent class. Redish et al., *Cy Pres Relief and Pathologies,* 62 FLA. L. REV. 617, 657 n.171. Settlement §61 is a self-conscious example of (1). It provides that defendant will donate $6 million worth of products to non-class member charities over a five year period.

As compared with *ex post cy pres*—third-party awards made only after class member fail to cash checks that are distributed—*ex ante cy pres* stands on even shakier footing. *See Klewinowski v.*

*MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 U.S. Dist. LEXIS 148937 (M.D. Fla. Oct. 15, 2013). The reason that "[t]his form of cy pres stands on the weakest ground [is] because *cy pres* is no longer a last-resort solution for a problem of claims administration. The concern for compensating victims is ignored (at least unless the indirect benefits of the *cy pres* award flow primarily to the victims)." Jay Tidmarsh, *Cy Pres and the Optimal Class Action*, 82 GEO. WASH. L. REV. 1, 4 (2013).

 *Cy pres* is improper when it is feasible to make further distributions to class members, at least where there is no other compelling reason for preferring non-class members. This "last-resort rule" is a well-recognized principle of law. §3.07(a) of the *ALI Principles* succinctly states the limitation: "If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members." *Accord In re Checking Account Overdraft Litig.* No. 1:09-md-20360-JLK (S.D. Fla. Apr. 15, 2013) (Dkt. 3430) (attached as Exhibit 5) (following *ALI Principles* §3.07, denying parties motion to distribute funds to *cy pres* recipient, and instead ordering parties to propose a *pro rata* distribution plan to class members).[13] The last-resort rule follows from the precept that "[t]he settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class members." *Klier*, 658 F.3d at 474 (5th Cir. 2011) (citing *ALI PRINCIPLES* §3.07 cmt. (b)).

 As discussed thoroughly in the Third Circuit's *Baby Products* opinion, for individual class members, direct payment matters. "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." 708 F.3d at 174;

---

[13] Numerous other courts have also endorsed §3.07 to a greater or lesser degree. *Nachshin*, 663 F.3d at 1039 n.2; *In re Lupron Mktg and Sales Practices Litig.*, 677 F.3d 21, 32-33 (1st Cir. 2012); *Klier*, 658 F.3d at 474-75 & nn. 14-16; *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (citing draft version); *Baby Prods.*, 708 F.3d at 173 (agreeing in part); *Better v. YRC Worldwide Inc.*, No. 11-cv-2072-KHV, 2013 U.S. Dist. LEXIS 163569, at *19-*21 (D. Kan. Nov. 18, 2013) (rejecting settlement for non-compliance with §3.07); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) (same).

*id.* at 178-79 (counsel has "responsibility to seek an award that adequately prioritizes direct benefit to the class" and fees should reflect that). Therefore, "one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class." *Id.* at 174. "Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Id.* If *cy pres* is an excessive share of the total relative to direct class recovery, a district court should consider whether to

> urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and *cy pres* awards. For instance, it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund.

*Id.*

As the following chart demonstrates, the allocational problems of this settlement are even more debilitating than those of the now-discredited *Baby Products* agreement.

|  | *Baby Products* | *Poertner* |
|---|---|---|
| Gross settlement fund | $35.5 million | ~ $12 million |
| Direct class benefit | less than $3 million | unknown: likely < $1,000,000 |
| Rule 23(h) request | $14 million | $5.68 million |
| Ratio of attorney recovery to class recovery | about 4.7 | likely between 5.68 and 56.8 (depending on whether class claims total $1 million, $100,000 or somewhere in between) |
| Approximate *cy pres* | $16.5 to $18.5 million | $6 million[14] |
| Ratio of *cy pres* to class recovery | about 6 | likely between 6 and 60 |
| Percentage going to class | about 8% | likely between 7.8% and 0.84% (depending on whether class claims total $1 million, $100,000 |

[14] This is $6 million of in-kind product relief, not monetary relief. It's worth noting that "non-cash relief… is recognized as a prime indicator of suspect settlements" *GM Trucks*, 55 F.3d 768, 803 (3d Cir. 1995).

| | | or somewhere in between) |
|---|---|---|
| Percentage going to attorneys | 39% | likely between 45% and 48% if in-kind relief is valued equal to cash.<br><br>**likely between 85% and 98% of the cash itself** |
| Percentage going to *cy pres* | about 46% - 52% | about 50% |

Here, it should be indisputable that it is feasible to distribute the value of the $6 million in-kind relief to class members instead of *cy pres*. But class counsel did not negotiate for using that fund to compensate class members, either through higher monetary per-claim payouts, or through less rigorous unit claims caps, or through additional product relief whenever a class member makes a claim. Rather, they propose to give that money away to non-class entities in dereliction of their fiduciary obligations.[15]

The bare legitimacy of *cy pres* in the class action context is controvertible with good reason. *See Klier*, 658 F.3d at 480-82 (Jones J., concurring); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 358 (3d Cir. 2010) (Weis, J., concurring and dissenting); *In re Thornburg Mortg., Inc. Secs. Litig.*, 885 F. Supp. 2d 1097, 1105-12 (D.N.M. 2012) (collecting sources); Redish et al., *supra*. Although *cy pres* has been given a narrow berth in the Eleventh Circuit via an unpublished opinion,[16] for the foregoing reasons, settled law requires that this application of *cy pres* be rejected.

---

[15] If it was apathy toward class members or—worse yet—preference for non-class third-parties that drove the decision to prioritize *cy pres* distributions, that casts even further doubt on the adequacy of class representation. *See Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998) ("The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members.").

[16] *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429, 435 (11th Cir. 2012).

IV.    **The identity of the *cy pres* recipients and the substance of their mission is material to the fairness of the settlement; failure to designate specific recipients deprives class members of their rights of notice, exclusion and objection.**

Compounding the infirmity of an overzealous *cy pres* award, neither the class notice nor the settlement informs class members who will be the recipient of the defendant's donations—an omission that deprives absent class members of their rights of notice, objection and exclusion, and the Court of any ability to properly review the settlement. *See* Settlement §61 ("…to charitable organizations, including but not limited to first responder charitable organizations, the Toys for Tots charity, or 501(c)(3) organizations that regularly use consumer batteries…."); *see also* Mem. in Support of Preliminary Approval (Dkt. 114) at 9-10 (adding "American Red Cross" as a possible recipient). Such an omission makes a settlement "unacceptably vague." *Dennis*, 697 F.3d at 867 (reversing approval). "Just trust us. Uphold the settlement now, and we'll tell you what it is later" is not a permissible limiting principle; it is "not how appellate review works." *Id.* at 869. In a case long before *Dennis*, the Second Circuit agreed. *See In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987) (reversing for court's failure to "designate and supervise" "the specific programs that will consume the settlement proceeds."). This Circuit will not "create inter-circuit splits lightly." *Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 n.4 (11th Cir. 1993).

But this Court should not merely conform to *Dennis* and *Agent Orange* to avoid a split, it should follow *Dennis* because *Dennis* is cogent and persuasive. Specifically, disclosure/notice is the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118-125 (2003). "The best notice practicable under the circumstances cannot stop with generalities." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation omitted). "Rule 23…require[s] that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'" *DeLeon v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 91124, at *52 (M.D. Fla. Apr. 20, 2012) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d

1233 (11th Cir. 2012)). *Accord In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 534, 553 (N.D. Ga. 1992) (Notice to the class "must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.").

The identity of the *cy pres* beneficiaries, who are allotted a significant portion of the proceeds of the settlement, is a material element of the relief. If a *cy pres* recipient's identity were simply an immaterial administrative detail, courts would not invalidate distributions on the grounds that the recipient was improperly selected. *See, e.g., Dennis,* 697 F.3d at 866 (9th Cir. 2011) (reversing where proposed charities had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved." (quoting *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1039 (9th Cir. 2011)); *In re Airline Ticket Commission Antitrust Litig.,* 268 F.3d 619, 626 (8th Cir. 2001) (reversing where there was geographic incongruity between location of class members and *cy pres* recipients); *cf. also Day v. Persels & Assocs., LLC,* 729 F.3d 1309, 1314-1315 (11th Cir. 2013) (observing that after an objection, the settling parties "changed the recipient of the cy pres payment from the American Bar Foundation to two organizations with purposes more closely aligned with the members of the class."); *see generally* Sam Yospe, Note, *Cy Pres Distributions in Class Action Settlements,* 2009 COLUM. BUS. L. REV. 1014, 1027-41 (2009). Under Rule 23(e), class members must have notice and a fair opportunity to object to this material aspect of the settlement.

To approve this settlement despite its opacity would be to abdicate [the court's] responsibility to be particularly vigilant of pre-certification class action settlements." *Dennis,* 697 F.3d at 868. An undesignated *cy pres* clause both "restricts the court's ability to conduct the searching inquiry required to approved a distribution" and "deprives class members of notice and the ability to object thereto." *See In re Motor Fuel Temperature Sales Practices Litig.,* 286 F.R.D. 488, 504 (D. Kan. 2012) (following *Dennis* and denying approval).

Moreover, in an opt-out settlement such as this, this information preserves the right of absent class members to distance themselves from causes or institutions that they would rather not

support. A class member has the right not "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977). "*Abood* [*v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977)] and its progeny illustrate that there is linkage enough in being compelled to fund an unsupported cause." *Carroll v. Blinken*, 957 F.2d 991, 998 (2d Cir. 1992). It is for this reason that any conceivable process of down-the-road notification and solicitation of class member objections—a process in no way contemplated or required by the settlement that the parties have proposed—is inadequate to rectify the up-front lack of notice. By the time class members receive the delayed notification, the deadline to opt out of the settlement will have already passed. *Dennis* recognized that a far-off notification, objection and appellate process was no solution. 697 F.3d at 867 ("[E]ncouraging multiple costly appeals by punting down the line our review of the settlement agreement is no solution."); *but see Baby Prods.*, 708 F.3d at 181 (recognizing this as a "nuanced issue" but ignoring *Dennis* and potential deprivation of opt out rights in concluding that "the notice provided to class members …satisfi[ed] the requirements of due process.")

Frank would be remiss not to note that if the parties did settle on their tentative suggestions of Toys for Tots and American Red Cross, that would transgress the "next-best" rule that the recipient approximate the interests of class members and the underlying lawsuit. *See Dennis* 697 F.3d at 865-66; *see also In re Groupon, Inc.,* No. 11-md-2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750, at *36 (S.D. Cal. Sept. 28, 2012) (requiring "an actual connection, not just between the class and cy pres beneficiary, but between the claims alleged in the case and the cy pres beneficiary."). The American Law Institute's position is roughly equivalent. *ALI Principles* §3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class.").

Ultimately though, the immediate problem is that in failing to designate proposed *cy pres* recipients, the parties have again exceeded the narrow berth allowed to *cy pres*. This Court should follow *Dennis* and disallow a *cy pres* clause that makes the settlement "unacceptably vague."

**V.      In the alternative to denying settlement approval, the Court should limit counsel's fees to a reasonable percentage of the amounts actually claimed.**

In the event that the Court overrules Frank's fairness and notice (§III-IV, *supra* & §VI, *infra*) objections, and reaches the question of what counsel award is reasonable under Rule 23(h), Frank asks the Court to substantially reduce the award from that which is sought. It should bear in mind the background principle that "[w]hen the class attorneys succeed in reaping a golden harvest of fees in a case involving a relatively small recovery, the judicial system and the legal profession are disparaged." *Piambino II*, 757 F.2d at 1144 (internal quotation omitted). "[T]he practice of awarding attorneys' fees is one that has been delicate, embarrassing and disturbing for the courts. This embarrassment is rooted in the fact that the bitterest complaints about the legal profession from laymen are directed at the windfall fees and featherbedding that lawyers have managed to perpetuate through their influence with the judiciary." *Id.* (internal quotations, brackets and ellipses omitted). So, "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so. *Id.* (internal quotation omitted). As applied to this case, and some class action practices today, this admonition is prescient.

To minimize the likelihood of unreasonable fee awards, the law of this Circuit requires the use of the percentage-of-recovery method in common fund cases. *See, e.g., Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991) (abuse of discretion to use lodestar rather than percentage-of-recovery method of awarding fees, but lodestar is still permissible in fee-shifting statute cases). This Circuit has adopted the 25% benchmark prevalent in much of the nation: "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case, as opposed to the lodestar hourly fee used in statutory fee awards." *Id.* at 775. The court may adjust the benchmark upward or downward,[17] but it "should articulate specific reasons

---

[17] The 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) are "(1) the time and labor required; (2) the novelty and difficulty of the questions involved;

for selecting the percentage upon which the attorneys' fee award is based." 946 F.2d at 775.

As an "interest-alignment device," a contingency approach like the percentage-of-recovery method "is not perfect…. But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach."). The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, judicial reliance on the lodestar will "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Advisory Committee Notes on 2003 Amendments to Rule 23. As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings. *See supra* §II. Regardless of whether the settlement is structured as a pure common fund, "review of the attorneys' fees component of a settlement agreement is . . . an essential part of its role as guardian of the interests of class members. To properly fulfill its Rule 23(e)[18] duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or

---

(3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases." But no matter how much play these factors are given, the rule is that 85%-98% of the cash recovery or nearly 50% of the entire settlement value is far above the permitted "upper limit." *Camden I Condominium Ass'n*, 946 F.2d at 774-75.

[18] Rigorous oversight of fee awards is now also required by Rule 23(h).

---

delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (constructive common fund); *GM Trucks*, 55 F.3d 768, 819-20 (requiring "a thorough judicial review of fee applications ... in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the  class payment and the attorneys' fees is of little or no interest to the defense'") (constructive common fund). Federal case law, in *Strong, GM Trucks,* and subsequent decisions,[19] has eschewed the unduly formalistic approach that the plaintiffs advance here. Lowe Decl. (Dkt. 114-1) ¶14  (arguing that the fees "will not reduce the level of recovery for Class Members.").

Percentage of recovery is still preferable to lodestar even though this settlement is structured as a constructive common fund, rather than a pure common fund. *GM Trucks*, 55 F.3d at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as the primary determinant.... [P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." Federal Judicial Center, *Manual for Complex Litigation* § 21.7 (4th ed. 2004).

Although we're currently in the dark (*see infra* § VI.A), class counsel may ask for a lodestar-based award. If requested, the court should reject this methodology. It's just inequitable for the class to make pecuniary sacrifices while its counsel does not. As best articulated by the court in *Sobel*, "[c]lass counsel has requested for itself an uncontested cash award based on lodestar…with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." 2011 WL 2559565,

---

[19] *E.g., Pampers*, 724 F.3d 713; *Bluetooth*, 654 F.3d 935.

2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011). Exactly so. Even if class counsel can point to fee shifting statutes underlying some class members' claims here, fee shifting in its platonic form occurs after counsel litigates a case to a successful adjudicated judgment. Needless to say, that did not occur here. Rather, the parties have settled in such a way that creates a constructive common fund. So, while fee shifting statutes may underlie some class members claims in this case, the common benefit doctrine and percentage of recovery approach applies evenly to all class members. As such, the percentage approach is superior.

Moreover, even a modest request relative to base lodestar cannot justify an unfair settlement in which class counsel obtains a disproportionate sum of the proceeds. *See Baby Prods.*, 708 F.3d at 180 n.14 (lodestar multiplier of .37 not "outcome determinative"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (same with multiplier of .32); *Bluetooth*, 654 F.3d at 943 (reversing settlement approval notwithstanding district court's finding that the lodestar "substantially exceed[ed]" the fee requested and awarded). In a consumer action, a lodestar award amounting to a majority of the settlement proceeds is not "reasonable" as mandated by Rule 23(h).

A fee award needs to be attuned to the result actually achieved for the class, to the money the settlement actually puts in class members' hands. *See, e.g., Baby Prods.*, 708 F.3d at 179; *cf.* 28 U.S.C. §1712(a). If this Court endorses a rule that class counsel should be indifferent between a settlement that awards cash directly to class members and a settlement with a restrictive claims process where less than 2% of the class will find it worthwhile to make claims, the parties will always agree to the more burdensome claims process that ensures class counsel extracts the maximum amount of fees and defendants pay the minimum amount of money to settle the case, and the unnamed class members will be left in the cold.

And for this reason the Advisory Committee Notes counsel that the "fundamental focus is the result actually achieved for class members" and advise "defer[ring] some portion of the fee award until actual payouts to the class are known." Notes of Advisory Committee on 2003 Amendments to Rule 23(h); *accord Baby Prods.*, 708 F.3d at 179. Even before Rule 23(h), courts

deferred or staggered fees just so, to account for success or failure of the claims process. *E.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996), *aff'd Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

Admittedly, some courts that have awarded fees on a percentage-of-recovery basis have made this calculation on the basis of the entire fund, not just the amount of the fund that is claimed by the class. *E.g., Boeing v. Van Gemert*, 444 U.S. 572 (1980); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999), *cert. denied* 530 U.S. 1223 (2000).[20]

Nonetheless, this Court should find *Boeing* and *Waters* inapplicable for at least two reasons. **First,** they were superseded by the 2003 amendments to Federal Rule of Civil Procedure 23, which created Rule 23(h), and the passage of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 *et seq.*). *See* Samuel Isaacharoff, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members"). The new rules reflect common-sense intuitions: attorneys' fees should be tied directly to what clients receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to getting money to that class

---

[20] As a threshold matter, even if *Boeing* and *Waters* had vitality here, they would not render the claims data irrelevant. For example, a court may choose to depart downward from the 25% benchmark, due to the class' apathetic reaction that is demonstrated by the absence of claims. *See, e.g., Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *21-*27 (N.D. Ill. Jan. 3, 2014) (reducing 25% benchmark to 9.6% based on low claims rates); *Michel v. Wm Healthcare Solutions*, 2014 U.S. Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) (reducing from 33.3% request to 15% where claims rate was only 3.9%); *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009) (reducing fee request to less than 13%).  Or alternatively, a trial court can in its discretion determine that "a more reasonable fee results from calculating a percentage of the actual recovery." *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993); *Waters*, 190 F.3d at 1296 (reciting the holding of *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998)).

member directly.

Speculative, maximized estimates are not the appropriate measure of benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees."); Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2004) ("In cases involving a claims procedure…, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered."); *see also Pampers*, 724 F.3d at 721 (rejecting settlement-value "assumptions…premised upon a fictive world").

A class member is not indifferent between a $49.3 million common fund that pays $35-$40 million to the class and what we have here: a supposed "overall monetary value" of $49.3 million (*See* Lowe Decl. ¶15. $5.68 million / .115 = $49.3 million) that will eventually yield less than $1 million than to the class. *See Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223 (2000) (O'Connor, J) (respecting denial of certiorari but noting that fund settlements that allow attorney fees to be based upon the total fund may "potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class" and, in turn, "could encourage the filing of needless lawsuits").

**Second,** even before Rule 23(h), *Boeing* and *Waters* never had application where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment." *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 852 (5th Cir. 1998); *Waters*, 190 F.3d at 1296 ("[U]nlike the case at bar, *Strong* never established a "common fund" from which money would be drawn. In contrast, the parties here established that $ 40 million was the fund upon which the amount of the individual claimants' awards would be based.") (internal citation to *Strong* omitted). Given that there is no litigated judgment here, no pure common fund, and no "mathematically ascertainable" maximum payout, even before Rule 23(h) and the Class Action

Fairness Act, *Boeing* and *Waters* would have had no application here.[21]

Make no mistake though, a mere reduction of fees is a distant second-best solution to rejecting the settlement entirely, because it allows for the reversion of monies that the defendant was willing to cede. As *Bluetooth* said, there is "no apparent reason" for that. 654 F.3d at 949.

## VI. Procedurally, the fee request must be denied for violating Fed. R. Civ. P. 23(h) in two further particulars.

### A. The filing of the fee motion two weeks after the objection deadline deprives class members of their 23(h)(1) notice and objection rights.

Newly appended as part of the 2003 amendments to Fed. R. Civ. P. 23, subsection 23(h) recognizes that "[f]ee awards are a powerful influence on the way attorneys initiate, develop, and conclude" actions, and that "[b]ecause members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Advisory Committee Notes on 2003 Amendments to Rule 23. Under the plain language of Fed. R. Civ. P. 23(h)(1), notice of a motion for class counsel attorneys' fees must be "directed to class members in a reasonable manner." Thus, class counsel are required to submit their basis and motion for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010).

Here, objections are due to be filed by February 28, 2014, but the legal basis and evidence in support of the fee request (*i.e.* the fee application) has not yet been filed and is not due until March 14, two weeks after the objection deadline. PAO (Dkt. 118) ¶20. Although the plaintiffs could have redressed the scheduling issue by filing their fee applications (and uploading them to the website) in advance of the objection deadline, they did not do so.

---

[21] If this Court determines that *Boeing* is still good law and is applicable here, Frank wishes to preserve that issue for appeal: he believes that it has been legislatively superseded and that it should, ideally, be judicially reversed.

As a matter of law, this is insufficient notice in violation of Rule 23(h). "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *Mercury Interactive*, 618 F.3d at 993. Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* at 993-94. *See also* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("For motion by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)."). Although the Eleventh Circuit has not weighed in on the question, again, it will not "create inter-circuit splits lightly." *Public Health Trust of Dade Cty., Fla.,* 992 F.2d 291, 295 n.4.

In fact, the only authority Frank is aware of in this district comported with the approach of *Mercury Interactive* and the Advisory Committee Notes. *See DeLeon v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 91124, at *57-*58 (M.D. Fla. Apr. 20, 2012) (quoting Advisory Committee Notes). Even though in that case "[c]ounsel for Plaintiffs [had] filed their initial motion for attorney's fees," the court was troubled that "the proposed…long-form notice [did] not refer to the motion, and [that] there [was] no indication that [the motion would] be made available for review by putative class members." *Id.* at *58.

The lack of notice is actually prejudicial. A failure to file a timely fee motion deprives class members of a chance to analyze any lodestar data that will be presented for crosscheck purposes. Moreover, the clear-sailing clause that class counsel negotiated for themselves means that no one will be able to give the court any guidance as to class counsel's overbilling. The breach of Rule 23(h) unfairly shrouds class counsel's fee request from scrutiny and is cause for denying the request.

**B.      Rule 23(h) does not permit lead counsel to privately divide a lump-sum fee award.**

Settlement ¶63 provides in part that "[a]llocation and sharing of the single fee, cost and expense award as between Class Counsel in this Action and the California Action shall be the

responsibility and obligation of Class Counsel….” Rule 23(h) authorizes the Court to award “reasonable” attorneys’ fees only when notice of the fee request is “directed to class members in a reasonable manner.” Fed. R. Civ. P. 23(h), (h)(1). Again, “active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process.” Notes of Advisory Committee on 2003 Amendments to Rule 23. Yet paragraph 63 impermissibly attempts to delegate the Court’s role to Lead Class Counsel, without any oversight from absent class members.

It is not sufficient that class members are able to make “generalized arguments about the size of the total fee”; the notice must enable them to determine which attorneys seek what fees for what work. *Mercury Interactive*, 618 F.3d 988, 994 (9th Cir. 2010). The fee request in this case lacks basic information; it fails to provide even the bare bones of who seeks what, instead providing a lump sum for Lead Class Counsel to distribute at their sole discretion. This extra-judicial award undermines Rule 23(h)’s policy of “ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.” *Id. Cf. also* Fla. R. Prof. Conduct 1.5(f)(4)(D) and 1.5(g) (explaining heightened thresholds of reasonableness review where two lawyers from different firms attempt to divide legal fees).

As the Fifth Circuit illuminated: “In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys’ fees are reasonable and divided up fairly among plaintiffs’ counsel.” *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). The district court “must not . . . delegate that duty to the parties.” *Id.* at 228 (internal quotation omitted). The appellants in *High Sulfur* complained that the district court had sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: “One cannot compare apples to oranges without knowing what the oranges are.” *High Sulfur*, 517 F.3d at 232.

*High Sulfur* also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves. “It is likely that lead counsel may be in a better position than

the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts.' As Judge Ambro of the Third Circuit had noted earlier, 'They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'" *Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)). Furthermore, given the case at hand, the *High Sulfur* fee agreement is comparatively inoffensive. In *High Sulfur,* at least the district court judge had the fee committee's recommendation available. Here, not only is there no recommendation for the both the Court and class,[22] there isn't even an assurance that class counsel will determine a "fair and reasonable" allocation at some time in the future.

Even long before the implementation of 23(h), at least one court held this unfettered discretion to be improper. In *In re Agent Orange Prods. Liab. Litig*, the Second Circuit "reject[ed] this authority…to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." 818 F.2d 216, 223 (2d Cir. 1987). "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e) and its role of assuring reasonableness in awarding of fees in equitable fund cases." *Id.* The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226.

This Court must inquire whether there is any fee-division agreement between Lead Class

---

[22] The parties can certainly present a suggested allocation to the class and the Court. But what is not permissible is for the parties to divide up the spoils *post hoc*, outside the view of the class and the public, purely according to the whim of class counsel. This way, if an objecting class member thinks X attorney or X firm did a bad job and Y attorney did a particularly good job— maybe they had contacted the attorneys at some point during the proceeding—then they receive notice and can register their objection with the court. That is the proper procedure. Rule 23(h) is the product of a desire for greater oversight, transparency, and "active judicial involvement" in the awarding of fees. Subsequent case law reflects those underpinnings.

Counsel and ancillary class counsel. If so, it must be revealed both to the Court and to the class. Fed. R. Civ. P. 23(h); *see also* Fed. R. Civ. P. 23(e)(3) (requiring the parties seeking approval to file a statement identifying any agreement made in connection with the proposal). This second violation of 23(h) also dictates that the fee request should be denied. At the least, the problem should be ameliorated by awarding each of the firms individual sums rather than allocating a lump sum to class counsel, and by enjoining counsel from redistribution.

## VII.   The parties have artificially burdened the right of objection and opt-out; no positive inference should be drawn from few dissenters.

Almost any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors); *accord* Lynn A. Baker, Michael Perino, & Charles Silver, *Setting Attorneys' Fees in Securities Class Actions: An Empirical Assessment*, 66 VAND. L. REV. 1677, 1692 (2013) (surveying more than 100 securities settlements over a recent four-year period and finding that 62% proceeded without objectors). Another common response from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom.

Class counsel will likely argue that this understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence or even affirmative support for the settlement. This is wrong. Silence is simply *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for

individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *GM Trucks*, 55 F.3d at 812 (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)). Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-81 (7th Cir. 1987).

As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See GM Trucks*, 55 F.3d at 813; Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1561 (2004) ("Common sense dictates that apathy, not decision, is the basis for inaction.").

"[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors that do appear. *GM Trucks*, 55 F.3d at 812-13; *Vought*, 901 F. Supp. 2d. at 1093. "One good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement." *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (sustaining CCAF's client's objection).

Yet more conducive to apathetic inaction, the parties have elected a process of objecting and opting out which is "unnecessarily burdensome." *Newman v. Americredit Fin. Servs.*, No. 11-cv-3041 DMS (BLM), 2014 U.S. Dist. LEXIS 15728, at *17 (S.D. Cal. Feb. 3, 2014) ("The Court is not inclined to approve a settlement which makes it unnecessarily burdensome to submit a claim or opt

out. The class members are required to submit claim forms and opt out requests by mail, although the settlement administrator is obligated to provide a phone number and a website. The only justification offered for the mailing requirement is that the claim forms require an affirmation. Plaintiff does not explain why an affirmation could not be provided through an online form or by phone with adequate identification of the class member.") (internal citations omitted); *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone), *later proceeding reported at* 2013 U.S. Dist. LEXIS 92650, at *10-*11 (W.D. Mo. Jul. 2, 2013) (noting that after the initial settlement rejection "[t]he parties have simplified the opt-out provision so that in order to opt-out, class members need only send a single email to defense counsel.") The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated in 2014. *E.g.*, *Newman*, *supra*; *Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations.").

Rather than requiring class members to snail-mail an objection to five recipients, other courts permit the relatively efficient (indeed, close to costless) method of transmitting objections and exclusions by a single electronic submission. *See e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically"); *Hellum v. Prosper Marketplace, Inc.*, No.: CGC-08-482329 (Cal. Sup. Ct.), *case documents available at* http://www.prosperclassaction.com/ (last visited Jan. 29, 2014).

Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out

electronically than by mail); *Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Jun. 7, 2013), Declaration of Jennifer M. Keough Regarding Settlement Administration (Dkt. 341) at ¶12 (6,884 of 6,946 opt-out requests (99.1%) were submitted electronically via the settlement website when that option was available). *See also* Declaration of Gina Intrepido-Bowden (Dkt. 114-4) ¶23 ("Internet usage is heavy among Duracell Ultra Battery Users—82.5% of Duracell Ultra Battery Users have access to the internet at home using a computer and 83.6% have looked at or used the internet in the past 30 days.").

Preferring a costly, inefficient alternative over affordable, seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members. It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. PITT. L. REV. 727, 766 n. 251 (2008); Leslie, *The Significance of Silence,* 59 FLA. L. REV. at 128-29. Indeed, notice was distributed in large part via the internet and claims forms may be submitted online, yet absent class members' expressions of dissent cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

"One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent opt-out and objection process and ultimately rejecting settlement); *see also DeLeon*, 2012 U.S. Dist. LEXIS 91124, at *63-*65 (M.D. Fla. Apr. 20, 2012) (impugning other unnecessary burdens on the right of opt out). As the head claims administrator for this settlement has previously written, "If class members have the right to opt-out and object, why make them jump through hoops to do so?" Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEO. J. LEGAL ETHICS 1359, 1380 (2005).

Together, these hurdles do not appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out from the class certification. Moreover, the court loses the benefit of valuable adversarial perspectives that objectors can bring to the evaluation of a settlement's fairness.  Not only do the hurdles constitute a reason to reject the settlement in this case, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

## CONCLUSION

The foregoing objection is one of the longest that the Center for Class Action Fairness has ever filed, for which there is good reason. This objection has identified several independent reasons why this settlement should be rejected under Rule 23. Barring that, the fee request must be denied for now as non-compliant with Rule 23(h), or at the very least reduced and individuated in accordance with Rule 23(h).

Dated:  February 27, 2014                    Respectfully submitted,


                                             */s/ Adam E. Schulman*
                                             Adam E. Schulman (admission *pro hac vice* pending)
                                             D.C. Bar No. 1001606
                                             CENTER FOR CLASS ACTION FAIRNESS
                                             1718 M Street NW, No. 236
                                             Washington, DC 20036
                                             Telephone:  (610) 457-0856
                                             Email:  shuyande24@gmail.com

                                             */s/ Benjamin C. Haynes*
                                             Benjamin C. Haynes
                                             Florida Bar No. 91139
                                             HAYNES & ASSOCIATES
                                             790 Oakland Hills Circle
                                             Lake Mary, Florida 32746
                                             Telephone: (509) 432-1751
                                             Email:  haynesbenjaminc@aol.com


                                             *Attorneys for Theodore H. Frank*

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing document and accompanying exhibits through the Court's ECF system, which has effectuated service of this Objection upon the following all attorneys of record in this matter

Additionally, I caused to be served via overnight courier service a copy of this Objection of Theodore H. Frank and accompanying exhibits upon the following:

| | |
|---|---|
| E. Clayton Lowe<br>THE LOWE LAW FIRM, LLC<br>301 19th Street North<br>Suite 525<br>Birmingham, Alabama 35203 | Darren K. Cottriel<br>JONES DAY<br>3161 Michelson Drive, Suite 800<br>Irvine, California 92612 |
| Dennis Pantazis<br>Joshua R. Gale<br>WIGGINS, CHILDS, QUINN & PANTAZIS, LLC<br>101 N. Woodland Blvd., Suite 600<br>Deland, Florida 32720 | Robert C. Schubert<br>Miranda P. Kolbe<br>Noah M. Schubert<br>SCHUBERT, JONKHEER & KOLBE LLP<br>Three Embarcadero Ctr., Suite 1650<br>San Francisco, CA 94111-4018 |
| Poertner Claims Administrator<br>PO Box 43224,<br>Providence, RI 02940-3224. | Wendy L. Young<br>4430 W. Fairmount Ave.<br>Lakewood, FL 32801 |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2014

*/s/ Benjamin C. Haynes*
Benjamin C. Haynes