# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| JOSHUA D. POERTNER, *et al.*,<br><br>       Plaintiffs,<br>  v.<br><br>THE GILLETTE COMPANY and THE PROCTER & GAMBLE COMPANY,<br><br>       Defendants.<br><br>Theodore H. Frank,<br>       Objector. | Case No. 6:12-cv-00803-GAP-DAB |

## DECLARATION OF THEODORE H. FRANK
## IN SUPPORT OF
### Objection to Class Settlement in *Poertner v. The Gillette Company, et al.*

Adam E. Schulman (*pro hac vice* pending)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

Benjamin C. Haynes
Florida Bar No. 91139
HAYNES & ASSOCIATES
790 Oakland Hills Circle
Lake Mary, Florida 32746
Telephone: (509) 432-1751
Email: haynesbenjaminc@aol.com

*Attorneys for Objector Theodore H. Frank*

## DECLARATION OF THEODORE H. FRANK
## IN SUPPORT OF OBJECTION

I, Theodore H. Frank, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My business address is 1718 M Street NW, No. 236, Washington, DC 20036. My telephone number is (703) 203-3848. My email address is tedfrank@gmail.com.

### I Am A Member Of The Settlement Class.

3. I have reviewed the settlement class definition: "All Persons in the United States (including U.S. territories and Puerto Rico) who purchased AA or AAA Duracell brand Ultra Advanced and/or Ultra Power batteries at Retail from or after June 2009, excluding those who purchased the batteries for resale or distribution to others." I understand that I am a member of the settlement class. None of the exclusions in the settlement class apply to me; I have not opted out; I have never settled with the defendants any dispute relating to batteries.

4. On January 3, 2014, I purchased a package of Ultra Power AA batteries from Amazon.com, for my household use in Houston. A true and correct copy of the receipt is attached as Exhibit 1. A true and correct copy of a photo of the front of the package that I took on February 19, 2014, is attached as Exhibit 2. I also photographed the serial number on the back of the package the same day, and a true and correct copy of that photo is attached as Exhibit 3.

5. Like most sane people, I did not save receipts for batteries nor empty battery packages, except by the happenstance that my purchase from Amazon emailed me a receipt. However, during the class period my household or I purchased AA batteries at Costco in Arlington, Virginia between 2009 and 2012; Home Depot in Seven Corners, Virginia between 2009 and 2012; and Walmart in Fairfax, Virginia between

2012 and 2013. I may have also purchased AA batteries during the class period at a mom-and-pop convenience store on Monroe St. in Arlington, Virginia between 2009 and 2012; a now-closed Office Depot in Falls Church, Virginia in 2009; and at supermarkets in Arlington, Virginia, and Fairfax, Virginia. At least some of these batteries were not Duracell Ultra batteries; I tend to buy Duracell batteries, though I occasionally also buy Energizer batteries; I don't know for sure how many packages were Duracell Ultra, though I believe I purchased at least two during the class period. One or more of those packages may have been AAA batteries.

6. On February 19, 2014, I submitted a claim form at the settlement website in this case. I made a claim for only two purchases of Duracell Ultra, because I only had documentation for a single purchase. I did upload Exhibits 1 through 3 as part of the claims process. Because the Amazon.com order was for my Houston address, I used my address of 1302 Waugh Drive, Number 830, Houston, TX, 77019 for my claim form. My claim number was 639781601. A true and correct copy of the receipt for my claim is attached as Exhibit 4. The receipt does not accurately record my entry for what I used the batteries for: I use batteries for at least one remote control, my Xbox 360 controllers, and, at one point during the class period, for a battery-powered Bluetooth keyboard. I do not currently use a Bluetooth keyboard.

7. I note that I did not run across the notice for this class action settlement except by the coincidence that my attorney, Adam Schulman, regularly reviews pending class action settlements. Several of the vendors where I purchase batteries, including Amazon, use loyalty cards or other customer records that let them know who has purchased Duracell Ultra, but I did not receive any individualized notice in this case. If not for Mr. Schulman, I would not have known to make a claim in this case.

8. On or about January 27, 2014, I asked a junior attorney with the Center for Class Action Fairness, Lew Olowski, to find local counsel in Florida in case I decided to pursue an objection in this case. Mr. Olowski found such an attorney, and he sent me a

proposed retainer on February 14, 2014. On February 19, 2014, I made a final decision to go ahead with the objection, and signed the retainer agreement with Mr. Haynes.

9. The specific grounds of my objection are identified in my attorneys' filings in this case.

## I Have Previously Successfully Objected In Cases

10. I am a graduate of University of Chicago Law School; a member of the Illinois, California, and District of Columbia bars; a former clerk for a judge on the U.S. Court of Appeals on the Seventh Circuit; and a member of the American Law Institute.

11. In 2009, I founded the non-profit Center for Class Action Fairness. It is currently a 501(c)(3) public-interest law firm with four attorneys. In an August 2013 *New York Times* article discussing two of the Center's cases, Mr. Adam Liptak called me "the leading critic of abusive class-action settlements."

12. I bring this objection for the benefit of consumers and the class as a whole. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of *Consumer Reports* from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood dream of being a consumer advocate.

13. A "professional objector" is one who brings objections in the hopes of extracting a *quid quo pro* payment to withdraw the objection or appeal of the objection's denial. By that legal definition, I am not a "professional objector," as I have never settled an objection for payment. I bring this objection in good faith. If this Court has any skepticism about my motives, I am happy to stipulate to an injunction forbidding me from seeking compensation for settling my objection at any stage without court approval.

14. I have indeed brought multiple objections and represented clients *pro bono* in multiple cases where they objected to unfair class action settlements; so has my attorney, Mr. Schulman. But we have won the majority of those objections, and the majority of appeals that we have argued that have been decided. In the process, the Center and I have improved recovery for class members by tens of millions of dollars.

15. The difference between a "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a meritless objection. The Center for Class Action Fairness objects to only a small fraction of the number of unfair class action settlements it sees; indeed, I personally object to only a fraction of the number of unfair class action settlements where I am a class member. (While one district court called me a "professional objector" in the broader sense, that court made clear that it was not meant pejoratively, and awarded me fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012).)

16. In my experience, class counsel frequently try to detract from the legal merits of my objections by accusing me of only bringing objections to seek fees. It is unclear why this is meant to discredit my objections any more than it discredits plaintiffs' case that their attorneys seek fees. In any event, the claim is false. The Center has only made federal fee requests when we have achieved a material pecuniary improvement in the class's position with our objections, and we have never been denied fees when we asked for them. Moreover, though non-profits are permitted to request

attorneys' fees, all of our fee requests are constrained by federal tax law, which caps the amount of fees we can receive in any tax year to a fraction of our total expenses. We will not seek fees in this case unless our objection results in new money coming to the class in a new settlement, and then our fee request, if any, will be a single-digit percentage of that money. On more than one occasion, we have declined to seek fees when other objectors have, or have donated our fees to the class. *E.g.*, *In re Classmates.com*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012).

17.     In my experience, class counsel frequently try to detract from the legal merits of my objections by falsely accusing me or my organization of a goal to "end class actions, not improve them." The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, and I have never asked for an end to the class action, just proposed reforms for ending the *abuse* of class actions and class-action settlements; I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN 1 this month. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food.

18.     In my experience, class counsel frequently try to detract from the legal merits of my objections by misquoting half of a single sentence in *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773, 785 (N.D. Ohio 2010) that alleged that an argument I made against "kicker" clauses was "long on ideology and short on law." It is worth noting that *Lonardo* was criticizing only one particular argument as "ideolog[ical]"; it otherwise held that "Frank's policy arguments contribute to the legal discussion regarding this important area of law," and awarded fees to my client based on the $2 million benefit to the class caused by the objection. Most importantly, I ultimately won the argument: the Ninth Circuit agreed with me and disagreed with *Lonardo* on the

question of whether "kicker" arrangements where fees from a separate fund revert to the defendant are improper. *Contrast In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) *with Lonardo*, 706 F. Supp. 2d at 785. Even if it were true in 2010 that my argument in *Lonardo* against the kicker was "short on law," it is not true now that that same argument has persuaded the Ninth Circuit.

19.     I have repeatedly seen class counsel in other cases attempt to discredit my objections by claiming that the objections are "ideological." I fail to see why that is relevant, but I believe that the primary beneficiaries of class actions are supposed to be the class members, and that class actions are harmful to society when they are structured to benefit the attorneys instead. This may be "ideology," but I think it's inherent in the nature of fiduciary duty to one's clients and the constitutional requirement of adequate representation. Fortunately, the appellate courts I have argued in front of have agreed with this "ideology." *See, for example, In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178, 179 (3d Cir. 2013).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 25, 2014, in Houston, Texas.

_____
Theodore H. Frank