# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

### Case No. 6:12-CV-00803-GAP-DAP

JOSHUA POERTNER, on behalf of himself and
all others similarly situated,

       Plaintiffs,

v.

THE GILLETTE CO. and THE PROCTER &
GAMBLE CO.,

       Defendants.

_____/

### OBJECTION TO SETTLEMENT AND ATTORNEYS' FEES
### AND NOTICE OF INTENTION TO APPEAR

NOW COMES Class member Robert Falkner, 20826 Almar Drive, Shaker Heights, Ohio 44122, tel. # 216-991-4589, and objects to the proposed settlement of this class action and the request for attorney's fees.  Mr. Falkner is a class member and has not opted out of this Settlement.  Mr. Falkner purchased Duracell Ultra Batteries at "Marc's Grocery" in South Euclid, Ohio, and/or Loews in Bedford Heights, Ohio, on 2-4 occasions between 2010-2012.  *See* Declaration of Robert Falkner filed herewith.

**I.      Class Counsel Violated Rule 23(h) and Class Members' Due Process Rights By Failing to File Their Motion for Attorneys' Fees Before The Objection Deadline.**

Fed. R. Civ. P. 23(h) provides:

(1) *Motion for Award of Attorney Fees*.  A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court.  Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) *Objections to Motion*.  A class member, or a party from whom payment is sought, may object to the motion.

(3) *Hearing and Findings*.  The court hay hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).

This rule requires reasonable notice of "*the motion*" to all class members, as established

by federal courts of appeal.  *See, e.g.*, *In re: Mercury Interactive Corp. Sec. Litig.*, 618

F.3d 988, 993-994 (9th Cir. 2010).

> The plain text of the rule requires a district court to set the deadline for
> objections to counsel's fee request on a date after the motion and
> documents supporting it have been filed.... The plain text of the rule
> requires that any class member be allowed an opportunity to object to the
> fee "motion" itself, not merely to the preliminary notice that such a motion
> will be filed.  In this case, although notice of the motion was provided to
> the class, class members were deprived of an adequate opportunity to
> object to the motion itself because, by the time they were served with the
> motion, the time within which they were required to file their objections
> had already expired.

*Id*.

In the context of a settlement in which Class Counsel are seeking $5.68 million

for a case that lasted a little over two years, and that settled for a very low maximum

claim amount with a claim form requirement, the need for close scrutiny of Class

Counsel's motion for fees and all supporting documents is heightened.  All that class

members were told in the notice is that Class Counsel would seek $5.68 million, and that

this amount would be paid separately by the Defendants, without any basis for such a request. Class members were not informed of any of the legally relevant information, such as the amount of class counsel's lodestar, or the amount of money that Defendants will pay to class members who file claims.

Because Class Counsel did not file their fee motion before fee objections were due, and never directed reasonable notice of their fee motion to all class members, the Court is without authority to approve any fee award, and will be without any such authority until and unless Rule 23(h) is complied with. This is apparently a case of first impression in the Eleventh Circuit, as no case within this Circuit has cited to *In re Mercury Interactive, supra.*

**II.     Class Counsel's Requested Fee Is Unreasonable
         Relative to The Likely Class Benefits.**

Class Counsel has requested a fee of $5.68 million for a settlement that is likely to deliver less than $100,000 to class members. *See Sylvester v. Cigna*, 369 F. Supp. 2d 34, 52 (D. Me. 2005)( experience shows that fewer than 10% of class files a claim). In this claims-made settlement, class members are able to file claims for a maximum of $12, if they have retained documentation of their purchases, or a maximum of $6, if they have not. Since very few class members will have retained receipts, the vast majority of class members are capped at $6. Few people will go the trouble of submitting a claim for an amount so small, as the parties are well aware. Therefore, it would be remarkable if more than $100,000 of settlement benefits are paid to those class members who take the time to submit claim forms for such minimal benefits.

The $6 million worth of Duracell products that Duracell will donate to charitable organizations should not be counted as part of the settlement fund. This amount will not

be paid to class members or to the next best recipient that stands in the class members' shoes.  The charitable organizations have not been identified, and will presumably be chosen by Duracell.  In addition, the products that Duracell donates are likely to be old battery stock that has lost much of its potency, and is therefore unable to be sold at retail.  In any event, these payments will not in any way compensate the class members, who have already sustained damages, but instead will be paid to arbitrary organizations who have no relationship to the class members.

Even if the so-called cy pres product donations were to be considered as part of the settlement consideration, and even if these products were to be valued at full retail value despite the age of the products, class counsel's fee request would still be 48% of the total settlement, well in excess of any percentage fee ever approved in this Circuit.  If the total value of the settlement is $6.1 million ($6 million in cy pres and $100,000 in claims filed), then the maximum reasonable fee award would be $2.03 million, or 33% of $6.1 million.

Federal courts value claims-made settlements based upon the value of benefits actually claimed by class members.  *See e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (Hornby, J.) ("Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement... I have determined to delay award of attorney fees **until experience shows how many vouchers are exercised and thus how valuable the settlement really is.**");  *In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (same).

In valuing a settlement, the Court should look to the actual claims rate.  *See*

*Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist LEXIS 5040 (N.D. Cal. January 18, 2008)

(referring to parties' valuation based on assumed 100% claims rate as "fiction" and

"fantasy," and awarding fee of 25% of claimed benefits).  *See also Managing Class*

*Action Litigation*: *A Pocket Guide for Judges*, Federal Judicial Center (3rd Ed. 2010)

(attached hereto as *Exhibit B*):

### A. *Evaluating monetary and nonmonetary results achieved*

The 2003 Committee Note to Rule 23(h) gives the following guidance for determining attorney fees based on the creation of a monetary fund for the common benefit of the class: the "fundamental focus is the result actually achieved for class members."
In cases involving monetary benefits, do not be misled by party valuations of the settlement that presume a 100% claims rate by class members. Insist on actual information on claims filed to determine the benefit to class members and use that information both to place a value on the settlement and to award attorney fees, as the district judge did in *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 50–53 (D. Me. 2005). That value—plus the value of any nonmonetary relief—serves as the starting point for applying the percentage-of-value method in determining appropriate attorney fees (discussed below).

Likewise, in cases in which the benefit to the class is nonmonetary (coupons, discounts, warrants, and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits. **Redemption data or other evidence of class use is essential.** In some cases, particularly settlements involving injunctive or declaratory relief, you might use expert valuations based on reliable, objective standards. In other cases, perhaps a majority, the only reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other nonmonetary scrip. *See* MCL 4th § 21.71; *see also* Class Action Fairness Act, 28 U.S.C. § 1712(a) (2008) (coupon settlements). **In such cases, it is especially important to link the amount of any attorney fees with the actual benefit to the class.**
A direct way to ensure that you have sufficient information to determine attorney fees in cases with nonmonetary benefits is simply to hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period

has ended and the value of the benefits can be established by calculating class members' actual use. For example, the court expressly reserved the determination of any attorney fees to be paid to plaintiffs' counsel until after the parties had provided the court with information concerning the distribution of benefits in *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167 (W.D. La. 1997), *aff'd,* 137 F.3d 844, 848 (5th Cir. 1998). Note that redemption of a coupon does not automatically mean the member received a benefit. If similar discounts are provided to consumers outside of the class, the benefit to the class might be less than the face amount of the coupon—or perhaps no benefit at all.

To align plaintiff counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, consider linking the award of attorney fees to the value of the funds distributed to the class or the coupons redeemed by the class (see section V.B, below).

*See* Pocket Guide, attached hereto as *Exhibit B*, at pp. 33-34 (emphasis added).

In *Boeing v. Van Gemert*, 444 U.S. 472 (1980), a case that Class Counsel may try to rely on, the district court entered judgment in a sum certain, and all each class member had to do to in order to claim his or her share was to submit proof of identity.

> In this case, the named respondents have recovered a determinate fund for the benefit of every member of the class whom they represent... Nor does Boeing contend that any class member was uninjured by the company's failure adequately to inform him of his conversion rights. Thus, the damage to each class member is simply the difference between the redemption price of his debentures and the value of the common stock into which they could have been converted. To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class.

*Id*. at 479-480.

Therefore, the *Boeing* holding is hardly "black letter law" for this case. Instead, this is the kind of case addressed at footnote 5 of the *Boeing* opinion -- "a class-action judgment that simply requires the defendant to give security against all potential claims" – which means that it is governed by those cases that index fees to the value of the settlement benefits actually claimed by the class.

No one can say at this point how many class members will file claims, or how much money Defendants will ultimately pay to class members.  An award of $5.68 million in fees will vastly *exceed* the value of benefits that Defendants will ultimately pay to the class, rather than being a reasonable percentage of that value.  Indeed, it could be fifty or more times greater than the amount that will ever be paid to eligible class members.

This is a settlement where the amount that Defendants will ultimately pay to class members cannot be known until the end of the claims period.  In such cases, federal law dictates that an award of fees be contingent upon the amount of benefits actually claimed.

In addition, district courts in the Eleventh Circuit have routinely employed a lodestar cross-check for guidance in assessing the reasonableness of a percentage fee award.  *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) (finding that multiplier of 1.45 does not require higher percentage award, in case settled for $110 million); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (approving lodestar multiplier of 1.2 in $4.25 million settlement).

The first factor set forth in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), is "the time and labor required." *Id*. at 772.  In this Circuit, that factor has been interpreted to mean the number of hours that class counsel spent on the case – in effect, a lodestar cross-check.  Class counsel have failed to provide their lodestar figure to the class members, making it impossible to assess the reasonableness of their fee request. While class counsel's fee should be based primarily on the amount of settlement benefits claimed by class members, a lodestar cross-check may reveal an additional reason to limit class counsel's fee to an amount less than $2 million.

Courts in this Circuit have held that a lodestar multiplier of 1.45 is adequate. *See Sunbeam, supra*, 176 F. Supp. 2d at 1336. The only appropriate way to set a percentage fee in a case of this magnitude, and such short duration, is to require the percentage to be informed by the first *Camden I* factor – the time and labor required – which class counsel has improperly failed to quantify.

**III.     The Amount That Gillette Has Agreed To Pay To Class Counsel Could Have Been Paid To The Class.**

Gillette's agreement to pay unreasonable attorneys' fees to class counsel calls into question the fairness of the settlement, since "if fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members..." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). That benefit here is the claims filing requirement and the very low cap on maximum claims. If class counsel had agreed to accept a reasonable fee for their work on this case with very modest results, perhaps class members could receive payments of $6 per package of Ultras, with an upper limit of four packages, or $24, with no documentation. This would have made it likely that more class members would file claims.

## CONCLUSION

For the foregoing reasons, this Court should (1) DENY any award of attorneys' fees to class counsel until class counsel has directed reasonable notice of its fee motion to every member of the class in compliance with FRCP 23(h); (2) award class counsel no more than a reasonable percentage of the amount of money actually paid to class members who file claims.

_____
Robert Falkner

Respectfully submitted,

*s/ Brian M. Silverio*
Brian M. Silverio
FL Bar #0183301
Silverio & Hall, P.A.
150 West Flagler Street
Penthouse - 2850
Miami, Florida 33130
(305) 371-2756
(305) 372-2744 (Fax)
bsilverio@silveriohall.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on February 28, 2014 and was filed with the Clerk of Court using CM/ECF, and that as a result a copy of this filing has been served upon every counsel of record.

*/s/ Brian Silverio*

## CONCLUSION

For the foregoing reasons, this Court should (1) DENY any award of attorneys' fees to class counsel until class counsel has directed reasonable notice of its fee motion to every member of the class in compliance with FRCP 23(h); (2) award class counsel no more than a reasonable percentage of the amount of money actually paid to class members who file claims.

_____
Robert Falkner

Respectfully submitted,

_s/ Brian M. Silverio_
Brian M. Silverio
FL Bar #0183301
Silverio & Hall, P.A.
150 West Flagler Street
Penthouse - 2850
Miami, Florida 33130
(305) 371-2756
(305) 372-2744 (Fax)
bsilverio@silveriohall.com