# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **JOSHUA D. POERTNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | CASE NO. 6:12-CV-00803-GAP-DAB |
| | ) | |
| **THE GILLETTE COMPANY, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS' RESPONSE TO OBJECTIONS TO

## FINAL APPROVAL OF CLASS SETTLEMENT

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................ 1

DISCUSSION .................................................................................................... 2

I.     THE COMPENSATION TO THE CLASS IS FAIR AND REASONABLE. ............... 2

    A.     Cash Payments to Class Members Generally Equal or Exceed What They Could Have Recovered Per Package if the Case Were Tried. .................................2

    B.     The Limit on the Number of Packages Individual Class Members May Claim is Reasonable.............................................................................7

    C.     The Fairness and Adequacy of the Compensation to the Class Does Not Depend on How Many Claims are Made.................................................9

    D.     The Additional Forms of Recovery Provided by the Settlement Further Support the Adequacy of the Settlement. ...............................................12

        1.     The Injunctive Relief is a Valuable Benefit to the Class. ............................ 12

        2.     The In-Kind Payments Also Benefit Class Members. ................................ 13

II.    THE NOTICE TO THE CLASS WAS FULLY ADEQUATE. .................................. 15

    A.     The Notice to Spanish Speakers Was Adequate, Albeit Unnecessary..................15

    B.     The Website Address Was Correct. .....................................................16

III.   THE PROCEDURES FOR OPTING OUT OR OBJECTING ARE REASONABLE.  17

IV.    THE CLASS DEFINITION IS PROPER. .................................................... 18

CONCLUSION .................................................................................................. 19

## TABLE OF AUTHORITIES

**Page**

CASES

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y 2001) .................................................................................19

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ....................................................................................4

*Bruno v. Quten Research Inst., LLC*,
  Case No. CV 11-00173 DOC, 2013 U.S. Dist. LEXIS 35066 (C.D. Cal. March 13,
  2013) ...........................................................................................................................8

*Cohen v. Implant Innovations, Inc.*,
  259 F.R.D. 617 (S.D. Fla. 2008) .................................................................................5

*Courtney v. Welch Foods, Inc.*,
  No. 8:10-cv-01427, ECF No. 27 ...............................................................................12

*Date v. Sony Elecs., Inc.*,
  No. 2:07-cv-15474, ECF No. 45 ...............................................................................12

*DeLarosa v. Borion, Inc.*,
  No. 8:10-cv-01569, ECF No. 318 .............................................................................12

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) .......................................................................7

*Hot Wax, Inc. v. S/S Car Care*,
  Case No. 97-cv-6879, 1999 U.S. Dist. LEXIS 16444 (N.D. Ill. Oct. 13, 1999).....................13

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013)........................................................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................................7

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) ......................................................................................6

*In re Ferrero Litig.*,
  Case No. 11-cv-205, 2012 U.S. Dist. LEXIS 15174 (N.D. Cal. Jan. 23, 2012).....................17

*In re Ferrero Litig.*,
    Case No. 11-cv-205, 2012 U.S. Dist. LEXIS 94900 (S.D. Cal. July 9, 2012) ......................13

*In re Livingsocial Mktg. and Sales Practices Litig.*,
    MDL No. 2254, 2013 U.S. Dist. LEXIS 40059............................................................10

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    MDL No. 1532, 2011 U.S. Dist. LEXIS 40843 (D. Me. April 13, 2011) ...............10

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litigation*,
    Case Nos. 05 C 4742, 05 C 4744, 2012 WL 1015806 (N.D. Ill. Mar. 22, 2012) .....................5

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y. 2000).........................................................................14

*In re Tyson Foods Inc.*,
    Case No. RDB-08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11, 2010) .............8, 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................16

*In re Wal-Mart Stores, Inc.*,
    Case No. 06-02069 SBA, 2008 U.S. Dist. LEXIS 109446, at *17 (N.D. Cal. May 2, 2008). .....................................................................................................................19

*Kelly v. Phiten USA, Inc.*,
    277 F.R.D. 564 (S.D. Iowa 2011)..........................................................................8

*Lagarde v. Support.com, Inc.*,
    No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ..................10

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ("California courts have recognized that . . . a consumer who was never exposed to an alleged false or misleading advertising . . . campaign [cannot] recover damages")........................................................................5

*Montgomery v. New Piper Aircraft, Inc.*,
    209 F.R.D. 221 (S.D. Fla. 2002)............................................................................5

*Nigh v. Humphreys Pharm., Inc.*,
    Case No. 12-cv-2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215 (S.D. Cal. Oct. 23, 2013) .....................................................................................................................8

*O'Shea v. Epson America, Inc.*,
    Case No. CV 09-8063 PSG, 2011 U.S. Dist. LEXIS 105504 (C.D. Cal. Sept. 19, 2011).........................................................................................................................5

*Pearson v. NBTY, Inc.*,
   No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014)...............................10, 12

*Pom Wonderful LLC v. Purely Juice, Inc.*,
   Case No. 07-cv-02633, 2008 U.S. Dist. LEXIS 55426 (C.D. Cal. July 17, 2008)..................13

*Redman v. Radioshack Corp.*,
   Case No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880 (N.D. Ill. Feb. 7, 2014).........................10

*Rossi v. Proctor & Gamble Co.*,
   No. 2:11-cv-07238, ECF No. 69..........................................................................................12

*Shames v. Hertz Corp.*,
   Case No. 07-cv-2174, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012)..............4, 10

*Spillman v. RPM Pizza, LLC*,
   No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) .................10

*Touhey v. United States*,
   Case No. CV 08-01418, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. July 25, 2011) ...............10

*Trollinger v. Tyson Foods, Inc.*,
   Case No. 02-cv-00023, 2007 U.S. Dist. LEXIS 88866 (E.D. Tenn. Dec. 3, 2007).................19

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007).............................................................................................14

*Wilson v. Airborne, Inc.*,
   Case No. CV 07-770-VAP, 2008 U.S. Dist. LEXIS 110411 (E.D. Cal. Aug. 13,
   2008) .....................................................................................................................................8

## STATUTES

Class Action Fairness Act...........................................................................................................1

## RULES

Rule 23 ............................................................................................................................2, 12, 15

## **INTRODUCTION**

The parties settled this case after months of difficult, hard-fought negotiations facilitated by a respected court-appointed mediator.  The settlement provides cash compensation to the class that rivals or exceeds what they could obtain if the case were fully tried.  It also provides injunctive relief and in-kind payments.  As required by the Class Action Fairness Act, notice of the settlement and its terms was given to the attorneys general of all 50 states.  None of these attorneys general has objected to the settlement.

A handful of individuals, however, have objected.  Their largely boilerplate objections say little about the actual substantive terms of the settlement.  In particular, they are virtually silent on the value of the cash compensation the settlement provides to the class. They do not seriously argue that the payments offered are not reasonably related to the value of the asserted claims.  Nor could they.  As discussed below, the cash compensation offered per package of batteries is roughly equal to (or only slightly less than) what the class member would recover if the case were tried and the class fully prevailed on its claims.  There is no overall limit on the number of claims that will be paid—every class member who submits a valid claim will receive payment of the full per-package amount offered.  And the limits on the number of packages for which individual class members may make a claim is consistent with the number of packages consumers typically purchased.  A settlement that provides essentially full compensation to class members can hardly be said to be unfair or inadequate.

And that is especially true when the risk of plaintiffs not prevailing at trial is considered, as it must be.  As shown in Duracell's opposition to class certification, Duracell has strong defenses in this case—to class certification, to liability for false advertising, and to

plaintiffs' asserted measure of damages.  None of the objectors say a word about any of this. Their objections are written as though the class members faced no risk of loss.  The settlement, however, was just that—a compromise of disputed claims in which the class members obtained a guaranteed cash payment while avoiding the risk of losing on class certification or at trial and receiving nothing.  This relief will be afforded immediately, avoiding the substantial delay that would likely result if the case were to proceed through trial and appellate review.  When the risk of loss and delay is taken into account, the available cash amounts are by themselves sufficient to sustain this settlement, even without considering the additional value provided by the injunctive relief and in-kind payments.

The objectors' other assorted arguments are likewise groundless.  The notice to the class was comprehensive and in full compliance with Rule 23 and constitutional requirements.  And class members were afforded a reasonable and fair opportunity to file objections or opt out.  In short, this settlement fully satisfies the requirements to be fair, reasonable and adequate.  The Court should accordingly grant final approval.

**DISCUSSION**

I.    **THE COMPENSATION TO THE CLASS IS FAIR AND REASONABLE.**

     A.    **Cash Payments to Class Members Generally Equal or Exceed What They Could Have Recovered Per Package if the Case Were Tried.**

Plaintiffs' theory is that they are entitled to a full refund of the difference in price between CopperTop batteries and the more expensive Ultra batteries.  The price differential depends on where the battery was sold and the type of battery, as summarized in the following chart:

|  | **AA BATTERIES** | **AAA BATTERIES** |
|---|---|---|
| Avg. Pack at Retail (excluding Costco) | 8 cells | 8 cells |
| Avg. Per Cell Retail Price Differential (excluding Costco) | $0.39 | $0.41 |
| Avg. Price Differential Per Average Pack Size (excluding Costco) | $3.12 | $3.28 |
| Pack Size at Costco | 16 or 30 cells | 16 cells |
| Avg. Per Cell Retail Price Differential at Costco | $0.13 | $0.06 |
| Avg. Price Differential Per Pack at Costco | $2.08 (16-pack) / $3.90 (30-pack) | $0.96 |
| Percentage of Packs Purchased at non-Costco Retail Stores vs. Costco | 89% non-Costco / 11% Costco | 95% non-Costco / 5% Costco |

As the highlighted portions show, for well over 90% of class members, the $3.00 per package cash payment available under the settlement exceeds or roughly equals the maximum per-package the class member could have recovered if the case had gone to trial and plaintiffs had prevailed to the full extent of the claims. For the remainder, the cash available is only slightly less than that maximum amount. And, because the settlement does not impose any overall limit on the number of packages for which this compensation will be paid, every class member who submits a valid claim will receive payment in this amount. By that measure alone, the compensation to the class is reasonable.

The reasonableness of the compensation, however, is not determined simply by the maximum amount the class could recover if plaintiffs were to prevail. Instead, it must also take into account the risk that plaintiffs would not prevail (or not prevail to the full extent of

their damage claim). *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (district court must consider, among other factors, "the likelihood of success at trial ... [and] the complexity, expense and duration of litigation"); *Shames v. Hertz Corp.*, Case No. 07-cv-2174, 2012 U.S. Dist. LEXIS 158577, *15-16 (S.D. Cal. Nov. 5, 2012) ("Court must balance against the risks of continued litigation (including the strengths and weaknesses of Plaintiffs' case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery."); *Id.* at *20 ("Thus, district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be fair and reasonable, especially when taking into account the uncertainties involved with litigation.").

Under that measure, the settlement's reasonableness is beyond question.  Plaintiffs faced multiple, significant hurdles to prevailing on their claim, all of which were avoided by their settlement.

*First*, plaintiffs faced a significant risk of not obtaining class certification.  Duracell's opposition to class certification (ECF No. 73) showed that a large number of Ultra battery packages contained no representation at all regarding expected battery life.  Other packages compared the Ultras only to prior Ultra Digital batteries, and not to CopperTops.  The absence of the challenged representation on such a large percentage of the packages created a significant hurdle to class certification, as it gave rise to important individual issues regarding which class members were exposed to the allegedly misleading statements, if at all.  The only

way to determine which class members purchased which battery packages would be an individual-by-individual inquiry.[1]

*Second,* assuming a class was certified, plaintiffs would have had to prove at trial that the Ultra batteries did not in fact last longer.  As Duracell showed in opposition to class certification, its extensive, contemporaneous performance testing established that, as advertised, the Ultra Advanced batteries do in fact last up to 30% longer in toys as compared to the Ultra Digital batteries, and that both Ultra Advanced and Ultra Power are in fact Duracell's longest lasting alkaline batteries, outlasting the CopperTop batteries by approximately 4% on a weighted average basis.  Murguia Decl. ¶¶ 15, 16 (ECF No. 78). This evidence posed a significant risk that plaintiffs would lose on the merits at trial and that they and the class would recover nothing.

*Finally,* plaintiffs faced the risk that they would not be able to prove any recoverable damages or that the damages would be much less than the full price differential between CopperTops and Ultras.  Beginning in October 2009 (shortly after the class period began), Ultra batteries came with PowerCheck, a valuable feature on each battery that shows the

---

[1]     *See Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) ("[T]o prove liability under FDUTPA, the Court must determine that . . . each putative class member was exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice . . ."); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 628 (S.D. Fla. 2008) (denying class certification because "the issue of whether each putative class member actually received Defendant's marketing materials is an individual question of fact critical to each member's claim that predominates over any common issues of fact"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litigation*, Case Nos. 05 C 4742, 05 C 4744, 2012 WL 1015806, at *10 (N.D. Ill. Mar. 22, 2012) (denying class certification in part because "many of Sears's advertisements did not contain a 'Made in USA' claim; instead, they featured other themes"); *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("California courts have recognized that . . . a consumer who was never exposed to an alleged false or misleading advertising . . . campaign [cannot] recover damages") (quotations and citations omitted); *O'Shea v. Epson America, Inc.*, Case No. CV 09-8063 PSG, 2011 U.S. Dist. LEXIS 105504, *35-36 (C.D. Cal. Sept. 19, 2011) (denying class certification in part because the class included consumers who were not exposed to the alleged misrepresentation).

consumer the battery's remaining battery life.  This feature was not offered on CopperTop

batteries.  Zuraw Decl. ¶¶ 7, 9 (ECF No. 77).  Thus, the additional value of the PowerCheck

feature would have to be accounted for in determining what portion of the price differential

was attributable to the "longest lasting" claim.  The jury would have been entitled to find that

PowerCheck by itself was sufficient to justify the price differential, leaving the plaintiffs with

no recovery.

These significant risks of not prevailing at all, or of recovering far less than the full

damages sought, would have supported a settlement here of far less than the $3.00 per

package payment to which the parties have agreed.  When those risks are considered here,

the payments available through this settlement (exceeding in many cases the *full* amount a

class member could obtain if plaintiffs prevailed on *every* point at trial) are more than

reasonable.

Because the payments available under this settlement rival or exceed what class

members could obtain if they were to prevail at trial, the cases on which the objectors rely

where settlements were disapproved are inapposite.  In those cases, the settlements offered

far less than (and sometimes only a small fraction of) the value of the claim, or offered only

coupons toward future purchases with no cash component.  *See, e.g., In re Baby Prods.*

*Antitrust Litig.,* 708 F.3d 163, 176 (3d Cir. 2013) (likely damages per class member were

$150 after trebling but settlement offered only $5 without proof of purchase); *In re Dry Max*

*Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) (compensation offered to the class was a

coupon for one free box of disposable diapers for class members who had an original receipt

and the UPC code from a previous purchase; relief was similar to an earlier refund program

that had been offered to the class apart from the litigation); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011) (no cash compensation at all to class members; $100,000 cy pres award to non-profit organizations); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1322 (S.D. Fla. 2007) (settlement offered $19 coupon toward future purchases; no proof that this approximated the amount of recoverable damages if plaintiffs were to prevail).  By contrast, the settlement here offers nearly full cash compensation to class members (not a coupon for more product) without any required proof of purchase, with even greater compensation if consumers have proof of purchase.  Plaintiffs cite no case in which a settlement of this type has been disapproved as inadequate to class members.

**B.**      **The Limit on the Number of Packages Individual Class Members May Claim is Reasonable.**

The settlement's limit on claims to two packages (for those with no receipts) or four packages (for those with receipts) is also reasonable.  Permitting class members to recover without any proof of purchase (beyond their willingness to complete the claim form) is itself a significant benefit to the class, and one that would not necessarily be available if the case were taken to trial.  Because of the potential for fraudulent claims, however, some limit must be placed on such claims.  A limit of two packages is reasonable, in light of the generous per package compensation being offered and the risk class members faced of not prevailing at

trial if the case had proceeded. Courts routinely approve settlement agreements that limit the number of claims a class member may make without proof of purchase.[2]

Similarly, the four-package limit for customers with receipts was reasonable. Even for customers who purchased more than four packages of Ultra batteries during the class period, the per package compensation is sufficiently generous that they are likely receiving a large percentage of the full price differential even with the limit. Moreover, none of the objectors have offered any evidence that any significant portion of the class purchased more than four packages of Ultra batteries during the class period. The marketing data available to Duracell shows that the average household that purchased Ultra batteries purchased only slightly more than one package of Ultra batteries from the time they were first sold in 2009 through mid-2013. Appiah Decl. ¶ 13C & 13D. The objectors do not claim that any of them purchased more than that amount. Indeed, at least some of them appear to have purchased their batteries only recently, presumably for the purpose of giving themselves standing to assert their objections.[3] Nor do the claims of the named plaintiffs provide any reason to

---

[2]       *See, e.g., Nigh v. Humphreys Pharm., Inc.,* Case No. 12-cv-2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215, at *21 (S.D. Cal. Oct. 23, 2013) (final approval of settlement that limited reimbursement five purchases of product without proof of purchase and 10 purchases with such proof); *Bruno v. Quten Research Inst., LLC,* Case No. CV 11-00173 DOC, 2013 U.S. Dist. LEXIS 35066, at *4 (C.D. Cal. March 13, 2013) (final approval of settlement agreement that capped reimbursement for claims without proof of purchase to three purchases); *Wilson v. Airborne, Inc.,* Case No. CV 07-770-VAP, 2008 U.S. Dist. LEXIS 110411, at *10 (E.D. Cal. Aug. 13, 2008) (final approval of settlement agreement that capped reimbursement for claims without proof of purchase to six purchases); *see also Kelly v. Phiten USA, Inc.,* 277 F.R.D. 564, 568 (S.D. Iowa 2011) (final approval of settlement agreement that capped claims without proof of purchase to 1/3 the value of claims that submitted such proof); *In re Tyson Foods Inc.,* Case No. RDB-08-1982, 2010 U.S. Dist. LEXIS 48518, at *6 (D. Md. May 11, 2010) (final approval of settlement agreement that created three tiers of claimants, first two tiers did not require proof of purchase and were limited to recovery of $5 coupon or $10 cash, respectively, third tier required such proof and provided up to $50 in compensation).

[3]       Frank asserts that he purchased one package of AA batteries on January 3, 2014. Frank Obj., p. 2. Gaspar asserts only that she has "purchased the required batteries to be a class member." Gaspar Obj., p. 2. Faulkner says he purchased Ultra batteries on "two to four" occasions between 2010 and 2012. Faulkner Obj.,

(continued)

believe that typical class members purchased significantly more than four packages per household.  Poertner testified that he could not remember precisely but thinks he bought Ultra Advanced batteries "maybe three or four times" (Poertner Dep. at 97:1-10),[4] and Ultra Power batteries maybe two or three times but he is not sure. *Id.* at 134:17-23.  The original California named plaintiff, James Collins, testified that he purchased two packs of AA Ultra Advanced batteries and one pack of AA Ultra Power batteries. Collins Dep. at 53:20-54:6; 59:7-16.[5]

### C.     The Fairness and Adequacy of the Compensation to the Class Does Not Depend on How Many Claims are Made.

The objectors assert that the settlement cannot be found reasonable unless a large percentage of the class members make a claim.[6]  But where, as here, the amounts at stake are small, the number of claims made is not relevant to the adequacy of the compensation offered to the class.  Instead, in such cases, a small percentage of claims reflects only that plaintiffs have sued over an inexpensive consumer product, in which the alleged damages amount to only a few dollars per purchase.  Indeed, a very low response rate is typical in cases like this one.  McComb Claims Decl. ¶ 5.  But this does not mean these settlements are invalid.  To the contrary, numerous cases have upheld settlements where the response was low due to the

---

p. 1.  Dorsey says that he purchased "at least one package" of Ultra batteries in 2010 and bought two more packages in February 2014.  Dorsey Obj., p. 1.  Batman and Cannata say only that they have purchased Ultra batteries, without specifying when or how many.  Batman Obj., p. 2, Cannata Obj., p. 1.

[4]      Attached as Exhibit B to the Declaration of Darren Cottriel in Support of Defendants' Opposition to Class Certification (ECF No. 82).

[5]      The cited excerpts of Mr. Collins deposition transcript are attached as Exhibit A to the concurrently filed Declaration of Darren Cottriel in Response to Objections to Final Approval of Class Settlement.

[6]      As of the close of the claims period, 55,346 claims had been submitted.  Declaration of Deborah McComb re Settlement Claims ("McComb Claims Decl."), ¶ 6.

small amounts at issue.[7]  Indeed, Frank cites four cases in support of his assertion that, given

the amount provided per claim, the likely response rate here will be less 1%.  Frank Obj., p.

13.  He neglects to inform the Court, however, that in each of those cases the court ***approved***

the settlement as fair, adequate and reasonable.[8]

Some objectors suggest that the number of claims made reflects an inadequate notice

program.  As shown in the previously filed declarations of Gina Intrepido-Bowden (ECF No.

114-4) and Deborah McComb (ECF No. 122), and their additional declarations filed

concurrently with this brief,[9] however, the notice program here was extensive.  It included

five major components:

- ***Magazines***:  Notice was published in the following national magazines with large

  and widespread circulation—*Better Homes & Gardens, Ebony, National*

  *Geographic, People, People en Espanol,* and *T.V. Guide*.  Intrepido-Bowden

  Response Decl., ¶ 3.

---

[7]     *E.g., Redman v. Radioshack Corp.*, Case No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, *17 (N.D. Ill. Feb. 7, 2014) (approving settlement where only 83,000 claims were filed out of a class of approximately 16 million); *Shames*, 2012 U.S. Dist. LEXIS 158577, *47-79 (upholding settlement with 4.9% response rate at time of hearing); *Touhey v. United States*, Case No. CV 08-01418, 2011 U.S. Dist. LEXIS 81308, *21-*22 (C.D. Cal. July 25, 2011) (finding that 2% response rate did not militate against final approval); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 U.S. Dist. LEXIS 40843, *25 (D. Me. April 13, 2011) (approving settlement where response rate was 3.9% of claimants eligible to receive cash payment and 0.6% of the overall class).

[8]     *Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *11 (N.D. Cal. May 13, 2013); *In re Livingsocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 U.S. Dist. LEXIS 40059, at *66; *Pearson v. NBTY, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *33 (N.D. Ill. Jan. 3, 2014).

[9]     These additional concurrently filed declarations are titled Declaration of Gina M. Intrepido-Bowden in Response to Objections to Final Approval of Class Settlement ("Intrepido-Bowden Response Decl."), and Declaration of Deborah McComb In Response to Objections to Final Approval of Class Settlement ("McComb Response Decl.").

- *Newspapers*:  Notice was published in USA Today, the Orlando Sentinel, and the San Francisco Chronicle.  Intrepido-Bowden Response Decl., ¶ 6.

- *Internet Banners*:  Internet banners were placed on numerous, widely read websites.  92,497,977 unique impressions were purchased, which is nearly 500,000 more impressions than were anticipated in the Notice Plan.  Intrepido-Bowden Response Decl., ¶ 4.

- *Settlement Website and Internet Coverage*:  Since December 5, 2013, the settlement website, www.UltraBatteriesSettlement.com, has been accessible.  In addition, the settlement received significant coverage in various other media outlets.  Scores of blogs, class action websites, consumer advocate websites and others have picked up on and further publicized the settlement, with links to the settlement website and the claim form.  *See* McComb Response Decl. ¶ 6; Intrepido-Bowden Response Decl., ¶ 7 .

- *Link on Duracell Website*:  A visible link to the settlement website was placed on the Duracell website (www.duracell.com) for a period of 93 days (from December 5, 2013 through February 18, 2014), which far exceeded the 30-day period called for in the Settlement Agreement and Notice Plan.  *See* Declaration of Jeff Jarrett ("Jarrett Decl.), ¶ 6.

This robust notice plan reached in excess of 70.4% of the Class Members.  Intrepido-Bowden Response Decl., ¶¶ 4-8.  The courts have repeatedly found this kind of notice plan to fully comply with Rule 23 and satisfy applicable constitutional requirements.[10]

**D.     The Additional Forms of Recovery Provided by the Settlement Further Support the Adequacy of the Settlement.**

For the reasons discussed above, the cash payments available under the settlement are sufficient by themselves to make the compensation to the class fair, adequate and reasonable.  Thus, even if the objections to injunctive relief and in-kind payment components of the settlement had any merit, that would not affect the adequacy of the compensation to the class.  In fact, however, the objections do not have merit and these additional components of value to the class are further reason to find the settlement reasonable.

**1.     The Injunctive Relief is a Valuable Benefit to the Class.**

The settlement agreement requires that Duracell stop using any of the advertising statements challenged in this action—*i.e.*, any advertising that Ultra Power and Ultra Advanced batteries in their current chemical formulations are Duracell's "longest lasting" or

---

[10]     *E.g., Rossi v. Proctor & Gamble Co.*, No. 2:11-cv-07238, ECF No. 69, pp.4-5 (D.N.J. Feb. 22, 2013) (requiring a summary notice to be published once in *USA Today* and once in *People* magazine, 15 days of internet banner ads, and a visible link to the settlement website posted on crest.com); *Courtney v. Welch Foods, Inc.*, No. 8:10-cv-01427, ECF No. 27, pp. 3, 4-5 (C.D. Cal. March 14, 2011) (requiring a newspaper notice coupon and a visible link to the settlement website  posted on welchs.com for a consumer class action regarding Welch's White Grape Pomegranate Flavored juice blend); *Date v. Sony Elecs., Inc.*, No. 2:07-cv-15474, ECF No. 45, pp. 2-3 (E.D. Mich. July 25, 2008) (requiring a newspaper advertisement in *USA Today*, along with direct mail to known class members); *Pearson v. NBTY, Inc.*, No. 1:11-cv-07972, ECF No. 73-1 at Ex. C (N.D. Ill. May 7, 2013) (requiring print, online banner advertisement, social media advertisements, and direct mail to known class members for a misleading advertising claim against a provider of Glucosamine supplements) (approved by court at ECF No. 89); *DeLarosa v. Borion, Inc.*, No. 8:10-cv-01569, ECF No. 318, pp. 3-4  (C.D. Cal. June 4, 2013) (requiring notice to any known class members, advertisements in *USA Today* and *Parents*, online banner advertisements, a Facebook page, and a twitter account for a misleading advertising claim against a sleep aid for children with colds).

that they last "up to 30% longer in toys* *vs. Ultra Digital."  The objectors argue that this injunctive relief provision has no value because Duracell had already decided to stop selling Ultra batteries.  But this contention ignores the timing of these lawsuits and of the settlement. The lawsuits were filed in April 2012.  Duracell did not announce that it would discontinue the Ultra lines of batteries until July 2013.  And the filing of these lawsuits played a material role in Duracell's decision to do so and to discontinue the challenged advertising.  *See* Settlement Agreement (ECF No. 113-1) at ¶ 58; Jarrett Decl., ¶ 4.

Frank suggests that injunctive relief has no value to people "who have done discrete business with defendants in the past."  Frank Obj., p. 15.  But he does not—and cannot— assert that buying batteries is a "discrete" activity that occurs only once.  That being the case, the injunctive class benefits both past purchaser class members (who are likely to buy again), as well as future purchasers.  *See Pom Wonderful LLC v. Purely Juice, Inc.*, Case No. 07-cv-02633, 2008 U.S. Dist. LEXIS 55426, at *44 (C.D. Cal. July 17, 2008) ("the public interest clearly favors injunctive relief to prevent the false advertising of product[s]"); *Hot Wax, Inc. v. S/S Car Care*, Case No. 97-cv-6879, 1999 U.S. Dist. LEXIS 16444, at *27-28 (N.D. Ill. Oct. 13, 1999) (same); *see also In re Ferrero Litig.*, Case No. 11-cv-205, 2012 U.S. Dist. LEXIS 94900, at *12 (S.D. Cal. July 9, 2012) (modification of product label, among other concessions, "provides an appropriate remedy to class members.").

    **2.**      **The In-Kind Payments Also Benefit Class Members.**

The objectors argue that Duracell's commitment to donate a retail value of $6 million in batteries is not a benefit to the class because the recipient organizations are not themselves individual class members.  It is beyond dispute, however, that these donations benefit

consumers of batteries (volunteer firefighters & emergency workers, parents, etc.), and that no other readily identifiable group is significantly more likely to include purchasers of Ultra batteries. Donating batteries to these organizations, which in turn put the batteries in the hands of individuals and families, benefits individuals who otherwise would have to spend their own money to purchase the batteries. Jarrett Decl., ¶ 7. Courts have approved similar settlement distributions to groups that include potential purchasers of the goods in question. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 350 (E.D.N.Y. 2000) (cash and in-kind donations distributed to non-profit organizations "to benefit children by providing them with toys, books or other educational material. . ."); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 355 (D.D.C. 2007) (approving donation of $3 million worth of contraceptive product to medical organizations that prescribed similar contraceptives without receiving free samples of the product).

Moreover, the types of organizations to which the batteries will be donated are specifically defined in the settlement agreement—*i.e.*, first responder charitable organizations, the Toys for Tots charity, the American Red Cross or 501(c)(3) organizations that regularly use consumer batteries or related products. *Compare In re Tyson Foods Inc.*, 2010 U.S. Dist. LEXIS 48518 at *6 (identifying cy pres recipients at fairness hearing).

There is likewise no merit to the objectors' assertion that the in-kind payment here is improper because such distributions must be limited to cases in which it is not feasible to make direct payments to class members. The in-kind payment is not intended to be a substitute for actual payments to class members. The settlement agreement provides for cash payments to every class member, without any limitation on the total overall payment to the

class. And, as discussed above, an extensive (and constitutionally adequate) effort has been undertaken to ensure that class members are informed of the settlement.

Nor is there any merit to the objectors' assertion that these donations are not a new benefit because Duracell has in the past donated batteries to certain organizations. Duracell has committed in the settlement agreement to donate $6 million in batteries above and beyond any existing commitments Duracell has already made. Jarrett Decl., ¶ 9. The settlement agreement thus achieves for the class a meaningful, guaranteed benefit.

One objector suggests that Duracell will be donating old, stale batteries. That is not true. As explained in the accompanying declaration of Jeff Jarrett, the marketing director for Duracell North America, the donated batteries will be quality batteries well within the period of guaranteed freshness, and any other Duracell products donated will be products of quality equivalent to similar Duracell products sold at retail.   Jarrett Decl., ¶ 10.

## II.    THE NOTICE TO THE CLASS WAS FULLY ADEQUATE.

As discussed above, the extensive, multi-faceted notice program here was more than sufficient to reasonably inform class members of the settlement and it satisfied all applicable Rule 23 and constitutional requirements.

### A.    The Notice to Spanish Speakers Was Adequate, Albeit Unnecessary.

Objector Dorsey complains that the class notice and claim form was not available in Spanish on the settlement website. He expressly declines to argue, however, that this oversight resulted in the notice to the class being inadequate. Dorsey Obj., p. 8. Nor would any such argument be correct. Duracell is not aware of any authority suggesting that class settlement notices in a consumer class action such as this must be made available in Spanish

or any other particular language other than English.  Any such requirement would be particularly inappropriate here where the advertisements at issue were not in Spanish.[11] Moreover, the estimated percentage of Spanish speaking class members is insignificant (only 7.3%) and less than the national average of Spanish speakers.  Intrepido-Bowden Response Decl., ¶ 15.  Spanish language notice was not necessary or required to provide adequate notice to the class.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 517 (E.D.N.Y. 2003) (failure to provide Spanish language notice to Hispanic class members not "a significant defect in the notice" that "rise[s] to the level of a due process violation").

Moreover, even though a Spanish language notice or claim form was not necessary or required, it was reasonably available to class members.  The short-form notice was published in Spanish in *People en Espanol*, one of the highest-ranking Spanish-language publications in this country.  Intrepido-Bowden Response Decl., ¶¶ 15 & 16.  That notice told Spanish-speaking class members that they could obtain additional information by calling a toll-free number or writing to a specified address.  By those means, class members could obtain claim forms in Spanish if they desired one.  That is more than enough to satisfy any applicable notice requirements.[12]

### B.     The Website Address Was Correct.

Dorsey also complains that class members may be deterred from making claims because, after class members type the settlement website address and enter the site

---

[11]     *See* Declaration of Scott Stewart in Opposition to Motion for Class Certification (Doc. 76), Exs. B-G, I-K.

[12]     In addition, a Spanish-language notice and claim form has been available on the settlement website since March 10, 2014.

(www.ultrabatteriessettlement.com), the URL is displayed in their browser as the internal address of the claims administrator. This complaint is frivolous. Even for those class members who notice what URL is displayed, there is no reason to believe it will affect their decision to make a claim, given that they are directed to the claims administrator only after typing the address given in the notice.

## III.     THE PROCEDURES FOR OPTING OUT OR OBJECTING ARE REASONABLE.

Frank argues that it was unreasonable to require that those wishing to opt-out or object do so by mail rather than electronically. This argument is groundless. In the case of opt outs, the only requirement is that they send a signed letter to the claims administrator, containing their name, address, phone number and signature. This requirement ensures that a clear record is made of which class members have excluded themselves and are thus eligible to file their own suit. Given the significant legal consequences of opting out, requiring that this limited information be submitted by mail can hardly be described as onerous or unreasonable. *See In re Ferrero Litig.*, Case No. 11-cv-205, 2012 U.S. Dist. LEXIS 15174, at *8-9, *12-13 (N.D. Cal. Jan. 23, 2012) (preliminarily approving class settlement that required written request for exclusion be mailed to class administrator, despite accepting online submission of claims forms for participating class members); *final approval* at 2012 U.S. Dist. LEXIS 94900 (S.D. Cal. July 9, 2012); *see also* McComb Response Decl., ¶ 7 (discussing years of experience in numerous cases where court approved settlements similarly required class members to submit requests for exclusion via regular mail).

As for objections, the requirement is that the objection be filed with the court, with copies mailed to class counsel and defense counsel. This requirement is unquestionably valid, given that an objection to a class settlement is a legally operative document that becomes part of the record of the case and gives the objector the ability to appear at the hearing and to appeal. Just as with any other pleading or paper submitted as part of the record, it is neither unreasonable nor onerous to require that it be filed and served in writing.

## IV.    THE CLASS DEFINITION IS PROPER.

Dorsey objects that the class definition is improperly open-ended because it does not specify a closing date for the class period. He asserts that this means that class members will not receive adequate notice or an adequate opportunity to make a claim, opt-out or object. These contentions are groundless.

First, Duracell stopped manufacturing and packaging the Ultra batteries as of June 2013 and ceased marketing the batteries in July 2013. Jarrett Decl., ¶ 3. Thus, this is not a case of conduct that is ongoing during the claims period or in which it is likely that a significant number of consumers will make qualifying purchases during or past that period. Although a few retail outlets may still be selling Ultra batteries purchased from Duracell before Duracell stopped shipping them, any such sales will be minimal in number. Appiah Decl ¶ 18.

Second, to the extent any consumers purchase Ultra batteries for the first time during or after the claims period, the settlement agreement and class notice cannot reasonably be interpreted as binding them to the settlement. By specifying an opt-out date of February 28, 2014, the agreement and notice make clear that any purchaser who purchased for the first

time after that date is not in the class and not covered by the settlement.  Duracell does not

object to the Court including an explicit statement to that effect in the final judgment, which

is the document that will define the scope of the settlement and the release and make it

binding on the class members.[13]

## CONCLUSION

For the foregoing reasons, the Court should grant final approval of the settlement.

Dated: April 22, 2014                                    Respectfully submitted,


                                                        /s/ Darren K. Cottriel
                                                        Darren K. Cottriel (*Pro Hac Vice Admission*)
                                                        JONES DAY
                                                        3161 Michelson Drive, Suite 800
                                                        Irvine, CA 92612
                                                        Telephone:     949.553.7548
                                                        Facsimile:     949.553.7539
                                                        E-mail:        dcottriel@JonesDay.com

                                                        Jason McDonell (*Pro Hac Vice Admission*)
                                                        Craig E. Stewart (*Pro Hac Vice Admission*)
                                                        JONES DAY
                                                        555 California Street, 26th Floor
                                                        San Francisco, CA  94104
                                                        Telephone:     415.626.3939
                                                        Facsimile:     415.875.5700
                                                        E-mail:        jmcdonell@JonesDay.com
                                                        E-mail:        cestewart@JonesDay.com

---

[13]      *See, e.g., Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n. 2 (S.D.N.Y 2001) (court exercising its discretion to modify class notice by instituting a fixed end date for class definition); *see also In re Wal-Mart Stores, Inc.*, Case No. 06-02069 SBA, 2008 U.S. Dist. LEXIS 109446, at *17 (N.D. Cal. May 2, 2008) (granting motion to modify class definition to close class as of "the date of class notice."); *Trollinger v. Tyson Foods, Inc.*, Case No. 02-cv-00023, 2007 U.S. Dist. LEXIS 88866, *9-11 (E.D. Tenn. Dec. 3, 2007) (modifying class notice to close on date certain, as opposed to creating an open-ended class that existed "to present").

Jason A. Perkins, Esq. (State Bar No. 610852)
CARLTON FIELDS, P.A.
450 S. Orange Avenue, Suite 500
Orlando, FL 32801
Telephone: 407.849.0300
Facsimile:  407.648.9099
E-mail:     jperkins@carltonfields.com

*Attorneys for Defendants*
*THE GILLETTE COMPANY and THE*
*PROCTER & GAMBLE COMPANY*