**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**JOSHUA D. POERTNER,**

      **Plaintiff,**

**v.**                                 **CASE NO: 6:12-CV-00803-GAP-DAB**

**THE GILLETTE COMPANY and**             **CLASS ACTION**
**THE PROCTER & GAMBLE**
**COMPANY,**

      **Defendants.**
_____/

**<u>PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
AWARD OF ATTORNEYS' FEES AND INCORPORATED MEMORANDUM</u>**

# TABLE OF CONTENTS

I. THE LITIGATION ..................................................................................................... 1

II. TERMS OF THE SETTLEMENT .......................................................................... 3

III. THE SETTLEMENT SATISFIES THE APPLICABLE LEGAL STANDARDS FOR FINAL APPROVAL ............................................................................................ 7

    A. Plaintiff's Likelihood of Success ............................................................. 10

    B.     The Amount of the Settlement is Fair, When Compared With the Range of Possible Recovery ................................................................ 11

    C. The Complexity and Stage of the Litigation Support Approval ................. 11

    D. The Reaction of the Class Supports Approval ........................................... 12

IV. THE REQUESTED ATTORNEY'S FEE AND EXPENSE AMOUNT SATISFIES APPLICABLE LEGAL STANDARDS AND IS FAIR AND REASONABLE ............. 13

    A. Counsel Who Create a Common Fund Are Entitled to A Percentage of the Fund ............................................................................................. 13

    B. The Eleventh Circuit Employs The Percentage Of The Fund Approach ........ 15

    C. The *Camden I* Factors Support Counsel's Requested Fee ........................ 18

    D. The Fee Award Is Also Proper Under a Lodestar Multiplier Analysis ........ 21

V. PAYMENT TO CLASS REPRESENTATIVE POERTNER ..................................... 24

VI. CONCLUSION .................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.,*
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................................24

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997) ......................................................................................................13

*Behrens v. Wometco, Enter., Inc.,*
  118 F.R.D. 534 (S.D. Fla. 1988) .......................................................................9, 11, 22

*Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984) .....................................9, 10, 25

*Berkey Photo, Inc. v. Eastman Kodak, Inc.*
  603 F.2d 263 (2d Cir. 1979) ............................................................................................7

*Blum v. Stenson,*
  465 U.S. 886 (1984) ..............................................................................................14, 21

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ......................................................................................14, 16, 17

*Camden I Condominium  Ass'n v. Dunkle,*
  946 F.2d 768 (1lth Cir. 1991) .............................................................................passim

*Cook v. Niedert,*
  142 F.3d 1004 (7th Cir.1998) ........................................................................................25

*Cotton v.  Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ...............................................................................7, 8, 9

*David v. American Suzuki Motor Corp.,*
  2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ........................................................20, 24

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
  693 So. 2d 602 (Fla. 2nd DCA 1997) ..........................................................................14

*Dogalt v. Anderson,*
  43 F.R.D. 472 (E.D.N.Y. 1968) ....................................................................................14

*Fabricant v. Sears Roebuck & Co.,*
  2002 WL 34477904 (S.D. Fla. Sept. 18, 2002) ...........................................................20

*Goldberger v. Integrated Resources, Inc.,*
  209 F.3d 43 (2d Cir.2000) ........................................................................20

*Harris v. Marhoefer,*
  24 F. 3d 16 (9th Cir. 1994) ......................................................................21

*Holman v. Student Loan Xpress, Inc.,*
  778 F.Supp.2d 1306 (M.D.Fla. 2011) ......................................................22

*In re Aero Systems, Inc. Sec. Litig.,*
  No. 90-0083-Civ-Paine (S.D. Fla. 1993) .................................................20

*In re Continental Illinois Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ..................................................................21

*In re Int'l Recovery Corp. Sec. Litig.,*
  No. 92-1474-Civ-Atkins (S.D. Fla., June 2, 1994) ...................................20

*In re King Resources Co. Sec. Litig.,*
  420 F. Supp. 610 (D. Colo. 1976) .......................................................9, 19

*In re Perfumania, Inc., Sec. Litig.,*
  No. 92-1490-Civ-Marcus (S.D. Fla. Sept. 1993) ....................................20

*In re Public Service Co.,*
  Fed. Sec. L. Rep. (CCH) ¶ 96,988 (S.D. Cal. 1992) ...............................21

*In re Quantum Health Resources, Inc.,*
  962 F.Supp. 1254 (C.D.Cal.1997) ...........................................................20

*In re Sound Advice, Inc. Sec. Litig.,*
  No. 92-6457-Civ- Ungaro-Benages (S.D. Fla. March 25, 1994) ...............20

*In re U.S. Oil and Gas Litig.,*
  967 F.2d 489 (l1th Cir. 1992) .............................................................7, 9

*In re Warner Communications Sec. Litig.,*
  *618* F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd,* 798 F.2d 35 (2d Cir. 1986) ...........................................................12

*Ingram v. The Coca–Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001) ..............................................................24

*Johnson v. Georgia Highway Express. Inc.,*
  488 F.2d 714 (5th Cir. 1974) ............................................................15, 18

*Kaser v. Swann,*
   No. 90-607-Civ-Orl-3A18 (M.D. Fla. 1993)..............................................20

*Kirchhoff v. Flynn,*
   786 F.2d 320 (7th Cir. 1986) ..................................................................21

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir.1983) ...................................................................12

Malchman v. Davis,
   761 F.2d 893 (2d Cir.1985),
   abrogated on other grounds ....................................................................13

*Mashburn v. Nat 'l Healthcare, Inc.,*
   684 F. Supp. 679 (M.D. Ala. 1988)..........................................................14

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007) ...................................................................16

*McKinnie v. JP Morgan Chase Bank, N.A.,*
   678 F. Supp. 2d 806 (E.D. Wis. 2009) ......................................................16

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972),
   cert. denied, 409 U.S. 1039 (1972)...........................................................11

*Pettway v. American Cast Iron Pipe Co.,*
   576 F.2d 1157 (5th Cir.1978) ....................................................................8

*Pinto v. Princess Cruise Lines, Ltd.,*
   513 F.Supp.2d 1334 (S.D. Fla. 2007).................................................19, 22

*Ressler v. Jacobson,*
   822 F. Supp. 1551, (M.D. Fla. 1992) ...........................................11, 12, 18

*Ruiz v. McKaskle,*
   *724* F.2d 1149 (5th Cir. 1984) ...................................................................8

*Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,*
   2002 WL 34343944 (S.D. Fla. May 3, 2002)............................................20

*Shaw v. Toshiba American Information Systems, Inc.,*
   91 F. Supp. 2d 942 (E.D. Tex. 2000) .......................................................19

*Spicer v. Chi. Bd. Options Exchange, Inc.,*
   844 F.Supp. 1226 (N.D. Ill. 1993)............................................................24

*Stahl v. Mastec, Inc.*,
    2008 WL 2267469 (M.D. Fla. May 20, 2008) ......................................16, 20

*Strube v. American Equity Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ...............................................................11

*Susquehanna Corp. v. Korholz*,
    84 F.R.D. 315 (E.D. Ill. 1979) .....................................................................9

*Tapken v. Brown*,
    No. 90-0691-Civ-Marcus   (S.D. Fla. 1995) ..............................................20

*Transworld Airlines, Inc. v. Hughes*,
    312 F. Supp. 478 (S.D.N.Y. 1970) ...............................................................7

*United States v. City of Miami*,
    614 F.2d 1322 (5th Cir. 1980) ......................................................................9

*Vincent v. Hughes Air West, Inc.*,
    557 F. 2d 759 (9th Cir. 1977) .....................................................................21

*Walco v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) ................................................................18

*Waters v. Int,'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ...............................................13, 15, 16, 20

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ......................................................................................7

*Williams v. MGM-Pathe Communications Co.*,
    129 F.3d 1026 (9th Cir. 1997) ....................................................................16

## Other Authorities

George D. Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee
    Awards*,
    69 Harv. L.Rev. 658 (1956) ........................................................................19

## Rules

F.R.C.P. 23(e) ...................................................................................................8

Plaintiff Joshua D. Poertner, on his own behalf and on behalf of the Settlement Class

certified in this case, hereby moves for final approval of the settlement described in the Class

Action Settlement Agreement dated September 13, 2013, Doc. 113-1 ("Agreement" or

"Settlement"). After more than sixteen months of hard-fought litigation and intensive

negotiations through formal mediation, Plaintiff and Defendants agreed to the Settlement, which

provides substantial financial benefits to Class Members. After the Settlement was reached, the

parties negotiated a separate attorneys' fees and expenses amount to be paid to Class Counsel by

Defendants. By Order dated November 5, 2013, Doc. 118, this Court granted preliminary

approval of the Settlement and certified a Settlement Class under Rule 23(b)(3).[1] For the reasons

discussed below, the Court should approve the Settlement as fair, adequate, and in the Settlement

Class Members' best interests. The Court also should approve Class Counsel's requested

attorneys' fees and expenses and the class representative's service award and enter the Proposed

Final Judgment and Order of Dismissal, thereby concluding this litigation.[2]

## I.    THE LITIGATION

This Settlement resolves two similar, independent actions against Defendants.[3] The

factual and procedural background for each of the cases is set forth in detail in Plaintiff's

Memorandum in Support of Unopposed Motion for Order Preliminarily Approving Class Action

---

[1] Pursuant to the Preliminary Approval Order, notice was issued to the members of the Settlement Class previously certified in this case. *See* Declaration of Deborah McComb, ¶ 15, Doc. 122. The Notice described, *inter alia*, the Settlement terms, provided Class Members with the appropriate claim form, advised them that Class Counsel would seek approval of the Settlement and an award of attorneys' fees and expenses, noted the approval hearing was scheduled for March 21, 2014, and advised them of their right to file objections to the Settlement or opt out on or before February 28, 2014. There were six timely objections filed, to which Plaintiff is separately responding, and twelve class members opted out. CAFA notice was also provided to the U.S. and state attorneys general, as ordered by the Court. No governmental actor has objected to the Settlement.

[2] The Proposed Final Judgment and Order of Dismissal ("Final Judgment") is attached hereto as Exhibit A.

[3] The Settlement encompasses *Heindel v. The Gillette Company, et al.*, Case no. CV-12-01778 EDL (N.D. Cal.) ("the California case").

Settlement, Doc. 114, and in the Settlement Agreement, Doc. 113-1. For purposes of this motion, Class Counsel reemphasize that in the course of this litigation, counsel in each case separately engaged in motion practice, reviewed hundreds of thousands of pages of documents produced by Defendants, engaged experts, tested hundreds of batteries, prepared expert reports, and took depositions of Defendants' employees involved in market analysis and sales marketing. Defendants deposed the plaintiff and plaintiff's experts in each case and obtained written discovery responses and document production from the plaintiffs, and counsel for the California plaintiff deposed defendants' expert witness.

Class motions were fully briefed and pending in this action, and the California plaintiff filed a detailed class certification motion. The filings included expert reports, deposition excerpts, discovery responses, pertinent documents produced in discovery, declarations, and legal authorities. Defendants responded with their briefs in opposition in this action and moved to strike Plaintiff's expert report. The parties argued Plaintiff's motion for class certification in this case on September 4, 2013, and it was taken under advisement. Doc. 104.

The Court required mediation in this case, and the parties selected a mediator from the Court's panel of approved mediators, Rodney A. Max, Esq. of Upchurch, Watson, White & Max. The parties agreed that counsel in the California action would participate in the joint mediation in an attempt to resolve both cases on a nationwide basis.

The settlement negotiations and mediation efforts were extensive, contentious, and hard fought. Beginning in May 2013, the parties commenced mediation through numerous telephone discussions and emails. The initial in-person mediation was on August 1, 2013 at Mr. Max's offices in Miami, Florida and lasted over ten hours. Although progress was made, no settlement was reached and the parties agreed to a second in-person session on August 12, 2013. The

August 12 session, which exceeded eight hours, also failed to produce a settlement. However, the parties continued their settlement discussions through Mr. Max and through numerous direct telephone conversations and emails over the course of another month. *Lowe Decl*. Doc. 114-1 at ¶ 8; *Schubert Decl*. Doc. 114-2 at ¶ 8; *Declaration of Rodney A. Max* ("Max Decl."), Doc. 114-3 at ¶ 13. The parties in this action also continued to litigate the class issues and argued Plaintiff's Motion for Class Certification to this Court on September 4, 2013. Doc. 104.

On September 13, 2013, with the assistance of Mr. Max, all Parties reached agreement on the material terms of settlement and entered into a Memorandum of Understanding ("MOU"). *Lowe Decl*. Doc. 114-1at ¶ 8; *Schubert Decl*. Doc. 114-2 at ¶ 8. The parties thereafter prepared and executed the Settlement Agreement.


## II.      TERMS OF THE SETTLEMENT

The Settlement provides significant relief to Class Members in the form of cash payments and provides for certain in-kind payments and injunctive relief. The Settlement Class includes over 7.26 million persons in the United States (including U.S. territories and Puerto Rico) who purchased AA or AAA size Duracell brand Ultra Advanced and/or Ultra Power batteries at retail from or after June 2009. The monetary benefits available to Class Members under the Settlement are significant and within the upper range of what could have been recovered had plaintiffs prevailed at trial in each case.

Defendants agreed to compensate Settlement Class Members who submit a valid claim request form as follows:

> To each qualifying Claimant who purchased Ultra Batteries (in size AA and/or AAA), P&G will refund three dollars ($3.00) per pack, subject to the limitations described herein. If the qualifying Claimant provides valid Proof of Purchase, the Claimant shall be entitled to receive a maximum of up to four (4) refunds for the Claimant's household or address (i.e., for a total maximum refund of twelve

dollars ($12.00) per household or address). If the qualifying Claimant does not submit valid Proof of Purchase, the qualifying Claimant shall be entitled to receive a maximum of up to two (2) refunds for the Claimant's household or address (i.e., for a total maximum refund of six dollars ($6.00) per household or address).

Settlement Agreement at ¶ 59. Doc. 113-1.

The $3.00 per pack payment to Class Members approximates the average retail price differential between the subject Ultra batteries and the lower-priced Duracell CopperTops. Declaration of Felix Appiah in Support of Final Approval of Class Action Settlement ("Appiah Decl.") ¶¶ 6-16. As plaintiffs explained in their respective class certification memoranda, the Class Members' damages may be calculated by subtracting the retail price of Duracell's comparator batteries, the Coppertops, from the retail price charged for the Ultras during the Class Period. That difference was approximately 39 cents per AA and 41 cents per AAA battery. *Id.* ¶ 14. The average number of cells per pack was 7.4 for AAs and 7.1 for AAAs. *Id.* ¶¶ 9 & 11. Therefore, the average overcharge per pack could be reasonably estimated at $2.89 for AAs and $2.91 for AAAs.[4] On average, Class Members purchased 1.4 packs of AAs or 1.3 packs of AAAs during the Class Period, and thus paid an estimated overcharge on average of between $3.78 and $4.04. *See* Appiah Decl. ¶ 13.

Under the Settlement, each Class Member is entitled to receive, without proof of purchase, up to $6.00, or the estimated premium incurred for the purchase of fifteen batteries. With proof of purchase, Class Members can receive up to $12.00 per household, i.e., the premium charged for thirty batteries. And since Defendants agreed to pay all valid claims received, there is no cap on the amount of total class compensation.

---

[4]     This does not include batteries purchased at Costco stores. Mr. Appiah estimates that 11% of AA consumers and 5% of AAA consumers purchased the Ultras at Costco stores. Appiah Decl. ¶ 13. For those consumers, the average per battery price difference was less – approximately $0.13 for AA batteries and $0.06 for AAA batteries. Appiah Decl. ¶ 15. The average per pack differential ranged from $2.08 to $3.90 for AAs and was $0.96 per pack for the AAA batteries sold at Costco. Appiah Decl. ¶ 15.

Accordingly, Class Counsel have created a settlement with a total value of at least $49.87 million, computed by adding the $43.56 million in available monetary benefits ($6 × 7.26 million Class Members) with the $5.68 million in fees and expenses and $632,095 in notice and administration costs paid by Defendants.

Defendants further agreed to make an in-kind payment of $6 million (retail value) of Duracell products over a five-year period. The products will be donated to charitable organizations, including but not limited to first responder charitable organizations, the Toys for Tots charity, The American Red Cross, or other 501(c)(3) organizations. The in-kind payment is separate and distinct from, and will not include, any donations of products which Duracell has already donated or Duracell was committed to donate as of the date of execution of the MOU. Settlement Agreement, Doc. 113-1 at ¶ 61.  The $6 million in-kind payment will be new commitments to donate Duracell products in the future after the court approves the settlement in this matter, such that the $6 million in-kind payment will be above and beyond any existing commitments Duracell has made. Declaration of Jeff Jarrett in Support of Final Approval of Class Settlement ("Jarrett Decl.") ¶ 9. Furthermore, the donated batteries will be quality batteries well within the period of guaranteed freshness, and any other products donated will be products of quality equivalent to similar products sold at retail. Jarrett Decl. ¶ 10.

The efforts of Class Counsel also resulted in significant remedial and injunctive relief that advances the purposes of the consumer statutes that were the basis of plaintiffs' claims in each action. In the settlement agreement, P&G and Gillette agreed that they will cease packaging the Ultra Batteries in the United States in their current chemical formulation with the statement "Our Longest Lasting" or other words to the effect that the Ultra Batteries last longer than Duracell CopperTop batteries on the packaging or displays for Ultra Batteries in the United

5

States and on Duracell's website. Furthermore, P&G and Gillette admitted that the present litigation was a material factor in the decision to cease packaging, marketing, selling and distributing the Ultra Batteries in the United States with the statement "Our Longest Lasting" on the package and store displays. Jarrett Decl. ¶ 4. Although this relief is significant, Plaintiffs have not calculated or included the monetary value of the injunctive relief in the total benefit to the Class for purposes of this motion.

The Settlement, which was reached after extensive arm's-length negotiations among counsel with the duty of vigorously representing their clients, is more than fair and reasonable. The claims in this case were complex and fraught with difficult issues, and the recovery for the Class is a good result by any standard. Specifically, plaintiffs faced significant risks in (1) not obtaining class certification, based on Defendants' contention that the challenged representation varied from pack-to-pack; and (2) not being able to prove at trial that the Ultra batteries did not, in fact, last longer, based on a dispute between the parties as to how to measure and evaluate battery life; and (3) not being able to prove that damages were equal to the full-price difference between Ultra and CopperTop batteries, because some Ultra batteries also included an additional PowerCheck feature. For a more detailed discussion of each of these issues, see Defendants' Response to Objections to Final Approval of Class Settlement at 4-6. While Plaintiffs dispute the merits of Defendants' arguments, it is clear that the case against Defendants was far from a "sure thing," and there would have been a long, complex, and expensive battle over these issues.

It also must be recognized that even a victory in the District Court is no guarantee of ultimate success. Assuming that plaintiffs had prevailed at class certification and won every issue at trial, and obtained judgments that exceed the benefits provided by the proposed Settlement, Defendants' inevitable appeals could have seriously and adversely affected the scope of the

recovery, if not wiped it out altogether. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak, Inc.* 603

F.2d 263 (2d Cir. 1979) (reversing multi-million dollar judgment after a lengthy trial);

*Transworld Airlines, Inc. v. Hughes,* 312 F. Supp. 478 (S.D.N.Y. 1970) (plaintiffs' judgment

overturned after years of litigation and appeals).

　　　Following this Court's preliminary approval of the settlement, the Claims Administrator

disseminated notice to the Class and opened the Claims Period. Class Members submitted 55,346

claims, representing 114,950 packages of batteries. Declaration of Deborah McComb Re

Settlement Claims at ¶ 6 ("McComb Decl."). This claim filing rate is above average when

compared to class settlements in other recent consumer class-action cases. McComb Decl. at ¶ 6.

　　　Under the circumstances, and for the reasons set forth in greater detail below, this Court

should grant final approval of the proposed Settlement.


## III.　THE SETTLEMENT SATISFIES THE APPLICABLE LEGAL STANDARDS FOR FINAL APPROVAL

　　　"Compromises of disputed claims are favored by the Courts." *Williams v. First Nat'l*

*Bank,* 216 U.S. 582, 585 (1910). This policy applies with particular force to class action suits, the

complexity and expense of which impose special burdens borne by the judicial system as well as

the litigants. *E.g., In re U.S. Oil and Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) ("Public

policy strongly favors the pretrial settlement of class action lawsuits."); *Cotton v. Hinton,* 559

F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public

interest in favor of settlement.").

　　　Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class

action settlement. This requirement, manifested in the substantive and procedural aspects of Rule

23, is designed to afford protection to absent class members "whose interests may be

compromised in the settlement process." *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1169 (5th Cir.1978). "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and not the product of collusion between the parties." *Cotton,* 559 F.2d at 1330. In reaching this determination, the "inquiry should focus upon the terms of the settlement," together with "an analysis of the facts and the law relevant to the proposed compromise." *Id.* at 1330. The settlement should be compared "with the likely rewards the class would have received following a successful trial of the case," subject to the following qualifications. *Id.*

First, courts have continuously stressed that it should not "be forgotten that compromise is the essence of Settlement." *Cotton*, 559 F.2d at 1330. As a result, in evaluating the terms of settlement in relation to the likely benefits of a successful trial, "the trial judge ought not try the case in the settlement hearings," nor should the court "make a proponent of a proposed settlement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained." *Id.* To the contrary, "the court must be mindful that inherent in compromise is a yielding of absolutes and an abandonment of highest hopes." *Ruiz v. McKaskle, 724* F.2d 1149 (5th Cir. 1984) (citing *Cotton,* 559 F.2d at 1330).

Secondly, courts have also consistently stressed that in performing the balancing test necessary to weigh the benefits of the settlement against the risk of continued litigation, the District Court "is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton,* 559 F.2d at 1330: *Behrens v. Wometco, Enter., Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988). In fact, a review of pertinent decisions in this area leads to the conclusion that "[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent

evidence of fraud or overreaching." *In re King Resources Co. Sec. Litig.,* 420 F. Supp. 610, 625 (D. Colo. 1976).

Thirdly, courts have also stressed that "litigants should be encouraged to determine their respective rights between themselves" and that there is an "overriding public interest in favor of settlement." *Cotton, 559* F.2d at 1331. This principle is particularly compelling in class actions, which "have a well deserved reputation as being most complex." *Id.* As the Eleventh Circuit has emphasized, "Public policy strongly favors the pretrial settlement of class action lawsuits .... complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil and Gas,* 967 F.2d at 493; *see also United States v. City of Miami,* 614 F.2d 1322 (5th Cir. 1980) (compromises are highly favored).

Finally, in addition to examining the merits of the proposed settlement and ascertaining the views of counsel, the court should also take into account practical considerations such as the complexity of the case and the expense and likely duration of the litigation. *Susquehanna Corp. v. Korholz,* 84 F.R.D. 315 (E.D. Ill. 1979). One of those practical considerations is the vagaries of litigation and the benefits of an immediate recovery as compared "to the mere possibility of relief in the future, after protracted and expensive litigation." *In re King Resources,* 420 F. Supp. at 625.

Guided by these overriding principles, the Eleventh Circuit has outlined several factors which may be used to determine whether a proposed class action settlement is fair, adequate, and reasonable. *See Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984). These factors are: (a) the likelihood of success at trial; (b) the range of possible recovery; (c) the point at or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (d) the

complexity, expense, and duration of the litigation; (e) the substance and amount of opposition to the settlement; and (f) the stage of proceedings at which the settlement is achieved. *Id.* at 987. A review of these standards, guided by the principles described above, fully supports the conclusion that the Settlement should be approved.

### A. Plaintiff's Likelihood of Success

Plaintiff believes he was likely to succeed at trial. Plaintiff's tenacious pursuit of discovery, aggressive motion practice, and dogged prosecution of the Motion for Class Certification evidence this belief. The Court's analysis of this factor, however, must be tempered by Defendants' equally firm belief that *they* ultimately would prevail, if not at trial, then on appeal. Defendants expressly deny liability in the Settlement documents and asserted substantial defenses, both procedural and substantive. Indeed, if Plaintiff had failed to obtain class certification, the Class Members' ability to recover anything would have been eviscerated. This fact, considered along with the ongoing risk of a reversal of a favorable judgment on appeal, argues in favor of approving the Settlement.

In any event, the Court should not resolve the parties' disagreement on the merits by issuing an advisory opinion about Plaintiff's likely success, nor is a specific finding regarding Plaintiff's likelihood of success necessary or appropriate when evaluating the fairness of the Settlement.

> As settlements are constructed upon compromise, the merits of the parties' claims and defenses are deliberately left undecided. Judicial evaluation of a proposed settlement of a class action thus involves a limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.

*Ressler v. Jacobson,* 822 F. Supp. 1551, 1552-53 (M.D. Fla. 1992); *see also Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 687-98 (M.D. Fla. 2005) ("[T]he Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are

10

outweighed by the benefits of the settlement'"). Such a "limited inquiry" clearly favors approval of this Settlement, given the substantial benefits obtained.

### B.  The Amount of the Settlement is Fair, When Compared With the Range of Possible Recovery

The determination of a "reasonable" settlement is not susceptible to a simple mathematical equation yielding a particular sum. Rather, "there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972). Or, as Judge King put it, "a just result is often no more than an arbitrary point between competing notions of reasonableness." *Behrens v. Wometco*, 118 F.R.D. at 538 (citation omitted). As set forth above, in this Settlement, each Class Member is provided the right to recover nearly as much as, if not all of, the damages he or she allegedly sustained and can do so without further litigation or delay. Defendants also agreed to make certain in-kind payments of $6 million and to prospective remedial and injunctive relief.

### C. The Complexity and Stage of the Litigation Support Approval

Consideration of the complexity and the stage of the litigation also support approval of the Settlement as fair, reasonable, and adequate. Due to the complex nature of this case, any future proceedings would have been costly and time consuming. Such costs would have likely reduced any ultimate recovery obtained on behalf of the Class. Avoidance of such costs is a clear benefit to the Class. Further, if the Settlement were not approved, future proceedings would have included not only trial but appeals. The Settlement, in contrast, provides for definite, immediate benefits without waiting additional years. This is a further benefit to the Class. *See, e.g., In re Warner Communications Sec. Litig., 618* F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986).

The stage of the proceedings also supports the Settlement because extensive discovery, briefing, and argument of class issues put Class Counsel in a position to properly analyze the benefits of the Settlement compared to the risk of proceeding through trial and inevitable appeals in an effort to obtain a larger recovery against the Defendants. Given the discovery, briefing, and argument undertaken in the cases, as well as the information that has been reviewed, there can be no question about Class Counsel's ability to objectively analyze the Settlement. *In re Warner Communications*, 618 F. Supp. at 740. Based on that thorough investigation and research, Class Counsel determined that the Settlement is fair, reasonable, and in the best interests of the Class.

### D. The Reaction of the Class Supports Approval

The reaction of the Class also favors approval. Detailed notices were issued in accordance with the Agreement and the Court's Order of preliminary approval. Class Members were required to object to the Settlement by February 28, 2014. In total, only *six Class Members objected and only twelve requested exclusion* during the opt-out period. That only 0.00008% of more than 7.2 million people objected to the Settlement—and only 0.0002% of the Class requested exclusion—weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement. The dearth of objections weighs in favor of the Settlement. *Maher v. Zapata Corp.,* 714 F.2d 436, 456 n.3 5 (5th Cir. 1983); *In re Warner Communications,* 618 F. Supp. at 746; *Ressler v. Jacobson,* 822 F. Supp. 1551, 1556 (M.D. Fla. 1992).

Additionally, the claim filing rate is above average when compared to class settlements in other recent similar consumer class-action cases. McComb Decl. at ¶ 6. Based on a recent study of consumer class-action settlements, the median claims rate in similar consumer cases where only media and not direct notice is possible is 0.023%. McComb Decl. at ¶ 5. The claims rate in this case, 0.76%, is therefore substantially above average and further shows the positive reaction of Class Members to the Settlement benefits. McComb Decl. at ¶ 6.

12

Plaintiff has achieved a hard-fought victory for the Class. The recovery of a significant portion (if not all) of the Class' premiums paid for the Ultra batteries (plus the in-kind payments and injunctive relief) has been achieved despite strenuous opposition. This Settlement falls well within the range of reasonableness under the criteria set forth by the Eleventh Circuit in *Bennett* and should be approved.

## IV.  THE REQUESTED ATTORNEY'S FEE AND EXPENSE AMOUNT SATISFIES APPLICABLE LEGAL STANDARDS AND IS FAIR AND REASONABLE

Class Counsel request approval of the separately negotiated attorneys' fee and expense amount of $5,680,000.[5] Class Counsel's expenses total $272,275.60, and thus, the attorneys' fee is $5,407,724.40. *See* Lowe Decl. at ¶ 10; Gale Decl. at ¶ 8; Schubert Declaration at ¶ 22. Compared to the total common fund and financial benefit created for the Class by the Settlement, the attorneys' fee is less than 10.9% of the estimated common fund of $49.94 million. This is well below the 25-30% "benchmark" range of percentages recognized as appropriate by the Eleventh Circuit under *Waters v. Int,'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) and *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 974 (1lth Cir. 1991), as well as that awarded by District Courts in this Circuit and elsewhere.

### A. Counsel Who Create a Common Fund Are Entitled to A Percentage of the Fund

The Supreme Court has recognized that when attorneys create a common fund for the benefit of a class, "a reasonable fee is based on the percentage of the fund bestowed on the class." *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (Since the 1880s, "this Court has recognized consistently that a litigant or

---

[5] Settlement of disputes, including settlement of attorneys' fees issues, should be encouraged. See *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), *abrogated on other grounds*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). Awards of attorneys' fees from a common fund, such as the fund created here, serve the dual purpose of encouraging redress of damages caused to an entire class, and discouraging future similar misconduct:

> [C]ourts … have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. Nat 'l Healthcare, Inc.,* 684 F. Supp. 679, 687 (M.D. Ala. 1988). Consumer protection statutes expressly recognize these policy interests, including the Florida Deceptive and Unfair Trade Practices Act. *See Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,* 693 So. 2d 602, 606 (Fla. 2nd DCA 1997) ("[B]y promulgating the FDUTPA the Florida legislature has clearly intended as a matter of public policy … to create a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts."). *See also Dolgow v. Anderson,* 43 F.R.D. 472, 494 (E.D.N.Y. 1968) ("In some areas of the law society is dependent upon the initiative of lawyers for the assertion of rights and the maintenance of desired standards of conduct.") (citations omitted).

Plaintiff knows of no individual actions that were brought to challenge Defendants' conduct in selling Ultra batteries. Plaintiffs and Class Counsel in each case have furthered important public policy interests through the two class actions.

**B. The Eleventh Circuit Employs The Percentage Of The Fund Approach**

Reflecting the overwhelming national trend toward the percentage-of-the-fund method, the Eleventh Circuit has held that attorneys' fees in common fund cases such as this should be based on a reasonable percentage of the fund made available to the class. Under Circuit precedent, counsel may request attorneys' fees based upon a percentage of the common fund they created for the benefit of the class:

> After reviewing *Blum,* the [1985 Third Circuit] Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Camden I,* 946 F.2d at 774-75. The *Camden I* court pointed out that "[t]he majority of common fund fee awards fall between 20% to 30% of the fund," while 25% of the fund is viewed as a "benchmark percentage fee award." *Id.* (Noting that 50% generally represents an upper limit, "although even larger percentages have been awarded").

The court in *Waters* went further, concluding that 25 to 30% is the "benchmark range" for common fund fee awards in this Circuit. 190 F.3d at 1294-95 (affirming fee award of one-third of $40 million common fund). In calculating the appropriate percentage, pertinent factors include the time required to reach the settlement, whether there are a substantial number of objections by class members to the settlement terms or the fees requested, the monetary and non-monetary benefits conferred on the class, and the economics involved in prosecuting the case. *Camden I,* 946 F.2d at 774-75. There also usually will be additional factors unique to the case, as there are here.[6] *Id.*

---

[6]     Although the *Camden I* court declined to follow the "lodestar" approach in common fund cases, certain time and hourly fee-related factors remain pertinent to the reasonableness of the percentage award, including "the time required to reach a settlement" and factors used in statutory fee-shifting cases under *Johnson, supra* (where the

The *Camden I* court held that "there is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded a fee because the amount of any fee must be determined upon the facts of each case." 946 F.2d at 774-75. A review of Class Counsel's efforts herein demonstrates that they satisfy the criteria of *Camden I* and that the particular circumstances more than merit the requested fee.

As previously noted, attorneys who create a common fund or benefit for a group of persons are entitled to have their fees and costs based on the common benefit achieved. *Boeing Co.*, 444 U.S. at 478. Moreover, this method of awarding attorneys fees is utilized regardless of whether each class member redeems the benefits made available to class members or whether the benefits revert to the defendant. *See Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 200 (2d Cir. 2007) (holding that in determining counsel fees, trial court erred in calculating percentage of the fund on the basis of claims made against the fund rather than on the entire fund created by efforts of counsel); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund although a portion reverted to the defendant); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (holding that the district court abused its discretion by awarding only one-third of the $10,000 claimed against the common fund rather than one-third of the entire $4.5 million settlement fund in a case where unclaimed funds reverted to the defendant); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806 (E.D. Wis. 2009) (awarding 33% of the available fund, an award that exceeded the amount actually claimed); *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. May 20, 2008) ("Notably, the Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorney's fees be awarded on the entire Maximum

---

lodestar method is appropriate), which include "the time and labor required" and "the customary fee." *Camden I,* 946 F.2d at 775, 772 and n.3.

Gross Settlement Amount even though amounts to be paid to settlement class members who do not file a claim form will remain the sole and exclusive property of the defendant").

In this and the California case, Class Counsel rendered their services for the benefit of the Class. Those services operated to create a fund available for the benefit of all members of the Settlement Class conservatively estimated at $49.94 million, from which each member of the Class is entitled to his or her refund. Whether a particular Class Member claims the refund to which he or she is entitled is that Class Member's choice, but that choice does not affect the benefit Class Counsel created for the Settlement Class or the proportionate share of fees to which Class Counsel are entitled. *See Boeing Co.,* 444 U.S. at 478. In *Boeing*, the United States Supreme Court affirmed the Court of Appeals' holding that absentee class members had received a benefit within the meaning of the common-fund doctrine and addressed the question of "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment." *Id.* at 473. It held that the attorney was entitled to a reasonable fee from the fund as a whole:

> The members of the Class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery [and whether they claim the money or not] cannot defeat each class member's equitable obligation to share the expenses of litigation.

*Id.* at 481-82.

Accordingly, the total monies available to the Class is the proper measure of the common fund created, not the number of claims that may be made against the fund. The only question remaining is what percentage of the common fund is appropriate as a fee award in this case. *Camden I*, 946 F.2d 768, supplies the applicable guidelines for making that determination.

### C. The *Camden I* Factors Support Counsel's Requested Fee

It is indisputable that substantial "time and labor was required" to litigate this case for over sixteen months. *Camden I*, 946 F. 2d at 775, 772 n.3 (quoting *Johnson v. Georgia Highway Express. Inc.,* 488 F.2d 714, 718 (5th Cir. 1974)). Class Counsel spent thousands of hours litigating the two cases and negotiating the Settlement. *See* Lowe Decl. at ¶ 4; Gale Decl. at ¶ 6; Schubert Decl. at ¶ 21. It also is beyond dispute that this litigation was complex, involving difficult issues of law and fact. Defendants have denied and continue to deny all allegations of wrongdoing. Defendants have also denied and continue to deny that plaintiffs and the Class suffered any damages. The complexity of this litigation and "novelty and difficulty of the questions involved" highlight the nature and magnitude of the risk assumed by Plaintiffs' counsel in accepting representation on a fully contingent basis. *See Camden I,* 946 F.2d at 772 n. 3; *Walco v. Thenen,* 168 F.R.D. 315, 327 (S.D. Fla. 1996). In this case, Class Counsel's competence and experience in class actions clearly was a significant factor in both: (a) overcoming Defendants' resistance to settlement and (b) obtaining the result achieved for the Class. In assessing the quality of representation by Plaintiffs' counsel, the Court also should consider the quality of the opposition. *E.g., Camden I,* 946 F.2d at 772 n. 3; *Johnson*, 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651 (M.D. Fla. 1992); *Angoff v. Goldfine,* 270 F.2d 185, 192 (1st Cir. 1959). The excellent quality of that opposition (by well-known firms Jones Day and Carlton Fields) is no less apparent.

In determining the appropriate fee, the Court should also consider "the economics involved in prosecuting a class action." *Camden I, 946* F.2d at 775, 77 n. 3 (related *Johnson* factor is "whether the fee is fixed or contingent"). The two actions were prosecuted on a purely contingent basis by Class Counsel who have assumed the risk of no payment for a considerable amount of work for over twenty-two months. The claims in the cases were difficult and the

contingency risk was substantial. Class Counsel expended more than six thousand otherwise billable hours to these cases, worth approximately $3.5 million at their normal hourly rates, and advanced over $270,000 in out of pocket expenses. Lowe Decl. at ¶¶ 4 & 10; Gale Decl. at ¶¶ 6 & 8; Schubert Decl. at ¶¶ 21 & 22.

Although Class Counsel expended a significant number of hours in prosecuting the two cases, it is important to note that courts awarding percentage fees in common fund cases have warned against "focus[ing] too narrowly on the number of hours billed or the hourly rate in contingency fee cases." That is because, as one court recognized, where success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard. *In re King Resources Sec. Litig.,* 420 F. Supp. 610, 631 (D.Colo.1976) (quoting George D. Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards*, 69 Harv. L.Rev. 658, 660 (1956)); *see also Shaw v. Toshiba American Information Systems, Inc.,* 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one sixth of that performed by his marginal colleagues who require an hour and a half for the same operation."). Yet this particular case is one where both the hours spent and the recovery obtained justify the fee requested. The fee requested, $5.41 million, represents a 1.56 multiplier over the usual and ordinary time value of the hours expended by Class Counsel. Such a multiplier is well below those adopted by other Courts as appropriate in awarding Class Counsel fees. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F.Supp.2d 1334, 1343–44 (S.D. Fla. 2007) (a multiplier of three appears to be the average; in many cases, multipliers much higher than three have been approved).

Furthermore, the lodestar approach should not be imposed through the back door via a "cross-check." Lodestar "creates an incentive to keep litigation going in order to maximize the

number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F.Supp. 1254, 1256 (C.D.Cal.1997). In *Camden I,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the Court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney and more faithfully adheres to market practice." *Id.; see also Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir.2000) (emphasis added). Under *Camden I,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g., David v. American Suzuki Motor Corp.,* 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010).[7] "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded…. In this context, monetary results achieved predominate over all other criteria." *Camden I,* 946 F.2d at 774 (citations and alterations omitted).

The agreed-upon attorneys' fee is less than 10.9% of the $49.94 million in total available benefits provided by the Settlement. Considering "awards in similar cases," there are numerous decisions in the Eleventh Circuit awarding up to (and sometimes in excess of) one-third of the settlement value.[8]

It also is significant that the requested fee and expense amount is substantially less than the standard contingent fee in the marketplace. "The object in awarding a reasonable attorney's

---

[7]     See also *Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. May 3, 2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

[8]     *See, e.g., Waters, supra,* Case No. 90-6863-Civ-Ungaro-Benages (S.D. Fla. 1997) (awarding *33 1/3%* of $40 million fund) (11th Cir. 2000), *aff'd,* 190 F.3d 1291 (11th Cir. 1999); *In re Int'l Recovery Corp. Sec. Litig.,* Case No. 92-1474-Civ-Atkins (S.D. Fla., June 2, 1994) (fee award represented 30% of class benefit); *In re Sound Advice, Inc. Sec. Litig.,* Case No. 92-6457-Civ- Ungaro-Benages (S.D. Fla. March 25, 1994) (awarding 30%); *In re Perfumania, Inc., Sec. Litig.,* Case No. 92-1490-Civ-Marcus (S.D. Fla. Sept. 1993) (awarding 30%); *Tapken v. Brown,* Case No. 90-0691-Civ-Marcus (S.D. Fla. 1995) (awarding 33%); *Kaser v. Swann,* Case No. 90-607-Civ-Orl-3A18 (M.D. Fla. 1993) (awarding 30%); *Ressler,* 149 F.R.D. at 655-56 (awarding *30%); In re Aero Systems, Inc. Sec. Litig.,* Case No. 90-0083-Civ-Paine (S.D. Fla. 1993) (awarding 28%). These cases confirm the fairness and reasonableness of the fee requested here.

fee … is to simulate the market." *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992). The requested fee is consistent with marketplace practice, where contingent fee arrangements ranging from 30% to 40% are customary. In their concurring opinion in *Blum v. Stenson,* 465 U. S. 886 (1984), Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever amount Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Id.* at 904; *see Kirchhoff v. Flynn,* 786 F.2d 320, 323, 325 n.5 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation"); *In re Public Service Co.,* Fed. Sec. L. Rep. (CCH) ¶ 96,988, at 94,291-92 (S.D. Cal. 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent on a percentage basis, and in the range of 30% to 40% of the recovery."). If Class Members had retained their own counsel, as Plaintiff did, they would have paid a contingent fee equal to or greater than that requested.[9]

### D. The Fee Award Is Also Proper Under a Lodestar Multiplier Analysis

If the Court, however, views the settlement as a set of discrete components (Class Members' claims, injunctive relief, additional charitable benefits, notice and administration, and attorneys' fees and expense) and not a common fund, Class Counsel's proposed fee award is also justified by their substantial lodestar and a multiplier that reflect the significant value made available to the class. Across two separate cases prosecuted by two sets of firms in both Florida and California, Class Counsel expended 6,385.3 billable hours, worth $3,467,516.25 at their normal hourly rates and advanced $272,275.60 in out-of-pocket expenses. Lowe Decl. at ¶¶ 4 &

---

[9] Class Counsel further request that they be reimbursed for their litigation costs and expenses in the amount of $272,275.60, which are included in the proposed $5.68 million fee and expense award. Under the common fund doctrine, Class Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses incurred in prosecution of the claims in obtaining a settlement. *Harris v. Marhoefer,* 24 F. 3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air West, Inc.,* 557 F. 2d 759, 769 (9th Cir. 1977). The Declarations submitted by Class Counsel establish that all of the expenses were reasonable, necessary, and incurred for the benefit of the Class. Clay Decl. at ¶ 10; Gale Decl. at ¶ 8; Schubert Decl. at ¶ 23.

10; Gale Decl. at ¶¶ 6 & 8; Schubert Decl. at ¶¶ 21-22. Based on Class Counsel's requested fee award of $5.41 million, this represents a multiplier of 1.56, which is entirely consistent with other reasonable multipliers awarded in the Eleventh Circuit.

In the Eleventh Circuit, the average multiplier is approximately three times lodestar. *See Pinto*, 513 F.Supp.2d at 1344 (explaining that the Eleventh Circuit "performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multiples 'in large and complicated class actions' range from 2.26 to 4.5, while 'three appears to be the average.'") (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)). Here, Class Counsel's proposed lodestar multiplier of 1.56 is substantially less than the 3.0 average for the Eleventh Circuit and in fact falls at the bottom end of the Eleventh Circuit's range for lodestar multipliers in complicated class actions.

In addition, in considering the reasonableness of a lodestar multiplier, courts consider the benefits made available to the class, the quality of class counsel's work, the complexity of the issues, and the contingency of payment. *Holman v. Student Loan Xpress, Inc.*, 778 F.Supp.2d 1306, 1314 (M.D. Fla. 2011). Class Counsel's proposed lodestar multiplier is strongly supported by each of these factors.

First, the Settlement provides not only substantial benefits but, on average, approximately 100% relief to Class Members nationwide. Class Counsel achieved this nationwide result, even though the underlying actions in Florida and California each only sought damages for Florida and California Class Members. Class Members nationwide will all receive the same substantial benefits, even though some Class Members live in states with significantly weaker consumer-protection laws that would make successful prosecution of the claims much more difficult. Schubert Decl. at ¶ 13.

Second, the quality of Class Counsel's work supports the proposed lodestar multiplier. Unlike some cases, this was not a "shotgun" settlement. Class Counsel invested extensive time and effort litigating two cases in two separate courts, briefing two separate class certification motions (and arguing the motion in Florida), conducting extensive discovery, including review of over 250,000 documents and numerous depositions on both sides, and negotiating a hard-fought final agreement after two mediations over six months. As discussed *supra*, Class Counsel's prosecution of the case also came against substantial opposition from two well-known and well-regarded defense firms, which vigorously defended their clients.

Third, the complex legal and technical issues involved in the case weigh in favor of the reasonableness of the proposed lodestar multiplier. Not only were there myriad complex legal issues spread across two separate bodies of law in two jurisdictions, as discussed *supra*, there were also numerous complex scientific and technical issues. While the case at heart involved the misrepresentation of Duracell Ultra batteries, Class Counsel devoted significant time to understanding the technical issues that govern battery performance, including battery chemistry, testing methodologies and procedures, and statistical modeling. These technical issues also required the retention of expert consultants. Lowe Decl. at ¶ 6. Schubert Decl. at ¶ 24.

Fourth, both the Florida and California actions were taken and prosecuted on a purely contingent basis. Class Counsel have not been paid for over twenty-two months and have assumed all of the risk of non-payment in the actions. In addition, Class Counsel advanced out-of-pocket expenses of $272,275.60, including the retention of expert technical and economic consultants. The fully contingent nature of Class Counsel's work, therefore, also supports the proposed lodestar multiplier.

In sum, Class Counsel prosecuted two separate actions in Florida and California on behalf of state-only classes in each jurisdiction and successfully returned a settlement that provided, on average, full relief for all Class Members nationwide. This is an exceptional result. Class Counsel's proposed fees, based on lodestar and multiplier, are entirely consistent with—and in fact, significantly lower than—similar settlements in the Eleventh Circuit. Under these circumstances, even if the Court elects to use the lodestar method, Class Counsel's proposed fee award of $5.68 million is reasonable and justified.

## V.   PAYMENT TO CLASS REPRESENTATIVE POERTNER

Class Counsel also request the Court to award Class Representative Poertner the amount of $1,500 in support of his service, as contemplated by the Agreement. Doc. 113-1 at ¶ 66, p. 29. Class Representative payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.,* 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representative payments); *Spicer v. Chi. Bd. Options Exchange, Inc.,* 844 F.Supp. 1226, 1267–68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The factors for determining a class representative payment include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives

24

expended in pursuing the litigation. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). Here, Poertner participated in drafting the Complaint and amendments, participated in responding to Defendants' pleadings and written discovery, reviewed discovery responses, sat for a seven-hour deposition, and participated in the initial face-to-face mediation. The proposed $1,500 incentive payment to Plaintiff is reasonable and warranted in light of the time and effort he committed to this litigation and the resulting benefits to the Class.

## VI.    CONCLUSION

The Settlement and the requested Attorneys' Fee and Expense award are therefore fair and reasonable. The *Bennett* factors fully support the Settlement, and the Fee and Expense amount easily satisfies *Camden I,* particularly in light of the complicated nature of the case; the time, effort, and skill required to create the Settlement Fund; the substantial risk assumed by Class Counsel; and the significant results obtained for Class Members. For these reasons, Plaintiff respectfully requests that the Court give final approval to the Settlement and enter Final Judgment and approve the Fee and Expense amount, as well as the service award to Class Representative Poertner.

Respectfully submitted,

/s/ E. Clayton Lowe, Jr.
E. Clayton Lowe, Jr.
*Pro Hac Vice* admission
**The Lowe Law Firm, LLC**
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
Telephone: (205) 314-0607
Facsimile: (205) 314-0707
Email: clowe@claylowelaw.com

Joshua R. Gale (FL Bar No. 63283)
**Wiggins, Childs, Quinn & Pantazis, LLC**
101 N. Woodland Blvd., Ste. 600

25

DeLand, FL 32720
Telephone: 386-675-6946
Facsimile: 386-675-6947
Email: JGale@WCQP.com

Robert C. Schubert
*Pro Hac Vice* admission
Noah M. Schubert
*Pro Hac Vice* admission
**Schubert Jonckheer & Kolbe LLP**
3 Embarcadero Ctr Ste 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facscimile: 415-788-0161
Email: rschubert@schubertlawfirm.com
Email: nschubert@schubertlawfirm.com

Peter A. Grammas
*Pro Hac Vice* admission
**The Law Office of Peter A. Grammas**
1114 Lake Colony Lane
Vestavia, AL 35242
Telephone: 205-970-9708
E-mail: pete@grammaslaw.com

*Class Counsel and Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 22, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Christopher Batman
441 Coral Place
Corpus Christi, TX 78411

Sam P. Cannata
30799 Pinetree Rd., #254
Pepper Pike, OH 44124

Wanda J. Cochran
10121 Page Road
Streetsboro, OH 44241

Paul Dorsey
110 Westminster Drive
West Hartford, CT 06107

Wendy L. Young
4430 W. Fairmount Ave.
Lakewood, FL 32801

/s/ Noah M. Schubert
Noah M. Schubert
*Pro Hac Vice* admission
**Schubert Jonckheer & Kolbe LLP**
3 Embarcadero Ctr Ste 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-788-0161
Email: nschubert@schubertlawfirm.com

27