IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOSHUA D. POERTNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO: 6:12-CV-00803-GAP-DAB |
| | ) |
| THE GILLETTE COMPANY and | ) |
| THE PROCTER & GAMBLE | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF ROBERT C. SCHUBERT IN SUPPORT
OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND AWARD OF ATTORNEYS' FEES**

I, **ROBERT C. SCHUBERT**, declare as follows:

1. I am a member of the Bar of the States of California, New York, and Massachusetts, and I am the senior partner in the law firm of Schubert Jonckheer & Kolbe LLP (the "Schubert Firm"), one of the counsel for the Settlement Class in this action. I was admitted *pro hac vice* to appear before this Court.

2. I have personal knowledge of the matters set forth in this Declaration, which is filed in support of the Plaintiff's Motion for Final Approval of Settlement and Award of Attorneys' Fees. The Schubert Firm represents Helen Heindel ("Heindel"), who is the named plaintiff in a substantially similar case involving Duracell Ultra Advanced and Ultra Power batteries currently pending in the U.S. District Court for the Northern District of California. *Heindel v. The Gillette Company*, *et al.*, 12-CV-01778-

EDL (N.D. Cal.) (the "California Action"). Along with counsel in the *Poertner* action, I was one of the primary negotiators of the terms of this Settlement. If called to testify, I could and would competently testify to the following facts.

3. Before the original Complaint was filed in the California Action on April 10, 2012, the Schubert Firm conducted an extensive investigation into the underlying factual and legal bases of the Complaint and retained an expert battery consultant to test and evaluate the advertised claims that Defendants' Duracell Ultra batteries lasted longer than CopperTop batteries. An Amended Complaint was filed in the California Action on May 31, 2012, which Defendants answered on June 15, 2012.[1]

4. Beginning in July 2012 in the California Action, my firm began propounding multiple sets of written discovery on Defendants, including requests for production of documents, interrogatories, and requests for admission. In response, Defendants produced over 250,000 pages of documents during the course of the action, which the Schubert Firm carefully reviewed and analyzed. Defendants' counsel also served several sets of written discovery on the plaintiff in the California Action beginning in July 2012, to which the plaintiff served timely responses and produced documents.

5. In October 2012, my firm deposed a key employee of Defendants who provided information relevant to facts at issue in this case, including key marketing and sales information, and in April 2013 deposed Defendants' rebuttal expert witness, Quinn C. Horn, Ph.D., on the consumer use of batteries and battery testing methodology. This

---

[1] Heindel was substituted in as Plaintiff in the California Action by order of the Northern District of California Court in October 2013.

information played an important role in showing the appropriateness of class certification in this case. It also allowed the Schubert Firm to assess the strengths and weaknesses of the case. The original plaintiff in the California Action, also represented by the Schubert Firm, sat for a seven-hour deposition in November 2012, and plaintiff's battery performance and testing expert, Walter van Schalkwijk, Ph.D., was deposed in March 2013. Plaintiffs' counsel also oversaw Defendants' inspection of Dr. van Schalkwijk's Manchester, New Hampshire laboratory in March 2013. If this litigation had continued to trial, it would have involved significant additional discovery and depositions of additional fact witnesses and experts.

6. The Schubert firm drafted the various pleadings filed on the California plaintiff's behalf, including a motion for class certification in May 2013; briefed and researched key issues, including the applicable standards for violations of California's consumer-protection statutes, the industry standards for battery evaluation and testing, and the calculation of Class damages; and represented the interests of Plaintiff and the putative class in motion practice and in contested negotiations. While the case at heart involved the alleged misrepresentation of Duracell Ultra batteries, attorneys within my firm devoted significant time to understanding the technical issues that govern battery performance, including battery chemistry, testing methodologies and procedures, and statistical modeling. These technical issues also necessitated the retention of expert consultants: Dr. van Schalkwijk, an expert regarding battery performance and testing, and Robert H. Wallace, a Certified Public Accountant retained to opine on restitution and

damages issues. These expert consultants were retained at substantial expense to establish and support the California plaintiff's claims against Defendants.

7. After my firm filed a class certification motion in the California Action in May 2013, the Parties' counsel discussed and agreed to participate in mediation to attempt to resolve this case. To that end, by Stipulation and Order in May 2013, the plaintiff and Defendants agreed to continue the then-scheduled July 2013 class certification hearing date in the California Action until November 2013. The Schubert Firm joined with plaintiff's counsel in the *Poertner* Action in an effort to negotiate a nationwide resolution of both actions with Defendants. The Parties in both actions also agreed to utilize Rodney A. Max as mediator.

8. Negotiations regarding a potential settlement were thorough, protracted, and exhaustive. In advance of formal mediations, the Parties frequently consulted with each other on a broad framework for settlement, including numerous emails and multiple conference calls between the Parties. The Parties also exchanged preliminary settlement proposals over the summer of 2013.

9. For the more than four months that the Parties actively worked to resolve the two actions, the Parties worked with mediator Rodney A. Max, one of several possible mediators proposed by the Court in the *Poertner* Action. Mr. Max was selected because of his substantial experience and success in mediating consumer class actions and complex commercial litigation cases. On August 1st and 12th, 2013, counsel for the Parties held face-to-face mediation sessions with Mr. Max at his offices in Miami, Florida. The first session exceeded ten hours. The second session exceeded eight hours.

Each face-to-face session produced some progress. However, no settlement was reached at the time. Nonetheless, Mr. Max was persistent in his efforts to continue discussions among the parties and continued to engage in telephonic mediations and "shuttle diplomacy" between the Parties throughout the negotiation process.

10. Counsel for the Parties had numerous discussions, sometimes on a daily basis, throughout the negotiation process. After the two in-person mediation sessions, telephone calls among counsel, mediated telephone negotiation sessions, and numerous emails, a Memorandum of Understanding was executed on September 13, 2013. Thereafter, the final Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") was prepared and signed. The Settlement Agreement was filed with the Court on October 25, 2013.

11. The plaintiff filed the California Action to stop the alleged abuses in the way Duracell Ultra Advanced and Ultra Power alkaline batteries were being marketed to consumers. Specifically, plaintiff alleged that Defendants misrepresented Ultra batteries as "more powerful" and "longer lasting" than Duracell CopperTop batteries, when in fact there was no material difference between Ultra and CopperTop batteries. Plaintiff, therefore, alleged that Ultra batteries were sold at unjustified premium prices. In particular, the Complaint in the California Action asserted claims based upon the advertisements that (i) Duracell Ultra Advanced batteries last "Up to 30% Longer in Toys*" which the Complaint alleges misleads consumers into believing that that Ultra batteries last materially longer than CopperTop batteries, and (ii) Duracell Ultra Power batteries are Duracell's "Longest Lasting" alkaline batteries. The terms of the Settlement

5

are tailored to redress these allegations and claims. The relief is within the upper range of what plaintiff could have obtained if successful at trial, and in fact, substantially exceeds the average amount that a typical class member was damaged during the Class Period. Additionally, the relief is significantly more valuable to Class Members because it will be received sooner than could have been accomplished without an early settlement and without the additional expense of extensive further litigation over complex and contested issues.

12. Absent a settlement, Settlement Class Members faced substantial risks of delay before any recovery could be achieved, as well as the risk of no recovery at all. Throughout the litigation, Defendants have vigorously denied the claims and allegations in the California Action and in this case, and even now continue to deny any liability or wrongdoing. Furthermore, if plaintiffs were unable to obtain class certification, the Class Members' ability to recover anything would be eviscerated. Defendants have put on a vigorous defense in both cases and undoubtedly would continue to do so through trials and appeals, if necessary. Even under the best-case analysis of the Schubert firm, had the case been tried, there would have been long delays before a single Settlement Class Member would have received any recovery. This is a case in which Settlement Class Members are best served by immediate relief.

13. Under the Settlement, Settlement Class Members have the right to recover approximately 100% of their damages and can obtain this valuable relief on an expedited basis and without risks and delays of ongoing litigation. Class Counsel achieved this nationwide result, even though the underlying actions in Florida and California each only

sought damages for Florida and California Class Members. Class Members nationwide will all receive the same substantial benefits, even though some Class Members live in states with significantly weaker consumer-protection laws that would make successful prosecution of the claims much more difficult.

14. In addition, the class notice program fully advised Settlement Class Members regarding all their alternatives, so that they could make an informed choice either to accept the Settlement or to opt out to pursue their own claims.

15. On November 5, 2013, this Court certified a plaintiff class for settlement purposes only in accordance with the terms of the Settlement Agreement. Dkt. No. 118. This Court found, that for settlement purposes only and conditioned upon a Final Order and Judgment and the occurrence of the Effective Date, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure were satisfied.

16. As an additional term of the Settlement Agreement, Plaintiffs' counsel in this case and the California Action have requested that Defendants pay attorneys' fees and expenses of $5,680,000.00 and that Plaintiff Poertner receive a Named Plaintiff Payment of $1,500.00. The Named Plaintiff in the California Action, Ms. Heindel, has not sought and will not receive any Named Plaintiff Payment as part of the Settlement. Plaintiff's counsel in this case and the California Action have, to date, collectively incurred thousands of hours of attorney time and substantial expenses and costs. Payment of the requested fees and expenses will not reduce the recovery to Settlement Class Members.

17. After negotiations on all substantive terms of the Settlement were completed, the parties began separate negotiations regarding attorneys' fees and expenses. Mr. Max proposed a fee and expense number to the Parties, which in his opinion as a mediator represented a fair and reasonable award. However, the fee and expense number ultimately agreed to by the Parties is substantially less than the number proposed by Mr. Max. Attorneys' fees, expenses, and Named Plaintiff Payment negotiations all took place with the direct involvement of Mr. Max to ensure there was no potential conflict between the negotiations over the principal terms of the Settlement and any fee or incentive award negotiations. The attorneys' fees and expenses were agreed to only *after* the material terms of the Settlement had been agreed to in principle and reflect the work of Plaintiff's counsel in this and the California Action to prosecute and successfully resolve both cases.

18. I believe that the requested fee and expense amount is reasonable when compared to the overall compensation made available to the Settlement Class, valued at approximately $49.87 million—computed by multiplying the 7.26 million Class Members by the expected average Settlement payment of $6.00, plus the $5.68 million in attorneys' fees and expenses and $632,095 in notice and administration costs. Thus, the fee and expense request is approximately 11.4% of the overall monetary value made available for the Class, without inclusion of any value for the significant injunctive relief obtained or the $6 million in-kind contribution of Duracell products that Defendants agreed to make under the terms of the Settlement. When Class Counsel's combined expenses of $272,276.60 are subtracted from the total fee and expense award requested,

Class Counsel's fee represents just 10.85% of the overall compensation made available to the Settlement Class.

19. My firm maintains contemporaneous billing records for all of our cases. Based upon my review of my firm's timekeeping records, the Schubert Firm has expended a total of 2,386.3 hours to date prosecuting this litigation, performing the tasks described above. Multiplied by each attorney's current hourly billing rates, the Schubert Firm has accrued a total lodestar of $1,211,055.00, representing an average hourly rate of $507.50. All of the time described above was reasonably and necessarily expended, in my opinion, and does not include anticipated future time in preparation for and participation at the hearing on Plaintiff's Motion for Final Approval of the Settlement.

20. The prevailing market rates for attorneys' fees in the forum community for the Northern District of California, where the California Action was filed and litigated for over two years, are between $350 and $1000 per hour for attorneys of comparable skill and experience to those as the Schubert Firm. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2013 WL 1365900, at *9 (N.D. Cal. Apr. 3, 2013) (awarding attorneys' fees based on individual billing rates between $350 and $1000 per hour in complex class-action settlement). The rates for attorneys at the Schubert Firm, which range from $400 to $850 per hour based on experience and average $507.50 per hour in this action, therefore fall within the range of reasonable market rates in the forum community.

21. Detailed below are the total hours that each attorney and paralegal at the Schubert Firm expended on this case, along with each attorney and paralegal's current hourly rate, and each attorney and paralegal's total lodestar:

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Robert C. Schubert | 223.9 | $850.00 | $190,315.00 |
| Willem Jonckheer | 140.7 | $700.00 | $98,490.00 |
| Miranda Kolbe | 412.3 | $700.00 | $288,610.00 |
| Dustin Schubert | 73.4 | $500.00 | $36,700.00 |
| Jason Pikler | 37.4 | $450.00 | $16,830.00 |
| Noah Schubert | 1401.3 | $400.00 | $560,520.00 |
| Jason Dang (paralegal) | 6.5 | $220.00 | $1,430.00 |
| Jackie Zaneri (paralegal) | 88.5 | $200.00 | $17,700.00 |
| Leah McGrath (paralegal) | 2.3 | $200.00 | $460.00 |
| **Total Lodestar** | **2386.3** | **$507.50** | **$1,211,055.00** |

22. Detailed below are the expenses that my firm has expended that are unreimbursed as of this date:

| Unreimbursed Expenses | Total |
|---|---|
| Courier and FedEx Charges | $381.31 |
| Court Costs: Electronic Filing Fees, Court Clerk Charges, *Pro Hac Vice* Application Fees | $350.00 |
| Facsimile and Postage | $101.57 |
| Westlaw Legal Research and PACER Access | $14,124.04 |
| Long Distance Telephone and Teleconference Services | $368.47 |
| Transcripts | $8,464.13 |
| Photocopies | $1,219.99 |
| Mediation Fees | $6,540.63 |
| Travel and Meals | $22,913.52 |
| Expert Consultants | $58,084.41 |
| Duracell Batteries for Testing | $1,274.73 |
| **Total Expenses** | **$113,822.80** |

The expenses attributable to this case are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other documents and are an accurate record of the expenses incurred by my firm. All of those expenses were reasonably and necessarily incurred, in my opinion.[2]

23.     My firm's compensation for services rendered in this action was wholly contingent on the success of the action and was incurred at risk of total non-payment. My firm has not been paid for over twenty-three months.

24.     The prosecution of this action not only involved complex legal issues, including those related to the class certification determination, but also involved mastering complex scientific and technical issues. While the case at heart involved the misrepresentation of Duracell Ultra batteries, its prosecution required attorneys within my firm to devote significant time to understanding the highly technical issues that govern battery performance, including battery chemistry, testing methodologies and procedures, and statistical modeling. The involvement of these scientific and technical issues in the case also necessitated the retention of expert consultants. The fees and unreimbursed expenses described herein have not been paid from any source and have not been the subject of any prior request or prior award in any litigation or other proceeding.

---

[2] The expense figures detailed above do not include additional expenses the Schubert Firm expects to incur in connection with the upcoming final approval hearing, including travel and lodging expenses.

25.     I believe the Settlement and requested attorneys' fees, expenses, and incentive award are fair, adequate, and reasonable as required by Fed. R. Civ. P. 23(e)(2) and should be granted final approval by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of April, 2014.

>           /s/ Robert C. Schubert
>           Robert C. Schubert
>           *Attorney for Plaintiff*