**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| **JOSHUA D. POERTNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 6:12-CV-00803-GAP-DAB** |
| | ) | |
| **THE GILLETTE COMPANY and** | ) | |
| **THE PROCTER & GAMBLE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT, REQUEST FOR ATTORNEYS' FEES AND EXPENSES, AND NAMED PLAINTIFF PAYMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED .................5

    A.    The Settlement Was the Product of Arm's Length Negotiations and Is Entitled to Deference ................................................................................6

    B.    The Settlement Achieved Closely Approximates the Total Damages That Could Be Achieved at Trial. ...............................................................9

    C.    The Fairness and Adequacy of the Settlement Is Not Dependent Upon the Number of Claims Made ......................................................12

    D.    The In-Kind Donations and Injunctive Relief Add Value to the Settlement. .......13

        1.    The In-Kind Donations Add Value to the Settlement. ..............................13

        2.    The Injunctive Relief Adds Value to the Settlement ................................18

    E.    The Paucity of Objections Weighs in Favor of Approval .....................................19

III.   THE OBJECTIONS TO CLASS COUNSEL'S FEE AND EXPENSE REQUEST SHOULD BE OVERRULED............................................................................................25

    A.    Under Binding Eleventh Circuit Precedent, the Settlement's Value Must Be Calculated on the Total Benefit Made Available to the Class...............................26

    B.    Neither the 2003 Amendments to Rule 23 nor the Class Action Fairness Act of 2005 Superseded the Total Benefits Rule ..............................................................33

    C.    District Courts Consistently Apply the Total Benefits Rule in Both Pure and Constructive Common Fund Settlements. ............................................................35

    D.    Objectors Do Not Cite Any Eleventh Circuit Law to Support Their Argument That Attorneys' Fees Must Be Awarded as a Percentage of Actual Claims, and the Authority They Cite from Other Circuits Is Distorted and/or Distinguishable. ....37

    E.    Plaintiffs' Proposed Fee of 10.85% of the Common Fund Is Reasonable and Proportionate to the Substantial Benefits Available to the Class. .........................38

    F.    Alternatively, Class Counsel's Requested Fee Award Is Justified by Their Lodestar. ...............................................................................................................40

    G.    Defendants' Agreement to Pay a Negotiated Fee and Expense Award, Subject to Court Approval, Is Not Suspect.............................................................................43

H.     Class Counsel May Privately Allocate the Fee Award. ........................................45

IV.    THE OBJECTIONS TO THE PROPOSED NAMED PLAINTIFF PAYMENT SHOULD BE OVERRULED ........................................................................................................47

V.    THE NOTICE COMPORTED WITH RULE 23(H)........................................................49

VI.    CONCLUSION .............................................................................................................50

# TABLE OF AUTHORITIES

## Cases

*Ass'n for Disabled Ams, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002)..................7, 19

*Atkinson v. Wal-Mart Stores, Inc.*, 8:08-CV-691-T-30TBM, 2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)..............................................................................................................................27

*Bellifemine v. Sanofi-Aventis U.S. LLC*, 07 CIV. 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)..................................................................................................................................21

*Blessing v. Sirius XM Radio, Inc.*, 507 Fed. Appx. 1 (2nd Cir. Dec. 20, 2012)...........................23

*Calloway v. Cash Am. Net of California LLC*, 09-CV-04858 RS, 2011 WL 1467356 (N.D. Cal. Apr. 12, 2011)........................................................................................................................50

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ...........................passim

*Carnegie v. Mut. Sav. Life Ins. Co.*, Civ.A.CV-99S3292NE, 2004 WL 3715446 (N.D. Ala. Nov. 23, 2004)..................................................................................................................................7

*Cassese v. Williams*, 503 Fed. Appx. 55 (2nd Cir. Nov. 20, 2012)..............................................23

*David v. Am. Suzuki Motor Corp.*, 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ............................................................................................................................12, 28, 36

*De Leon v. Bank of Am., N.A. (USA)*, 6:09-CV-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012)........................................................................................................................37

*Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451 (D.C. Cir. 1996).............................................................................................................16

*Dennings v. Clearwire Corp.*, 2013 WL 3870801 (W.D. Wash. July 26, 2013) .........................24

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)...................................................................16

*Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed.Appx. 168 (11th Cir. 2008) .........................12, 28

*Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741 (M.D. Fla., Jan. 27, 1998)..................7, 8

*Embry, et al v. ACER America Corp.*, No. 09-01808 JW (N.D. Cal.) ..........................................25

*Fabricant v. Sears Roebuck & Co.*, 98-1281-CIV, 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002) ....................................................................................................................................12, 28, 37

*Fears v. Wilhelmina Model Agency, Inc.*, 315 Fed. Appx. 333, 2009-1 Trade Cas. (CCH) ¶ 76542 (2d Cir. 2009) ...........................................................................................................16

*Fresco v. Auto Data Direct, Inc.*, 0361063CIV-MARTINEZ, 2007 WL 2330895 (S.D. Fla. May 14, 2007) .................................................................................................................7

*Gemelas v. The Dannon Company, Inc.*, No. 08-cv-00236 (N.D. Ohio) ....................................25

*Gittin v. KCI USA, Inc.*, 09-CV-05843 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) .........50

*Grannan v. Alliant Law Group, P.C.*, 2012 WL 216522 (N.D. Cal. Jan 24, 2012) .....................20

*Hartless v. Clorox Co.* No. 3:06-cv-02705-CAB (S.D. Cal.).......................................................25

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011).........................................25, 43, 46, 47

*Holman v. Student Loan Xpress, Inc.*, 778 F.Supp.2d 1306 (M.D.Fla. 2011)..............................41

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983) .......................................................49

*In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395 (D.D.C. 1978) .................................................46

*In re Apple Inc. Sec. Litig.*, 2011 WL 1877988 (N.D. Cal. May 16, 2011) .................................23

*In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) .................................11, 17

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)................11, 38, 44, 45

*In re Carbon Dioxide Antitrust Litig.*, 940, 1996 WL 523534 (M.D. Fla. July 15, 1996)...........49

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531 (N.D. Cal. 2012) .....................23

*In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011)........10, 14, 15, 48

*In re Copley Pharmaceutical, Inc. Albuterol Products Liability Litig.*, 50 F. Supp. 2d 1141 (D. Wyo. 1999) ..............................................................................................................46

*In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .....................................................................................................21

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) .................46, 47, 48

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .....................................................11

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008)...............47

*In re HP Inkjet Printer Litig.*, No. 5:05–cv–3580 JF (N.D. Cal.) ...............................................25

*In re Infant Formula Multidistrict Litig.*, 4:91-CV-00878-MP, 2005 WL 2211312 (N.D. Fla. Sept. 8, 2005).......................................................................................................15, 16, 17

*In re Johnson & Johnson Derivative Litigation*, 900 F.Supp.2d 467 (D.N.J. 2012)..........2, 17, 44

iv.

*In Re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*, No. 1:09-cv-07670 (N.D. Ill.) ...................................................................................................................25

*In re Lifelock, Inc. Marketing and Sales Practices Litig.*, MDL 08-1977-MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010).....................................................................................50

*In re Livingsocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489 (D.D.C. March 22, 2013) ...........................................................................................................13

*In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012)............................16, 18

*In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08-CV-285 (DMC) (D.N.J.) .........................25

*In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..............................50

*In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392 (N.D. Ga. 2001) .....................15

*In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484 (C.D. Cal.)................................25

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 687 F. Supp. 2d 1 (D.P.R. 2010) .......................18

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................37

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ...................................................7

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ..................................34

*Kakani v. Oracle Corp.*, C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007) .......44

*Knight v. Alabama*, 469 F.Supp.2d 1016 (N.D. Ala. 2006) ........................................................7, 8

*LaGarde v. Support.com, Inc.*, C12-0609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ...19

*Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 WL 1994703 (N.D. Cal. May 13, 2013) 13

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .................................................................20

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001)......................................................11

*Marsikian v. Mercedes Benz USA, LLC*, No. 2:08-cv-04876-AHM-FMO (C. D. Cal.) ..............25

*Masters v. Lowe's Home Centers, Inc.*, No. 3:09-cv-00255-JPG-PMF (S. D. Ill.).....................25

*Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ....................................32

McKinnie v. JP Morgan Chase Bank, N.A., 678 F. Supp. 2d 806 (E.D. Wis. 2009)....................44

*Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012)............................15

*Nachsim v. AOL, LLC.*, 663 F.3d 1034 (9th Cir. 2011)...............................................................16

*Nelson v. Greater Gadsden Hous. Auth.*, 802 F.2d 405 (11th Cir. 1986) .................................14

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429 (11th Cir. 2012) ....................passim

*ONB Ridge Villa One, LLC v. Deep Bay Green Corp. et al.*, No. 1:13-cv-00415-JG (N.D. Ohio) ..................................................................................................................................................25

*Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 WL 30676 (N.D. Ill. Jan. 3, 2014) .......................13

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...................................................10

*Perkins v. Am. Nat. Ins. Co.*, 3:05-CV-100 CDL, 2012 WL 2839788 (M.D. Ga. July 10, 2012)15, 18

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334 (S.D. Fla. 2007)....................36, 41, 48

*Reed v. 1-800-Contacts, Inc.*, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) .....................................20

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 13-21107-CIV, 2014 WL 808653 (S.D. Fla. Feb. 28, 2014)..................................................................................................................................passim

*Schulte v. Fifth Third Bank*, No. 09–cv–6655 (N.D. Ill.) .............................................................25

*Silverman v. Motorola, Inc.*, 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012).................50

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 WL 2286076 (M.D. La. May 23, 2013)...............................................................................................................................................13

*Stahl v. MasTec, Inc.* 2008 WL 2267469 (M.D. Fla. May 20, 2008)............................................36

*Strong v. Bellsouth Telecoms. Inc.*, 137 F.3d 844 (5th Cir. 1998) ..............................................38

*Strube v. American Equity Inv. Life Ins. Co.*, 2006 WL 1232816 (M.D. Fla. May 5, 2006) ......7, 8

*Su v. Elec. Arts, Inc.*, 6:05CV131ORL28JGG, 2006 WL 4792780 (M.D. Fla. Aug. 29, 2006) ...48

*Tenille v. W. Union Co.,* No. 09-CV-00938-JLK-KMT, 2013 WL 4829190 (D. Colo. Sept. 10, 2013)...............................................................................................................................................21

*Tennille v. W. Union Co.*, No. 09-CV-00938-JLK (D. Colo.)......................................................21

*Tennille v. W. Union Co.,* No. 09-CV-00938-JLK, 2013 WL 5716877 (D. Colo. Oct. 21, 2013)21

*Trombley et al. v. National City Bank et al.,* No. 1:10-cv-00232-JDB (D.D.C.) .........................25

*Turner v. Murphy Oil USA Inc.*, 582 F. Supp. 2d 797 (E.D. La. 2008) .......................................47

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ...............................passim

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991)......................44, 45

*Will v. Gen. Dynamics Corp.*, CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) 40

**Other Authorities**

4 Newberg on Class Actions § 11:29 (4th ed. updated Dec. 2013) ..............................................31

Hailyn Chen, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 UCLA L. Rev. 879, 892 (2003)..........................................................33

Manual for Complex Litigation (Third) §30.42 (1995)...................................................................8

## I.    INTRODUCTION

This Settlement resolves two similar, independent actions against Defendants.  In each case, the plaintiff claimed that Duracell had misleadingly advertised its Ultra Power and Ultra Advanced brand batteries (the "Ultras") as longer lasting than Duracell's lower-priced CopperTop batteries and that damages could be estimated at trial by subtracting the average price paid for Duracell's CopperTop brand batteries from the average price paid for the Ultras during the Class Period.

As a result of the Settlement, Defendants have agreed to compensate each of the 7.26 million Class Members who submit valid claim request forms by paying them their total estimated damages without requiring them to submit any documentation of their purchases.[1] In addition, Defendants have ceased production and marketing of the Ultras and have agreed to never again sell those batteries by claiming that the Ultras are Duracell's "Longest Lasting."  Further, Defendants will donate $6 million worth of Duracell products to charitable organizations which use substantial numbers of batteries, such as Toys for Tots and The American Red Cross.  Finally, Defendants will pay Class Counsel's fees and expenses of up to $5.68 million, a representative plaintiff payment of $1,500, and all costs of notice and settlement administration.

Class Notice was disseminated through a Notice Program which was approved by the Court on November 5, 2013.  The Notice Program included dissemination of the Class Notice to the U.S. and state attorneys general, pursuant to CAFA, 28 U.S.C. § 1715, and publication of notice in leading consumer magazines and on a variety of websites, reaching 70.4% of the Class.  Declaration of Gina M. Intrepido in Response to Objections to Final Approval of Class Settlement ("Intrepido Decl.") ¶¶ 3-5.  Coverage was further extended

---

[1]     Class Members can claim damages of $3 per pack up to a total of $6 without documentation, or up to a total of $12 if they provide documentation.

1.

through placements in the San Francisco Chronicle, the Orlando Sentinel, and USA Today. *Id.* ¶ 6. In addition, the Class Notice and Claim Forms were republished on a variety of websites. *Id.* ¶ 7. As a result, it is likely that the Notice reached more than 70.4% of the Class. *Id.* ¶ 8. 55,346 claims were filed. Declaration of Deborah McComb re Settlement Claims ¶ 6.

No attorneys general objected to the Settlement or Class Counsel's fee and expense request; only six of the 7.26 million Class Members submitted objections; and only twelve requested exclusion. This memorandum addresses the objections that were submitted.

The Eleventh Circuit counsels that, in determining whether to approve a class action settlement, the district court should consider whether that settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks omitted). The following factors are relevant to that determination:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.
>
> *Id.* In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977).

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012).

The objectors pay little heed to the *Bennett* factors. Objectors fail to consider the relationship between the agreed-upon relief and the result that might have resulted from a trial, the expected length of the litigation, or the substantial risks plaintiffs faced in bringing their claims. They urge this Court to disregard the parties' extensive arm's length negotiations overseen by a highly-regarded mediator appointed by this Court and maintain that their own status as anomalies in a Class of 7.26 million is irrelevant. Instead, relying

largely upon authority from outside of this Circuit, the objectors focus their critique on the additional forms of relief that are provided—the $6 million in-kind donation to charities and Defendants' agreement to cease the alleged misleading advertising—as well as Class Counsel's attorneys' fees request.

The objectors' refusal to consider Eleventh Circuit authority, and in particular the *Bennett* factors, is telling, because consideration of those factors demonstrates that the proposed Settlement should be approved.  Contrary to the objectors' claims, where, as here, a class action settlement has been reached only after extensive, arm's-length negotiations overseen by a highly-regarded, court-appointed mediator, Class Counsel's view that the resulting settlement is fair and adequate is entitled to deference, and that only a miniscule portion of the Class has objected weighs strongly in favor of approval.

Consideration of the result achieved in light of the risks faced by plaintiffs in bringing their claims also demonstrates that the objections to the Settlement should be overruled. Those risks included the risk that plaintiffs' motions for class certification would be denied, as well as the risk that Defendants would prevail on liability or that less than the total amount of damages sought would be awarded.  With respect to liability, Defendants planned to argue, *inter alia,* that their packaging claims were actually true, and with respect to damages, that the Ultras included additional features that distinguished them from the CopperTops, so that even if their longevity claims were deemed misleading, the full price difference between the Ultras and the CopperTops should not be awarded.  Plaintiffs believe that their own scientific analyses of the batteries' capacities, as well as their evidence of what reasonable consumers would expect when confronted with the packaging claims, would ultimately prevail, but Plaintiffs also acknowledge that a win was far from guaranteed. At the end of the day, the amount of damages awarded could fall short of the full price differential that Plaintiffs were seeking.

3.

In light of these risks, the Settlement is an outstanding result.  Through the Settlement, each Class Member who submits a valid claim form, which can be done quickly online, is entitled to receive approximately the full amount of damages that they could hope to recover at trial, immediately, and without providing any documentation of their purchase. That Defendants additionally agreed to never again sell the Ultras using the longevity claims at issue and to make $6 million worth of in-kind donations to charities only enhances the result; it does not provide a basis for denying approval of the Settlement.

In sum, consideration of the *Bennett* factors demonstrates that the objections to the Settlement should be overruled.

The objectors' critiques of Class Counsel's fee request similarly ask this Court to ignore Eleventh Circuit precedent holding that attorneys' fees must be based upon the total benefit made available to the Class, not the amount that was actually claimed.  While relying on cases from outside of this Circuit and on dissenting opinions, objectors fail to inform the Court that not only has their approach been rejected by the Eleventh Circuit, but it has also been rejected by the vast majority of courts which have considered the issue.  The total benefits rule incentivizes attorneys to effectively litigate class actions involving relatively low-cost consumer products such as the Ultras, which involve  a large amount of aggregate damages but relatively small individual damages—exactly the types of cases for which class treatment has historically been deemed superior.  Applying the total benefits rule, the reasonableness of Class Counsel's fee request is evident, because the requested fee of less than 10.9% is well below the 25% benchmark in this Circuit.  A lodestar-multiplier analysis also demonstrates that Class Counsel's fee request is reasonable, as the requested fee represents only a 1.56 multiplier of Class Counsel's lodestar.  In sum, the objections to Class Counsel's fee and expense request should be overruled.

4.

The remaining objections to the proposed named plaintiff payment and to the deadline to file objections also lack merit and should be overruled.[2]  The requested payment of $1500 to Plaintiff Joshua D. Poertner ("Poertner") is well within the range of awards that have been granted to class action plaintiffs in this Circuit and is amply supported by Poertner's contribution in this litigation.  And any objection that the initial deadline to object to Class Counsel's fee request was too early has been mooted by this Court's order allowing objectors to respond to that request until May 9, 2014.

## II.  THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED

The objections to the proposed Settlement should be overruled.  First, as explained below, Objectors' arguments that a presumption of fairness should not be applied here, and instead this Court should find the Settlement was the product of collusion, are baseless.  To the contrary, the Settlement was the product of extensive, arm's-length negotiations with a highly-respected mediator, and therefore, not only does a presumption of fairness apply, but Class Counsel's opinion regarding the Settlement's reasonableness is entitled to deference.  Furthermore, because the Settlement that resulted from those arm's-length negotiations is close to, if not better than, the best result that could be hoped for after trial, a finding of collusiveness would be particularly improper here.  The Settlement enables the Class Members who file claims to recover approximately the full amount of damages each has incurred, immediately, without providing any documentation of their purchases.  That a claims procedure is required does not diminish this result:  indeed, because the Defendants

---

[2]  Plaintiffs additionally received objections to the Class definition and the Notice Program. With respect to an objection that the Class definition is improperly open-ended, Duracell has agreed that the Settlement should not be interpreted to bind any consumers who purchase Ultras for the first time during or after the claims period and does not object to the Court including a statement to that effect in the final judgment. *See* Defendants' Memorandum in Support of Final Approval of Class Settlement.  With respect to the objections to the Notice Program, Plaintiffs refer the Court to the Declaration of Gino M. Intrepido in Response to Objections to Final Approval of Class Settlement and the Declaration of Deborah McComb re Final Approval of Class Settlement and In Response to Objections to Class Settlement filed herewith.

do not possess or have access to a list of those consumers who purchased the Ultras, it is likely that a claims procedure would be required even after trial in order to compensate the individual Class Members. Moreover, the injunctive relief and in-kind contributions only enhance the Settlement's value and provide no basis for its rejection. Finally, that no attorneys general objected to the Settlement and that the six objectors are true anomalies in the Class of 7.26 million also weighs in favor of approval. This factor is particularly noteworthy given that at least five of those six objectors are serial objectors whose motives may be suspect.

### A.     The Settlement Was the Product of Arm's Length Negotiations

The process by which the instant Settlement was achieved contains no indicia of collusiveness. The parties actively litigated their claims and reached the Settlement only after months of negotiations under the direct supervision of a court-appointed, nationally recognized mediator, Rodney A. Max. *See generally* Declaration of Rodney A. Max (Dkt. #114-3); Declaration of Clayton Lowe, Jr. (Dkt. #114-1); Declaration of Robert C. Schubert (Dkt. #114-2). Mr. Max has significant experience mediating complex business disputes and nationwide class actions and has focused his practice on mediation for over twenty years. Declaration of Rodney A. Max (Dkt. #114-3), ¶¶ 3-9; *Saccoccio v. JP Morgan Chase Bank, N.A.*, 13-21107-CIV, 2014 WL 808653, *6 (S.D. Fla. Feb. 28, 2014). U.S. District Courts in Florida regard Mr. Max as "eminently qualified." *Fresco v. Auto Data Direct, Inc.*, 0361063CIV-MARTINEZ, 2007 WL 2330895, *5 (S.D. Fla. May 14, 2007).[3]

Mr. Max described the "lengthy negotiations" as "exhausting," adding that he "never witnessed or sensed any collusiveness between the parties." Declaration of Rodney A. Max (Dkt. #114-3), ¶ 14. Rather, in the mediator's opinion, "at each point during these

---

[3]     Mr. Max's participation in the negotiations leading to the settlement which was recently approved in *Saccoccio* was among the factors cited by the district court in finding that settlement was the product of arm's-length negotiations between the parties. *Saccoccio*, 2014 WL 808653, at *6.

negotiations, the settlement process occurred at arm's length and, while professionally conducted, was quite adversarial." *Id.*

Some of the objectors urge this Court to disregard these facts and to instead find that the Settlement was the product of collusion. Such a finding would be baseless. Instead, under these circumstances, the Court should find the Settlement was *not* the product of collusion.[4] Furthermore, the parties' opinion that the settlement is fair and adequate is entitled to deference. *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x at 434 (when the parties have negotiated with the assistance of a highly regarded mediator, "the district court 'should be hesitant to substitute its own judgment for that of counsel.'").

That the parties agreed to the substantive terms of the Settlement prior to negotiating attorneys' fees is an additional factor demonstrating that the Settlement was not the product of collusion. *See, e.g., Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001); *Knight v. Alabama*, 469 F. Supp. 2d 1016, 1036 (N.D. Ala. 2006); *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998); *Fresco*, 2009 WL 9054828, at *3; *Strube v. American Equity Inv. Life Ins. Co.*, 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006).

Incredibly, objectors Frank and Gaspar request that the Court flip this well-settled law on its head—arguing that the separate negotiation of class relief and attorneys' fees *creates* a

---

[4]       *Saccoccio* 2014 WL 808653 at *6 ("the Court should find that the settlement is *not* the product of collusion.") (emphasis added) (citing *Ass'n for Disabled Ams., Inc.*, 211 F.R.D. at 470 and *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001)); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (settlement agreement which was reached with the assistance of an experienced and well-respected mediator was not the product of fraud or collusion); *Fresco v. Auto Data Direct, Inc.*, 0361063CIV-MARTINEZ, 2007 WL 2330895, *5 (S.D. Fla. May 14, 2007); *Carnegie v. Mut. Sav. Life Ins. Co.*, Civ.A.CV-99S3292NE, 2004 WL 3715446,*18 (N.D. Ala. Nov. 23, 2004) (finding no "scintilla" of fraud, collusion, or otherwise improper conduct in settlement "negotiated by capable, experienced counsel, in good faith, and at arms' length, following an extensive, lengthy and difficult process supervised by an experienced mediator."); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion.").

conflict of interest or should be accorded no weight.[5]  The Court must reject this invitation.

Class Counsel were well-aware that "the simultaneous negotiation of class relief and attorneys' fees creates a potential for conflict" and therefore insisted that attorneys' fees, costs, and expenses be negotiated only after the substantive terms of the class relief had been agreed to in principle. *Knight*, 469 F. Supp. 2d at 1036 (citing Manual for Complex Litigation (Third) § 30.42 at 239 (1995)); *see* Declaration of Clayton Lowe, Jr. (Dkt. #114-1), ¶ 14; Declaration of Robert C. Schubert (Dkt. #114-2), ¶ 15; Declaration of Rodney A. Max (Dkt. #114-3), ¶15.

Sequencing settlement negotiations in this manner greatly reduces the potential for any conflict of interest, and supports approval not only of the Settlement but of the requested fee award. *See Knight*, 460 F. Supp. 2d at 1036; *Strube*, 2006 WL 1232816, at *2.[6]  Indeed, after the Class relief was agreed upon, Defendants had every incentive to vigorously bargain for modest attorneys' fees, and Class Counsel ultimately agreed to a fee amount substantially less that the figure proposed by Mr. Max as fair and reasonable.  Declaration of Clayton Lowe, Jr. (Dkt. #114-1), ¶ 14; Declaration of Robert C. Schubert (Dkt. #114-2), ¶ 15. Accordingly, the sequencing of negotiations provides further evidence that negotiations were conducted at arm's length.

---

[5]      In making their arguments, objectors again ignore clear Eleventh Circuit precedent. Objectors instead distort a handful of cherry-picked, passing references to attorneys' fees negotiations in the class action context, mentioned in decisions from other jurisdictions.  Each of these decisions is factually distinguishable. The relevant law in this Circuit is set forth below.

[6]      In evaluating the proposed fee award to class counsel in *Strube*, the District Court for the Middle District of Florida placed great weight on the fact that "the issue of attorneys' fees was never discussed, let alone agreed upon, until the parties had fully agreed to the terms of the class settlement through mediation." *Id.* The *Strube* court explained, "Defendant was aware that because the terms of the settlement had already been agreed upon, it could bargain for lower fees using the risk of delay and the potential conflict of interest which could have arisen if Plaintiffs' counsel delayed settlement for a higher fee." *Id.* (citing *Elkins*, 1998 WL 13374, at *4).  For these reasons, the *Strube* court concluded that the proposed attorneys' fee award was not the result of collusion but rather was arrived at pursuant to arm's-length negotiation. *Strube*, 2006 WL 1232816, at *2. On this basis, *Strube* further concluded that "*great weight should be given to the negotiated fee in considering whether the fee is appropriate*" and approved the requested fee after weighing all relevant factors. *Id.* (emphasis added).  The conduct of the settlement negotiations in *Strube* is indistinguishable than here.

**B.    The Settlement Achieved Closely Approximates the Total Damages That Could Be Achieved at Trial.**

Even if the process by which the Settlement was arrived at did not, by itself, demonstrate that a finding of collusiveness is unwarranted, the result achieved would belie any such claim.

As plaintiffs explained in their respective class certification memoranda, the Class Members' damages may be calculated by subtracting the retail price of Duracell's comparator batteries, the Coppertops, from the retail price charged for the Ultras during the Class Period. That difference was approximately 39 cents per AA and 41 cents per AAA battery. Declaration of Felix Appiah in Support of Final Approval of Class Action Settlement ("Appiah Decl."), ¶ 14. The average number of cells per pack was 7.4 for AAs and 7.1 for AAAs. Appiah Decl. ¶¶ 9 & 11. Therefore, the average overcharge per pack could be reasonably estimated at $2.89 for AAs and $2.91 for AAAs.[7] On average, Class Members purchased 1.4 packs of AAs or 1.3 packs of AAAs during the Class Period, yielding average estimated total damages of $4.04 for purchasers of AAs and $3.78 for purchasers of AAAs. Appiah Decl. ¶ 13.

The Settlement enables each of the 7.26 million Class Members who submit a valid claim request form to receive a payment of $3 per pack, up to a total of $6, without providing any documentation whatsoever.[8] Claims may be submitted online in just a few minutes' time. The process only requires the claimants to type in their names, addresses, and emails and to answer a few simple questions, such as how many battery packs they purchased and

---

[7]    This does not include batteries purchased at Costco stores. Mr. Appiah estimates that 11% of AA consumers and 5% of AAA consumers purchased the Ultras at Costco stores. Appiah Decl. ¶ 13. For those consumers, the average per battery price difference was less—approximately $0.13 for AA batteries and $0.06 for AAA batteries. Appiah Decl. ¶ 15. The average per pack differential ranged from $2.08 to $3.90 for AAs and was $0.96 per pack for the AAA batteries sold at Costco. Appiah Decl. ¶ 15.

[8]    Claimants who submit receipts may qualify for up to $12 in compensation.

9.

whether their purchase was of AA or AAA cells.  *See*

*https://eclaim.kccllc.net/caclaimforms/DUB/Landing.aspx*.

There can be no doubt that this represents an outstanding result.  Each of the 7.26

million Class Members is entitled to receive payment amounting to a reasonable

approximation of the total damages that they incurred, immediately and without providing

any documentation of their purchase.  *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 13-

21107-CIV, 2014 WL 808653, at *8 (S.D. Fla. Feb. 28, 2014)  ("Even assuming that the

monetary figure represents only 12.5% of Plaintiff's damages, which the Court is satisfied

they do not, this recovery would still be adequate); *In re Checking Account Overdraft Litig.*,

830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (a recovery of between 9% and 45% was an

"exemplary result").

Some of the objectors contend that the requirement that Class Members submit claims

diminishes the value of the Settlement or somehow suggests that it was the product of

collusion.  To the contrary, as the *Sacciocco* court recently observed:

> There is nothing inherently suspect about requiring class members to submit claim
> forms in order to receive payment." *Schulte v. Fifth Third Bank,* 805 F.Supp.2d 560,
> 593 (N.D.Ill.2011). Numerous Courts in this district have required claims forms to be
> submitted by class members. *See, e.g. Lipuma v. Am. Express Co.,* 406 F.Supp.2d
> 1298; *Perez v. Asurion Corp.,* 501 F.Supp.2d 1360, 1377–79 (S.D.Fla.2007).

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 13-21107-CIV, 2014 WL 808653, *11 (S.D. Fla.

Feb. 28, 2014).

In this case, there can be no serious doubt that a claims procedure was required in

order to directly compensate the Settlement Class Members.  In fact, given that Defendants

did not sell the Ultras directly to consumers and have not maintained (and do not have access

to) a list of those who have purchased the batteries,[9] a claims procedure would be required

*even after trial* in order to identify the Class Members to whom damages could be awarded.

---

[9]        Appiah Decl. ¶ 5.

10.

Furthermore, that Settlement Class Members are not required to provide documentation to support their claims indicates that the result here may be even better than what could be hoped for after trial. *Id. at* *13 (S.D. Fla. Feb. 28, 2014) (quoting *Mangone v. First USA Bank,* 206 F.R.D. 222, 234 (S.D. Ill. 2001)) (overruling objection to settlement that required class members to submit documentation in support of their claims, reasoning, "a plaintiff in a civil lawsuit bears the burden of proving liability and damages in his or her own case. Class action status does not alter this basic principle").

Defendants' agreement to pay the Settlement Class Members approximately 100% of their damages without requiring any documentation of their purchases sharply contrasts with the result achieved in the cases highlighted by objectors as examples of settlements with indicia of collusiveness. For example, in *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013), the only compensation provided to the class was a coupon for a free box of disposable diapers, which could be claimed only upon presentation of an original receipt and UPC code from a prior purchase. In *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013), class members who did not provide proof of their purchase would receive $5, but that represented only a fraction of their potential damages (after trebling) of $150. And in *In re Bluetooth Headset Prods. Litig.*, 654 F.3d 935 (9th Cir. 2011), the class was offered no compensation at all, and the only monetary relief provided through the settlement was a $100,000 *cy pres* award to charities.

In sum, even if the procedure through which the Settlement was achieved did not by itself extinguish any claim of collusiveness, the outstanding result achieved would belie such a claim. Objectors' claims that this Settlement should be disapproved on this ground are baseless and should be overruled.

11.

**C.   The Fairness and Adequacy of the Settlement Is Not Dependent Upon the Number of Claims Made**

Some objectors claim, citing to authority from outside this Circuit, that the Settlement's value should not be assessed by the relief made available to the Class but rather by the claims that were actually made.  This objection will be addressed in greater depth below in discussing the objections to Class Counsel's fee request.  In this Circuit, the value of a settlement fund is determined by the total amount made available to the class, not by the value of those funds that are actually claimed.  *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (applying the percentage of the common-fund method to a total available common fund, even though the amount paid out in claims was substantially less).  This total benefits rule applies regardless of whether the settlement fund is capped, such as in *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, or uncapped, as in *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. App'x 168, 171-72 (11th Cir. 2008); *Saccoccio*, 2014 WL 808653, at *9 (treating an uncapped, claims-made settlement as a constructive common fund); *David v. Am. Suzuki Motor Corp.*, 08-CV-22278, 2010 WL 1628362, *8 (S.D. Fla. Apr. 15, 2010) (treating an uncapped, claims-made settlement as a constructive common fund when the "value of the proposed settlement's benefits is ascertainable"); *Fabricant v. Sears Roebuck & Co.*, 98-1281-CIV, 2002 WL 34477904, *4 (S.D. Fla. Sept. 18, 2002) (treating an uncapped claims-made settlement as a constructive common fund).

Thus, even though the actual claims made represent only a fraction of the available fund, the value of the Settlement is not diminished.  To the contrary, the claims rate reflects only that the damages incurred are small and direct mail notice was not feasible because the Class Members' identities were unknown.  Declaration of Deborah McComb re Settlement Claims ¶¶ 4-6.  None of the objectors have argued that a better result could be achieved for the Class even after trial, and it is doubtful that such an argument could be made.

12.

Furthermore, even in those circuits where claims rates have been considered when evaluating settlements, courts have routinely approved settlements of consumer class actions that have resulted in low rates of claims.  Tellingly, even in the cases cited by objector Frank in support of his objection that a low claims rate here would somehow render this Settlement deficient, the settlements were upheld as fair, adequate, and reasonable despite claims rates of less than 1%.[10]  As discussed below, Frank's true motivation in objecting to this Settlement is not that a better result could be achieved at trial but rather that he seeks to eliminate consumer class actions altogether.

### D.    The In-Kind Donations and Injunctive Relief Add Value to the Settlement.

As explained above, this Court need not even consider the in-kind contributions and injunctive relief provided by the Settlement to determine that the proposed Settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  Nonetheless, there can be no doubt that these additional forms of relief add value to the Settlement, and the objectors' contentions to the contrary should be rejected.

### 1.    The In-Kind Donations Add Value to the Settlement.

In addition to paying Class Members what has been reasonably estimated as their full damages, Defendants agreed to make an in-kind payment of $6 million (retail value) of Duracell products over a five-year period to charitable organizations, including first responder organizations, the Toys for Tots charity, and the American Red Cross.  These

---

[10]    *Spillman v. RPM Pizza, LLC,* No. 10-349-BAJ-SCR, 2013 WL 2286076, at *8 (M.D. La. May 23, 2013) (approving settlement with a claims rate of less than 1%); *Lagarde v. Support.com, Inc.,* No. 12-0609 JSC, 2013 WL 199470, at *7 (N.D. Cal. May 13, 2013) (approving settlement with a claims rate of 0.17%); *In re Livingsocial Mktg. and Sales Practices Litig.,* MDL No. 2254, 2013 WL 1181489, *52 (D.D.C. March 22, 2013) (approving settlement with 26,000 claims out of a class of 10.9 million); *Pearson v. Nbty, Inc.,* No. 11-cv-7972, 2014 WL 30676, at *22 (N.D. Ill. Jan. 3, 2014). (approving settlement with 30,245 claims from a class of 12 million).

13.

contributions are separate and distinct from, and will not include any donations of products that Duracell has already donated or was previously committed to donate.  Settlement Agreement, Docket #113-1 at ¶ 61; Declaration of Jeff Jarrett in Support of Final Approval of Class Settlement ("Jarrett Decl.") ¶ 9.  The donated batteries will be quality batteries well within the period of guaranteed freshness, and any other donated products will be products of quality equivalent to similar products sold at retail.  Jarrett Decl. ¶ 10.

Objector Frank relies upon authority from outside this Circuit, along with unpublished and dissenting opinions, to support his contention that Defendants' agreement to make these in-kind donations is nonetheless somehow improper and maintains that *cy pres* distributions generally have been given only a "narrow berth" in this Circuit.  To the contrary, in the Eleventh Circuit, the use of *cy pres* distributions is well-accepted as a way of indirectly compensating those settlement class members for whom direct compensation is infeasible, as well as to deter wrongdoing.  *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x at 435 (upholding approval of *cy pres* distribution); *Nelson v. Greater Gadsden Hous. Auth.*, 802 F.2d 405, 409 (11th Cir. 1986) (same); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1355 (court has discretion to approve *cy pres* provisions of settlement (a) in the interests of "facilitating a settlement in a hard-fought, complex class action," and (b) to "serve[ ] the goals of civil damages by ensuring [the defendant] fairly pays for the class's alleged losses").

Courts in this Circuit have exercised broad discretion in approving *cy pres* distributions in the context of class action settlements not only to "organizations geared toward 'combating harms similar to those that injured the class members' … [but also to] charitable organizations not directly related to the original claims."  *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001) (internal citations omitted); *see also In re Infant Formula Multidistrict Litig.*, 4:91-CV-00878-MP, 2005 WL

14.

2211312, *2 (N.D. Fla. Sept. 8, 2005) (citing *In re Motorsports* with approval); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (approving *cy pres* distribution to Goodwill Industries in case involving allegations of excess charges made by a debt collector).

Furthermore, contrary to the contentions of some objectors, *cy pres* distributions are *favored* under the circumstances present here, where Class Members who have filed claims will be fully compensated, and it would be infeasible to make direct payments to the remaining absent Class Members because their identities are unknown. *See* Appiah Decl. ¶ 5.[11] In *In re Checking Account Overdraft Litig.*, the district court explained:

> If ... Objectors' approach were followed, and the funds earmarked for unidentified Settlement Class Members were distributed to the Settlement Class Members who could be identified, this would simply be *cy pres* directed to different recipients. However, then unidentified Settlement Class Members would receive no benefit at all (as opposed to the indirect benefit they will obtain from the distributions to consumer welfare organizations whose services they may ultimately benefit from), and this might cause some of their number to object to that settlement alteration.  This is why, faced with a set of reasonable but imperfect choices, the law allows the Court discretion in approving the ultimate outcome.

830 F. Supp. 2d at 1356.  *See also Perkins v. Am. Nat. Ins. Co.*, 3:05-CV-100 CDL, 2012 WL 2839788, *4 (M.D. Ga. July 10, 2012) ("all reasonably identifiable class members have been fully compensated for their losses that form the basis for their claims in this class action. Therefore, the *cy pres* funds should not be redistributed to the existing identifiable class members who have already been fully compensated.").[12]

---

[11]    Objectors maintain that it would be feasible to distribute funds or in-kind contributions to absent Class Members who have not filed claims.   This contention is without factual basis and should be rejected.

[12]    The approach in this Circuit is not unique.  *See In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 35 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 338, 184 L. Ed. 2d 239 (2012) (*cy pres* distributions are preferable to providing windfall recoveries to claimants); *Fears v. Wilhelmina Model Agency, Inc.*, 315 Fed. App'x 333, 2009-1 Trade Cas. (CCH) ¶ 76542 (2nd Cir. 2009) (awarding residual funds to charities pursuant to doctrine of *cy pres*, rather than to plaintiffs as treble damages or pursuant to plaintiffs' other alternatives, was not abuse of discretion); *Powell*, 119 F.3d at 705-06 (refusing to distribute remaining settlement funds to class members because "neither party had a legal right" to the unclaimed funds); *Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451, 456 (D.C. Cir. 1996) (reasoning that increasing

Under established precedent in this Circuit, the proposed *cy pres* distribution of Duracell products to organizations, including the American Red Cross and Toys for Tots, that regularly use batteries in fulfilling their missions, sufficiently relates to the subject matter of this litigation to serve as a proxy for those Class Members who do not submit claims.  As Duracell's Marketing Director, Jeff Jarrett, explains, "batteries donated to these particular organizations wind up in the hands of individuals or families who likely otherwise would purchase the batteries at retail with their own money…."  Jarrett Decl. ¶ 7.

A similar plan was approved in *In re Infant Formula Multidistrict Litig.*, 2005 WL 2211312, a case involving allegations of price fixing of infant formula.  There, the district court found that a *cy pres* donation to the American Red Cross, which coordinates delivery of such essential products as infant formula, would be appropriate, as it "will be geared toward 'combating harms similar to those that injured the class members.'"  *Id.* at *2 (quoting *In re Motorsport Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001)).[13]

In sum, there is nothing improper in the parties' agreement that, in addition to providing substantial direct payments to the class, Defendants will make an in-kind contribution with a retail value of $6 million to charities whose purposes will be furthered by

---

distribution to claimants does not provided any compensation to unidentified class members, even indirectly, and may result in windfalls to those class members who do submit claims); *see also* ALI Draft, § 3.07 at 233 (a *cy pres* distribution is preferable to returning any remaining funds to a defendant because that option would "undermine the deterrence function of class actions and the underlying substantive-law basis of the recovery by rewarding the alleged wrongdoer simply because distribution to the class would not be viable").

[13]     The two Ninth Circuit cases upon which the objectors primarily rely—*Nachsim v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) and *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)—are not the law of this Circuit, and in any event, are distinguishable.  In *Nachsim*, the Ninth Circuit rejected a plan to distribute settlement funds to a local charity, reasoning that the geographic dispersion of the nationwide class was not fairly represented.  In contrast, here, both of the proposed charities are national organizations and therefore are well-aligned with the nationwide Class.  In *Dennis*, a settlement was reached only after the plaintiffs had been warned that their case would be dismissed for lack of prosecution, and the *cy pres* distribution was an intrinsic component of a capped settlement fund.  In contrast, here, the parties engaged in extensive litigation before being ordered to participate in settlement discussions with a court-approved mediator, and the in-kind donation will be made *in addition* to providing the Class Members who file claims with direct payments that reasonably approximate full compensation.

using products similar to those at issue in this case.  Instead, the proposed in-kind contribution adds substantial value to the Settlement.

Finally, contrary to objector Frank's contentions, the proposed *cy pres* recipients have been adequately identified.  Neither Rule 23 nor due process requires that the precise organizations to which the funds will be distributed be named.[14]  The Settlement Agreement here identifies the *cy pres* recipients with far greater specificity than the agreement at issue in the recent Eleventh Circuit case, *Nelson v. Mead Johnson & Johnson Co.,* 484 Fed. App'x 420.  In *Nelson*, the *cy pres* recipients were identified only as "charities [to be] agreed upon by the parties."  *Id.* at 432.  Here, the parties specified that "[t]he products will be provided to charitable organizations, including but not limited to first responder charitable organizations, the Toys for Tots charity, The American Red Cross or 501(c)(3) organizations."

Frank's objection that all *cy pres* recipients must be specifically identified in the Class Notice ignores decades of precedent in this Circuit and in other courts across the country.[15]  *Cy pres* recipients are often chosen well after notice has been disseminated and after all distributions to the class have been made.  For example, in *In re Infant Formula* case, the court *sua sponte* designated a *cy pres* recipient approximately five years after the settlement had been finalized, after all cash payments had been made to the class members.  Similarly, in *Perkins v. American National Insurance Co.*, 2012 WL 28939788, the Court considered recommendations regarding the distribution of $3.6 million to *cy pres* recipients after all class members who could be identified had been paid.  *See also In re San Juan*

---

[14]     *See In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) (class notice need not identify a proposed *cy pres* recipient in order to comport with due process).

[15]     The primary case upon which Frank relies, *In re Agent Orange Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 179 (2nd Cir. 1987) is inapposite, as *In re Agent Orange* does not address notice requirements at all; it instead addresses only whether a *cy pres* distribution of cash can be made to a charity without providing that charity with any direction regarding the use of those funds.  *Id.* at 185-86 ("the district court must in such circumstances designate and supervise, perhaps through a special master, the specific programs that will consume the settlement proceeds").

17.

*Dupont Plaza Hotel Fire Litig.*, 687 F. Supp. 2d 1, 3 (D.P.R. 2010) (twenty years after settlement of litigation related to the San Juan Dupont Plaza Hotel Fire, the court ordered distribution of remaining settlement funds to the Animal Legal Defense Fund, reasoning that such distribution fell within the court's broad equitable powers); *In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21 (upholding selection of *cy pres* recipients after funds had been distributed to the settlement class).

Because the proposed in-kind donations are appropriate and the recipients are adequately described in the Class Notice, the objections to this aspect of the Settlement must be overruled.

### 2.    The Injunctive Relief Adds Value to the Settlement

In addition to directly compensating Class Members and providing substantial in-kind contributions to charitable organizations, Defendants have agreed through this Settlement to cease and never again resume their alleged misleading advertising.  The Settlement Agreement provides that Duracell stop representing that its Ultra batteries are Duracell's "longest lasting" or that they last "up to 30% longer."

One objector's assertion that Duracell's decision to stop selling the Ultras somehow renders this relief meaningless is baseless and ignores the context in which the agreement was reached.  These cases were filed in the Spring of 2012, but Duracell did not cease the packaging, marketing, selling, and distribution of its Ultra batteries until July 2013.  Jarrett Decl. ¶ 4.  Furthermore, the Company's decision to cease the sale and marketing of Ultras containing the alleged misleading advertising was made in response to this litigation.  *Id*. The Settlement Agreement ensures that Duracell will not resume selling and marketing the Ultras containing the alleged misleading statements in the future.

Under these circumstances, there can be no doubt that the Class has benefitted.  *See Saccoccio*, 2014 WL 808653, at *14 (valuing injunctive relief in class action settlement was

18.

not improper; continued cessation of conduct was ensured by inclusion of agreement to discontinue practice); *see also LaGarde v. Support.com, Inc.*, C12-0609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) (agreed upon changes to alleged misleading advertising constituted "most significant" aspect of relief provided to the class). The injunctive relief is particularly significant here, because batteries are not the type of product that a consumer is likely to purchase only once.  If Duracell had not ceased selling the Ultras, or were to again sell them using the same alleged misleading claims, many Class members could again be misled.

> ### E.    The Paucity of Objections Weighs in Favor of Approval

The Settlement has met with near unanimous approval by the Class and no U.S. or state attorneys general has objected.  Only twelve Class Members have opted out. Anticipating such a result, serial objectors Frank and Batman maintain that the dearth of objections and requests for exclusion should not weigh in favor of approval of the instant Settlement or the requested attorneys' fees and expenses.

This Circuit's precedent holds otherwise.  In the Eleventh Circuit, the class members' response to a proposed settlement is one of the factors to be considered in determining whether a Settlement merits approval, and when only a small number of class members have objected or requested exclusion, there is strong evidence that the settlement is fair and reasonable.  *Assn. for Disabled Americans. v. Amoco Oil Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness"); *Saccoccio*, 2014 WL 808653, at *8 (citing *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d at 1324) ("a low number of objections suggests that the settlement is reasonable, while a high number would provide a basis for finding that the settlement was unreasonable").  Furthermore, the district court reasoned in *In re Checking Account Overdraft Litig.* that an extraordinarily low rate of objections and

requests for exclusion, such as is present here, is "entitled to nearly dispositive weight in this court's evaluation of the proposed settlements." 830 F. Supp. 2d at 1336 (quoting *In re Art Materials Antitrust Litig.,* 100 F.R.D. 367, 372 (N.D. Ohio 1983)) (49 objections out of a class of 13 million, a rate of 0.0004%, constituted "near unanimous approval"). [16]

That no U.S. or state attorney general has objected also strongly supports final approval of the parties' agreement. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) *cert. denied,* 134 S. Ct. 8, 187 L. Ed. 2d 392 (2013) (in approving settlement consisting exclusively of *cy pres* distribution, Court noted that no government agencies had voiced objections to the settlement); *Grannan v. Alliant Law Group, P.C.*, 2012 WL 216522, at *8 (N.D. Cal. Jan. 24, 2012) (in approving settlement, court stated that CAFA notice was intended to "provide an opportunity for comment or objection by [governmental] entities. However, after notice was sent to the Attorney General of the United States and to the attorneys general of the fifty states, no governmental entity sought to participate in the settlement proceedings by objection or comment. Because numerous governmental agencies were given notice of the settlement and have not objected, this factor weighs in favor of the settlement."); *Reed v. 1-800-Contacts, Inc.*, 2014 WL 29011, at *11 (S.D. Cal. Jan. 2, 2014) (approving settlement and fees, reciting that "[n]either the United States Attorney General nor the California Attorney General has objected to, or otherwise commented on, the settlement."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 07 CIV. 2207 JGK, 2010 WL 3119374, *5 (S.D.N.Y. Aug. 6, 2010) (approving requested fee award, noting "no opposition" to the award by "52 attorneys general" after CAFA notice); *In re Countrywide*

---

[16]       *See also Sacciocco,* 2014 WL 808653, at *8 (combined objections and requests for exclusion of 0.018% weigh in favor of approval); *Lipuma v. American Express Co.,* 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("extraordinarily" low rate of objections (41 objections out of a class of approximately 8.8 million, representing about 0.0004 percent of the class) weighed in favor of approval of the settlement); *cf. Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984) (district court's approval of settlement with high percentage of class members who lodged objections was not error, where court properly considered substance of opposition in arriving at its conclusion).

*Financial Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *2 (W.D. Ky. Aug. 23, 2010) (approving settlement and fees and reciting that no objections were received from governmental entities after CAFA notice.).

The paucity of objections to the proposed Settlement is particularly noteworthy, because at least five of the six objectors are serial objectors whose motives may be suspect.[17]

The lengthiest objection to the Settlement was lodged by Theodore Frank ("Frank"), an attorney.  As his objection and accompanying declaration make clear, Frank is a serial objector to class action settlements, either in his individual capacity or through the representation of objectors by a non-profit entity he founded, the "Center for Class Action Fairness." Frank Decl. ¶ 14; Frank Obj. 2-4. In his declaration, Frank portrays himself as a "public-interest objector," a role which allows him to live out his "childhood dream" of being a "consumer advocate."  Frank Decl. ¶ 12. Frank's cynical conduct in this litigation seriously undermines his credibility and exposes an agenda that is far different.

Frank claims that, as the driving force behind the Center for Class Action Fairness, he must "triage dozens of requests for *pro bono* representation" from clients who wish to file class action objections. Frank Decl. ¶ 15. Evidently, despite the millions of Settlement Class Members, no such "request" was made of Frank here. Instead, Frank bought into this controversy himself. Frank purchased Duracell Ultra batteries on January 3, 2014, ***after*** notice of the settlement was disseminated in December 2013, meticulously documenting his purchase and preserving the battery packaging, which he states most "sane" people throw away. Frank Decl. at ¶ 5. Given his line of work, these circumstances strongly suggest that

---

[17] The sixth, Paul Dorsey, has objected in at least one other case—*Tennille v. W. Union Co.*, No. 09-CV-00938-JLK (D. Colo.).  There, as here, Dorsey objected to the notice program.  His objections, described as "substantively baseless," were overruled. *Tennille v. W. Union Co.*, No. 09-CV-00938-JLK, 2013 WL 5716877 (D. Colo. Oct. 21, 2013) (noting that Dorsey's objections had been overruled); *Tenille v. W. Union Co.*, No. 09-CV-00938-JLK-KMT, 2013 WL 4829190 (D. Colo. Sept. 10, 2013) (describing Dorsey's objections as "substantively baseless").

Frank purchased the batteries with full knowledge of the allegations in the case (namely that the batteries were overpriced) and for the purpose of creating class membership and filing an objection. Frank promptly filed to recover the overcharge he just paid and retained an attorney from his own organization to file a forty-five page canned broadside filled with meritless arguments that urge this Court to ignore Eleventh Circuit precedent. This is an abuse of the settlement process.[18]

Frank's tactics betray an ideological agenda to curb class action litigation by disincentivizing class-action attorneys, as district courts dealing with his objections have observed. *See City of Livonia Employees Retirement System v. Wyeth*, 2013 WL 4399015 at *5 (S.D.N.Y. Aug. 7, 2013) (objection to attorneys' fees filed by Frank's client was "overstated and meritless" and "does not seem grounded in the facts of this case, but in her and her attorney's objection to class actions generally …. [Frank's client] evinces a misguided yet fervent focus" to reduce class counsel's fees, which the court "rejects as entirely unreasonable" and "dogmatic"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (describing settlement and fee objection filed by Frank's client as "long on ideology and short on law," finding "no legal authority [on fees] supporting the bright line rule [Frank's client] asks the Court to draw and there is substantial case law indicating that it is neither necessary nor appropriate," and rejecting Frank's client's "lack of faith in judicial officers" to properly scrutinize fee applications).[19]

---

[18]     Frank could not identify with specificity ever having purchased Duracell Ultra batteries before notice was disseminated. In his declaration, Frank states in roundabout fashion that he "believes" he purchased them earlier in the class period, an apparent attempt to burnish his standing as a class member. Frank Decl. at ¶ 5 ("At least some of [Frank's other battery purchases] were not Duracell Ultra batteries; I tend to buy Duracell batteries, though I occasionally also buy Energizer batteries; I don't know for sure how many packages were Duracell Ultra, though I believe I purchased at least two during the class period."). But if Frank purchased the disputed batteries earlier in the class period, there would have been no need to purchase them on January 3, 2014 to qualify as a class member. Notably, Frank's objection does not refer to his earlier purchase as a basis for Class membership. *See* Frank Obj. at 2 (only reciting January 3, 2014 purchase).

[19]     Ironically, in a case in which Frank was found to be entitled to attorneys' fees of his own, he was criticized by the court for reporting 104 hours of work and seeking $2,800 per hour for his time. According

Another objection to the settlement was lodged by Christopher Batman ("Batman") of Corpus Christi, Texas. Batman has objected unsuccessfully to several prior class action settlements. *See Cassese v. Williams*, 503 Fed. App'x 55 (2nd Cir. Nov. 20, 2012) (objection to consumer class-action settlement overruled; settlement upheld on appeal); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1 (2d Cir. 2012) *cert. denied*, 134 S. Ct. 402, 187 L. Ed. 2d 446 (2013)  (objection to consumer class-action settlement overruled; settlement upheld on appeal).  Remarkably, although Batman appears to be a lawyer, he did not disclose that to the Court. Rather, he states that he sought "legal advice" from "Texas attorney" Christopher A. Bandas ("Bandas") in preparing his objection and seeks "no special favor" from the Court for appearing in this action "*pro se*." Batman Obj. at 4.  Coincidentally, Bandas is also located in Corpus Christi, Texas.

The relationship between Batman and Bandas is unknown, but Bandas is among the most notorious of the "professional objectors" in class-action litigation. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (Bandas  is "a 'professional' or 'serial' objector" who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."); *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) (Bandas held in contempt for failing to post appellate bond after his objection failed; court imposed sanctions and struck  his objection); *Dennings v. Clearwire Corp.,* 2013 WL 3870801 (W.D. Wash. July 26, 2013) (Bandas's clients ordered deposed where court determined there were "legitimate concerns" regarding whether objections were "serious";

---

to the court, it was "unclear how drafting [the objector's] limited submissions and making a few short court appearances would have required so much time." *In re Apple Inc. Sec. Litig.*, 2011 WL 1877988, at *5 (N.D. Cal. May 16, 2011).

depositions revealed that neither client had read the settlement agreement or the objection and that Bandas had represented them in other cases.).

The third objector to the Settlement is an individual named Robert Falkner. In recent years, Falkner has filed objections to class action settlements involving, at least, mobile telephone billing practices, yogurt labeling, automobile design defects, and falsely advertised lawnmowers. *See In re Wireless Telephone Federal Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005); *Campbell v. AirTouch Cellular*, 2006 WL 754005 (Cal. App. 4th Dist. March 24, 2006); *Gemelas v. The Dannon Company, Inc.,* No. 1:08-cv-00236-DAP (N.D. Ohio); *Dewey v. Volkswagen of America,* No. 07–2249 (FSH) (D.N.J.); *In re Lawnmower Engine Horsepower Marketing and Sales Practices Litigation* No. 2:08-md-01999 (E.D. Wis.). Notably, Falkner is represented by Brian M. Silverio, an attorney with a history of filing serial objections to class-action settlements. Objections of this sort "are motivated by things other than a concern for the welfare of the Settlement Class. Instead, they have been brought by professional objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1361 n.30  (approving class-action settlement to which Silverio filed objections).

The fourth objector, Grace Cannata ("G. Cannata") of Cleveland, Ohio, is represented by attorney Sam P. Cannata ("S. Cannata") of Pepper Pike, Ohio. While presumably family, the relationship between G. Cannata and S. Cannata is not otherwise evident from the objection itself. However, S. Cannata appears to fit the mold of a professional objector looking to extract fees. Cannata has represented objectors in at least the following cases: *Schulte v. Fifth Third Bank*, No. 09–cv–6655 (N.D. Ill.); *In Re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*, No. 1:09-cv-07670 (N.D. Ill.); and *Masters v. Lowe's Home Centers, Inc.*, No. 3:09-cv-00255-JPG-PMF (S.D. Ill.). He has personally

24.

objected in at least the following cases: *In re Merck & Co., Inc. Vytorin Erisa Litig.,* No. 08-CV-285 (DMC) (D.N.J.); *In re HP Inkjet Printer Litig.*, No. 5:05–cv–3580 JF (N.D. Cal.); *Marsikian v. Mercedes Benz USA, LLC*, No. 2:08-cv-04876-AHM-FMO (C.D. Cal.); *Trombley et al. v. National City Bank et al.,* No. 1:10-cv-00232-JDB (D.D.C.); *ONB Ridge Villa One, LLC v. Deep Bay Green Corp. et al.*, No. 1:13-cv-00415-JG (N.D. Ohio); *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484 (C.D. Cal.); *Embry, et al v. ACER America Corp.*, No. 09-01808 JW (N.D. Cal.); and *Hartless v. Clorox Co.* No. 3:06-cv-02705-CAB (S.D. Cal.).

Finally, a late objection to the Settlement was lodged by Wanda Cochran of Streetsboro, Ohio. The objection is not signed by counsel but states that it relies for "legal support" upon the arguments in Frank's objection. Unfortunately, Cochran's objection appears to be just another in a series of professional objections designed to subvert the settlement process. Indeed, Cochran has previously joined forces with some of the same professional objectors in this case, G. Cannata and Robert Falkner (both discussed in detail above), to object to another consumer class-action settlement in the Northern District of Ohio. *See Gemelas v. The Dannon Company, Inc.*, No. 08-cv-00236 (N.D. Ohio) (Robert Falkner, Wanda Cochran, and Grace Cannata all listed on same objection co-signed by professional objector attorney S. Cannata).

## III.   THE OBJECTIONS TO CLASS COUNSEL'S FEE AND EXPENSE REQUEST SHOULD BE OVERRULED

Class Counsel's proposed fee of $5,407,724.40 represents less than 10.9% of the total benefit created for the Class without including the $6 million in-kind donations or attributing any monetary value to the injunctive relief.[20]  As such, it falls well within the range of acceptable awards granted in this Circuit and nationwide.

---

[20] Class Counsel also request reimbursement of $272,275.60 in expenses, making their total fee and expense request $5.68 million.

The objectors' contention that Class Counsel's fee award should nonetheless be rejected, on the ground that it is improper to award Class Counsel a percentage of the total benefit made available to the Class, is meritless.  Not only is the total benefit rule well-established in the Eleventh Circuit, but the vast majority of courts that have considered the issue agree that an attorneys' fee award should be based upon a percentage of the total common fund made available to a class, rather than upon a percentage of the amounts actually claimed.  By keying attorneys' fees to the total fund available, the total benefits rule allows attorneys to effectively litigate class actions involving relatively low-cost consumer products such as the Ultras, in which the alleged aggregate harm is huge, but where individual damages are small.  Furthermore, any contention that the total benefits rule has been displaced by the 2003 amendments to Rule 23 or by the enactment of the Class Action Fairness Act of 2005 is entirely unsupported by the law.  Therefore, the objections on this ground should be overruled.

Objector Frank's additional arguments—that Defendants' agreement to pay Class Counsel's fee request is somehow improper and that that the division of fees among Class Counsel must be approved by the Court—are also meritless and should be overruled. Defendants' agreement to pay Class Counsel's fee request, subject to Court approval, is perfectly appropriate where, as here, that agreement has no impact whatsoever on the substantive benefits afforded to the Class, and fee divisions among class counsel have been universally recognized as private matters which are not subject to court scrutiny.

### A.   Under Binding Eleventh Circuit Precedent, the Settlement's Value Must Be Calculated on the Total Benefit Made Available to the Class.

The Eleventh Circuit has consistently valued claims-based class-action settlements, such as the Settlement in this case, as common funds against which class counsel's fees may be weighed.  It does not matter whether the amount available to be claimed by the Class is reversionary or non-reversionary or whether the fund is limited or unlimited in size. As the

Eleventh Circuit explained in *Waters*, the size of the fund must be calculated by determining the maximum total benefits available to the class. *Waters*, 190 F.3d at 1297 (applying the percentage of the common-fund method to a total common fund, even though the amount paid out in claims was substantially less).

In reversionary settlements like *Waters*, if the amount of the common fund is expressly stated, it functions as a form of maximum value, limiting benefits to class members to this amount. In fact, sometimes a settlement agreement will expressly describe a fund as the "maximum settlement amount," even though the claims paid may be substantially less. When the claims process is capped, calculating the size of the fund is simple; the value of the fund is the maximum settlement amount. *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429 (treating a claims-made settlement with both maximum and minimum payouts as a constructive common fund and valuing the fund based on the maximum settlement amount); *Atkinson v. Wal-Mart Stores, Inc.*, 8:08-CV-691-T-30TBM, 2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) (treating a capped, claims-made settlement with a "maximum settlement amount" as a constructive common fund and awarding attorneys' fees as a percentage of the maximum amount).

But common-fund settlements need not specify a maximum value, artificially limiting the class recovery. Common funds also may be unlimited.  In such cases, a defendant simply agrees to pay all valid claims with no cap on the potential recovery. In uncapped common-fund cases, the Eleventh Circuit instructs that courts should calculate the total potential benefits that may be claimed by the class and treat that sum as a constructive common fund. *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. App'x 168, 171-72 (11th Cir. 2008) (finding that a class-action settlement that provides monetary relief to class members may be treated as a constructive common fund, even though the settlement did not expressly create a common fund, and that class counsel may receive reasonable fees from the fund); *Saccoccio*,

27.

2014 WL 808653, at *9 (treating an uncapped, claims-made settlement as a constructive common fund); *David v. Am. Suzuki Motor Corp.*, 08-CV-22278, 2010 WL 1628362, at *8 (S.D. Fla. Apr. 15, 2010) (treating an uncapped, claims-made settlement as a constructive common fund when the "value of the proposed settlement's benefits is ascertainable"); *Fabricant v. Sears Roebuck & Co.*, 98-1281-CIV, 2002 WL 34477904, at *4 (S.D. Fla. Sept. 18, 2002) (treating an uncapped claims-made settlement as a constructive common fund).

      This rule is not altered by the fact that a settlement agreement may provide for payment of attorneys' fees separate from the monetary benefits made available to the class; the maximum amount payable is still treated as a constructive common fund against which the proposed fee payment is measured. *Saccoccio*, 2014 WL 808653, at *9 ("The 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants."); *see also David*, 2010 WL 1628362, at *8 n.14 (applying constructive common fund analysis to settlement where defendant paid attorneys' fees separately from the common fund); *Manual for Complex Litig.* § 21.75 (4th ed. 2008) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees … the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."). In analyzing settlement agreements containing such provisions, courts simply add together the total potential amount that could be claimed by the class, the agreed-upon attorneys' fees and expenses, and the costs of notice and administration when calculating the total size of the common fund. *Id.*

      Thus, applying the Eleventh Circuit's common-fund doctrine, the total benefits made available to Class Members can be calculated through simple arithmetic. Duracell has estimated the total number of Class Members at 7.26 million, and each is entitled to $6.00 (without proof of purchase). Multiplying the total number of Class Members by the available benefit per Class Member results in available benefits of $43.6 million. When this figure is

added to the $5.68 million in attorneys' fees and expenses and the notice and administration

costs of $632,095, the Settlement creates a constructive common fund of $49,872,095.

While this constructive common fund is enormous, this is actually a conservative

estimate, because it does not attribute any monetary value to the injunctive relief and does

not include the $6 million of in-kind contributions that Defendants have agreed to make.

Nevertheless, as discussed above, both of these additional forms of relief add substantial

value to the Settlement.

Objectors' attacks on Class Counsel's fee request are based on a flawed

understanding of the applicable law concerning class-action settlements in the Eleventh

Circuit.[21]

In *Boeing v. Van Gemert*, 444 U.S. 472 (1980), the U.S. Supreme Court explained:

> Since the decisions in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), **this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.** *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *cf. Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough*, *supra* 105 U.S., at 532–537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S., at 257–258, 95 S.Ct., at 1621–1622. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. *See, e. g., Mills v. Electric Auto-Lite Co.*, 396 U.S., at 392, 90 S.Ct., at 625. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit. *See id.*, at 394, 90 S.Ct., at 626.

*Boeing v. Van Gemert* at 478 (emphasis added).

---

[21]     In particular, the Frank Objection blithely ignores binding precedent that directly contradicts his arguments. It is not until page 34 of his Objection that Frank even mentions the leading Eleventh Circuit case that reject his argument. *E.g., Waters*, 190 F.3d at 1295-96.

Relying on *Boeing*, the Eleventh Circuit considered whether in common-fund cases, attorneys' fees should be awarded based on a percentage of the fund or on lodestar. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). In *Camden I*, the class-action settlement created a $3 million fund to pay claims and attorneys' fees; any unclaimed funds would revert to defendants. Class counsel requested a fee of 31% of the common fund, but the district court instead awarded fees based on lodestar. *Id.* at 770. The Eleventh Circuit vacated and remanded the decision, holding, "Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards." *Id.* at 774.

Following *Camden I*, the Eleventh Circuit further clarified that in calculating attorneys' fees in common-fund settlements, class counsel are entitled to a reasonable fee based upon a percentage of the total fund made available to the class, not the lesser amount actually claimed. *Waters*, 190 F.3d at 1297. The *Waters* settlement created a $40 million common fund to pay claims and class counsel's fees and expenses; like *Camden I*, any unclaimed amounts would revert to the defendant. *Id.* at 1292. The district court awarded fees of $13.3 million (33 1/3% of the total $40 million fund), even though the actual estimated payout to class members was only approximately $6.5 million. *Id.* at 1295 n.6.

The Eleventh Circuit affirmed, observing that "[t]he fact that there were a reduced number of claimants had no effect at all on the amount each class member received. That amount, rather, was determined by the total fund accrued. Negotiating a $40 million gross settlement fund, therefore, created a benefit on behalf of the entire class." *Id.* at 1297. In reaching its decision, the Eleventh Circuit relied heavily on *Boeing*, noting correctly that the *Boeing* Court had "rejected petitioner's argument that the attorneys' fee award could be

based only on the portion of the common fund actually claimed by class members and not from the unclaimed portion of the fund." *Id.* at 1294.

The Eleventh Circuit's recent decision in *Nelson v. Mead Johnson & Johnson Co.* demonstrates the continued viability of this principle.  484 Fed. App'x 429.  In *Nelson*, the parties had agreed to pay the class members no more than $12 million, $4 million of which would revert to the defendant if the claims totaled less than $8 million.[22]  *Id.* at 432.  In assessing whether the requested fee award of $3.68 million was appropriate, the circuit court reasoned that the request amounted to approximately 25% of the value of the total settlement, i.e., of the $12 million fund plus the $3.64 million requested fee, without considering whether the claims made resulted in a diminishment of the agreed-upon fund.  *Id.* at 435.

Despite objectors' misleading characterizations to the contrary, other federal circuit courts take the same approach followed by the Eleventh Circuit in *Camden I* and *Waters*. Indeed the Eleventh Circuit's approach is now settled law.  4 Newberg on Class Actions § 11:29 (4th ed. updated Dec. 2013) ("When the size of the settlement offer remains contingent on the value of the claims filed, it is now settled that the court looks to the total potential benefit to the class, regardless of the number of claims filed, in determining a reasonable fee.").

For example, in *Masters v. Wilhelmina Model Agency, Inc.*, the Second Circuit held that it was error for a district court to calculate the percentage award to class counsel on the basis of the claims made against a common fund, rather than on the entire fund created by the efforts of class counsel.[23] *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, 436-37

---

[22]     Any unclaimed amounts less than $8 million would be paid through an in-kind donation to a charity to be selected by the parties.  *Id.* at 432.

[23]     The Frank Objection only cites *Masters* for the proposition that *cy pres* relief may be improper. Not only does the case not lend any support to his argument that the additional in-kind relief in this case is improper, but he also fails to cite *Masters* for its far more relevant holding that settlements must be valued based on the total benefits made available to the class, not the claims made by individual class members. *See* 473 F.3d at 436-37.

31.

(2d Cir. 2007). The *Masters* settlement created a common fund of approximately $21.8 million; claims and attorneys' fees were to be paid out of the fund, with excess funds reverting to the defendant. *Id.* at 428-29. The district court had awarded fees as a percentage of claims made. The Second Circuit reversed, holding, "The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Id.* at 436-37.

In *Williams v. MGM-Pathe Communications Co.*, the Ninth Circuit reached the same conclusion.[24] *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997). The *Williams* settlement created a $4.5 million reversionary common fund, but the district court awarded fees as a percentage of actual claims made. *Id.* at 1027. The Ninth Circuit reversed, holding that the district court "abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar." *Id.* Even though actual claims totaled only $10,000, the Ninth Circuit concluded that class counsel was entitled to one-third of the total overall fund of $4.5 million (or about $1.5 million in fees). *Id.*

This total-benefits rule serves an important purpose: it allows attorneys to effectively litigate class actions involving large overall harm but relatively small individual damages. As one commentator explained, "In cases where each individual class member has suffered only a small degree of harm, it is possible, if not likely, that few class members will step forward to claim their portion of the total reversionary fund. Limiting class counsel to a fee based on a percentage of what class members actually claim will, in many instances, result in a fee that is so small as to prevent class action attorneys from pursuing such cases, which serve

---

[24] Notably, the Frank Objection fails to alert the Court to this important appellate decision that is on all fours. Instead, Frank largely bases his argument on district court cases from other jurisdictions and dissenting opinions.

primarily a regulatory and deterrent function …." Hailyn Chen, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 UCLA L. REV. 879, 892 (2003). Irrespective of whether an individual class member submits a claim, every class member has an interest in ensuring that the fraudulent conduct of the defendant from which they purchased the product is regulated and deterred, and fees awarded to class counsel further serve that purpose.

In fact, as the Supreme Court has noted, "the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) (reasoning that plaintiffs with small individual claims "would be unlikely to obtain legal redress at an acceptable cost, unless counsel were motivated by the fee-spreading incentive and proceeded on a contingent-fee basis" and noting that this concept is "central" to Rule 23). Thus, the total-benefits rule effectuates the purpose of Rule 23.

### B.    Neither the 2003 Amendments to Rule 23 nor the Class Action Fairness Act of 2005 Superseded the Total Benefits Rule

Despite objectors' conclusory statements to the contrary, nothing in the 2003 amendments to Federal Rule of Civil Procedure 23 ("Rule 23") or the Class Action Fairness Act of 2005 ("CAFA") has disturbed the settled rule that fees in common-fund settlements must be awarded as a percentage of the total benefits made available to the class.

Objectors place much weight on Rule 23(h), which was added to Rule 23 with the 2003 amendments. But the plain text of this rule in no way supports their argument. Rule 23(h) simply states, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23. The plain text of Rule 23(h) does not overrule—or even suggest overruling—the Supreme Court's decision in *Boeing* or the Eleventh Circuit's decisions in *Camden I* and

33.

*Waters*. Each of these decisions was clearly premised on the foundational principle that attorneys' fees awarded must be reasonable. *Camden I* at 774 ("attorneys' fees awarded from a common fund shall be based upon a *reasonable* percentage of the fund established for the benefit of the class.") (emphasis added). In fact, the Eleventh Circuit has made clear that while fee awards in common fund cases must be keyed to the total benefits available to the class, these awards may be adjusted upward or downward according to a series of eight factors to account for reasonableness. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Rule 23(h) simply codified this rule.

Moreover, the Advisory Committee Notes to Rule 23 make clear that Rule 23(h) was not intended to supersede existing law on how fee awards are calculated. The Advisory Committee Notes explain:

> This subdivision authorizes an award of "reasonable" attorney fees and nontaxable costs. This is the customary term for measurement of fee awards in cases in which counsel may obtain an award of fees under the "common fund" theory that applies in many class actions, and is used in many fee-shifting statutes. Depending on the circumstances, courts have approached the determination of what is reasonable in different ways. In particular, there is some variation among courts about whether in "common fund" cases the court should use the lodestar or a percentage method of determining what fee is reasonable. **The rule does not attempt to resolve the question whether the lodestar or percentage approach should be viewed as preferable.**

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) (emphasis added). The Eleventh Circuit has decided this question: in common fund cases, courts must use the common-fund method, and that common fund is calculated pursuant to the total benefit made available to class members, subject only to *Johnson* factor adjustments for reasonableness. *Camden I* at 774. The Eleventh Circuit's decisions are, therefore, entirely consistent with Rule 23(h).

Likewise, nothing in the Class Action Fairness Act superseded the Eleventh Circuit's total-benefits rule in common fund cases. None of the objectors submitted any case law

supporting their argument that CAFA somehow displaced *Boeing*, *Camden I*, and *Waters*. This is for a good reason: none exists. CAFA only addressed attorneys' fees in "coupon settlements," where class members are required to spend money to receive the benefit.[25] *See Masters*, 473 F.3d at 438 (rejecting the argument that CAFA requires that attorneys' fees be awarded based on claims actually made and noting that CAFA's "only mention of fees to be allowed to class counsel deals with the award of fees in coupon settlement cases."). CAFA has no bearing on attorneys' fees in non-coupon settlements such as this one.

### C.    District Courts Consistently Apply the Total Benefits Rule in Both Pure and Constructive Common Fund Settlements.

A decade after the enactment of Rule 23(h) and CAFA, U.S District Courts for the Middle and Southern Districts of Florida continue to apply the total-benefits rule to award attorneys' fees based on the entire fund made available to a settlement class. As recently as two months ago, the district court for Southern District of Florida approved a class-action settlement and awarded attorneys' fees by valuing a claims process as part of a constructive fund of $300 million. *Saccoccio*, 2014 WL 808653, at *2. In *Saccoccio*, the court noted that, as here, the common fund analysis is "appropriate even where the fee award will be paid separately by defendants" and applied the *Camden I* and *Waters* rules to award attorneys' fees of $20 million "based upon the total fund, not just the actual payout to the class." *Id.* at *9. The court also correctly observed that because the number of claims is not relevant to the value of the total settlement made available to the class, the court may properly approve the settlement without knowing that number. *Id.* at *11.

In *David v. American Suzuki Motor Corp.*, the Southern District of Florida approved a class-action settlement and awarded attorneys' fees based on the total-benefits rule in a

---

[25]      Although CAFA does not define the term "coupon settlement," the term is typically understood to mean a settlement where the relief constitutes "a *discount* on another product or service offered by the defendant in the lawsuit." *Fleury v. Richemont North America, Inc.*, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008).

constructive common fund settlement. 2010 WL 1628362. The settlement provided for a
$500 credit toward the purchase of a new Suzuki motorcycle (or a $40 credit toward parts
and accessories on existing motorcycles), as well as an extension of the warranty for some
motorcycles for an additional ten years. *Id.* at *2. Although the court noted that the fee award
would "be paid separately by Defendants and is not drawn from a 'common fund' in the
traditional sense," it determined it was properly viewed as a constructive common fund,
because the "value of the proposed settlement's benefits is ascertainable." *Id.* at *8. The court
found that $5 million was available to the class, and therefore, class counsel's fee request of
$1 million (20% of the constructive common fund) was reasonable. *Id.*

Numerous Florida district courts have reached similar conclusions. *See, e.g., Stahl v.
MasTec, Inc.* 2008 WL 2267469 (M.D. Fla. May 20, 2008) (noting that "the Supreme Court
and the Eleventh Circuit have held that it is appropriate that the attorneys' fees be awarded
on the entire Maximum Gross Settlement Amount even though amounts to be paid to
settlement class members who do not file a claim form will remain the sole and exclusive
property of the defendant" and awarding fees of 28.8% of the Maximum Gross Settlement
Amount of $13.1 million); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339
(S.D. Fla. 2007) (noting that the percentage of the common fund to be awarded as attorneys'
fees "applies to the total fund created, even when the actual payout following the claims
process is lower" and awarding class counsel 30% of a $4.25 million reversionary common
fund); *Fabricant*, 2002 WL 34477904, at *4 (treating claims-made settlement as a
constructive common fund, even though unclaimed funds would revert to defendants, and
awarding class counsel $14.4 million, equal to 28.5% of maximum potential benefit of $48
million); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (reasoning
that *Waters'* holding that "class counsel are entitled to a reasonable fee based on the funds
potentially available to be claimed, regardless of the amount actually claimed," compelled its

36.

holding that counsel were entitled to a percentage of the total $110 million fund, regardless of the claims filed).[26]

### D.    Objectors Do Not Cite Any Eleventh Circuit Law to Support Their Argument That Attorneys' Fees Must Be Awarded as a Percentage of Actual Claims, and the Authority They Cite from Other Circuits Is Distorted and/or Distinguishable.

Despite myriad citations to authority from other jurisdictions, objectors have not pointed to a single district-court or appellate decision from the Eleventh Circuit that awarded attorneys' fees as a percentage of the value of actual submitted claims in a common-fund settlement post-*Waters*. The reason is simple: any such decision would contravene the binding precedent of this Circuit. And to the extent objectors cite cases for that proposition from outside this jurisdiction, they frequently fail to place those cases in the proper context or selectively quote from the decisions to make them fit their argument.

For example, objectors cite *Strong v. Bellsouth Telecoms. Inc.* for the proposition that *Waters* does not apply to constructive common fund settlements. Frank Objection at 35 (citing *Strong v. Bellsouth Telecoms. Inc.*, 137 F.3d 844, 852 (5th Cir. 1998)). But this is simply wrong. First, *Strong* is a Fifth Circuit decision and cannot overrule an Eleventh Circuit case.[27] Second, *Strong* was decided prior to *Waters*, and the Eleventh Circuit expressly declined to follow *Strong* when it ruled in *Waters*. *Waters*, 190 F.3d. at 1296

---

[26]    *De Leon v. Bank of Am., N.A. (USA)*, 6:09-CV-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012) *report and recommendation adopted,* 6:09-CV-1251-ORL-28, 2012 WL 2543586 (M.D. Fla. July 2, 2012), cited by Frank in support of his argument that the claims rate should be considered in assessing the reasonableness of the fee request, is readily distinguishable.  There, the parties had not provided any explanation as to why a claims procedure was required, given that the defendant maintained databases enabling it to identify over 500,000 class members, and no claims procedure had been required in prior settlements involving similar consumer records maintained by that defendant.  In contrast, here, Defendants have not maintained a list of consumers who purchased the batteries, and such a list is not available from third parties. Appiah Decl. ¶ 5. Therefore, there can be no doubt that a claims procedure is necessary in order to compensate the Class Members in this case.

[27]    The Eleventh Circuit was split from the former Fifth Circuit, effective October 1, 1981, and Fifth Circuit decisions from prior to the split are considered binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*). But *Strong* was decided seventeen years later in 1998.

(*Strong* "does not mandate that a district court must consider only the actual award made to the class"). Third, *Strong* is easily distinguishable on its facts. Unlike the present case or *Waters*, *Strong* was a coupon settlement. The court in *Strong* held that the purported fund was illusory, because class members were required to continue to purchase products from the defendants to receive credits from the fund; there were no cash payments. *Strong*, 190 F.3d at 852-853.

Likewise, objectors' extensive reliance on the Ninth Circuit's decision in *Bluetooth* for the proposition that fees cannot be disproportionate to the actual value of submitted claims is misplaced. As previously noted, unlike the present Settlement, the settlement in *Bluetooth* provided no monetary relief to the class. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011) (settlement provided the class with $100,000 in *cy pres* and "zero dollars for economic injury"). Lacking a common fund of any kind, *Bluetooth* could not possibly stand for objectors' contention that settlements must be valued based on submitted claims; there were none in *Bluetooth*. Instead, class counsel in *Bluetooth* were seeking fees based on lodestar alone.

**E.** **Plaintiffs' Proposed Fee of 10.85% of the Common Fund Is Reasonable and Proportionate to the Substantial Benefits Available to the Class.**

In the Eleventh Circuit, fee awards in the range of 20-30% of the total benefits made available through a pure or constructive common fund are presumptively reasonable. The benchmark award is 25% of the common fund, but courts are free to adjust this award upward or downward based on the *Camden I* factors. *Camden I*, 946 F.2d at 775 ("district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a "bench mark" percentage fee award which may be adjusted in accordance with the individual circumstances of each case").

In practice, fee awards in the Eleventh Circuit typically constitute about one third (33 1/3%) of the total common fund, which is consistent with courts in other jurisdictions. *Wolff*,

38.

2012 WL 5290155, at *5 (showing empirically that "regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery" and "the average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"). The Middle and Southern Districts of Florida follow Eleventh Circuit practice and typically award class counsel one third of pure and constructive common funds in class-action settlements.[28]

Class Counsel's requested fee in this case amounts to less than 11% of the total common fund, without attributing any value to the injunctive relief or the $6 million of in-kind contributions that Defendants have agreed to make.[29] This award is not only consistent with fee awards in comparable cases nationwide, within the Eleventh Circuit, and within the Middle and Southern Districts of Florida, but it is also *substantially lower* than typical fee awards both in and outside of the Eleventh Circuit. The *Camden I* factors also fully support this award. *See* Plaintiff's Motion for Final Approval of Settlement and Award of Attorneys' Fees and Incorporated Memorandum ("Final Approval Motion") at pp. 17-21.

---

[28]        In *Wolff*, the court surveyed courts in the Middle and Southern Districts of Florida and found the following fee awards actually exceeded 30% in common fund cases post-*Waters*: *Gutter*, No. 95–2152–Civ–ASG, D.E. 626 (S.D. Fla. 2003) (awarding 33.3%); *In re Terazosin*, No. 99–MDL1317–PAS, D.E. 1557 (awarding 33.3%).; *Bakalor v. Integrated Comm'n Network, Inc.*, No. 96–2021–Civ–JLK, D.E. 108 (S.D. Fla. 1997) (awarding 33.3%); *Silver v. Sensormatic*, No. 93–8619–Civ–SM, D.E. 113 (S.D. Fla. 1996) (awarding 33.3%); *Tapken v. Brown*, No. 90–0691–Civ–SM, D.E. 362 (S.D. Fla. 1995) (awarding 33%); *Wegweiser v. Great Western*, No. 95–8543–Civ–DLK, D.E. 194 (S.D. Fla. 1997) (awarding 33.3%); *In re Home Shopping Network Sec. Litig.*, No. 87–428–Civ–T–13(A) (M.D. Fla. 1991) (awarding 33%); I*n re Belmac Corp. Sec. Litig.*, No. 92–1814–Civ–T–23–(C) (M.D. Fla. 1994) (awarding 31%); *Golden v. U.S. Diagnostics, Inc.*, No. 97–8010–Civ–ASG, D.E. 107 (S.D. Fla. 1998) (awarding 30%); *Ehrenreich v. Sensormatic Elec. Corp.*, No. 95–6637–Civ–WJZ, D.E. 192 (S.D. Fla. 1998) (awarding 30%).

[29]        As the district court in recognized in *Will v. Gen. Dynamics Corp.*, when a settlement, such as this one, includes substantial injunctive relief, that relief should also be considered in evaluating the benefit to the class.  CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) (citing Manual for Complex Litigation (Fourth) § 21.71, at 337 (2004); Principles of the Law of Aggregate Litigation, § 3.13 (2010); *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief.")).  Taking the injunctive relief into account is further proof of the reasonableness of Class Counsel's sought-after fees.

Based on these factors and the settled law in the Eleventh Circuit, Class Counsel's requested fee is fair, reasonable, and proportionate to the substantial benefits achieved for the Class. Despite objectors' specious claims, that only a small portion of the Class has taken advantage of these benefits does not magically transform an otherwise fair and reasonable settlement into an unfair and unreasonable one. And in the 11th Circuit, it also cannot transform a reasonable fee award into an unreasonable one.

**F.  Alternatively, Class Counsel's Requested Fee Award Is Justified by Their Lodestar.**

As discussed above, under Eleventh Circuit precedent, the current Settlement is properly treated as a constructive common fund, comprised of the total benefits made available to the class, notice and administration costs, and attorneys' fees and expenses. As explained *supra*, *Camden I* made clear that attorneys' fees from common funds should be awarded as a percentage of the fund, while attorneys' fees in statutory fee-shifting cases should be awarded based on lodestar. *Camden Condominium Ass'n*, 946 F.2d at 774.

Nonetheless, Class Counsel's proposed fee award is also justified by the substantial lodestar they have incurred through prosecution of this Litigation. Across two separate cases prosecuted by two sets of firms in both Florida and California, Class Counsel expended 6,385.3 billable hours, worth $3,467,516.25 at their normal hourly rates, and advanced $272,275.60 in out-of-pocket expenses. Declaration of E. Clayton Lowe, Jr. ("Lowe Decl."), ¶¶ 4 & 10; Affidavit of Joshua R. Gale ("Gale Decl."), ¶¶ 6 & 8; Declaration of Robert C. Schubert ("Schubert Decl.")  at ¶¶ 21-22. Class Counsel's requested fee award of $5.41 million represents a multiplier of only 1.56 of lodestar, which is entirely consistent with other reasonable multipliers awarded in the Eleventh Circuit.

In this Circuit, the average multiplier is approximately three times lodestar. *See Pinto*, 513 F. Supp. 2d at 1344 (explaining that the Eleventh Circuit "performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that

40.

lodestar multiples 'in large and complicated class actions' range from 2.26 to 4.5, while 'three appears to be the average.'") (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)). Here, Class Counsel's proposed lodestar multiplier of 1.56 is substantially less than the 3.0 average for the Eleventh Circuit and even falls below the bottom end of the Eleventh Circuit's range for lodestar multipliers in large and complicated class actions.

In addition, in considering the reasonableness of a lodestar multiplier, courts consider the benefits made available to the class, the quality of counsel's work, the complexity of the issues, and the contingency of payment. *Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1314 (M.D. Fla. 2011). Class Counsel's proposed lodestar multiplier is strongly supported by each of these factors.

First, as discussed previously, the Settlement provides not only substantial benefits but, on average, 100% relief to Class Members nationwide. This result is exceptional. Class members nationwide are all eligible for the same benefits.

Second, the quality of Class Counsel's work supports the proposed lodestar multiplier. Unlike some cases, this was not a "quickie" settlement. Class Counsel invested extensive time and effort litigating two cases in two separate courts; briefing two separate class certification motions (and arguing the motion in Florida); conducting extensive discovery, including review of over 250,000 documents and numerous depositions on both sides; and negotiating a hard-fought final agreement after two mediations over five months. Class Counsel's prosecution of the case also came against substantial opposition from two well-known and well-regarded defense firms, Jones Day and Carlton Fields, which vigorously defended their clients.[30]

---

[30] In assessing the quality of representation by Class Counsel, the Court also should consider the quality of the opposition. *E.g., Camden I*, 946 F.2d at 772 n.3; *Johnson*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992); *Angoff v. Goldfine*, 270 F.2d 185, 192 (1st Cir. 1959).

Third, the complex legal and technical issues involved in the case weigh in favor of the reasonableness of Class Counsel's proposed lodestar multiplier. Not only were there myriad complex legal issues spread across two separate bodies of law in two jurisdictions, but there were also numerous complex scientific and technical issues. While the case at heart involved the misrepresentation of Duracell Ultra batteries, its prosecution required Class Counsel to devote significant time to understanding the highly technical issues that govern battery performance, including battery chemistry, testing methodologies and procedures, and statistical modeling. Lowe Decl. ¶¶ 6-7; Schubert Decl. ¶ 24. These complex technical issues also necessitated the retention of expert consultants. *Id.*

Fourth, both the Florida and California actions were taken and prosecuted on a purely contingent basis. Class Counsel have not been paid for over twenty-three months and assumed all risk of non-payment in the actions. Lowe Decl. ¶ 8; Schubert Decl. ¶¶ 23-24. Class Counsel also advanced substantial out-of-pockets expenses totaling $272,275.60, including the retention of expert technical and economic consultants to assist with the actions. Lowe Decl. ¶ 10; Schubert Decl. ¶ 22; Gale Decl. ¶ 8. The fully contingent nature of Class Counsel's work, therefore, also supports the proposed lodestar multiplier.

In sum, Class Counsel prosecuted two separate actions in Florida and California on behalf of state-only classes in each jurisdiction and successfully obtained a settlement that provided, on average, complete relief to all Class Members nationwide. This is an exceptional result. Class Counsel's proposed fees, based on lodestar and multiplier, are entirely consistent with—and in fact, significantly lower than—similar settlements in the Eleventh Circuit. Under these circumstances, even if the Court elects to use the lodestar method, Class Counsel's proposed fee award of $5.68 million is reasonable and justified.

**G.    Defendants' Agreement to Pay a Negotiated Fee and Expense Award, Subject to Court Approval, Is Not Suspect.**

Objector Frank contends that Defendants' agreement to pay fees over and above the amounts paid directly to Class Members is indicative of an unfair attorneys' fee award or collusive negotiations.[31]  Once again, objector Frank's reasoning strains applicable law and credulity.  Plainly, "[t]his type of provision is appropriate when, as here, it does not impact the substantive benefits offered to the class."  *Eisen*, 2014 WL 439006, at *10; *see also Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (holding that such a "clear-sailing" provision was not collusive because attorneys' fees were separately negotiated and did not impact the benefits made available to the class); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 n.6 (S.D. Cal. 2011) (recognizing that federal courts routinely accept "clear-sailing agreements").  As explained in Newberg on Class Actions, a defendant's agreement to pay a certain amount of reasonable fees to class counsel, referred to by Frank as a "clear sailing agreement," subject to court approval, remains "a proper and ethical practice." §15:34 (4th ed. 2013).

Even the principle cases from outside of this Circuit which are relied upon by objector Frank, *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991) and *In re Bluetooth*, 654 F.3d at 949, specifically affirm that such agreements "are not prohibited." *See also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ("a defendant in a class action settlement has no obligation to oppose the fee petition submitted by class counsel"); *In re Johnson & Johnson Derivative Litigation*, 900 F. Supp. 2d 467, 497 (D.N.J. 2012) ("It is of no moment that the parties have consented to the proposed attorney's fees.").

---

[31]    In general, a "clear-sailing agreement" is one where "the party paying the fees agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling."  *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293 n. 3 (11th Cir. 1999).

43.

*Weinberger* merely holds that, even when the payment of fees to class counsel will not affect the class recovery, the district court should examine the request to determine whether it is fair and reasonable, rather than simply rubber-stamping it. 925 F.2d at 520. Plaintiff does not suggest otherwise.

*Bluetooth*'s holding that, because such "clear-sailing agreements" *potentially* provide excessive attorneys' fees in exchange for diminished class relief, heightened scrutiny may be warranted, does not indicate anything improper with respect to the instant fee request. *See, e.g., In re Bluetooth*, 654 F.3d at 947. Instead both *Bluetooth* and *Kakani v. Oracle Corp.*, C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007) (a California district court case cited by Frank in which heightened scrutiny was applied) are readily distinguishable from the instant action.

In both *Bluetooth* and *Kakani* a comparison of the proposed settlement with the fee request suggested that collusion might have occurred. In *Bluetooth*, the class members received zero monetary compensation for releasing their claims, although monetary damages were initially sought. *Id*. at 938-39. Instead, the settlement agreement provided only for $100,000 in *cy pres* and an attorneys' fee award of $800,000. 654 F.3d at 938. In *Kakani*, the plaintiffs failed to provide any substantive explanation why they had settled substantial FLSA claims for only 12.3 percent of the potential recovery, or why the California class members would receive double the compensation of workers outside of that state. 2007 WL 1793774 at *7.

In contrast, as explained above, no objectors have claimed that a better result could have been achieved for the Class at trial—nor could they reasonably make such a claim.

Furthermore, Plaintiffs do not simply rely on "bald assertions" or "verbal assertions" of a lack of collusion in negotiations; instead they have submitted corroborating declarations from both counsel *and the mediator*, evidencing that the cases were actively and intensively

44.

litigated before the parties entered into settlement discussions and that the entire process resulting in the Settlement was done (i) at arm's-length, (ii) by well-represented parties, (iii) under the supervision of a respected, court-appointed mediator, and (iv) with the substantive settlement benefits available to the Class agreed upon in principle before attorneys' fees were ever discussed.  *See In re Bluetooth*, 654 F.3d at 948.  Therefore, the requested fee amount could not be the product of "red-carpet treatment" in exchange for reduced benefits to the Class, as objector Frank urges. *Weinberger*, 925 F.2d at 524; *accord In re Bluetooth*, 654 F.3d at 948.

Although *Bluetooth* and *Weinberger* caution of the *potential* for "clear-sailing" provisions to result in excessive attorneys' fees for class counsel, the fee award sought here can hardly be described as "excessive"—indeed, it is *substantially less* than figure proposed by the mediator as fair and reasonable. Declaration of Clayton Lowe, Jr. (Dkt. #114-1), ¶ 14; Declaration of Robert C. Schubert (Dkt. #114-2), ¶ 15.

**H.    Class Counsel May Privately Allocate the Fee Award.**

Objector Frank asserts that under Rule 23(h), class counsel are not permitted to privately divide a "lump sum" fee award and that the allocation of fees among class counsel may not occur "absent oversight" from class members. Frank Obj. at 37-38. Once again, Frank's contention is meritless. "Ideally, [fee] allocation is a private matter to be handled among class counsel." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993) (citing Newberg, *Attorney Fee Awards* § 2.16 (1986); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ("The court determines a reasonable award to the class counsel in the aggregate, and the counsel then determine how to allocate the award among themselves …. This is a private matter for the attorneys to resolve."); *Hartless v. Clorox*, 273 F.R.D. 630, 646 (S.D. Cal 2011) (allocation of fees "amongst class counsel does not affect the monetary benefit to class members. Moreover, federal courts routinely affirm

45.

the appropriateness of a single fee award to be allocated among counsel and have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney.") Indeed, this procedure is "both logical and practical. Class counsel are better able to decide the weight and merit of each other's contributions." *In re Copley Pharmaceutical, Inc. Albuterol Products Liability Litig.*, 50 F. Supp. 2d 1141, 1148 (D. Wyo. 1999); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 400 (D.D.C. 1978) (following settlement, it is "virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk.").[32]

Frank's principal case, *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008) does not support his argument. There, a class-action settlement produced a fee award to be shared among eighty firms. At an *ex parte* hearing, the district court appointed a select committee of attorneys to allocate the award, delegated to it the responsibility for dividing fees, ordered the allocations sealed, and declined to substantively review the individual awards. Certain attorneys appealed their allocations, and the Fifth Circuit reversed, holding that the process below was perfunctory and lacked transparency. 517 F. 3d at 231-232. *High Sulfur* requires only that if district court oversight is applied with respect to a fee division, the district court must provide for a fair process and a hearing. None of that is relevant to private fee sharing agreements. Notably, even after *High Sulfur*, district courts in the Fifth Circuit continue to recognize the overriding principle (as did *High Sulfur* itself) that fee allocation among class counsel is, first and foremost, a private matter. *Turner*

---

[32]     Frank also argues that the notice should have contained detailed information regarding "which attorneys seek what fees for what work," citing *In re Mercury Interactive Corp. Sec. Litig.*, 618 F. 3d 988 (9th Cir. 2010). Frank Obj. at 38. Frank misreads *Mercury Interactive*, which imposes no such requirement for the notice, only that a motion for fees must be filed before the objection deadline. In any event, *Mercury Interactive* was recently rejected by Judge Moreno in *Saccoccio*, 2014 WL 808653. In that case, Judge Moreno further held that a settlement notice disclosing generally that class counsel would apply for a fee award "not to exceed $20 million" complied with Rule 23(h).

*v. Murphy Oil USA Inc.*, 582 F. Supp. 2d 797, 808 (E.D. La. 2008)(quoting *Domestic Air Transp.* and stating that "ideally, allocation is a private matter to be handled among class counsel," but appointing special master to make recommendations after class counsel were "unable to agree on an allocation.")[33]

Finally, without citation to authority, Frank claims that any fee agreement among Class Counsel must be disclosed under Rule 23(e)(3), which requires the disclosure of "any agreement made in connection with" a proposed settlement. Frank Obj. at 40. Frank is again mistaken, because the manner in which class counsel divide fees does not affect the total class recovery. *Hartless*, 273 F.R.D. at 646 (Rule 23(e)(3) requires disclosure of an agreement to pay fees to class counsel, not of any agreement among class counsel about how such fees are divided).

## IV.  THE OBJECTIONS TO THE PROPOSED NAMED PLAINTIFF PAYMENT SHOULD BE OVERRULED

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. … Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. … 'The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation.'"

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1357 (citations omitted). Consideration of these factors demonstrates that Frank's objection to Poertner's proposed incentive award should be overruled.

Class representative Poertner participated in drafting the complaint, amendments, and responses to defendants' pleadings and written discovery, reviewed discovery responses, sat

---

[33]      Frank also cites *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987), another case involving a fee dispute among class counsel. As Frank concedes, that case precedes the adoption of Rule 23(h). Furthermore, while *Agent Orange* held that in Second Circuit cases the basis for a fee division should be disclosed, it recognized that private fee division by class counsel "among themselves" is "unexceptional." *Id.* at 223.

for a seven (7) hour deposition, and participated in settlement discussions.  Lowe Decl. ¶ 11.

Given the named plaintiff's active involvement in this litigation, the requested award of

$1,500 is modest and warrants approval.  *See, e.g.*, *Su v. Elec. Arts, Inc.*,

6:05CV131ORL28JGG, 2006 WL 4792780 (M.D. Fla. Aug. 29, 2006) *report and*

*recommendation adopted,* 6:05CV131OR;28JGG, 2007 WL 2780899 (M.D. Fla. Sept. 20,

2007) (awarding $10,000 incentive fee to named plaintiff); *In re Checking Account Overdraft*

*Litig.*, 830 F. Supp. 2d at 1357 (awarding $5,000 service fees per class representative); *Pinto*,

513 F. Supp. 2d at 1344 (approving service awards of $7,500 for the three class

representatives); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 357 (approving as

reasonable service awards totaling $142,500, which consisted of awards of $5,000 to each

named plaintiff who was deposed and $2,500 to those who produced documents).

Objector Frank's citation to *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1146 (11th

Cir. 1983) to the contrary is misleading.  *Holmes* did not address an incentive award at all.

Instead, in *Holmes*, the Eleventh Circuit disapproved a settlement where the representative

plaintiffs would receive *half* of the settlement fund established for back pay claims, while the

remaining 118 members of the class would receive the other half.  *Id.* at 1147-49.  Holmes is

therefore clearly distinguishable from the instant case.  Here, the settlement provides for no

preferential treatment of the representative plaintiff.  He, like all class members, will be

entitled to receive $3 per pack of batteries purchased, up to a total of $6, if he does not

submit receipts, or up to a total of $12, if he submits receipts with his claim form.

Furthermore, in contrast to the incentive award in Holmes, which represented approximately

half of the total value of the settlement, here, the proposed representative payment constitutes

only a miniscule portion of the total value of the settlement (approximately 0.003%).

The other decision upon which Frank relies, *In re Carbon Dioxide Antitrust Litig.*,

940, 1996 WL 523534 (M.D. Fla. July 15, 1996), is also readily distinguishable.  There, the

plaintiffs requested $20,000 incentive awards for each of six named plaintiffs who participated in discovery, and $5,000 each for the remaining plaintiffs who apparently did not participate in discovery. *Id.* at *6. The Court's finding that the named plaintiffs' participation in discovery did not warrant $20,000 awards, or that the remaining named plaintiffs' willingness to "lend[] [their] name[s]" to the case did not warrant awards of $5,000 each, does not support denying a single, modest $1,500 award to Plaintiff Poertner, who actively participated throughout the litigation, including reviewing pleadings, providing discovery, and attending his all-day deposition, and also participated in settlement negotiations.[34] The objection to the proposed incentive award should be overruled.

## V.    THE NOTICE COMPORTED WITH RULE 23(H)

Under the Court's Preliminary Approval Order, the deadline to object to the Settlement was February 28, 2014, and Class Counsel's application for an award of attorneys' fees and expenses was initially due on or before March 14, 2014. Pointing to a Ninth Circuit case, *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010), objectors argue that this schedule violates Rule 23(h). However, the Court subsequently extended the deadline to file Class Counsel's application for fees and costs to April 22, 2014, and at the same time, permitted the objectors to file responses to the fee request on or before May 9, 2014. Because the new scheduling order renders the objections to the prior schedule moot, the objections on this ground should be overruled. *See Cassese v. Williams*, 503 Fed. App'x 55, 57 (2nd Cir. 2012) *cert. denied,* 133 S. Ct. 2023, 185 L. Ed. 2d 886 (2013) (where

---

[34] Two cases from outside of this Circuit, relied upon by objector Frank, are also readily distinguishable. In *Pampers*, the named plaintiff's proposed award was deemed unjustified when contrasted with the "illusory injunctive relief" achieved for the class as a whole. In contrast, here, the proposed award of $1,500 is modest as compared to the substantial settlement fund achieved for the class, which ensures that the Class Members may receive full compensation for their damages. In *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013), the incentive award *per se* was not at issue but rather that it was conditioned upon the named plaintiffs' approval of the settlement. Here, the proposed incentive award is not conditioned upon Poertner's approval of the settlement, and therefore Frank's citation to *Radcliffe* is inapposite.

objectors had a reasonable opportunity to object to fee motion prior to the hearing on that motion, no violation of Rule 23(h) or due process had occurred); *Silverman v. Motorola, Inc.*, 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) *aff'd sub nom. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) (where objectors had reasonable opportunity to object to fee motion, that fee motion was filed after objection deadline did not constitute violation of Rule 23(h)); *Saccoccio,* 2014 WL 808653 at *11 (same).[35]

## VI.    CONCLUSION

For the reasons set forth above and in the Final Approval Motion, the objections to the proposed Settlement, Class Counsel's Fee and Expense Award, and the payment to representative plaintiff Poertner should be overruled.

Respectfully submitted,
/s/ E. Clayton Lowe, Jr.
E. Clayton Lowe, Jr.
*Pro Hac Vice* admission
**The Lowe Law Firm, LLC**
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
Telephone: (205) 314-0607
Facsimile: (205) 314-0707
Email: clowe@claylowelaw.com

Joshua R. Gale (FL Bar No. 63283)
**Wiggins, Childs, Quinn & Pantazis, LLC**
101 N. Woodland Blvd., Ste. 600
DeLand, FL 32720
Telephone: 386-675-6946
Facsimile: 386-675-6947
Email: JGale@WCQP.com

---

[35]    Even if the revised scheduling order had not rendered this objection moot, the objection would lack merit, because Class Counsel's fees here will not reduce—or in any way impact—the Class Members' recovery.  *Calloway v. Cash Am. Net of California LLC*, 09-CV-04858 RS, 2011 WL 1467356 (N.D. Cal. Apr. 12, 2011) (*Mercury Interactive*'s holding inapplicable where the amount distributed to class counsel will not diminish the amount received by the class); *Gittin v. KCI USA, Inc.*, 09-CV-05843 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) (same); *In re Lifelock, Inc. Marketing and Sales Practices Litig.*, MDL 08-1977-MHM, 2010 WL 3715138, at *9-10 (D. Ariz. Aug. 31, 2010) (same); *Eisen*, 2014 WL 439006, at *9-10 (same); *Redman v. RadioShack Corp.*, 2014 WL 497438, at *11 (N.D. Ill., Feb. 7, 2014).

Robert C. Schubert
*Pro Hac Vice* admission
Noah M. Schubert
*Pro Hac Vice* admission
**Schubert Jonckheer & Kolbe LLP**
3 Embarcadero Ctr Ste 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facscimile: 415-788-0161
Email: rschubert@schubertlawfirm.com
Email: nschubert@schubertlawfirm.com

Peter A. Grammas
*Pro Hac Vice* admission
**The Law Office of Peter A. Grammas**
1114 Lake Colony Lane
Vestavia, AL 35242
Telephone: 205-970-9708
E-mail: pete@grammaslaw.com

*Class Counsel and Attorneys for Plaintiff*

51.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 22, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Christopher Batman
441 Coral Place
Corpus Christi, TX 78411

Sam P. Cannata
30799 Pinetree Rd., #254
Pepper Pike, OH 44124

Wanda J. Cochran
10121 Page Road
Streetsboro, OH 44241

Paul Dorsey
110 Westminster Drive
West Hartford, CT 06107

Wendy L. Young
4430 W. Fairmount Ave.
Lakewood, FL 32801


/s/ Noah M. Schubert
Noah M. Schubert
*Pro Hac Vice* admission
**Schubert Jonckheer & Kolbe LLP**
3 Embarcadero Ctr Ste 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facscimile: 415-788-0161
Email: nschubert@schubertlawfirm.com