# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOSHUA D. POERTNER, *et al.*,

        Plaintiffs,

  v.

THE GILLETTE COMPANY and THE PROCTER & GAMBLE COMPANY,

        Defendants.

Case No. 6:12-cv-00803-GAP-DAB

---

## Reply Memorandum in Support of Objection
## of Theodore H. Frank

---

Adam E. Schulman (*pro hac vice*)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW #236
Washington, DC 20036
Telephone: (610) 457-0856
Email: shuyande24@gmail.com

Benjamin C. Haynes
Florida Bar No. 91139
HAYNES & ASSOCIATES
790 Oakland Hills Circle
Lake Mary, Florida 32746
Telephone: (509) 432-1751
Email: haynesbenjaminc@aol.com

*Attorneys for Objector Theodore H. Frank*

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................I

TABLE OF AUTHORITIES ........................................................................................... II

INTRODUCTION ........................................................................................................... 1

I.       Objector Theodore H. Frank incorporates his previous objection by reference and intends to appear through counsel at the fairness hearing. .......................................................... 3

II.      Because Frank does not allege that the size of the aggregate constructive common fund is inadequate, many of the parties' responses are *non sequiturs*. .......................................... 5

III.     Nearly 95% of the settlement's monetary benefit flows toward class counsel, amounting to preferential treatment. ......................................................................................................... 7

IV.      The injunctive relief is valueless. ........................................................................................ 13

V.       The settling parties provide no legitimate reason for resorting to *cy pres*. ................... 13

VI.      The identity of the *cy pres* recipients and the substance of their mission is material to the fairness of the settlement; failure to designate specific recipients deprives class members of their rights of notice, exclusion and objection. .................................................................. 18

VII.     Any attorneys' fees should be based on the actual constructive common fund. ................ 18

VIII.    Fed. R. Civ. P. 23(h) does not permit clandestine allocation of a lump sum fee award. ......... 20

CONCLUSION ................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................6

*Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978). ..........................................................15

*Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984).............................................7

*Boeing v. Van Gemert,* 444 U.S. 572 (1980)................................................................19

*Briggs v. United States*, No. C 07-05760 WHA, 2012 U.S. Dist. LEXIS 18278 (N.D. Cal. Feb. 14, 2012) ...................................................................................................................................17

*Bublitz v. E.I. Dupont De Nemours & Co.*, 224 F. Supp. 2d 1234 (S.D. Iowa 2002) ................13

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) ...............13

*City of Livonia Employees Retirement System v. Wyeth*, 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) ...........5

*Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142 (M.D. Fla. 2005) ..................................18

*Day v. Persels & Assocs., LLC.*, 729 F.3d 1309 (11th Cir. 2013) ......................................4

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) .......................................... 18, 19

*Dikeman v. Progressive Express Ins. Co.*, 312 Fed. Appx. 168 (11th Cir. 2008)...........................12

*Dugan v. Lloyds Tsb Bank*, No. C 12-02549 WHA, 2014 U.S. Dist. LEXIS 60852 (N.D. Cal. Apr. 24, 2014) ...............................................................................................................19

*Galloway v. Kan. City Landsmen, LLC.,* No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) .....................................................................................14

*Hartless v. Clorox Co.,* 273 F.R.D. 630 (S.D. Cal. 2011) ...................................................20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)...................................................................18

*Holmes v. Cont'l Can Co.,* 706 F.2d 1144 (11th Cir. 1983)....................................................1

*Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323 (11th Cir. 2013)...........................................4

*Howell v. Jhi, Inc.*, No. 3:11-cv-00545-RCJ-WGC, 2014 U.S. Dist. LEXIS 44632 (D. Nev. Apr. 1, 2014). .................................................................................................................9

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ..............................................*passim*

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, No. 09-md-2023, 2012 U.S. Dist. LEXIS 143955 (E.D.N.Y. Oct. 2, 2012)................................................................16

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011)......................................*passim*

*In re Checking Account Overdraft Litig.*, No. 1:09-md-20360-JLK, (S.D. Fla. Apr. 15, 2013)...................14

*In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) .......................................................................................................................5

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981)...............................4

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .............................................*passim*

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ............................................................................................ 10-11

*In re MagSafe Apple Power Adapter Litig.*, Nos. 12-15757, 12-15782, 2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 24, 2014) ................................................................................................... 2, 9

*In re New Motors Vehicles Canadian Export Antitrust Litig.*, 842 F. Supp. 2d 346 (D. Me. 2012) ..............8

*In re New Motors Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 U.S. Dist. LEXIS 142537 (D. Me. Oct. 18, 2011) .........................................................................................8

*In re New Motors Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 U.S. Dist. LEXIS 40843 (D. Me. Apr. 13, 2011) .........................................................................................8

*Jones v. Nat'l Distillers.*, 56 F. Supp. 2d 355 (S.D.N.Y. 1999) .................................................17

*Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404 (N.D. Ill. 2012).........................14

*Klier v. Elf Atochem N. Am., Inc,* 658 F.3d 468 (5th Cir. 2011). ..............................................15

*Lonardo v. Travelers Indem. Co,* 706 F. Supp. 2d 766 (N.D. Ohio 2010). ...................................5

*McClintic v. Lithia Motors,*  No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) .......................................................................................................................................11

*McDonough v. Toys 'R' Us,* No. 06-cv-00242 (E.D. Pa.) ...........................................................17

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429 (11th Cir. 2012)............................12

*Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) ...........................18-19

*Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014)...................8

*Pecover v. Electronic Arts*, No. C 08-02820 CW (N.D. Cal.) ....................................................14

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985). ............................................................ 4, 6

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000).............................................13

*Redman v. RadioShack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880 (N.D. Ill Feb. 7, 2014) .....9

*Richardson v. L'Oreal USA, Inc. ,* ____F. Supp. 2d___,   2013 WL 5941486
(D.D.C. Nov. 6, 2013).......................................................................................... 4, 7, 9

*Rodriguez v. Nat'l City Bank,* 726 F.3d 372 (3d Cir. 2013). ................................................. 6-7

*SEC v. Bear, Stearns & Co.*, 626 F. Supp. 2d 402 (S.D.N.Y. 2009)..........................................15

*Perdue v. Kenny A.*, 559 U.S. 542 (2010) .................................................................................19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................................13

*Strong v. Bellsouth Telecoms. Inc.*, 137 F.3d 844 (5th Cir. 1998) ......................................19

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005) ...............................................12

*Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306 (11th Cir. 2002) ...................................5

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003)...........13

*Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) .................................13

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ...................... 12, 19

## Rules and Statutes

Fed. R. Civ. P. 23 ...........................................................................................................*passim*

Fed. R. Civ. P. 23(a)(4) .................................................................................................13

Fed. R. Civ. P. 23(e)(2) ...................................................................................................2

Fed. R. Civ. P. 23(e)(3) .................................................................................................20

Fed. R. Civ. P. 23(h) ................................................................................................. 3, 20

## Other Authorities

Allen, Tiffaney, *Setting Anticipating Claims Filing Rates in Class Action Settlements* (Nov. 2008) ...............15

Am. Law Institute, *Principles of the Law of Aggreggate Litig.* § 3.07 cmt. b (2010) ...........16

Belson, Ken, *FedEx's Chief on the Payoff of Corporate Giving*, N.Y. Times, Nov. 10 2010 ........................17

Lahav, Alexandra D., *Symmetry and Class Action Litigation*, 60 UCLA L. REV. 1494 (2013) .....................7

O'Quinn, Ryan P. & Thomas Watterson, *Fair is Fair: Reshaping Alaska's Unfair Trade Practices and Consumer Protection Act*, 28 ALASKA L. REV. 295 (2011).........................................................10

Skudiene, Vida, *et. al.*, *Strategic v. Ad-Hoc Corporate Social Performance: An Analysis of CSP Maturity and Its Relationship to Corporate Financial Performance*, J. MGMT & SUSTAINABILITY, Oct. 9, 2011, http://dx.doi.org/10.5539/jms.v3n1p16 ...............................................................17

Wasserman, Rhonda, *Cy Pres in Class Action Settlements*, 88 S. CAL. L. REV.---,--- (forthcoming 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2413951 ................................15-16

## INTRODUCTION

In accordance with the order of March 13 (Dkt. 146), Objector Theodore H. Frank submits this reply memorandum in support of his earlier Objection (Dkt. 126) ("Obj."). In his objection, Frank cautioned that the $49 million valuation ascribed to this settlement was a mirage. He observed that claims rates are routinely less than 1% in low-recovery consumer settlements, and predicted that, under generous assumptions, the "total class benefit [would] equate[] to $435,600." Obj. 12-14. Frank requested that the Court abstain from ruling until it could make findings on the class's actual recovery. Obj. 10 n.4. The Court obliged by continuing the fairness hearing until May 22 "to ensure the parties and class members have sufficient time to review the number of claims submitted…to evaluate the fairness of the settlement and attorneys' fees." Dkt. 141 at 1.

And now, with the settlement administrator's declaration on file (Dkt. 156) ("McComb Claims Decl."), we know several facts. (1) the approved claims filing rate stands at about 0.76%; (2) the final class disbursement will be no more than $344,850; and (3) the agent of the parties, the settlement administrator, had conducted a survey and expected a sub 1% claims rate. *Id.* ¶¶5-6. Thus, class counsel is seeking an unopposed $5.68 million award—more than 16 times as much as their putative clients—and leaving 99% of those clients with no benefit at all. To add insult to injury, we can infer that class counsel knew that this would be the outcome, just as their agent did. *See, e.g.,* Obj. 1, 14, 26 (anticipating this scenario). As *In re Dry Max Pampers Litigation* identifies, this is "preferential treatment" that renders the settlement unfair and unfit for approval. 724 F.3d 713, 718 (6th Cir. 2013) ("*Pampers*"); *see also* Obj. 9-20. In the language of this Circuit, this is a settlement that "benefit[s] the class representatives or their attorneys at the expense of absent class members." *Holmes v. Cont'l Can Co.,* 706 F.2d 1144, 1147 (11th Cir. 1983) (internal quotation omitted).

The parties' responses[1] to the objections are notable both for what they say and do not say.

---

[1] Plaintiffs' Response (Dkt. 158) will be designated "Pl. Resp." Defendants' Response (Dkt. 150) will be designated "Def. Resp." Plaintiffs' Motion for Final Approval  (Dkt. 157) will be designated "MFA".

Because Frank "does not argue this case must settle for an actual $10 million, $20 million or $30 million," most of what the parties do say amounts to tilting at straw men and is only responsive to other objectors who allege that the size of the fund is inadequate. Obj. 7; *see infra* §II. Most significantly, the parties give short shrift to Frank's cardinal argument that the fee provisions of the settlement afford unduly favorable treatment to class counsel. Frank's objection is grounded in *Pampers*, *In re Bluetooth Headset Products Liability Litigation*,[2] *In re Baby Products Antitrust Litigation*,[3] and other cases holding that disproportional fees, clear sailing agreements, and segregated fee awards bear not merely on the reasonableness of the fee award itself, but on the fairness of the entire settlement. Yet plaintiffs concentrate on whether the fee request alone is reasonable, not the core issue of Rule 23(e)(2) fairness. Pl. Resp. 38-40, 43-45. Try as they might, the plaintiffs cannot evade the "economic reality" that counsel's fees, even when negotiated separate and apart from class relief, affect settlement fairness. *Pampers*, 724 F.3d at 717 (quoting *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998)).

When the settling parties confront the issue as one of fairness, they contend that "fairness and adequacy…does not depend on how many claims are made." Def. Resp. 9-11; *accord* Pl. Resp. 12-13. By continuing the fairness hearing so that the claims figures can be considered, this Court has already rejected that argument. It was correct to do so. *See, e.g., Baby Prods.*, 708 F.3d 163; *In re MagSafe Apple Power Adapter Litig.*, Nos. 12-15757, 12-15782, 2014 U.S. App. LEXIS 7708, at *13 (9th Cir. Apr. 24, 2014) (unpublished) (reversing settlement approval where "[t]he district court conducted the fairness hearing before the claims-submission period closed, leaving us with no reliable way of estimating how many valid claims were submitted"); *see also* Obj. 11-12 (citing several cases considering actual recovery, only one of which is even mentioned in the settling parties' responses).

---

[2] 654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*").

[3] 708 F.3d 163 (3d Cir. 2013) ("*Baby Prods.*").

I.  **Objector Theodore H. Frank incorporates his previous objection by reference and intends to appear through counsel at the fairness hearing.**

On February 27, 2014, Frank filed his initial objection ("Obj."). Dkt. 126. As documented in that objection and in his accompanying declaration ("Frank Decl.") (Dkt. 126-1), Frank is a member of the class. Obj. 2; Frank Decl. ¶¶3-5. Frank takes this opportunity to withdraw his earlier objections to the timing of the fee motion (Obj. 36-37) and to the "Class Representative Payment" (Obj. 20-22). The 23(h) fee motion timing issue has been mooted by this Court's order resetting the fairness hearing and giving objectors an opportunity to respond to the fee papers. *See* Dkt. 146. Frank withdraws his objection to the named plaintiff's incentive award in an effort to winnow his objections to those infractions he considers most serious. Aside from these two objections, Frank now reasserts the remainder of his earlier objections and incorporates them by reference here.

Frank's attorney, Adam Schulman of the non-profit Center for Class Action Fairness ("CCAF") has been granted admission *pro hac vice*, and will appear at the May 22 fairness hearing on Frank's behalf.

Anticipating the plaintiffs' attempts to distract from the merits of his objection through use of *ad hominem*, Frank sought to ward off such irrelevant (and indecorous) attacks. *See* Obj. 3-4, Frank Decl. ¶¶ 12-19. Frank was unsuccessful; class counsel's response baldly alleges that "Frank's true motivation in objecting…is…that he seeks to eliminate consumer class actions altogether." Plaintiffs' Response to Objections ("Pl. Resp.") (Dkt. 158) at 13. In no small irony, while the plaintiffs now feign indignation about accusations of collusion (Pl. Resp. 5, 7, 10, 44)—accusations Frank specifically disclaimed (Obj. 5)—they now attribute ill-begotten motivations to Frank himself that are completely contradicted by Frank's averments. *See* Frank Decl. ¶¶ 12, 17. And that isn't all. They accuse Frank of "cynical conduct" because the "circumstances strongly suggest that Frank purchased the batteries…for the purpose of creating class membership and filing an objection." Pl. Resp. 21-22. Plaintiffs glide over Frank's attestation that he believes he had purchased Ultras earlier in the class period. Pl. Resp. 22 n.18. But, even if Frank purchased batteries in 2014 so that he has documentable proof of his class membership, is it really "cynical conduct" to think that the courts

can right a wrong? Would plaintiffs ascribe cynicism to civil rights testers or straw purchasers who entered into transactions for the purpose of attaining legal standing? *Cf. Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) (*citing Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (legal injury not negated because one is a tester)).

Frank leaves it to the Court to determine whether his objection was a "canned broadside" "that urge[s] this Court to ignore Eleventh Circuit precedent" (Pl. Resp. 22) or whether it is responsive to the facts of this case and consistent with Eleventh Circuit precedent—precedent that the settling parties failed to even mention in their responses. *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) (*"Piambino II"*); *Day v. Persels & Assocs., LLC.*, 729 F.3d 1309 (11th Cir. 2013).[4] Let it be known that the conduct of class counsel here is not an isolated incident. Frank routinely faces calumny and epithets from other attorneys around the country, almost all of whom are fighting tooth and nail to justify settlements which grant them preferential treatment. As has been CCAF's all-too-customary experience in its short history, class counsel here adopt a "hammer and tongs" approach that is unwarranted. *See In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480, at *34 (W.D. Wash. Jun. 12, 2012) (imposing $100,000 sanction against class counsel). Frank sincerely hopes this Court will speak out against the injustice in a published opinion or *sua*

---

[4] Perhaps even more remarkable than the settling parties' silence on the cases is that they ask this Court to retread the exact errant footsteps of the magistrate's initial approval in *Day v. Persels*. *Contrast* Motion for Final Approval ("MFA") (Dkt. 157) at 8-9 (encouraging deference to settling parties); Pl. Resp. 3, 5 (same), *with Day*, 729 F.3d at 1315 (observing magistrate's misbegotten reliance on "complete confidence in the ability and integrity of counsel") *and Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (noting that deference to the parties "never weighs against settlement"). *Contrast also* Pl. Resp. at 19-20 (arguing that paucity of objections demonstrates fairness), *and* Order, *Day v. Persels & Assocs.*, No. 8:10-cv-2463-T-TGW (M.D. Fla. Mar. 12, 2012) (Dkt. 157) at 19 (attaching significance to the fact that there were only five objectors), *with In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. Apr. 1981) ("[A] low level of vociferous objection is not necessarily synonymous with jubilant support. In many class actions, the vast majority of class members lack the resources either to object to the settlement or to opt out of the class and litigate their individual cases.").

*sponte* repercussion.[5] *See Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1308 (11th Cir. 2002) ("[A]n attorney who submits documents to the district court that contain *ad hominem* attacks directed at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it.").

## II.   Because Frank does not allege that the size of the aggregate constructive common fund is inadequate, many of the parties' responses are *non sequiturs*.

"It is commonplace for objectors to complain that a settlement is insufficiently large in the aggregate. But the focus of Frank's objection is quite different." Obj. 9. Most of the parties' counterarguments are not responsive to Frank's actual objection.

Plaintiffs claim that objectors "urge this Court to disregard the parties extensive arm's length negotiations overseen by a highly regarded mediator." Pl. Resp. 2; *accord* Pl. Resp. 6-8; Def. Resp. 1 (describing "difficult, hard-fought negotiations facilitated by a respected court-appointed mediator"). With respect to Frank, plaintiffs are mistaken. Frank urges only that the Court recognize that "the adversarial process or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Pampers*, 724 F.3d at 717 (emphasis in original) (quoting Fifth and Third Circuit cases). Frank has already

---

[5] Plaintiffs refer to two district court decisions that purportedly "betray [Frank's] ideological agenda to curb class action litigation by disincentivizing class-action attorneys." Pl. Resp. 22. *Compare* plaintiffs' reading of *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010), *with* Frank. Decl. ¶18 (attempting to preempt this tendentious reading of *Lonardo*). As for *City of Livonia Employees Retirement Sys. v. Wyeth*, 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), that court did uncharitably find that CCAF's client's challenge to class counsel's 4.2 lodestar multiplier was not "grounded in the facts" of the case. Despite this criticism however, the *Wyeth* court ultimately concurred with the objection in part and lowered the fee by 20% from the request—thereby augmenting class members' share of the common fund by several million dollars. CCAF and its client were satisfied with this result and did not appeal.

explained this fact (Obj. 5), yet because the settling parties ignore it, Frank reiterates.[6] Nor is the presence of a mediator a salve that ensures a fair allocation of the settlement proceeds. *See* Obj. 18 n.11 (citing cases and commentary).

Plaintiffs proffer the idea that "compromise is the essence of Settlement." MFA 8 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also* Def. Resp. 2, 4-6 ("none of the objectors say a word" about the strong defenses P&G has in this case). Frank agrees with the general precept that compromise is essential to settlement. That precept explains why P&G is not funding an actual $49 million settlement. But it cannot explain why class counsel and non-class third party charities are realizing nearly the entire $6 million benefit the defendant was willing to provide. The only two parties that should be obtaining concessions in a settlement agreement are the class itself and the defendant. So that is why Frank says not a word about P&G's potentially meritorious defenses.[7]

---

[6] Any insinuation that objectors allege "collusion" erects the same straw man. *See* Pl. Resp. 5. Since Frank was not a fly on the wall in the negotiating room, he has no basis to opine on that matter. But he need not allege collusion to sustain his objection. Because "[t]he defendant, and therefore its counsel, is uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney" it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Piambino II*, 757 F.2d at 1143 (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), *aff'd* 577 F.2d 335 (5th Cir. 1978)); *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

[7] Defendants are incorrect about one thing though. If indeed the class could not be certified for litigation because of predominance of individual issues (Def. Resp. 5 n.1), then this Court should reject the certification of this settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (the specifications of rules Rule 23(a) and (b) are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand undiluted, even heightened, attention in the settlement context."); *Pampers*, 724 F.3d at 721 ("These requirements are scrutinized more closely, not less, in cases involving a settlement class"); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013) (the "policy in favor of voluntary settlement does not alter the 'rigorous analysis' needed to ensure that the Rule 23 requirements are satisfied."). The specifications of (b)(3) are not the defendants' to waive; they serve to protect minority absent class members. Alexandra D. Lahav,

Lastly, plaintiffs chide Frank for "refusal to consider Eleventh Circuit authority, and in particular the *Bennett* factors." Pl. Resp. 3. Again, as explained in Frank's initial objection, the *Bennett* factors are not exclusive nor exhaustive. Obj. 6-7 & n.1. Five of the six *Bennett* factors revolve around the issue of whether the sum of the fund is adequate. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (listing (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point at or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of the litigation and (6) the stage of proceedings at which the settlement is achieved).[8] The *Bennett* factors provide a sound framework for evaluating whether the gross settlement is adequate, but say nothing about an unfair apportionment of an otherwise sufficient settlement.

## III.   Nearly 95% of the settlement's monetary benefit flows toward class counsel, amounting to preferential treatment.

Faced with an unseemly reality in which class counsel has filed an unopposed application for $5.68 million and their clients will walk away with less than $350,000, the settling parties do their best to avoid looking around. First, they distort the objection by pretending that the objection "assert[s] that the settlement cannot be found reasonable unless a large percentage of the class members make a claim." Def. Resp. 9; *accord* Pl. Resp. 13 & n.10. Although a sub 1% class member participation rate can and should be construed as suggesting an unsatisfactory settlement, Frank nowhere advocates that this alone is a damning feature. Rather, the damning feature is that as a result of the miniscule claims rate, class counsel will be obtaining a share that is 20 times more than that of all class members put together. This allocation is even less tenable than that in the now-

---

*Symmetry and Class Action Litigation*, 60 UCLA L. Rev. 1494, 1506 (2013). In sum, the risk of a failed litigation certification is definitively not a reason to certify and approve a settlement class.

[8] As noted previously (*see supra* 4 n.5; Obj. 40-44), the absence of a high objection rate "proves little." *Richardson v. L'Oreal USA, Inc.*, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013). Moreover, the rights of objection and exclusion were needlessly burdened in this settlement. In this day and age, there's no reason for requiring either to be exercised by postal mail. Obj. 40-43.

---

discredited *Baby Products* settlement. *See* Obj. 25-26 (charting comparison of the two settlements).

Low claims rates are common, and some of those settlements are sustained by courts. But again, Frank's objection is not that the raw claims rate here is too low to be approved. It's that because of the rate, this settlement affords both class counsel and non-class third parties a disproportionate share of the settlement. In many settlements with a low claims rate, no objector complains about an excessive allocation to the attorneys. Of the cases cited by the defendants (*See* Def. Resp. 10 & nn.7-8), CCAF represented objectors in three of them. In *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532 (D. Me.) ("*NMV*"), CCAF's client objected to a needless diversion of $500,000 to a *cy pres* recipient. Although the defendants assert that the April 13, 2011 opinion upheld the settlement, it did not. Rather, it withheld judgment, and later approved the settlement only upon a modification expanding the claims process to include more individuals and doing away with the *cy pres* component. *Compare NMV*, 2011 U.S. Dist. LEXIS 40843 (Apr. 13, 2011) *with NMV*, 2011 U.S. Dist. LEXIS 142537 (Oct. 18, 2011) *and NMV*, 842 F. Supp. 2d. 346 (D. Me. 2012). For our purposes though, the case has no relevance as there was no disproportionate allocation. 842 F. Supp. 2d at 350. ("[T]he fees and expenses amount to 30% of the settlement amounts, and the plaintiff class therefore will obtain 70% of the recovery.")

CCAF also represented an objector in *Pearson v. NBTY, Inc.*, No. 11-cv-7972 (N.D. Ill). That settlement did include disproportionate distributions to class counsel and to third party charities. While Judge Zagel recognized part of the problem, his solution was to merely reduce fees from the $4.5 million requested down to just under $2 million. 2014 U.S. Dist. LEXIS 357, at *26 (N.D. Ill. Jan. 3, 2014). Resolving the distributional problem in this way creates its own problem. Obj. 18-20. It reverts the excess negotiated fees back to the defendant, although there is "no apparent reason" why such a reduction should not benefit class members from the full size of the constructive common fund. Obj. 36 (quoting *Bluetooth*, 654 F.3d at 949). CCAF's client appealed the *Pearson* approval and has already filed his opening brief. *See* No. 14-1198 (7th Cir.).

The final case cited in which CCAF represented an objector is *Redman v. RadioShack Corp.*

No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880 (N.D. Ill.). This case too involved a disproportionate fee to class counsel ($1 million) in comparison to the class' recovery (just over 83,000 $10 coupons). Nonetheless, the magistrate in that case ratified the agreement based on the economic fiction that the formally segregating the fee fund somehow removes it from the calculus of settlement fairness. *Compare id.* at *29 ("[B]ecause this is not a [pure] common fund settlement[, it] therefore does not present a zero-sum structure.") *with* Obj. 8-9, 15-16 (deconstructing this fiction).

Courts can reach the right conclusion and reject bad settlements. *See, e.g., Richardson*, 2013 WL 5941486 (D.D.C. Nov. 6, 2013) (Bates, J.). Frank cited several such district court decisions denying settlement approval where the class's actual recovery was a disproportionately small part of the fund and the parties simply ignored them.  Obj. 11-12; *see also Howell v. Jbi, Inc.,* 3:11-cv-00545-RCJ-WGC, 2014 U.S. Dist. LEXIS 44632, at *21-*23 (D. Nev. Apr. 1, 2014) (following *Bluetooth* and denying approval where class was only allotted 58.3% of the gross settlement). Certain district courts fail to recognize the merits of allocational objections and require appellate courts to expend time and energy vacating wrongful approvals. *See, e.g., Baby Prods*, 708 F.3d 163; *Pampers*, 724 F.3d 713; *Bluetooth*, 654 F.3d 935; *Day,* 729 F.3d 1309; *MagSafe Apple Power Adapter*, 2014 U.S. App. LEXIS 7708. Frank beseeches this Court not to take solace in the comfort of statistical togetherness with those district courts that have approved unworthy settlements.[9]

Next, the settling parties assert that is a just settlement because the per package compensation for class members is almost equivalent to what they could have recovered at trial. Def. Resp. 2-7; Pl. Resp. 9-11. Supposedly, this distinguishes *Baby Products*, *Pampers*, and *Bluetooth*. Def. Resp. 6 ("Because the payments available under this settlement rival or exceed what class members could obtain if they were to prevail at trial, the cases on which the objectors rely where

---

[9] Plaintiffs' submission even goes to show how district court decisions, especially in the absence of objectors, do not always accord with controlling law. *Compare* Pl. Resp. 39 & n.28 (cataloging cases which supposedly demonstrate that district courts in Florida "typically award class counsel one third of pure and constructive common funds") *with* Pl. Resp. 38 (denoting the actual Eleventh Circuit benchmark of 20-30% of the fund).

settlements were disapproved are inapposite.") Several replies are in order.[10]

First, the premise is incorrect; it cannot be said that class members are obtaining full recovery. The settling parties proclaim that the plaintiffs' only avenue for relief is "a full refund of the difference in price between the CopperTop batteries and the more expensive Ultra batteries." Def. Resp. 2; Pl. Resp. 1. And "for well over 90% of class members, the $3.00 per package cash payment" approximates their per package differential damages. Def. Resp. 3 (displaying chart showing average per pack differentials to be slightly over $3.00 on average). But the parties fail to recognize that under the operative complaint, actual differential damages is merely one among many theories of damages or other relief. *See* Third Amended Complaint (Dkt. 117) at 16, Prayer for Relief (d), (g) (seeking punitive damages; disgorgement; restitution; pre and post-judgment interest and "all other entitled awards under the FDUTPA, and similar laws of other states"); *see generally* Ryan P. O'Quinn & Thomas Watterson, *Fair is Fair: Reshaping Alaska's Unfair Trade Practices and Consumer Protection Act*, 28 ALASKA L. REV. 295, 305-06 (2011) ("Twenty states set a minimum damages award for successful plaintiffs to encourage litigation of harms normally too insignificant to litigate. The minimum damages award varies from as low as $ 25 to as high as $ 2000, and the plaintiff is awarded the higher of the actual or statutory damages.")

A legitimate adversarial complaint is a proper yardstick for use in determining whether there is full compensation. *See Bluetooth,* 654 F.3d at 945 n.8 (examining whether relief obtained in settlement matched theory of the complaint); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 755, 810 (3d Cir. 1995) ("the relief sought in the complaint serves as a useful benchmark in deciding the reasonableness of a settlement.") (internal quotation omitted). This is certainly ***not*** to say that a settlement need satisfy each demand of the complaint to be adequate, but

---

[10] Immediately, it should be noted that Plaintiffs misrepresent the *Pampers* settlement. It is not true that the only compensation provided to the class was "a coupon for a free box of disposable diapers." Pl. Resp. 11. Rather, it was a full reimbursement of the purchase price. 724 F.3d at 716

it is to say that the parties' "what are you complaining about" response doesn't hold water.[11] Further, even if Frank were to concede that differential damages were the only measure of damages relevant here, the settlement payments to class members still wouldn't amount to full compensation because of the arbitrary unit caps (2 units without proof of purchase, 4 units with proof).

Second, and more importantly, the unfairness of the *Pampers*, *Bluetooth*, and *Baby Products* had nothing to do with whether the negotiated class relief was a fair approximation of the litigation value of class members' claims. In *Pampers*, for example, both the Consumer Products Safety Commission and Heath Canada exculpated P&G, reducing the litigation value of the claims to virtually nil. 724 F.3d at 715-16; *Id.* at 723 (Cole, J. dissenting) ("Nobody disputes that the class's claims in this case had little to no merit."). So, the problem was not that the refund program and the other potpourri of injunctive relief failed to approximate the <u>litigation value</u> of the claims. Rather, the problem was that the nearly the entire <u>settlement value</u> was being consumed by the attorneys' fee. *Baby Products* was similar except it was both the *cy pres* distribution and the attorneys' fees that were consuming almost the entire settlement. This disproportion is what led Judge Ambro to refer to the settlement having an "optics" problem at oral argument. To look just at class members' awards vis-à-vis their possible litigation awards is to ignore the two elephants in the room: (1) the $5.68 million set aside for class counsel and (2) the $6 million in kind set aside for to-be-determined third parties. These are "concrete and indisputable" parts of the settlement value,[12] and the fact that they are diverted away from the class is unacceptable. *Pampers*, 724 F.3d at 721.[13]

---

[11] It is also to say that a settlement is unfair if it rewards non-party organizations before fully satisfying the class' claims. *See McClintic v. Lithia Motors, Inc.*, No. C11-859-RAJ, 2012 U.S. Dist. LEXIS 3846, at *13 (W.D Wash. Jan. 12, 2012) ("[T]he only impediment to full distribution of the $1.74 million to class members is the artificial payment cap the parties have imposed.") (explaining why *cy pres* was factor preventing settlement approval). *See also* Obj. 22-26; *infra* §V.

[12] Admittedly, the monetary value of the $6 million in-kind retail value donations is almost certainly less than $6 million when translated into cash.

[13] *Contra* Pl. Resp. at 8, no one requests that there be "simultaneous negotiation of class relief and attorneys' fees." Frank maintains only that the later-negotiated payment of attorneys' fees

The settling parties' final attempt at avoiding this stark reality is to say that actual claims do not matter. *See supra* at 2-3. Plaintiffs would mislead this Court into believing that Circuit law dictates this result. Pl. Resp. 12. But, as discussed in Frank's objection, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), has no relevance to the Rule 23(e) fairness inquiry because the settlement approval in that case was not challenged on appeal: only fees were. *See id.* at 1293 n.4 (taking note of the controversy but refusing to opine on the propriety of clear-sailing agreements). The unpublished, non-precendential,[14] cases plaintiffs cite fare no better. *Dikeman v. Progressive Express Ins. Co.* addressed only an argument that the size of the fund was inadequate. 312 Fed. Appx. 168, 171 (11th Cir. 2008).  *Nelson v. Mead Johnson & Johnson Co.* affirmed the overruling of a "conclusory" objection "to the inadequacy of the settlement consideration and the allocation of the settlement proceeds." 484 Fed. Appx. 429, 434 (11th Cir. 2012). The published *Baby Products* and *Pampers* decisions, as well as all the post-*Bluetooth* cases are compelling: direct benefit matters.

Perhaps worst of all, the allocation did not come as a surprise to the settling parties. *See* McComb Claims Decl. ¶5 (discussing how there is "almost always" a sub 1% claims rate in publication-notice-only consumer cases). This foreknowledge demonstrates how class counsel here "has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *Baby Prods.*, 708 F.3d at 178. The result here was no random fortuity, it was an inevitability given the all the obstacles built into the settlement: the per product caps, the unit caps, the lack of direct notice, the lack of direct payment. Obj. 1-2. Nor did the settlement have to be this way. *See infra* at 14-17 (describing potential alternative avenues to get money to class members)

---

should not revert to the defendant and that temporal separation of the discussion doesn't somehow magically remove them from the constructive common fund. *See* Obj. 8-9, 15-16, 18-20. Nor has anyone asserted that clear sailing agreements are *per se* prohibited. *Contra* Pl. Resp. 43. Rather, as *Bluetooth* explains, clear-sailing becomes problematic where the fee request is disproportionate and the excess fee reverts to the defendant. *See also Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("**three** factors combined to create this untenable distribution scenario") (emphasis added).

[14] 11th Cir. R. 36-2.

## IV.   The injunctive relief is valueless.

The settling parties make only half-hearted efforts to substantiate the injunctive labeling relief. Def. Resp. 12-13; Pl. Resp. 18-19. They do not rebut Frank's argument (Obj. 14-16) that a class of past purchasers is not benefited by future-looking relief. But even as to future purchasers, attributing any value to the injunctive relief (Settlement (Dkt. 113-1) ¶58) runs headlong into a brick-wall of logic. Ceasing certain representations on the packaging of Duracell Ultras cannot be a benefit when Duracell Ultras are no longer in circulation.

P&G rejoins that "[t]he filing of these lawsuits played a material role in Duracell's decision to [stop selling the Ultras]." Def. Resp. 13. There are at least two problems with crediting the settlement for this relief. First, voluntary pre-settlement changes do not count as a compensable class benefit. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1090 (C.D. Ill. 2012) (voluntary remedial measures independent of the settlement "should not be considered part of the benefit for forfeiting the right to sue"); *Bublitz v. E.I. Dupont De Nemours & Co.*, 224 F. Supp. 2d 1234, 1239 (S.D. Iowa 2002) (interpreting *Buckhannon* as "abolishing the catalyst theory with respect to the common fund doctrine"). This is true even where, unlike here, those changes are later duplicated as terms of settlement accord. *Pampers*, 724 F.3d at 719; *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003).

Here, of course, there is no part of the settlement that forbids P&G from selling Duracell Ultra battery products. And rightfully so, for if such an injunction was stipulated relief, then there would likely arise a 23(a)(4) intra-class conflict between those class members who wish to have the product available in the future, and those that do not. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189-92 (11th Cir. 2003); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). But that is a moot issue, because all that the settlement does is forbid P&G from making representations about a product they are no longer selling. That is no conceivable benefit to anyone.

## V.   The settling parties provide no legitimate reason for resorting to *cy pres*.

Frank has objected to the prioritization of undetermined third party charities ahead of class

members. Obj. 22-26. The parties offer several responses, none of which is convincing. Def. Resp. 13-15; Pl. Resp. 13-18.

Plaintiffs suggest that it would be it would not be feasible "to make direct payments to the remaining absent Class Members because their identities are unknown" Pl Resp. 15 & n.11. In doing so they overlook several viable alternatives. First, there is the obvious alternative of relaxing the monetary caps on both claims and units, as well as the proof of purchase requirement, thus augmenting class claimants' recovery. *Baby Prods.*, 708 F.3d at 176 (finding it "more likely that many class members did not submit claims because they lacked the documentary proof necessary to receive the higher awards contemplated, and the $5 award they could receive left them apathetic. This casts doubt on whether agreeing to a settlement with such a restrictive claims process was in the best interest of the class.") (suggesting "rais[ing] the $5 cap or alter[ing] the documentary proof requirement on remand."); *Pampers*, 724 F.3d at 718 (expressing mystification at who would maintain diaper receipts for 5 years); *Pecover v. Electronic Arts*, No. C 08-02820 CW (N.D. Cal. Apr. 2, 2013) (Dkt. 449) (approving a revised plan of allocation that would triple per claim amounts, include an automatic distribution of $2.2 million, and prevent a *cy pres* award of seven times the class's recovery); *cf. also In re Checking Account Overdraft Litig.* No. 1:09-md-20360-JLK (S.D. Fla. Apr. 15, 2013) (Exh. 5 to Obj., Dkt. 126-6) (rejecting *cy pres* proposal in lieu of further class distributions).

These adjustments to the per claim recovery can be accompanied with supplemental notice and a reopening of the claims process.[15]  In *Pecover* for instance, the combination of adjustments to payout amounts and supplemental outreach resulted in an increase in class recovery of $11.5 million:

---

[15] In fact, although it would be far less effective, the parties could propose supplemental notice alone just to attract new claimants. *See Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404 (N.D. Ill. 2012) (holding original notice was inadequate where there was a disproportion between the fee and amount claimed). Optimum notice is indispensable in a claims made settlement. *See, e.g., Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (ordering "the notice be improved so that a large number of class members will participate in the settlement").

from $2.2 million to $13.7 million. *See also SEC v. Bear, Stearns & Co.,* 626 F. Supp. 2d 402, 417 (S.D.N.Y. 2009) (yield increased by approximately 33% with secondary distribution); *Sylvester v. Cigna Corp.,* 369 F. Supp. 2d 34, 43 (D. Me. 2005) (providing new notice to inform class of $11.97 increase in maximum payout to class member). Where the monetary and unit caps are relaxed or eliminated, the class member claims yield will likewise significantly. Tiffaney Allen, *Anticipating Claims Filing Rates in Class Action Settlements* 2-3 (Nov. 2008) ("A class member must feel the benefits being offered are worth the time and effort required to file a claim.")[16]

As illustrated above (*see supra* at 10-11) augmenting claimant recovery would not constitute an impermissible "windfall." Windfall compensation should be determined by comparing the relief obtained to the full measure of legal damages sought in the complaint and waived under the settlement release, not by comparison to the agreed-upon payment ceiling of the settlement agreement. *See Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 479 (5th Cir. 2011) ("The fact that the members of Subclass A have received payment authorized by the settlement agreement does not mean that they have been fully compensated."); *Beecher v. Able,* 575 F.2d 1010, 1016 (2d Cir. 1978) (no windfall or unjust enrichment to redistribute to class members when alleged damages are greater than the sum after redistribution). Even looking to the differential damages on a per-unit basis there is not full compensation. *See* Def. Resp. 3 (displaying chart which shows class differential damages are $3.12/pack on average outside Costco, and are $3.90 on jumbo packs at Costco). And that's to say nothing of the other ways in which class members do not obtain full recovery: the arbitrary unit caps and the failure to obtain any forms of non-differential damage relief. To the point, "[a] vague anxiety over windfalls would not justify [preferring *cy pres* to class redistributions]." Rhonda Wasserman, *Cy Pres In Class Action Settlements,* 88 S. CAL. L. REV.-----, ----- (*forthcoming* 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2413951; *accord* AMERICAN LAW INSTITUTE,

---

[16]Available at
http://www.rustconsulting.com/Portals/0/pdf/Monograph_ClaimsFilingRates.pdf.

PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07 cmt b (2010) ("*ALI Principles*") (rejecting position that "cy pres remedy is preferable to further distributions to class members").

But, even if equitable concern for non-claimant class members is the overriding interest, *cy pres* is still not an acceptable choice when there are viable avenues unexplored. *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litigation* provides a roadmap. No. 09-md-2023 (E.D.N.Y.). *Bayer* involved claims alleging the ineffectiveness of two combination aspirin products. In late 2012, the parties settled and entered into a low value claims made settlement similar to this one. *Bayer*, Dkt. 181 (granting preliminary approval). Similar to here, Frank objected that only class benefit would amount to a few hundred thousand dollars at most, while class counsel was seeking $5.1 million and two *cy pres* recipients would share the remaining $8 million from the net settlement fund. *Bayer*, Dkt. 206. After Frank filed his objection and notice of the *Baby Products* decision, the parties immediately agreed to amend the settlement to issue direct payments to known class members, culminating in a direct class benefit of $5.8 million.

But how could they do this? Bayer doesn't possess the contact information of class members who purchased its products. The answer is deceptively simple: they reached out to "numerous … major retailers [who] agreed to produce [class member] information to plaintiffs." 2012 U.S. Dist. LEXIS 143955, at *17 (E.D.N.Y. Oct. 2, 2012). When non-consenting retailer Safeway, Inc. challenged the subpoena for the class information, the court ordered production of the "contact information for individuals known by Safeway to have purchased the Combination Aspirins in order to provide direct notice to these purchasers of their right to collect under the preliminarily approved settlement." *Id.* at *15. The court recognized that "it is rather standard practice for plaintiffs to subpoena third parties, in contexts similar to this one, in order to obtain information for the purpose of providing notice." *Id.* *14 (citing *In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*, No. 01-CV-12239-WGY, 2004 U.S. Dist. LEXIS 29834 (D. Mass. Nov. 24, 2004) and *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238, 2002 U.S. Dist. LEXIS 23327 (E.D.N.Y. Jun. 21, 2002)). "[C]lass counsel and class fund administrators have a duty to try to find missing class

members." *Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 356 (S.D.N.Y. 1999); *Briggs v. United States*, No. C 07-05760 WHA, 2012 U.S. Dist. LEXIS 18278, at *4-*5 (N.D. Cal. Feb. 14, 2012) (noting that court's prior order to class administrator to continue its efforts to locate unpaid class members resulted in additional distribution checks totaling $29,866.54).

When they have satisfied this duty, there will be no excuse why payment cannot be made directly to class members. And this is exactly what happened in *Baby Products* on remand. *See McDonough v. Toys 'R' Us,* No. 06-cv-00242, Motion for Preliminary Approval of Settlement (Dkt. 847) (E.D. Pa. Dec. 18, 2013) (providing direct payments to class members whose contact information was available in the defendants' records, thereby increasing direct benefit from roughly $3 million to almost $20 million).

Which alternate method the parties elect is not crucial; what matters is that non-compensatory *cy pres* remain the last resort. Inconvenient does not mean infeasible. The fact that it's easier to give the class's money away to third parties doesn't make it okay. The parties may not wall off a portion of the settlement and say this "is not intended to be a substitute for actual payments to class members." Def. Resp. 14.[17]

---

[17] Even if *cy pres* were acceptable here, the parties have not satisfied their burden to prove that these donations will not just take the place of those P&G routinely makes. An agreement to donate $6 million in batteries "above and beyond any existing commitments that Duracell has already made" (Def. Resp. 15) is not the same as an agreement to donate batteries "above and beyond commitments that Duracell would otherwise have made in the future." Like other companies, P&G probably reserves discretion for itself. *See, e.g.* Ken Belson, *FedEx's Chief on the Payoff of Corporate Giving*, N.Y. Times, Nov. 10, 2010, at F15 ("We sort of set a target and budget and work backward from there."); Vida Skudiene et al., *Strategic vs. Ad-Hoc Corporate Social Performance: An Analysis of CSP Maturity and Its Relationship to Corporate Financial Performance*, J. MGMT. & SUSTAINABILITY, Oct. 9, 2011, http://dx.doi.org/10.5539/jms.v3n1p16 (Comparing the corporate financial performance of companies engaged in "ad hoc" philanthropy to companies engaged in "strategic" philanthropy). There's nothing in the settlement or Mr. Jarrett's Declaration (Dkt. 153) to prevent P&G from just employing *cy pres* in lieu of its routine—but not firmly committed—habit of donating products to similar organizations.

**VI.    The identity of the *cy pres* recipients and the substance of their mission is material to the fairness of the settlement; failure to designate specific recipients deprives class members of their rights of notice, exclusion and objection.**

Frank renews his objection to the settlement's failure to specifically designate the *cy pres* beneficiaries. Obj. 27-29. It is not sufficient that the agreement lists "the types of organizations to which the batteries will be donated." Def. Resp. 14. Class members have the right to vet specific recipients for potential infirmities: conflicts of interest, geographic clustering, etc. Without specific designations, class members cannot make a fully informed decision as to whether to object, opt-out or remain in the class.[18]

**VII.    Any attorneys' fees should be based on the actual constructive common fund.**

Assuming this settlement is approved, plaintiffs seek an award of $5.68 million, which they say amounts to a just over 10% of a nearly $50 million constructive common fund. MFA 5, 13-17; Pl. Resp. 26-40. They are correct about one thing: the percentage of recovery ("PoR") method of calculating fees is superior to the lodestar method because it "more closely aligns the interests of client and attorney…" MFA 20 (quoting *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).[19] Incorrectly, however, they assert that the proper denominator should be predicated on

---

[18] *Baby Products* (cited by Pl. Resp. 17) held that the class could be notified later and could object at that point. *Baby Products* fails to consider the deprivation of the right of opt-out, and also neglects to explain deviating from the Ninth Circuit's contrary decision in *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012). Moreover, in *Baby Products* there was at least a plausible reason why the parties could not designate a beneficiary: they did not know how much money would be leftover after the claims process. Here, the $6 million worth of *cy pres* product donations is not contingent on the outcome of the claims process.

[19] Moreover, plaintiffs' lodestar submissions are so deficient as to preclude a lodestar award anyway. "The party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended…" *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005). At a minimum, "counsel should identify the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Here, the submissions cannot even pass this test. All that is provided is the sum number of hours for each attorney and their claimed lodestar rate. *See* Dkt. 157-1 ¶21; Dkt 157-2 ¶4; Dkt 157-3 ¶6."Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight… [T]he district court must be reasonably precise in excluding hours

---

a 100% claims rate. The parties labored under no such delusion that there would be a 100% claims rate (McComb Claims Decl. ¶5), and a surreal assumption defeats the purpose of using the PoR method in the first place: aligning the interests of counsel and class members. *See* Obj. 35.

*Waters v. International Precious Metals Corp.* does not require otherwise. 190 F.3d 1291 (11th Cir. 1999). *Waters* did not "expressly decline" to follow *Strong v. BellSouth Telecomms, Inc.*, 137 F.3d 844 (5th Cir. 1998). Rather, it distinguished *Strong* because the *Strong* settlement "never established a 'common fund' from which money would be drawn." *Waters*, 190 F.3d at 1296. This case is like *Strong*: the defendants have established nothing. *See also Boeing v. Van Gemert,* 444 U.S. 472, 481 n.5 ("we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine."). Also in *Waters*, "the district court here never made a determination that [the purported settlement] amount was illusory." 190 F.3d at 1296. Given the record evidence, $43 million is pure fiction. It has not been escrowed in an interest bearing fund. It has not been reflected in Duracell's anticipated business accounting. It remains what it has been from the outset: nothing more than a twinkle in class counsel's eye. *Contra* Pl. Resp. 37.

"Cases are better decided on reality than on fiction." *Pampers*, 724 F.3d at 721 (internal quotation omitted); *accord Dennis*, 697 F.3d at 868 (chronicling the problem of "fictitious" fund valuations that "serve[] only the 'self-interests' of the attorneys and the parties, and not the class."); *see also Dugan v. Lloyds TSB Bank*, No. C 12-02549 WHA, 2014 U.S. Dist. LEXIS 60852 (N.D. Cal. Apr. 24, 2014) (refusing to grant fees of $1.75 million when the actual class recovery was only $1.6 million).

---

thought to be unreasonable or unnecessary … ." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (abrogated on other grounds by *Perdue v. Kenny A.*, 559 U.S. 542 (2010)).

Also with respect to a theoretical lodestar, Frank would challenge the application of any multiplier greater than 1. The case law no longer routinely permits sizable multipliers. *Contrast Perdue v. Kenny A.*, 559 U.S. at 552, *with* Pl. Resp. 40-41 (citing pre-*Kenny A* case law).

## VIII.  Fed. R. Civ. P. 23(h) does not permit clandestine allocation of a lump sum fee award.

Plaintiffs muster exactly one post-Rule 23(h) case permitting class counsel to privately allocate a lump sum award. *Hartless v. Clorox*, 273 F.R.D. 630 (S.D. Cal. 2011). Respectfully, Frank suggests that *Hartless's* rationale— "lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney" —violates the text, purposes and premises of Rule 23(h). *See* Obj. 37-40. *Hartless* is also mistaken on the Rule 23(e)(3) question of whether there need be disclosure of a fee splitting agreement.  The parties must identify "any agreement in connection with the proposal," not just those agreements that a judge speculates might "affect the monetary benefit to class members." *Contrast* Fed. R. Civ. P. 23(e)(3), *with Hartless*, 273 F.R.D at 646.

## CONCLUSION

For each of the above reasons, Frank requests that this Court deny the motion to approve the settlement. Alternatively, if the Court grants the motion, Frank requests that it dramatically reduce the attorneys' fees and partition the award to each firm.

Dated:  May 9, 2014                                   Respectfully submitted,


                                       */s/ Adam E. Schulman*
                                       Adam E. Schulman (*pro hac vice*)
                                       D.C. Bar No. 1001606
                                       CENTER FOR CLASS ACTION FAIRNESS
                                       1718 M Street NW, No. 236
                                       Washington, DC 20036
                                       Telephone:  (610) 457-0856
                                       Email:  shuyande24@gmail.com

                                       */s/ Benjamin C. Haynes*
                                       Benjamin C. Haynes
                                       Florida Bar No. 91139
                                       HAYNES & ASSOCIATES
                                       790 Oakland Hills Circle
                                       Lake Mary, Florida 32746
                                       Telephone: (509) 432-1751
                                       Email:  haynesbenjaminc@aol.com


                                       *Attorneys for Theodore H. Frank*

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing document and accompanying exhibits through the Court's ECF system, which has effectuated service of this Reply upon the following all attorneys of record in this matter

Additionally, I caused to be served via first-class mail a copy of this Reply in Support of Objection of Theodore H. Frank and accompanying exhibits upon the following:

| Christopher Batman<br>441 Coral Place<br>Corpus Christi, TX 78411 | Paul Dorsey<br>110 Westminster Drive<br>West Hartford, CT 06107 |
|---|---|
| Wanda J. Cochran<br>10121 Page Road<br>Streetsboro, OH 44241 | Sam P. Cannata<br>30799 Pinetree Rd., #254<br>Pepper Pike, OH 44124 |
| Wendy L. Young<br>4430 W. Fairmount Ave.<br>Lakewood, FL 32801 | |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 9, 2014

*/s/ Adam E. Schulman*
Adam E. Schulman