# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOSHUA D. POERTNER,**

        **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　**Case No:   6:12-cv-803-Orl-31DAB**

**THE GILLETTE COMPANY and
PROCTOR & GAMBLE COMPANY,**

        **Defendants.**

---

## ORDER AND FINAL JUDGMENT APPROVING CLASS ACTION SETTLEMENT

This matter is before the Court on Plaintiff's Motion for Approval of Settlement and Award of Attorneys' Fees. (Doc. 157). On November 5, 2013, the Court granted preliminary approval of the settlement and directed dissemination of notice and related activities. (Doc. 118). Seven objections to the Settlement were filed. (Doc. 126, 127, 130, 131, 132, 133, and 140). Plaintiff and Defendants filed consolidated responses to these objections (Docs. 158 and 150, respectively), and a fairness hearing was held on May 22, 2014.[1]

### A. Background

On April 19, 2012, Joshua D. Poertner ("Plaintiff") brought this case in Florida Circuit Court against the Gillette Company ("Gillette") and Proctor & Gamble Company ("P&G")[2] alleging that the Defendants had violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),

---

[1] For all capitalized terms not defined herein, the Court adopts the definitions within the Settlement Agreement. (*See* Doc. 113-1).

[2] Gillette is a wholly owned subsidary of P&G.

Florida Statutes, § 501.201 et seq. (Doc. 1-3). Shortly thereafter, the case was removed to this Court.[3]

In his Complaint, brought individually and on behalf of all other similarly situated individuals, Plaintiff alleged that he purchased Defendants' Duracel Ultra Advanced batteries three to four times in 2010 and Ultra Power batteries in early 2012 (the two types of batteries are the "Ultra batteries"). He purchased the Ultra batteries with the expectation that they would last longer than the standard Duracell CopperTop batteries ("CopperTop") based on representations made on the packaging. The claim asserted, at base, that the labeling on the packaging constituted an unfair and deceptive trade practice because it expressed the deceptive message that Ultra batteries are longer lasting and more powerful than the CopperTop. (Doc. 117 ¶ 4). While the individual messages in the marketing differed, the underlying message was the same.

Defendants denied the allegations and extensive litigation ensued. Class motions were fully briefed and the Court held a hearing on Plaintiff's Motion for Class Certification (Doc. 66) on September 4, 2013. On September 13, 2013, while the Motion for Class Certification was pending, the parties reached a mediated settlement agreement.

## B. The Settlement Agreement

The Settlement Agreement (Doc. 113-1) provides both monetary and equitable relief to the class and a $6,000,000 in-kind contribution of batteries by Gillette to charitable organizations.

---

[3] A similar action was filed in California and is included in this Settlement. *Heindel v. The Gillette Company et al*, Case No. CV-12-01778 EDC (N.D. Cal.) (previously titled *James Collins v. Duracell, Inc. and The Proctor & Gamble Co.*) (the "California Case"). The California Case is currently stayed pending the approval of the Settlement and, following the entry of this Order, the parties have agreed to dismiss the California Case with prejudice. (*See* California Case Doc. 53).

The monetary part provides for a payment to claimants of between $6.00 and $12.00 per household, depending on whether they submit proof of purchase. There is no limit on the total amount payable by the Defendants under the Settlement Agreement. In terms of equitable relief, Gillette agreed to cease selling Ultra batteries in the United States with the "our longest lasting" wordage.[4]

After reaching agreement on the substantive terms of the settlement, the parties negotiated Class Counsel's fee of $5,407,724.40 plus expenses of $272,275.60, for a total of $5,680,000.[5] (*See* Doc. 151-7 ¶ 17).

### C.  The Applicable Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. In determining whether to approve a settlement, the Court must ensure that the settlement is fair, adequate, reasonable, and not the product of collusion between the parties. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 (11th Cir. 1994); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). The Eleventh Circuit has outlined the following factors to be used in assessing a class action settlement: (a) the likelihood that Plaintiff would prevail at trial; (b) the range of possible recovery if Plaintiff prevailed at trial; (c) the fairness of the Settlement compared to the range of possible recovery, discounted for the risks associated with litigation; (d) the complexity, expense, and duration of litigation; (e) the substance and amount of opposition to the Settlement; and (f) the stage of the proceedings at which the Settlement was achieved. *Bennett*, 737

---

[4] Gillette stopped selling Ultra batteries in July, 2013. (Doc. 153 ¶ 3).

[5] The Settlement Agreement also provides a $1500 award to Poertner as the class representative.

F.2d at 986; *Corrugated Container*, 643 F.2d at 212; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

### D.  Class Certification

This Court has jurisdiction over these claims, pursuant to 28 U.S.C. § 1332(d). As this Court previously found in its Order Granting Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 118), certification of the Settlement Class for the purpose of settlement is appropriate because: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiff are typical of the claims of members of the Settlement Class; (d) Named Plaintiff and Class Counsel will fairly and adequately represent the interests of the Settlement Class; (e) for purposes of settlement only, questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual members of the Settlement Class; and (f) for purposes of settlement only, certification of the Settlement Class is superior to other methods for the fair and efficient adjudication of this controversy. In determining that class treatment is superior, this Court has considered the following: (a) the interest of members of the Settlement Class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class; (c) the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and (d) the difficulties likely to be encountered in the management of a class action.

### E.  Objections

Only seven Class Members objected, and only twelve Class Members excluded themselves from the Settlement, both of which represent a minuscule percentage of the estimated 7.26 million

member Class. The objections principally raise issue with the value of the settlement to the Class Members and assert that the attorney's fees are excessive.[6]

### 1. Common Objections

Class members Frank, Cannata, Batman, Falkner, Gaspar, and Cochran submitted objections that focus primarily on the value of the settlement that will accrue to the Class Members. (*See* Docs. 126, 127, 131, 132, 133, 140, 162, and 163). While not all of these objections argue the same points, they largely assert three central themes. First, they argue that the total monetary value that will personally accrue to the Class Members is relatively small as compared to the attorney's fees. Second, they seek to discount the in-kind charitable donation on the basis that there is no direct benefit to the Class Members. Finally, they argue that the injunctive relief is not of substantial value to the Class Members. While the amount of benefit to the class members is small, as addressed more fully below, there is no practical alternative by which to deliver greater value to Class Members. The charitable donation's direct benefit will not flow to the class members, however, it is appropriate to consider the donation in evaluating the settlement overall and it will have an indirect benefit to the Class. *C.f. Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (affirming class action settlement which considered *cy pres* distribution in evaluating fairness). Finally, this litigation, and Class Counsel's efforts have played a large part in ending the Defendants' practice of selling the Ultra batteries, which is a direct benefit to the class members. While the

---

[6] The various objections also raised issue with the timing of the objection deadline, asserting that it was problematic because it pre-dated the attorney's fee motion deadline. (*See, e.g.*, Docs. 126 at 36; 130 at 10-16). While this would not, by itself, require the rejection of the Settlement Agreement, the Court's extension of the Final Fairness Hearing ameliorated the timing issue by giving objectors additional time to consider the number of claims presented. (*See* Doc. 141). Further, objectors Frank and Gaspar filed supplemental memoranda regarding the additional information disclosed by the extended deadlines. (*See* Docs. 162, 163).

cessation of Ultra battery sales predates the Settlement Agreement, that business decision was motivated by this lawsuit and was formalized through the Settlement Agreement.

### 2.   Frank's Objection

Class member Frank's counsel appeared at the Final Fairness Hearing. His primary contention was that there should be a way to provide monetary relief to a greater number of Class Members. But, this would require a means by which to identify and contact members of the Class. Gillette does not sell at retail, so it has no records from which to identify actual purchasers of Ultra batteries. And, attempting to gain this information from retailers would be difficult, expensive, and essentially fruitless. The Court thus concludes that this settlement is the best practical means of providing relief to the Class.

### 3.   Dorsey's Objection

Class member Dorsey's objection focuses on asserted problems with certifying the settlement class. Dorsey's first objection is that the class has no terminal date. (Doc. 130). However, the pleadings make clear that the subject batteries were no longer sold after July 2013. (*See* Doc. 158 at 18). Accordingly, the class is necessarily limited to persons who purchased the Ultra batteries prior to the end of July 2013. Dorsey's second argument is that the claims website did not include a Spanish language version, this is wrong. The settlement plan did not guarantee a Spanish language website, only links to Spanish language versions of the notice and claims form. The website, based on the Court's brief review, still includes Spanish language versions of the forms as of the date of this Order.[7] Dorsey's final certification argument is based on the fact that the promised claims

---

[7] The forms are accessible via a link titled "Notificación/Formulario de Reclamación" on the main claims webpage, which directs a browser to https://eclaim.kccllc.net/ caclaimforms/DUB/docs_sp.aspx which links to the relevant forms in Spanish.

website, www.UltraBatterySettlement.com, redirects to a different website—which Dorsey asserts would induce a fear reflex for an internet user. The specified web address leads a user to the relevant information through an automatic redirect. Dorsey's arguments are without merit and do not give reason to reject the Settlement.

The Court fully considered each of the objections made to the settlement and finds that they lack merit for the reasons stated above and in Plaintiff's and Defendants' Responses to them. (*See* Docs. 150, 158). The small number of exclusions and objections from Class Members relative to the size of the Class, and the lack of merit to the objections that were made, further support approval of the Settlement. *See, e.g., Bennett*, 737 F.2d at 988 & n.10 (holding that the district court properly considered the number and substance of objections in approving a class settlement).

### F. *Bennett* Factors Support Approval of the Settlement

In considering this Settlement, the Court has considered the submissions of the parties, and the discovery conducted, all of which show that Plaintiff faced considerable risk in prosecuting this case to conclusion. The Settlement eliminates a substantial risk that the Class would end-up empty-handed. *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992). Further, Defendants have defended this action vigorously and if this case were to proceed without settlement, the resulting trial and the almost inevitable appeal would be complex, lengthy, and expensive. Accordingly, it could be years before Class Members receive any benefit, and the ultimate net recovery could well be less than that received under this Settlement. *Behrens*, 118 F.R.D. at 543 (settlement "shortened what would have been a very hard-fought and exhausting period of time, which may have realistically ended with a decision similar to the terms of this settlement").

This action was settled after more than sixteen months of discovery and motion practice, including briefing and argument on class certification. The Settlement was achieved after arm's-

- 7 -

length negotiations between Class Counsel and attorneys for the Defendants during formal mediation overseen by a well-qualified mediator appointed by this Court. The facts demonstrate that the Plaintiff was sufficiently informed to negotiate, execute, and recommend approval of this Settlement. *See, e.g., Davies v. Continental Bank*, 122 F.R.D. 475, 479-80 (E.D. Pa. 1988) (finding the stage of proceedings factor weighing in favor of settlement where the parties had engaged in substantial discovery actions). There is no suggestion of fraud or collusion between the parties and no evience of want of skill or lack of zeal on the part of Class Counsel.[8] *Bennett*, 737 F.2d at 986. In sum, the Court finds that the *Bennett* factors support approval of the Settlement.

## G. Class Counsels' Fee and Expense Claim is Reasonable

Under the Agreement, Class Counsel will receive a fee of $5.4 million and an expense reimbursement of $272,000 for a total of $5.68 million. This sum was arrived at independently of the class settlement, and was the result of extensive arms-length negotiations.

In their Motion, Class Counsel relies primarily on fee awards in common fund cases; i.e., a reasonable percentage of the fund established for the benefit of the class. *See Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). Although a benchmark of 25% has been recognized, the reasonableness of the fee must be based upon the facts of each case. *Id.* (noting that determinations must be made on the facts of each case and that the majority of common fund fees fall between 20% and 30% of the fund).

---

[8] The Court also may consider the opinions of Class Counsel. *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982). Class Counsel have experience in the prosecution of consumer class actions, and this Court gives credence to the opinion of Class Counsel, supported by the Court's independent review, that this Settlement is a beneficial resolution of the Class claims.

Here, Class Counsel contends that the $5-plus million fee is only 10% of the $50 million common fund and therefore well within the range of reasonableness. Counsel computes this common fund by multiplying the estimated number of class members (7.26 million) by $6.00 per claim, totaling $43.56 million and adding the $5.6 million fee and cost payment. But, the $50 million calculation is somewhat illusory, because the parties never expected that Gillette would actually pay anything close to that amount.[9] Indeed, as expected, the claims rate in this case was only .076% (55,346 claims/7.2 million people), with a total pay-out of $344,850 (114,950 packages at $3.00 per package).

In determining a reasonable fee, however, the Court is not limited by the actual amount of claims to be paid. Rather, the Court should consider both the monetary and non-monetary benefits to the class and the economics involved in prosecuting the case. *Camden I Condo. Assoc.*, 946 F.2d at 775. In addition to the claimant's fund established for the benefit of the class, the class also received a substantial equitable benefit by reason of Gillette's agreement to stop selling Ultra batteries.

With respect to the economics of prosecuting the case, Class Counsel expended more than 6000 billable hours to these cases, worth approximately $3.5 million at their normal hourly rates, plus costs advanced in the sum of $270,000. Using a lodestar analysis, the requested fee represents a risk multiplier of 1.56, which is well within the range of reasonableness for a contingent fee complex class action case.

Thus, whether viewed as a percentage of a common fun or by lodestar analysis, the fee requested here is reasonable.

---

[9] In the Declaration of McComb it is noted that the expected claims rate in a consumer class action such as this is less than 1%. (Doc. 156 ¶ 5).

**H. Class Certification—Notice**

The parties timely caused the Notice to be disseminated in accordance with the Agreement and the prior order of this Court. The Notice advised Class Members of, among other things: the allegations in the Complaint; the terms of the proposed Settlement; the requirements and deadline for submitting claims; the requirements and deadline for requesting to be excluded from the settlement; the requirements and deadline for objection to the proposed Settlement; and the scheduled Final Approval Hearing.[10] The Notice further identified Class Counsel and set forth that Class Counsel would seek an award of up to $5.68 million in attorneys' fees and expenses. The Notice also set forth in full the claims released by Class Members as part of the Settlement and advised Class Members to read the Notice carefully because it would affect their rights if they failed to object to the Settlement.

This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. *See Id*. The Court thus reaffirms its findings that the Notice given to the Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.[11]

---

[10] The date of the Final Approval Hearing was continued so class members could consider the total claims submitted. (Doc. 141). Further, two class members filed supplementary memoranda in support of their objections. (*See* Docs. 162, 163).

[11] The list of exclusions from the Settlement is attached hereto as Exhibit A.

It is, therefore

**ORDERED** that Plaintiff's Motion for Approval of Settlement and Award of Attorney's Fees (Doc. 157) is **GRANTED**.

It is further **ORDERED** that:

1.      The Agreement is hereby approved and the parties are required to implement its provisions and otherwise comply therewith.

2.      Without limiting any term of the Agreement, this Final Approval Order and Judgment, including all exhibits hereto, shall forever be binding upon Joshua D. Poertner and all other Class Members, as well as their heirs, executors and administrators, successors and assigns. This Final Approval Order and Judgment releases the Defendants as set forth in the Agreement. This Final Approval Order and Judgment shall have res judicata, collateral estoppel, and all other preclusive effect on any claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, losses, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses, including the Released Claim as described in the Agreement, that were asserted or could have been asserted in this action.

3.      The Released Parties and each member of the Settlement Class are subject to the exclusive jurisdiction and venue of the United States District Court for the Middle District of Florida for any suit, action, proceeding, case, controversy, or dispute relating to the Settlement Agreement that is the subject of this final judgment. All Class Members, excepting only the twelve individuals who effectively excluded themselves from the Settlement Class in accordance with the terms of the Class Notice, and all persons and entities in privity with them, are barred and enjoined from commencing or continuing any suit, action, proceeding, case, controversy, or dispute relating to the Settlement Agreement that is the subject of this Order of Final Approval and Final Judgment.

4.     This Court shall have exclusive jurisdiction and authority to rule upon and issue a final order with respect to the subject matter of any such action, suit, or proceeding whether judicial, administrative, or otherwise, which may be instituted by any person or entity, individually or derivatively, with respect to (i) the validity or enforceability of the Settlement Agreement; (ii) the authority of any Released Party to enter into or perform the Settlement Agreement in accordance with its terms; (iii) the remedies afforded by this Order of Final Approval and Final Judgment and the   Settlement Agreement, or the attorneys' fees, representatives' fees, interest, costs, or expenses provided for in this Order of Final Approval and Final Judgment; (iv) any other foreseen or unforeseen case or controversy relating to or impacted by this Order of Final Approval and Final Judgment and Settlement Agreement; or (v) the enforcement, construction, or interpretation of the Settlement Agreement or this Order of Final Approval and Final Judgment. This reservation of jurisdiction does not limit any other reservation of jurisdiction in this Order of Final Approval and Final Judgment nor do any other such reservations limit the reservation in this sub-section.

5.     Neither this Order of Final Approval and Final Judgment nor the Agreement shall be construed or deemed evidence of or an admission or concession on the part of Defendants with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses asserted.

6.     This Action including all individual and class claims that were or could have been raised in these action, are hereby dismissed on the merits and with prejudice.

7.     The Clerk is directed to close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 21, 2014.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOSHUA D. POERTNER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>THE GILLETTE COMPANY, and THE PROCTER & GAMBLE COMPANY,<br><br>      Defendants. | Case No. 6:12-CV-00803-GAP-DAB<br><br>Dept.: 5A<br>Judge: Hon. Gregory A. Presnell |

**DECLARATION OF DEBORAH MCCOMB RE: REQUESTS FOR EXCLUSION FROM CLASS SETTLEMENT**

I, Deborah McComb, declare and state as follows:

    1.     I am a Senior Consultant at Kurtzman Carson Consultants LLC ("KCC"), located at 75 Rowland Way, Suite 250, Novato, California. As a Senior Consultant at KCC, my responsibilities include overseeing and implementing legal notice campaigns in order to provide notice to class members of class action settlements. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

    2.     KCC is the court appointed settlement administrator of the class settlement in the above-

captioned matter (the "Settlement").  I am one of the individuals at KCC responsible for KCC's work in administering the Settlement, including among other things receiving and tracking Requests for Exclusion (i.e., opt outs) received from potential class members.   In accordance with the Court's Order Granting Preliminary Approval of Class Action Settlement in this matter (Doc. 118), the purpose of this declaration is to provide the parties and the Court with a list of Requests for Exclusions (i.e., opt outs) that have been received by KCC related to the Settlement.

3.      As of the date of this declaration, KCC has received twelve (12) Requests for Exclusion or opt outs.  A list of the individuals requesting exclusion is attached hereto as Exhibit A.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 10th day of March 2014 at Novato, California.

Deborah McComb

**KCC Class Action Services**
***Joshua Poertner v. The Gillette Company, et al*. Class Settlement**
List of Opt-Outs Received

**Count:**      **12**

| Control # | Last | First |
|-----------|------|-------|
| 900042001 | BOOKER | DAVE |
| 900045001 | FALLONI | TIMOTHY |
| 900038701 | HAACK | JIM |
| 900048101 | HARPER | ADAM |
| 900050701 | KONIECZNY | CHRIS |
| 900046401 | KOSTAKIS | NICHOLAS |
| 900047801 | LAHR | MATT |
| 900044701 | MARKELLOS | NIKOS |
| 900039001 | NICHOLS | CARLY |
| 900041601 | ROBERTSON | KYLE |
| 900043301 | ROOT | SEAN |
| 900024801 | YOUNG | WENDY L |