[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13882
_____

D.C. Docket No. 6:12-cv-00803-GAP-DAB


JOSHUA D. POERTNER,
Individually and on behalf of all others similarly situated,

                   Plaintiff–Appellee,

CHRISTOPHER BATMAN,
ROBERT FALKNER,
THEODORE H. FRANK,
WANDA J. COCHRAN,
GRACE M. CANNATA,

                   Interested Parties–Appellants,

versus

THE GILLETTE COMPANY,
THE PROCTER & GAMBLE COMPANY,

                   Defendants–Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 16, 2015)

Before JORDAN and DUBINA, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

In this consolidated appeal, several objecting, unnamed class members challenge the district court's conclusions that (1) the settlement in a consumer class action was "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e); and (2) the attorneys' fees award was "reasonable" under Rule 23(h). After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm.

**I.**

Defendant The Gillette Co. owns the Duracell battery brand and is itself a wholly owned subsidiary of Defendant The Proctor & Gamble Co. For simplicity, we refer to both Defendants as Gillette.

In 2009, Gillette introduced a new line of batteries branded Ultra Advanced. According to Gillette's on-the-package marketing, these batteries were supposed to last longer than standard Duracell CopperTop batteries. In January 2012, Gillette

---

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

began to phase out Ultra Advanced batteries, replacing them with batteries branded Ultra Power.  Gillette also marketed Ultra Power batteries as superior to CopperTop batteries.  Indeed, Ultra Advanced and Ultra Power batteries had the same model number.  For simplicity, we refer to both brands as Ultra batteries.

In May 2012, Gillette removed to the Middle District of Florida the class action that Joshua Poertner had brought in Florida state court.  (Around the same time, Gillette removed a similar class action to the Northern District of California.)  In his complaint, Poertner alleged that Gillette's marketing of Ultra batteries violated the Florida Deceptive and Unfair Trade Practices Act in several ways.  On behalf of the class of Florida purchasers of Ultra batteries, Poertner sought actual damages, restitution, declaratory and injunctive relief, as well as costs and attorneys' fees.

In July 2013, while the parties were mediating, Gillette stopped manufacturing, packaging, marketing, and selling Ultra batteries.

In September, after months of court-ordered mediation, the parties settled.  Under the settlement agreement, Poertner filed a third amended complaint that gave the class nationwide scope.  The nationwide class comprised nearly 7.26 million persons who, with certain exclusions not relevant here, "purchased size AA or AAA Duracell brand Ultra Advanced and/or Ultra Power batteries at Retail from or after June 2009."  Gillette thus obtained global peace as all class members

released any nonpersonal-injury claims related to the allegations in the third amended complaint.

In return, class members were offered monetary relief. Those who filed valid claims would receive $3 per pack of batteries—up to four packs with proof of purchase and two packs without such proof. Claims could be submitted online or by mail, and the form was straightforward: a one-page document that asked for the class member's contact information, the number of packages purchased, the type and size of the batteries, the purchase location, and the devices in which the batteries were used. Additionally, the class representative, Poertner, was allowed to seek an incentive award of $1500.

Class members were also provided nonmonetary relief. Gillette agreed to stop putting the allegedly misleading statements on the packaging of Ultra batteries. A material factor in Gillette's decision to do so was the litigation underlying the settlement.

Additionally, the settlement included a cy pres award. Gillette agreed to make a donation of $6 million of batteries to "first responder charitable organizations, the Toys for Tots charity, The American Red Cross or 501(c)(3) organizations that regularly use consumer batteries" (calculated at retail value) over the next five years. This amount was in addition to its previously agreed upon product donations.

4

Finally, the settlement addressed class counsel's fees and costs. The parties agreed that class counsel could seek up to $5.68 million in fees and costs without opposition from Gillette, an award that was to be shared by counsel in the Florida and California actions. The settlement, however, limited Gillette's payment obligation to the amount awarded by the district court. Class counsel and Gillette did not negotiate these terms until an agreement on all other material terms had been reached.

In November, the district court preliminarily approved this settlement. Because Gillette did not have any personal information about the unnamed class members, class notice was provided by publication through national periodicals and popular internet outlets.

In February 2014, class member Theodore H. Frank objected through counsel. The gist of his objection was that the settlement was structured so that class counsel benefited at the expense of the class. Others made similar objections. In light of these objections, the district court continued the fairness hearing to obtain claims data and additional briefing. The claims administrator reported that 55,346 class members made claims totaling $344,850.

After considering the parties' briefs and holding a fairness hearing, the district court overruled the objections and approved the settlement and class counsel's fees-and-costs request. Despite finding that "the $50 million [settlement

5

valuation] calculation [was] somewhat illusory,"[1] the court concluded that the settlement was fair, reasonable, and adequate.  In reaching this conclusion, the court found that the settlement's nonmonetary relief provided the class with "substantial equitable benefit" and that "it is appropriate to consider the [charitable] donation in evaluating the settlement overall" because it indirectly benefits the class.  The court also emphasized its analysis of the six factors in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), and found that "this settlement is the best practical means of providing relief to the Class."

Turning to attorneys' fees and costs, the district court found that class counsel's request was reasonable under either the percentage-of-the-fund method, which class counsel argued applied, or the lodestar method (applying a 1.56 risk multiplier).  Lastly, the court reaffirmed its earlier findings that settlement provided the best practical notice and that the named representative was adequate.

For procedural reasons, the objectors filed separate appeals, and we combined them under the name of the first objector to appeal.  On appeal, all objectors joined Frank's brief, so we refer to them as a single objector named Frank.

---

[1] Class counsel calculated this amount by multiplying the number of class members (7.26 million) by the amount that could be claimed without proof of purchase ($6) and adding the fees-and-costs award.

## II.

Two standards of review apply here. First, we review our subject-matter jurisdiction de novo. *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1316 (11th Cir. 2013). Second, we review the approval of a class action settlement for abuse of discretion. *Id.* And "a district court's decision will be overturned only upon a clear showing of abuse of discretion." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).

Discretion means that the district court has a "range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1324 (11th Cir. 2005). Indeed, the district court abuses its discretion only "if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014) (quoting *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010)).

## III.

We begin with Gillette's contention that Frank (and the other objectors) lack standing to appeal because none formally intervened in the district court. Relying

7

on *Devlin v. Scardelletti*, 536 U.S. 1, 122 S. Ct. 2005 (2002), Gillette argues that only class members who are part of a mandatory class action certified under Rule 23(b)(1)—as opposed to one like this that was certified under Rule 23(b)(3)—can appeal a settlement's approval. The crucial distinction between the two types of classes, according to Gillette, is the existence of opt-out rights. This is so, the company says, because *Devlin*, which involved a Rule 23(b)(1) class, recognized that "appealing the approval of the settlement is petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might finding legally inadequate." *Id.* at 10–11, 122 S. Ct. at 2011. As a result, Gillette reads *Devlin* to deny objectors the right to appellate review unless an appeal is their only way to avoid being bound.

Gillette's appellate-standing argument is unavailing. For starters, four of our sister circuits—the First, Sixth, Ninth, and Tenth Circuits—have expressly rejected such arguments. *See Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 39–40 (1st Cir. 2009); *Fidel v. Farley*, 534 F.3d 508, 512–13 (6th Cir. 2008); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 572–73 (9th Cir. 2004); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1257–58 (10th Cir. 2004). And the Seventh Circuit referred to a similar argument as "frivolous," disposing of it without discussion. *Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014). Next, we agree with the First Circuit that "*Devlin* . . . is

about party status and one who could cease to be a party is still a party until opting out." *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 40. We thus decline to adopt Gillette's cramped reading of *Devlin* and hold that Frank (and the other objectors) have standing to appeal.

We now turn to the merits of Frank's appeal.

### IV.

The district court concluded that the settlement in this case was fair, reasonable, and adequate and that class counsel's request for fees and costs was reasonable. It did so after allowing the parties to fully brief the issues, holding a fairness hearing, and considering the relevant fairness factors established by this court. Based on our thorough review of the record, we hold that neither of the district court's conclusions constitutes a clear abuse of discretion.

The monetary relief that the settlement offered the class was fair. Indeed, the $6 that could be claimed without proof of purchase exceeded the damages that an average class member would have received if the class had prevailed at trial. And while monetary relief was available to only those class members who submitted claims, the use of a claims process is not inherently suspect. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011), Westlaw (database updated June 2015) (noting that "a claiming process is inevitable" in certain settlements such as those involving "defective consumer

products sold over the counter"). Nor was the claiming process—completing a one-page form and submitting it either online or by mail— particularly difficult or burdensome. *Contra Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014) (concluding that the claims process of a consumer class action settlement appeared to have been designed "with an eye toward discouraging the filing of claims").

To determine whether the settlement's allocation of benefits was fair, the district court concluded that the value of the nonmonetary relief and cy pres award were part of the settlement pie. Neither conclusion rests on an incorrect or unreasonable application of our precedents. For example, in a case involving a class action settlement that created a reversionary common fund, we held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class," describing 25 percent as the "bench mark" attorneys' fee award. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770, 774, 775 (11th Cir. 1991).[2] But because "the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary," we concluded that district courts could also consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–

---

[2] While no published opinion of ours extends *Camden I*'s percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *supra*, § 13:7.

19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989),³ as well as "[o]ther pertinent factors," including "any non-monetary benefits conferred upon the class by the settlement[] and the economics involved in prosecuting a class action," in determining the reasonableness of a fee award.  946 F.2d at 775.  And in another case, we affirmed the district court's decision to disburse unclaimed compensatory damages through the use of fluid recovery, which is similar to a cy pres award.⁴  *Nelson v. Greater Gadsden Hous. Auth.*, 802 F.2d 405, 409 (11th Cir. 1986).  Thus, by including the value of the nonmonetary relief and cy pres award as part of the settlement pie, we conclude that the district court did not abuse its discretion.

Nor was the district court's finding that the class received substantial benefit from the settlement's nonmonetary relief clearly erroneous.  On appeal, Frank contends that the nonmonetary relief was illusory.  This is so, he says, because

---

³ *Johnson*'s twelve factors are:

(1) time and labor, (2) novelty and difficulty of the questions, (3) requisite skill, (4) preclusion of other employment, (5) customary fee, (6) fixed or contingent fee, (7) time limitations, (8) amount involved and results obtained, (9) experience, reputation and ability of attorneys, (10) "undesirability" of the case, (11) nature and length of professional relationship with client, and (12) award in similar cases.

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 n.5 (11th Cir. 1999) (summarizing factors in *Johnson*, 488 F.2d at 717–19).

⁴ "At the highest level of generality, both fluid recovery and *cy pres* capture situations in which the class members' monies are directed in whole or part to third parties, though the specifics vary."  4 Rubenstein, *supra*, § 12:27.

Gillette was no longer selling Ultra batteries when it agreed to stop putting the allegedly misleading statements on the batteries' packaging. While true, this is only part of the story. The record, as the district court acknowledged, makes clear that Gillette's decision to stop selling and marketing Ultra batteries with the challenged statements on the packaging was motivated by the present litigation. Frank did not present any contradictory evidence to the district court. Thus, we conclude that the district court's valuation of the nonmonetary relief was supported by the record. *See Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir. 1989) ("[A] finding of fact [is] clearly erroneous if the record lacks substantial evidence to support it.").

And, despite Frank's contrary contention, we conclude that the district court's approval of the cy pres award was not inappropriate. As part of the settlement, Gillette agreed to donate $6 million worth of batteries to charity over five years. Importantly, the settlement's structure makes clear that nonclass-member charities have not been favored over class members because Gillette's battery donation is independent of the monetary relief available to the class. Given this fact and Frank's failure to identify any binding precedent prohibiting this type of cy pres award, we decline to overturn the district court's settlement approval. Also, we are unpersuaded by Frank's claim that the district court erred in approving the settlement because the charitable recipients of Gillette's distribution

12

are unacceptably vague.  The settlement provides that the donation recipients will be "charitable organizations, including but not limited to first responder charitable organizations, the Toys for Tots charity, The American Red Cross or 501(c)(3) organizations that regularly use consumer batteries."  Neither Rule 23 nor due process requires more.  We thus hold that district court's approval of the cy pres award was not a clear abuse of discretion.

   Also, Frank contends that the record does not support the district court's finding that "this settlement is the best practical means of providing relief to the Class."  We disagree.  As the district court noted, the record is clear: "Gillette does not sell at retail, so it has no records from which to identify actual purchasers of Ultra batteries."  In the district court, Frank did not contest this fact or the evidence introduced to support it.  Instead, he pointed out that in other class actions, including those involving inexpensive consumer products, the identities of many class members were ascertained by subpoenaing the customer records of a handful of major retailers.  He thus concluded that the settling parties could provide individualized notice or direct payment to at least some class members by taking a similar approach here.  But even if it was possible to identify *some* unnamed class members, that does not mean that the district court lacked the discretion to approve the settlement as fair absent the identification of these class members.  Nor does Frank's "evidence"—which consisted of his beliefs that "several vendors" have

"loyalty cards or other customer records" and a 2012 newspaper article "documenting [the] degree" to which retailers collect and use customer information—negate the fact that Gillette lacked any class-member contact information.  Hence, the district court's finding that "attempting to gain [class members' contact] information from retailers would be difficult, expensive, and essentially fruitless" was not unsupported by the record.[5]

Further, Frank devotes a lot of attention to the settlement's "red flags" of unfairness: the "clear-sailing" and "kicker" clauses relating to class counsel's fees and costs.[6]  In his view, these clauses are "'subtle signs' that objectively the class is not getting as good of a deal as it could have if class counsel was not self-dealing."  But we conclude that Frank's self-dealing contention is belied by the

---

[5] Even though the crux of Frank's arguments on appeal center on settlement fairness, he makes a couple of references to adequacy-of-representation issues that potentially cast doubt on the propriety of the settlement's approval.  But because these issues were raised only in passing, they have been waived.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

[6] A "clear-sailing" clause is an "agreement[ ] whereby the defendant agrees not to contest class counsel's fee petition as long as it does not exceed a specified amount."  4 Rubenstein, *supra*, § 13:9.  Some courts and commentators have noted that clear-sailing clauses could allow "a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class."  *E.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).
    A "kicker" clause provides that "all fees not awarded would revert to defendants rather than be added to the *cy pres* fund or otherwise benefit the class."  *Id.*  Some courts and commentators have noted that kicker clauses are potentially problematic because they deprive the class of benefits that the defendant is willing to pay.  *See, e.g.*, *id.* at 949.

record: the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator.

Finally, Frank claims that the settlement is unfair because class counsel's slice of the settlement pie is too large (i.e., the fees-and-costs award is unreasonable). But this objection is based on Frank's flawed valuation of the settlement pie: limiting the monetary value to the amount of Gillette's actual payments to the class along with excluding the substantial nonmonetary benefit and the cy pres award. Given the district court's settlement valuation, which we conclude from the record is not clearly erroneous, we hold that the district court's approval of class counsel's fees-and-costs award was not an abuse of discretion.

## V.

After carefully reviewing the settlement in this case, we conclude that the district court did not use the wrong legal standards, apply our precedents unreasonably or incorrectly, follow improper procedures, or make clearly erroneous findings of fact in deciding that the settlement was fair, reasonable, and adequate and that class counsel's fees-and-costs request was reasonable. Accordingly, we affirm the district court's final order and judgment approving the settlement and awarding class counsel fees and costs.

AFFIRMED.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Douglas J. Mincher
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 16, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  14-13882-FF
Case Style:  Christopher Batman, et al v. The Gillette Co., et al
District Court Docket No:  6:12-cv-00803-GAP-DAB

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DOUGLAS J. MINCHER, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs